**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |  |
|---|---|---|---|
| League of United Latin American Citizens – Richmond Region Council 4614, Eliud Bonilla, Luciania Freeman, Abby Jo Gearhart, and Jeanne Rosen, | ) ) ) ) ) ) | | |
| Plaintiffs, | ) ) | Civil Action No. 1:18cv423 (LO/IDD) | |
| v. | ) ) ) | | |
| PUBLIC INTEREST LEGAL FOUNDATION, an Indiana Corporation, and J. CHRISTIAN ADAMS | ) ) ) ) | | |
| Defendants. | ) ) ) | | |

**COMPLAINT**

**INTRODUCTION**

1.      In our democracy, all eligible Americans must be able to participate in elections, free from unlawful interference or impediments.  For generations, this country has fought to secure the right for all eligible Americans to vote in our elections free from intimidation or threats.  Protecting these hard-won rights requires steady vigilance, as the techniques used to intimidate or otherwise suppress the participation of voters evolves over time.  This case concerns one modern form of voter intimidation: the groundless assertion that certain eligible voters are committing voter fraud by participating in elections.  Such accusations are almost

invariably unfounded in fact; overwhelming evidence demonstrates that actual instances of voter fraud are vanishingly infrequent.[1]

2.      Spurious accusations of voter fraud cause real harm – both to the accused individuals and to our broader democracy.  Plaintiffs in this case include four Virginia voters accused by Defendants of committing state and federal felonies by participating in the electoral process.  These private citizens did not seek the public limelight or political power; they merely wished to exercise their fundamental right to participate in our elections.  The false accusations leveled against them – now archived on the internet for the general public to see and further disseminate – give rise to a variety of harms to these individuals that have the effect of intimidating them from voting or registering to vote.

3.      This is the kind of insidious modern technique of voter intimidation that civil rights laws are intended to eradicate.  These false accusations are also the sort of assaults on Plaintiffs' reputations that the law has long recognized as defamation.  Likewise, this form of voter intimidation affects the work of the organizational Plaintiff in this case, League of United Latin American Citizens – Richmond Region Council 4614, and the voting behavior of its members and the Latino community it serves.

4.      The Defendants are the Public Interest Legal Foundation and J. Christian Adams.  Together, Defendants and others conspired to release two so-called "bombshell" exposés—which were publicized to media across the country, published on the internet, shared on

---

[1] *See, e.g.*, Justin Levitt, *A Comprehensive Investigation of Voter Investigation of Voter Impersonation Finds 31 Credible Incidents Out of One Billion Ballots Cast*, WASHINGTON POST (Aug. 6, 2014), https://www.washingtonpost.com/news/wonk/wp/2014/08/06/a-comprehensive-investigation-of-voter-impersonation-finds-31-credible-incidents-out-of-one-billion-ballots-cast/?tid=a_inl&utm_term=.72b02eea461a.

social media, and subsequently submitted to the Presidential Advisory Commission on Election Integrity ("Presidential Commission")—that alleged that specific, named Virginians committed felony voter fraud and should be prosecuted.

5.      Defendants gave their first supposed "exposé" the provocative and threatening title of "*Alien Invasion in Virginia*" ("*Alien Invasion I*").  The report stated that over a thousand individuals had "***registered to vote illegally***" in Virginia.  Ex. A, at 2 (italics and bold in original)[2].  The report then went on to list many of those purported felons' names and home addresses, and, in some cases, even their *home phone numbers*, in the report's exhibits (see Exhibits 1 and 7 to the report).  This report and associated voter information is still available online.

6.      The next supposed "exposé" kept the threatening moniker—this time dubbed *Alien Invasion II*—and expanded Defendants' false assertions that certain Virginians were committing specific instances of felony voter fraud.  *See* Ex. B ("*Alien Invasion II*").  For example, *Alien Invasion II* accused hundreds of named residents of Prince William County of committing felony voter fraud, suggesting that the United States Department of Justice "**has done nothing about the felonies *committed* by 433 suspected aliens registered in Prince William County alone.**"  Ex. B, at 6 (italics added, bold in original).  The report accuses 1,852 Virginia voters of being "**illegal registrants**" who cast nearly 7,500 ballots by voting "**in elections dating back to 1988**" and thereby committing "felonies upon felonies."  Ex. B, at 1, 3 (bold in original).  And, once again, Defendants published the names, home addresses,

_____

[2] Names, except those of Plaintiffs, and personal information of individuals listed in the exhibits to this complaint have been redacted.

telephone numbers, and, in some cases, social security numbers of these individuals.  This report and associated voter information is also still available online.

7.  Defendants' "exposés" are predicated on specific, harmful falsehoods about numerous individuals made without due diligence to confirm the accuracy of the accusations. Defendants base their allegations that certain individuals committed felony voter fraud on the fact that those citizens were removed from the voting rolls for *potentially* being non-citizens. But, as Virginia elections officials have repeatedly emphasized to the Defendants, U.S. citizens can be removed from the voting rolls for various reasons—including routine paperwork errors.  Thus, Defendants' repeated allegations that certain Virginians were non-citizens and repeat felons were based on a demonstrably false proposition—of which Defendants were fully aware.  Subsequent media investigations have conclusively demonstrated that Defendants falsely implied that scores of constitutionally eligible Virginians committed multiple voter fraud felonies.

8.  These reckless allegations risk serious harm to the reputations of innocent Virginians.  In the age of the internet, Google, and social media, where these reports remain easily accessible, even being *accused* of a felony can have life-altering economic, emotional, and social consequences.

9.  Defendants' ongoing defamation campaign is a modern, covert, and particularly insidious method of voter intimidation.  An objectively reasonable individual named in either of the reports, or fearful of being wrongly named in future reports, would simply not register or vote again because the benefit from doing so would not outweigh the significant potential risk that the voter would be a continued target of Defendants' ongoing and intensifying defamation campaign that could have devastating effects on their careers and personal lives,

or make them susceptible to harassment by "ballot security" activists[3] (who now have access to their contact information by virtue of these published reports).

10.     Defendants' conduct violates both federal and state law.  The reckless and false allegations that specific, named individuals committed felonies constitute textbook cases of per se defamation under Virginia law.  Defendants' defamation campaign also violates both the Voting Rights Act, *see* 52 U.S.C. § 10307, and the Ku Klux Klan Act, *see* 42 U.S.C. § 1985(3), because it intimidates constitutionally eligible voters, like Plaintiffs, into not exercising their right to vote.

11.     Plaintiffs have not sought notoriety or attention or high office or to wield public power.  They simply want the same unfettered right to participate in our democracy free from harassment or intimidation that our country guarantees to every eligible voter.  They bring this suit to redress the injuries they personally have suffered, to ask the court to stop Defendants' continuing violations of the law, and to deter Defendants and others from this insidious form of voter suppression in the future.

## PARTIES

12.     Plaintiff League of United Latin American Citizens – Richmond Region Council 4614 ("LULAC") is a membership-based organization that works to advance the economic condition, educational attainment, political influence, health, housing, and civil rights of the Latino population of the city of Richmond, Virginia, and the surrounding area, including

---

[3] These are individuals who engage in various activities, including challenging voters at polls, that in certain instances have been alleged to suppress or interfere with voting rights.  *See generally* Wendy Weiser and Vishal Agraharkar, *Ballot Security and Voter Suppression: What It Is and What the Law Says,* Brennan Center for Justice (Aug. 29, 2012), https://www.brennancenter.org/publication/ballot-security-and-voter-suppression.

Hannover, Henrico, and Chesterfield counties, as well as the Tri-Cities area, which is comprised of the cities of Colonial Heights, Petersburg, Chester and Hopewell.  As part of its mission, LULAC engages in a wide variety of political participation initiatives, including voter registration and voter outreach and education efforts.

13.     Plaintiff Eliud Bonilla is a current resident of the state of Maryland who resided and voted in Herndon, Virginia, from 1999 until 2013.  He is of Puerto Rican descent.  Mr. Bonilla is a citizen born in Brooklyn, New York and has been a regular voter his entire adult life.

14.     Plaintiff Luciania Freeman is a resident of Woodbridge, Virginia and a registered voter in Prince William County, Virginia.  She is African American.  Ms. Freeman is a citizen born in Fayetteville, North Carolina.  She first registered to vote when she was 18 years old.

15.     Plaintiff Abby Jo Gearhart is a resident of Barhamsville, Virginia, and a registered voter of New Kent County, Virginia.  Ms. Gearhart is a citizen; she was born in Newport News, Virginia, and has lived in Virginia her entire life.  She has been a regular voter in Virginia since she registered at age 18.

16.     Plaintiff Jeanne Rosen is a resident of Yorktown and a registered voter in York County, Virginia.  Ms. Rosen is a citizen born in Brooklyn, New York.  She first moved to Virginia and registered to vote in 2013 and remained in Virginia until moving to Kansas in 2014.  Ms. Rosen returned to the Commonwealth in 2016, and voted in the 2016 presidential election.

17.     Defendant Public Interest Legal Foundation ("PILF") is a 501(c)(3) organization incorporated in the state of Indiana and has its principal place of business in Indianapolis, Indiana.

18.     Defendant J. Christian Adams is President and General Counsel of PILF.  Mr. Adams also participated as a member of President Trump's recently disbanded Presidential Advisory Commission on Election Integrity.  That Commission has been described by noted election-law expert Professor Richard L. Hasen as a "rogue's gallery of the country's worst voter suppressors."[4]  Even after the Presidential Commission was disbanded amidst multiple federal lawsuits, Mr. Adams publicly indicated his intention to continue his work on defamatory and intimidating "exposés" such as those at issue here.[5]  Mr. Adams resides in Alexandria, Virginia.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331.  Plaintiffs' claims under 42 U.S.C. § 1985(3) and Section 11(b) of the Voting Rights Act (codified at 52 U.S.C. § 10307) arise out of federal law.

---

[4] Richard L. Hasen, *Beyond Words: J. Christian Adams Appointed to Pence-Kobach Commission*, Election Law Blog (July 10, 2017), http://electionlawblog.org/?p=93726 (explaining that "it is hard to imagine a list of people less credible on the issue of voter fraud in the United States").

[5] Hans von Spakovsky and J. Christian Adams, *The Obstruction of a Vital Election Integrity Commission*, WASH. EXAMINER (Jan. 9, 2018),  http://www.washingtonexaminer.com/the-obstruction-of-a-vital-election-integrity-commission/article/2645401 (continuing to tout the findings of the defamatory *Alien Invasion* reports and vowing that "we and others dedicated to protecting our democratic system will continue our work" performed as members of the commission).

20.     This Court has supplemental jurisdiction over Plaintiffs' state law claim under 28 U.S.C. § 1367.

21.     This Court has personal jurisdiction over Defendant Adams as a resident of Virginia and over Defendant PILF under Virginia's long-arm statute, Va. Code § 80.1-328.1. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

22.     Defendants Adams and PILF conspired with each other and with non-party Virginia Voters Alliance ("VVA") to draft, publish and publicize *Alien Invasion I* and *Alien Invasion II*.  As set forth below, the publication and dissemination of those reports violated the civil rights of Plaintiffs and defamed them.

**Defendants Make Their Initial False Allegations in a Report Entitled "*Alien Invasion I*"**

23.     *Alien Invasion I* was published in September 2016.[6]  Defendant PILF and non-party VVA were the named authors of the report.  On information and belief, Defendant Adams participated in the drafting of the report.  Defendant Adams participated in the publication and dissemination of the report through authoring articles and granting media interviews.[7]

---

[6] The report is available online at https://publicinterestlegal.org/files/Report_Alien-Invasion-in-Virginia.pdf (last accessed April 11, 2018).

[7] *See, e.g.,* J. Christian Adams, *Yes, Virginia, Aliens Are Registered or Voting … and in Pennsylvania, by the Thousands*, PJ MEDIA (Oct. 3, 2016), https://pjmedia.com/jchristianadams/2016/10/03/yes-virginia-aliens-are-registered-and-voting-and-in-pennsylvania-by-the-thousands/.

24.     Defendants publicized *Alien Invasion I* to national media via press releases and postings on Facebook and Twitter.  Media outlets further disseminated the report's assertions to a broad audience.[8]

25.     *Alien Invasion I* accuses the voters named in it of committing multiple, separate felonies, from illegally registering to vote to casting an ineligible ballot.

26.     The report characterizes the existing voter registration system as an "ineffective honor system under which the alien need merely lie to get on the voter rolls."  Ex. A, at 1. The report then asserts that Defendants and VVA had "***found 1046 aliens who registered to vote illegally***."  Ex. A, at 2 (emphasis in original).  The report explains that "[w]hen non-citizens register or actually vote, they violate both state and federal statutes because citizenship is a requirement to vote in both state and federal elections."  Ex. A, at 3.

27.     *Alien Invasion I* purports to base its accusation that non-citizens have voted illegally on "**list**[s] **of registrants who had been purged from the voter rolls because they were determined to not be U.S. citizens**."  Ex. A, at 6 (emphasis in original); *see also* Ex. A, at 12 ("This data is but a minor snapshot. . . . It represents *non-citizen registrants*. . . and includes only those *non-citizens* that were *discovered to have been improperly registered*. . ." (emphasis added)).

28.     The report asserts the discovery of multiple lists of non-citizen felons in the following Virginia counties:

---

[8] *See, e.g.*, Neil W. McCabe, *Illegal Foreign Voting in Virginia Covered Up By Soros-Backed Democratic Officials, Says Report*, BREITBART NEWS (Oct. 2, 2016), http://www.breitbart.com/big-government/2016/10/02/virginia-illegal-voting-fraud-coverup/.

- Alexandria.  *See* Ex. A, at 6 (alleging that "**70 registrants . . . had been removed from Alexandria's registration lists after they were determined to not be U.S. citizens**" (bold in original)).

- Bedford.  *See* Ex. A, at 8 (stating county "provided a list of 35 non-citizens that had been removed from their voter rolls").

- Prince William.  *See* Ex. A, at 7 ("**Prince William County provided a list of *433 non-citizens* who had registered to vote in the county, but were then removed after they were determined to not be U.S. citizens.**" (bold and italics in original)).

- Roanoke.  *See* Ex. A, at 8 (claiming county "provid[ed] a list of **22 alien registrants**" (bold in original)).

29.    The report's exhibits then provide lists of the alleged felons by name.  Plaintiff Luciania Freeman was listed in *Alien Invasion I*, along with her contact information, including address and phone number.  *See* Ex. C (containing the page from the report's Exhibits 1 and 7 which lists Ms. Freeman).

30.    The clear implication of *Alien Invasion I* to an objectively reasonable reader is that Ms. Freeman, resident of Prince William County, and other listed individuals should not have registered or voted, and by doing so, committed felonies under state or federal law.  The report states clearly: "**The United States Attorney in Virginia has done nothing about the *felonies committed by 433 aliens* registering in Prince William County alone.**"  Ex. A, at 8 (italics added, bold in original)); *see also* Ex. A, at 2 (claiming the discovery of "***1046 aliens who registered to vote illegally***" (bold and italics in original)).

31.     Labeling the individuals named in the reports as non-citizens and therefore felons with reckless disregard for the truth of those accusations acts to intimidate and threaten those individuals and to deter them from voting or registering to vote.  Indeed, Defendant Adams suggested to *Breitbart News* that these individuals should be prosecuted:

> "*When an alien registers to vote, it is a felony* . . . . When an alien votes, it is multiple felonies.  DOJ under Obama has stopped enforcing this law.  *We name the names of the registered voters removed from the rolls for citizenship problems.  Will DOJ prosecute any of them*?"[9]

32.     Defendants' felony accusations are false.  The county registrar information relied on by Defendants and VVA does not establish that any particular voter is a not a citizen or that their conduct is felonious.  The registrar lists simply establish that certain voters were removed from the voting rolls, which Defendants know can occur for various reasons— including accidental failures to respond to government inquiries or routine paperwork errors.  In fact, Plaintiff Freeman is a natural-born United States citizen and an eligible voter in the state of Virginia where she is registered.  Hers was a case of paperwork error, in which a government official mistakenly believed that she was a non-citizen based on a Department of Motor Vehicles form.  In going beyond what the registrar's information actually establishes and accusing people like Ms. Freeman of committing felonies, Defendants not only defame these individuals, but also intentionally intimidate and threaten these individuals and other potential voters to deter them from registering to vote and voting.

33.     On information and belief, before Defendants published *Alien Invasion I,* Virginia elections officials informed Defendants that they were drawing false conclusions from the

---

[9] Neil W. McCabe, *Illegal Foreign Voting in Virginia Covered Up By Soros-Backed Democratic Officials, Says Report*, BREITBART NEWS (Oct. 2, 2016) (emphasis added), http://www.breitbart.com/big-government/2016/10/02/virginia-illegal-voting-fraud-coverup/.

registrar information and running the significant risk of wrongfully accusing constitutionally eligible voters of committing felony voter fraud.  Despite these warnings, Defendants intentionally accused people like Ms. Freeman and others of committing felonies by registering to vote and voting.

34.     On information and belief, critical media reports made Defendants further aware of the methodological shortcomings in *Alien Invasion I* after its release.[10]  Virginia election officials also informed Defendants of the methodological deficiencies of *Alien Invasion I* before *Alien Invasion II* was published.  *See* Ex. B, at 10.

**Despite Notice of the Flaws in their Approach, Defendants Continued Their Defamation and Intimidation Campaign By Publishing *Alien Invasion II***

35.     Less than one year after publishing *Alien Invasion I*, Defendants continued their campaign of defamation and intimidation with the publication of *Alien Invasion II* in May of 2017.[11]  As the name suggests, *Alien Invasion II* was intended to be a sequel to *Alien Invasion I.*

36.     Again, Defendants worked to publicize *Alien Invasion II* to national media via press releases and postings on Facebook and Twitter.  Media outlets again further

---

[10] *See* Peter Galuszka, *An Alien Invasion in the Old Dominion*, WASHINGTON POST (Oct. 10, 2016), https://www.washingtonpost.com/blogs/all-opinions-are-local/wp/2016/10/06/an-alien-invasion-in-the-old-dominion/?utm_term=.9aa4b72108fa.

[11] The report is available online at https://publicinterestlegal.org/files/Alien-Invasion-II-FINAL.pdf (last accessed April 11, 2018).

disseminated the report's assertions to a broad audience.[12]

37.      PILF and VVA were the named authors of *Alien Invasion II*.  Defendants

conspired and worked in concert with each other and with VVA to develop and publish this

second defamatory report.  On information and belief, Defendant Adams participated in the

drafting of the report.  Defendant Adams again participated in the publication and

dissemination of the report.

38.      *Alien Invasion II* affirmatively reiterates the accusation in *Alien Invasion I* that

certain voters in a number of Virginia jurisdictions, including the Richmond area (where

Plaintiff LULAC operates), were guilty of committing one felony by registering to vote and

likely guilty of committing another felony by actually voting:

> Ex. B, at 6 ("**Among the records uncovered at Ms. Leider's office was a list of**
>
> **registrants who had been removed from the voter rolls because they were**
>
> **determined to not be U.S. citizens.**" (bold in original)); Ex. B, at 6 ("**Prince William**
>
> **County provided a list of 433 noncitizens who had registered to vote in the county,**
>
> **but were then removed after they were determined to not be U.S. citizens**. . . . **The**
>
> **Department of Justice so far has done nothing about the** *felonies committed* **by 433**
>
> **suspected aliens registered in Prince William County alone.**" (italics added, bold in
>
> original)); Ex. B, at 7 ("Bedford County provided a list of 35 non-citizens that had been
>
> removed from the voter rolls."); Ex. B, at 7 (noting the discovery of "**list of 22 alien**
>
> **registrants**" in Roanoke (bold in original)); *see also* Ex. B, at 1 ("[*Alien Invasion I*]

---

[12] *See, e.g.*, Brandon Darby, *Watchdog Claims 5K Noncitizens Registered to Vote in Virginia*, BREITBART NEWS (May 30, 2017), http://www.breitbart.com/texas/2017/05/30/5k-noncitizens-registered-vote-virginia-report-finds/.

revealed that in these eight Virginia localities more than 1,000 non-citizens had recently been removed from the voter rolls.  In this small sample, nearly 200 verified ballots were cast prior to official removal.  *Each one of them is likely a felony*." (emphasis added)).

39.     *Alien Invasion II* was released in the wake of President Trump's unsupported allegations of massive voter fraud in the 2016 elections and the May 11, 2017, establishment of the Presidential Advisory Commission on Election Integrity—developments that Defendants might have expected to amplify the impact of their defamatory publication.

40.     *Alien Invasion II* alleges that 5,500 illegal registrations in Virginia resulted in 7,474 "Votes Cast By Non-Citizens" in recent Virginia elections.  *See* Ex. B, at 2.  The report imputes to each of those allegedly illegally registered individuals the commission of multiple felonies.  Ex. B, at 3 ("When non-citizens register or actually vote, they violate both state and federal statutes because citizenship is a requirement to vote in both state and federal elections."); Ex. B, at 12 ("Each time an alien registers a crime is committed."); Ex. B, at 15 ("**Over 1,100 non-citizens were discovered on the voter rolls in Fairfax County.  These individuals cast over 1,000 ballots before they could be removed from the rolls**. . . . It makes no difference whether alien votes were cast as a result of confusion or on purpose. *Each is a felony* . . ." (italics added, bold in original)).

41.     *Alien Invasion II* was published along with a roughly eight-hundred-page appendix containing voter registration forms, which included the names, home addresses, and telephone numbers of the alleged felons.  The published appendix originally included several voter registration forms with social security numbers before Defendants redacted that information.

42.     Plaintiffs' names, home addresses, and telephone numbers were included in the exhibits to *Alien Invasion II*. *See* Ex. D (containing the pages from the report's Exhibit 1, which lists Luciania Freeman (at page 258) and Eliud Bonilla (at page 100), and from the report's Exhibit 12, which lists Jeanne Rosen (at page 48), Abby Jo Gearhart (at page 96-97[13]), Eliud Bonilla (at page 217), and Luciania Freeman (at page 831)).

43.     Subsequently, Defendants published a revised version of the appendix to *Alien Invasion II*, with a self-serving and dubious explanatory footnote stating that "Exhibit 12 was updated after the discovery that some records were erroneously disclosed by the Commonwealth of Virginia which reflected individuals incorrectly categorized in the official voter registration archive as being 'declared non-citizens'.  Those Records were removed." As a consequence, Plaintiffs Abby Jo Gearhart and Jeanne Rosen no longer appear as part of *Alien Invasion II* in the version of the report presently available on Defendant PILF's website.  However, Eliud Bonilla and Luciana Freeman continue to appear on pages 164 and 748 of the revised Exhibit 12, respectively, and continue to be defamed as non-citizens engaged in voter fraud.

44.     *Alien Invasion II* unequivocally accuses Plaintiffs of having committed a felony under federal and state law by improperly registering to vote and the clear implication of the report to an objectively reasonable reader is that Plaintiffs are also guilty of a second felony by actually voting.  In making such false accusations, Defendants have acted to intimidate or threaten Plaintiffs for registering to vote and voting.

---

[13] Ms. Gearhart's registration uses her maiden name (Sharpe) and a name from a previous marriage (Focht).

45.     By labeling the individuals named in the report as non-citizens and felons with

reckless disregard for the truth of those accusations, Defendants act to intimidate and threaten

those individuals and to deter them from voting or registering to vote.  In a contemporaneous

article, Defendant Adams advocates prosecuting the individuals named in the report for voter

fraud:

> [The Public Interest Legal Foundation] obtained 700 pages of similar examples. . .
> All can be accessed by law enforcement personnel at this link. . . The [] report documents
> election *felonies piled on top of felonies*.
>
> Federal law 52 U.S.C. Section 20511 makes it a felony to submit a false voter
> registration form.  Federal law 18 U.S.C. Section 1015 makes it a crime to make a false
> statement to register to vote.  Federal law 18 U.S.C. Section 611 makes it illegal for
> foreigners to cast a ballot.  Virginia law also criminalizes the casting of an illegal ballot.
>
> So you may think there should have been hundreds, or even thousands, of voter
> fraud prosecutions in Virginia in the last few years.  Again, you'd be wrong.
>
> And it's not for a lack of information. . .
>
> . . .
>
> In another American age, when government records revealed that crimes were
> committed by the hundreds or thousands . . .everyone would have cared. . .
>
> Let's see what happens . . .
>
> Maybe, just maybe, those tasked with enforcing the law at the United States
> Department of Justice and county prosecutors will ignore the nonsense and click the
> links—where hundreds of pages of real evidence can be found.[14]

Plaintiffs' names and contact information were listed on those so-called "pages of real

evidence."

---

[14] J. Christian Adams, *Alien Invasion: Thousands of Foreigners Registered to Vote (and Voting)
in Virginia*, PJ MEDIA (May 30, 2017) (emphasis added),
https://pjmedia.com/jchristianadams/2017/05/30/alien-invasion-thousands-of-foreigners-
registered-to-vote-and-voting-in-virginia/.

## Defendants' Felony Accusations Are False

46.     Defendants' felony accusations are false.  The lists provided by the county

registrars do not establish that any particular voter is actually a non-citizen (and by

implication guilty of committing a felony).  The lists simply establish that certain voters were

removed from the voting rolls, which Defendants know can occur for various reasons—

including accidental failures to respond to government inquiries or routine paperwork errors.

Subsequent media reports also noted that Virginia's election commissioner (as well as certain

voters who themselves had been accused of felonies) vigorously disputed the accusations.  In

response to a state legislator's inquiry about *Alien Invasion II*, Virginia Commissioner of

Elections Edgardo Cortes stated that "[n]othing in this process necessarily confirms non-

citizenship – only that inconsistent information has been provided," and that Adams and the

Public Interest Legal Foundation "were uninterested in the context [and] had their own

narrative they wanted to tell."[15]

47.     In fact, Plaintiffs are United States citizens.  They are therefore factually innocent

of the false charges of felony voter fraud leveled by Defendants in the *Alien Invasion* reports.

## Defendants' False Accusations Have Imposed Substantial Harms on Plaintiffs and Interfered with Plaintiffs' Civil Rights

48.     Plaintiffs have suffered and continue to suffer various and extensive injuries

because of Defendants' actions.  Each Plaintiff has been falsely accused of having committed

one or more felonies by registering to vote and actually voting as alleged non-citizens.  Each

---

[15] *See* Jane C. Timm, *Vote Fraud Crusader J. Christian Adams Sparks Outrage,* NBC NEWS (Aug. 27, 2017), https://www.nbcnews.com/politics/donald-trump/vote-fraud-crusader-j-christian-adams-sparks-outrage-n796026.

Plaintiff has been subjected to adverse publicity on a national level; various media reported on the "*Alien Invasion*" reports and provided internet links to PILF's website and/or to the reports and their appendices, which contained sensitive contact information for Plaintiffs and are still largely accessible online.  This embarrassment and harm to their reputation—having been wrongly accused of committing felonies—was compounded when Defendant Adams ensured that the report and its appendices (including Plaintiffs' names) were made a part of the record of the Presidential Commission, which received extensive national press coverage.

49.     Plaintiffs have been and continue to be intimidated and threatened by Defendants' campaign of defamation.  In addition to the embarrassment and reputational harm that they have already suffered, Plaintiffs fear that the defamatory material will lead to a variety of adverse effects.  For example, Plaintiff Bonilla, who considered running for public office one day, fears and expects that the fact that his name is a part of a public record wrongly accusing him of being a non-citizen and having committed felonies, will subject him to "birther" conspiracies like the ones that plagued President Barack Obama.  He also worries about the potential impact the publication of this erroneous information could have on his family.  These accusations may deter him from exercising his right to run for public office.  As a further example, Plaintiff Freeman fears for her physical safety because she has been accused of illegal voting and her name and contact information are publicly available.  She also fears that her current or future employer could take adverse action against her because she has been falsely accused of a crime.  She fears that, if someone could erroneously include her name and personal information in a report accusing her of committing crimes, then authorities relying on the same publication could arrest or prosecute her based on mistaken beliefs about her citizenship.  Plaintiff Rosen feared that her right to vote would be disputed

when she reported to vote in the 2017 general election as a result of being listed in Defendants' report and continues to fear that inclusion in the report will permanently affect her ability to vote and have her votes counted in the future.  Likewise, Plaintiff Gearhart has been intimidated by the false accusations in the report.  Specifically, Plaintiff Gearhart fears her ability to vote may be challenged in the future and fears that she will be the target of harassment or violence.  Given the inclusion of her personal information in the report, Gearhart has chosen not to remove a home security system and has decreased her involvement in political activities.

50.     Plaintiffs have a legitimate concern regarding harassment and physical safety.  The reports were picked up by a number of media outlets which wrote articles that linked to the reports or to the PILF website.  The comment sections to those articles contained numerous threatening statements concerning those who were alleged to have fraudulently registered to vote or voted, with commenters, for example, calling for people to be "shot," "executed," "deported," or "imprisoned." [16]



---

[16] Neil W. McCabe, *Illegal Foreign Voting in Virginia Covered Up By Soros-Backed Democratic Officials, Says Report*, BREITBART NEWS (Oct. 2, 2016), http://www.breitbart.com/big-government/2016/10/02/virginia-illegal-voting-fraud-coverup/.





51.    The *Alien Invasion* reports further incite the already-heated rhetoric and discrimination against Latino and immigrant communities.  Indeed, the comments to media articles on the *Alien Invasion* mix anti-immigration sentiments with views on the reports. Plaintiff LULAC has devoted and will continue to devote critical and limited organizational resources to ensuring that Latino voters are not deterred from participating in the electoral process.

## COUNT 1

### 42 U.S.C. § 1985(3)

52.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

53.     Plaintiffs bring a claim under the second clause of 42 U.S.C. § 1985(3), which provides that:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; *if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy*; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, *the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.* (emphases added)

54.     Defendants conspired with each other and with VVA to knowingly accuse constitutionally eligible voters, including Plaintiffs, of having committed felony voter fraud with the purpose of intimidating those and other voters in an effort to prevent them from voting or registering to vote.

55.     Defendants' publication of the *Alien Invasion* reports constituted substantial steps in furtherance of that conspiracy.

56.     Defendants either knew or should have known at the time they published and publicized the reports that they were accusing multiple United States citizens who were constitutionally eligible voters, including Plaintiffs, of committing felony voter fraud.

57.     By advocating for the prosecution of the ostensibly "non-citizen" voters published in the *Alien Invasion* reports and suggesting they could risk severe penalties, including significant jail time, if they voted, Defendants hoped to deter these constitutionally eligible voters from voting in upcoming elections.

58.     Additionally, by publishing the names and contact information of these constitutionally eligible voters in the *Alien Invasion* reports—thereby making them available to "ballot security" activists to "monitor" their voting—and by heavily publicizing the report on TV, radio, and online media using incendiary rhetoric (including lamenting the failure of law enforcement official to prosecute any of the published "non-citizen" voters), Defendants aimed to foment public outrage in an effort to intimidate these voters.

59.     Defendants' multiyear, ongoing defamation campaign did intimidate Plaintiffs and would intimidate an objectively reasonable individual named in either of the *Alien Invasion* reports, and thereby discourage or prevent the named individual from either registering or attempting to vote, for fear of the repercussions of being publicly accused of a felony.

60.     Defendants maliciously persist in their efforts to continue publicizing the names and contact information of Plaintiffs and other voters, even after knowing that they have accused innocent voters of having committed voter fraud.

61.     Plaintiffs Eliud Bonilla, Luciania Freeman, Abby Jo Gearhart, and Jeanne Rosen, each of whom was constitutionally eligible to vote in Virginia, were injured and continue to

be injured by being wrongly accused as having committed multiple felonies and having their

contact information (including home addresses, email addresses, and phone numbers)

published.

62.     Defendants' campaign of defamation is calculated to cause and has caused

Plaintiffs to fear that the publication of false accusations and personally identifying

information will subject them to harassment, malicious prosecution, physical harm, or other

repercussions from people believing they have committed voter fraud.  For some, their names

continue to be associated with those accusations, so the harms persist.  Defendants' conduct

is aimed at deterring Plaintiffs from exercising their voting rights.

63.     Plaintiff LULAC has been and continues to be injured by Defendants' publication

of these reports.  LULAC's members and the Latino community LULAC represents have

been and continue to be intimidated and threatened by Defendants asserting that registering

to vote and/or voting constitutes an unlawful "alien invasion" that should be prosecuted.  The

Latino community, including members of LULAC, will be discouraged from participating in

the electoral process as a direct result of Defendants' conduct.

64.     Plaintiff LULAC has been and continues to be injured by Defendants' publication

of these reports because it impedes one of LULAC's core goals, the promotion of political

participation.  Instead of engaging in its ordinary course initiatives, LULAC must devote

time and resources to combat the false narrative that Latinos who vote are doing so illegally.

Voters in Latino communities are already subject to scorn and discrimination because of

heated rhetoric directed against Latino and immigrant communities.  For example, in the

recent 2017 Virginia gubernatorial election, the rampant propagation of derogatory

information and generalizations associating Latinos with gangs such as MS-13 or painting

them as criminals caused much despair and despondence amongst the Latino community in the larger Richmond area.  Similarly, the *Alien Invasion* reports, which falsely accused many Latino voters as being noncitizens who were guilty of committing voter fraud, created an environment that deters constitutionally eligible Latino voters from exercising their fundamental right to vote.

65.     LULAC expended substantial time and effort combatting this heated rhetoric, and was required to divert significant resources to combatting and remedying those harms.  For example, LULAC was the recipient of a two-year grant to improve Latino graduation rates in the Richmond community.  They had planned to begin implementing this program in local middle schools and high schools with high Latino populations at the beginning of the 2017 school year.  However, because LULAC had to redirect its resources to combat the heated rhetoric against Latinos as non-citizens or worse and amplify their Latino voter mobilization efforts, LULAC had to delay the start of this program until after 2017 elections.  As a result of this delay, LULAC is further behind in achieving their intended goals for the education initiative and is still continuing to play catch-up.

66.     Unless enjoined by the Court, Defendants, and those acting in concert with them, will continue to violate Section 1985(3) by continuing to conspire to publish and publicize their *Alien Invasion* reports that intimidate and attempt to intimidate constitutionally eligible voters by subjecting them to false felony accusations on the internet and in national media, and/or risk harm and harassment by voter protection vigilantes.

## COUNT 2

### Section 11(b) of the Voting Rights Act

67.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth

herein.

68.     Section 11(b) of the Voting Rights Act provides that:

> No person, whether acting under color of law or otherwise, shall intimidate,
> threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for
> voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to
> intimidate, threaten, or coerce any person for urging or aiding any person to vote
> or attempt to vote, or intimidate, threaten, or coerce any person for exercising any
> powers or duties under section 10302(a), 10305, 10306, or 10308(e) of this title or
> section 1973d or 1973g of Title 42.

52 U.S.C. § 10307.

69.     Defendants violated Section 11(b) of the Voting Rights Act by intentionally

publishing and publicizing *Alien Invasion* and *Alien Invasion II* as part of a reckless, ongoing

defamation campaign.

70.     The defamation campaign intimidated, threatened, or coerced, and/or attempted to

intimidate, threaten, or coerce the constitutionally eligible voters recklessly and falsely

accused of committing felony voter fraud in the *Alien Invasion I* and *Alien Invasion II* into

refraining from engaging in future voting-related activities.  Defendants' accusations would

intimidate an objectively reasonable individual named in either *Alien Invasion I* or *Alien

Invasion II* and thereby discourage or prevent the named individual from either registering or

attempting to vote regardless of whether that individual was constitutionally eligible to vote

in Virginia.

71.     Through the continued publication of the defamatory reports, Defendants

intimidate or attempt to intimidate Plaintiffs and others similarly situated from exercising

their constitutional right to register to vote and vote.  Defendants' conduct has instilled fear

in Plaintiffs that they will not be able to successfully exercise their right to vote in the future,

and/or that engaging in such voting activity will subject them to further false accusations,

false prosecution, harassment, threats to safety, or economic hardship.

72.     As detailed above, Plaintiff LULAC has been and continues to be injured, both as

an organization and as a representative of its membership and the Latino community in the

Richmond area.

73.     Unless enjoined by the Court, Defendants will continue to violate Section 11(b) of

the Voting Rights Act by continuing to publicize their *Alien Invasion* reports that intimidate

or attempt to intimidate Plaintiffs and potential voters by implying that as a consequence of

lawfully registering and/or voting, they will repeatedly face false felony accusations on the

internet and the national news.

## COUNT 3

### Defamation

[Plaintiffs Bonilla, Freeman, Gearhart, and Rosen, only]

74.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth

herein.

75.     Defendants published the *Alien Invasion I* and *Alien Invasion II* reports.  Those

reports defame Plaintiffs by falsely asserting that Plaintiffs Eliud Bonilla, Luciania Freeman,

Abby Jo Gearhart, and Jeanne Rosen were non-citizens who committed felony voter fraud by

registering to vote and/or voting.  *See, e.g.*, Ex. B, at 13 & n.69 ("For the remaining 702 non-

citizen registrants, getting on the voter rolls was as easy as checking "yes" to the citizenship

question . . . . The voter registration applications are produced at Exhibit 12"); Ex. D

(containing the registration forms from *Alien Invasion II*'s Exhibit 12, which lists Jeanne

Rosen (at page 48 of Exhibit 12), Abby Jo Gearhart (at pages 96-97), Eliud Bonilla (at page

217), and Luciania Freeman  (at page 831); Ex. B, at 12 ("Non-citizen registration and voting

matters. Each time an alien registers a crime is committed.  **When an alien votes** . . .

**another crime** [is] **committed**." (bold in original)); Ex. B, at 2 ("Simply put, it is a felony

for a non-citizen to register and to cast a ballot.  Each time such a crime is perpetrated . . ."));

Ex. B, at 3 ("When non-citizens register or actually vote, they violate both state and federal

statutes . . ."); Ex. B, at 5 & n.5 ("**The numbers are alarming: 5,556 non-citizens have**

**been removed from the voter rolls for citizenship problems** . . . . The cancellation reports

for all 120 counties are available at Exhibit 1 at the link provided on page 1 of this report."

(bold in original));  Ex. D (containing the pages from the report's Exhibit 1, which lists

Luciania Freeman (at page 258) and Eliud Bonilla (at page 100)); Ex. B, at 1 ("It is not

unreasonable to conclude that the full, and unknown, extent of non-citizens registered to vote

far exceeds the 5,500-plus who were removed."); Ex. B, at 1 ("**Despite obstruction from**

**local and state officials, the Public Interest Legal Foundation (PILF) expanded the non-**

**citizen investigation to the entire Commonwealth.  As a result, the number of**

**registrants removed from voter rolls for citizenship problems during the last few**

**election cycles grew to over 5,500. Of these** *illegal registrants***, 1,852 cast nearly 7,500**

**ballots in elections dating back to 1988**." (italics added, bold in original)); Ex. B, at 15

("The accidental discovery of over 5,500 non-citizens . . . "); Ex. B, at 6 & n.32 ("**Prince**

**William County provided a list of 433 noncitizens who had registered to vote in the**

**county, but were then removed after they were determined to not be U.S. citizens** . . . .

An updated cancellation report subsequently received from the Department of Elections lists

the "Declared Non-Citizen Total" as 443.  See Exhibit 1." (bold in original)); Ex. B, at 6 ("**The Department of Justice so far has done nothing about the felonies committed by 433 suspected aliens registered in Prince William County alone.**" (bold in original)); Ex. B, at 13 ("The Fairfax County board had discovered 278 registered voters who had represented to the DMV that they were not U.S. citizens.  **Almost half of them—117—had not only registered to vote, they had in fact voted in state and federal elections**.  The Department of Justice never followed up, leaving nearly 300 gift-wrapped cases of voter fraud untouched." (bold in original)); Ex. B, at 15 ("**Over 1,100 non-citizens were discovered on the voter rolls in Fairfax County.  These individuals cast over 1,000 ballots before they could be removed from the rolls**." (bold in original)); Ex. B, at 1 & n.1 ("In October 2016, looking at data from only eight Virginia counties, we uncovered proof that large numbers of ineligible aliens are registering to vote and casting ballots. Our investigation revealed that in these eight Virginia localities more than 1,000 non-citizens had recently been removed from the voter rolls.  In this small sample, nearly 200 verified ballots were cast prior to official removal.  Each one of them is likely a felony. . . . https://publicinterestlegal.org/blog/reportineligible-aliens-registering-vote-casting-ballots/.") Ex. A, at 2 ("*[W]e found 1046 aliens who registered to vote illegally*." (emphasis in original)); Ex. A, at 8 ("**The United States Attorney in Virginia has done nothing about the felonies committed by 433 aliens registering in Prince William County alone**." (bold in original)); Ex. C (containing the pages from the report's Exhibits 1 and 7 which lists Ms. Freeman).

76.     Those reports are false statements of fact and are defamatory per se because they falsely impute to Plaintiffs the commission of crimes of moral turpitude.  Plaintiffs Eliud

Bonilla, Luciania Freeman, Abby Jo Gearhart, and Jeanne Rosen are United States citizens that are, or were, constitutionally eligible to vote in Virginia when they voted in Virginia.

77.     Plaintiffs Eliud Bonilla, Luciania Freeman, Abby Jo Gearhart, and Jeanne Rosen are private citizens and are not public figures or limited public figures.

78.     Defendants' libelous statements were false when made, were made without regard to their truth or falsity, and were made for the purpose of and with the intent of damaging the reputation of Plaintiffs or with reckless disregard of their effect on the reputation of Plaintiffs.  Specifically, Defendants recklessly and maliciously failed to exercise due care and diligence before publishing the defamatory statements.  A failure to respond to a government notice from the registrar of voters and/or removal from the voting rolls establishes neither that someone is a non-citizen nor that they committed voter fraud.

79.     Defendants published the defamatory statements with actual malice because they acted with reckless disregard for the truth of whether plaintiffs had illegally registered to vote and/or illegally voted.

80.     Defendants' false statements have impeached, injured, and damaged Plaintiffs.

81.     As an actual and proximate cause of Defendants' conduct in making such false statements, Plaintiffs have sustained harm, including damages in an amount to be determined at trial.

82.     Unless enjoined by the Court, Defendants, and those acting in concert with them, will continue to publish the defamatory statements.

## PRAYER FOR RELIEF

Plaintiffs pray for relief as follows:

1.  That the Court determine that it has jurisdiction over this action.

2.  That the Court declare that Defendants have violated 42 U.S.C. §1985(3).

3.  That the Court declare that the Defendants have violated Section 11(b) of the Voting

    Rights Act.

4.  That the Court declare that the Defendants have defamed the Plaintiffs in violation of

    Virginia law.

5.  That the Court award compensatory and consequential damages in an amount to be

    determined at trial to compensate the Plaintiffs for the injuries that they have suffered as

    a result of Defendants' unlawful conduct.

6.  That the Court award punitive damages as provided by law and as proved at trial to

    punish Defendants for the publication of defamatory statements with actual malice.

7.  That the Court award attorneys' fees and litigation costs to Plaintiffs' attorneys.

8.  That the Court enjoin Defendants and anyone acting in privity with the Defendants from

    further violations of the law.

9.  That the Court grant all other and further relief as it may deem necessary and appropriate.


## <u>JURY DEMAND</u>

Plaintiffs demand a jury trial of all issues so triable.  *See* Fed. R. Civ. P. 38.

Dated this 12th Day of April 2018.

  /s/ Anisa A. Somani              
ANISA A. SOMANI (VSB No. 86103)
NICOLE M. CLEMINSHAW (VSB No. 92161)
GEOFFREY M. WYATT (*Pro hac vice* forthcoming)
SEAN M. TEPE (*Pro hac vice* forthcoming)
LAUREN A. EISENBERG (*Pro hac vice* forthcoming)
SAMUEL LEVOR (*Pro hac vice* forthcoming)
ANDREW HANSON (*Pro hac vice* forthcoming)
1440 New York Ave. NW
Washington, DC 20005
Telephone: (202) 371-7000
Facsimile: (202) 661-8209
Anisa.Somani@probonolaw.com
Nicole.Cleminshaw@probonolaw.com
Geoffrey.Wyatt@probonolaw.com
Sean.Tepe@probonolaw.com
Lauren.Eisenberg@probonolaw.com
Sam.Levor@probonolaw.com
Andrew.Hanson@probonolaw.com
Zachary.Martin@probonolaw.com


ALLISON RIGGS (*Pro hac vice* forthcoming)
JACLYN MAFFETORE (*Pro hac vice* forthcoming)
**SOUTHERN COALITION FOR SOCIAL JUSTICE**
1415 West Highway 54, Suite 101
Durham, NC 27707
Telephone: (919) 323-3380
Facsimile: (919) 323-3942
AllisonRiggs@southerncoalition.org
JaclynMaffetore@southerncoalition.org

CAMERON KISTLER (*Pro hac vice* forthcoming)
**PROTECT DEMOCRACY PROJECT**
2020 Pennsylvania Ave., NW # 163
Washington, DC 20006
Telephone: (202) 599-0466
Facsimile: (929) 777-9428
cameron.kistler@protectdemocracy.org

LARRY SCHWARTZTOL (*Pro hac vice* forthcoming)
**PROTECT DEMOCRACY PROJECT**
10 Ware St.
Cambridge, MA 02138
Telephone:    (202)-599-0466
Facsimile:    (929)-777-9428
larry.schwartztol@protectdemocracy.org


ANDREW G. CELLI, JR. (*Pro hac vice* forthcoming)
ALANNA KAUFMAN (*Pro hac vice* forthcoming)
**EMERY CELLI BRINCKERHOFF & ABADY LLP**
600 Fifth Avenue at Rockefeller Center
10th Floor
New York, New York 10020
Telephone:    (212) 763-5000
Facsimile:    (212) 763-5001
acelli@ecbalaw.com
akaufman@ecbalaw.com


*Attorneys for Plaintiffs League of United Latin American Citizens –*
*Richmond Region Council 4614, Eliud Bonilla, Luciania Freeman, Abby*
*Jo Gearhart, and Jeanne Rosen*