**Exhibit B**

# Alien Invasion II

### The Sequel to the Discovery and Cover-up of Non-citizen Registration and Voting in Virginia



# Alien Invasion II

## The Sequel to the Discovery and Cover-up of Non-citizen Registration and Voting in Virginia

# Public Interest
## — Legal Foundation —



May 2017

# Table of Contents

Introduction                                                01

The Stakes                                                  02

Summary of Findings                                         02

Felonies upon Felonies                                      03

Terry McAuliffe Is Working Against
Election Integrity                                          04

Sharing the Blame: Defects in the
National Voter Registration Act                             05

The Cover-up of Alien Registration
and Voting                                                  06

   Alexandria                                06

   The Cover-up Goes Statewide               06

   The Excuses for Hiding Information on
   Non-citizens                              08

The Extent of Non-citizen Registration
in Virginia                                                 09

   Alien Registration                        09

   Alien Voting                              10

Can Non-citizens Affect Election
Outcomes? Yes.                                              12

   Senate District 6                         12

   House District 87                         12

   Other Close Races                         12

Who Is to Blame for Non-citizen
Registration and Voting?                                    13

Virginia's Future: Why Action Is
Needed Right Now                                            15

   Virginia's Next Governor                  15

   House of Delegates                        15

   United States Senate                      15

   Local Elections                           15

Recommendations and Solutions                               16

Conclusion                                                  16

# Introduction

In October 2016, looking at data from only eight Virginia counties, we uncovered proof that large numbers of ineligible aliens are registering to vote and casting ballots. Our investigation[1] revealed that in these eight Virginia localities more than 1,000 non-citizens had recently been removed from the voter rolls. In this small sample, nearly 200 verified ballots were cast prior to official removal. Each one of them is likely a felony.



This report details the statewide problem of registered voters with citizenship problems in Virginia.

**Despite obstruction from local and state officials, the Public Interest Legal Foundation (PILF) expanded the non-citizen investigation to the entire Commonwealth. As a result, the number of registrants removed from voter rolls for citizenship problems during the last few election cycles grew to over 5,500. Of these illegal registrants, 1,852 cast nearly 7,500 ballots in elections dating back to 1988.**

This report details for policy makers, election officials and the general public the scope of the problem, the particular details for each county and the obstruction by government officials in obtaining this data.

Policy makers have a dual challenge—fixing the underlying problem of non-citizens easily registering to vote as well as the stubborn tendency of some election officials to hide and excuse this circumstance.



Since our last investigation, the number of registrants removed from voter rolls for citizenship problems grew to over 5,500. Of these illegal registrants, 1,852 cast nearly 7,500 ballots in elections dating back to 1988.

Remember, the 5,500-plus registrants removed for citizenship problems are only those who were caught. They were caught by happenstance, usually by telling the motor vehicle agency they were not a citizen after previously telling the agency they were a citizen. It is not unreasonable to conclude that the full, and unknown, extent of non-citizens registered to vote far exceeds the 5,500-plus who were removed.

This is an especially sound conclusion when you consider that virtually nothing is being done to detect non-citizens on the voter rolls in Virginia. Worse, the Department of Elections and some local election officials did everything they could to hide the information, as we shall see below. Only after the Public Interest Legal Foundation filed multiple lawsuits in federal court, did state officials relent and provide the voter list maintenance records.

All of the raw data and records obtained in our research into alien registration and voting can be obtained at:

https://publicinterestlegal.org/alien-invasion-virginia/



# The Stakes

Citizenship is the most fundamental element of eligibility to vote in American elections. Every state requires voters to be U.S. citizens to vote in state elections.[2] The Virginia Constitution, specifically, delineates that "[e]ach voter shall be a citizen of the United States."[3]

The design is simple: **only Americans should choose American leaders.** Federal law makes it a crime for an alien to register to vote or to vote in a federal election. Simply put, it is a felony for a non-citizen to register and to cast a ballot.[4] Each time such a crime is perpetrated, by accident or willfully, a citizen is effectively disenfranchised.

The safeguards to prevent alien voter registration are failing. The Federal Voter Registration Form purports to prevent aliens from registering to vote. But it is an ineffective honor system under which the alien need merely lie to get on the voter rolls. Virginia's election officials could implement procedures to safeguard the system, but haven't for partisan reasons.

Even worse, federal and state law enforcement officials—who are entrusted with prosecuting non-citizens who register and vote as a means to deter others from doing the same—**have repeatedly done nothing when provided with solid evidence of non-citizen participation in the electoral system.**



Every state requires voters to be U.S. citizens to vote in state elections.

In practice, none of the so-called safeguards are functioning correctly. **Based on voting history records, large numbers of ineligible aliens are registering to vote and casting ballots, sometimes for decades, before they are removed from the registration rolls.** They are cancelling out the valid votes of American citizens. Faced with this stark reality, Governor Terry McAuliffe has not only failed to act, he has repeatedly blocked legislation designed to help fix these problems.

# Summary of Findings

Obstructionist tactics by local and state election officials limited the scope of the October 2016 Alien Invasion report to six counties and two cities. We had asked the Virginia Department of Elections for the full list of registrants removed for citizenship problems but we did not receive it until we brought federal lawsuits against two Virginia election officials.

**Now we have a better picture of the extent of alien registration. The numbers are alarming: 5,556 non-citizens have been removed from the voter rolls for citizenship problems in 120 of Virginia's 133 voting jurisdictions since 2011.[5] In 102 of these jurisdictions, 1,852 individuals cast 7,474 ballots before election officials cancelled their registrations. In the other 13 voting jurisdictions, election officials have not removed a single record from the voter rolls because of citizenship problems in over 6 years.**



5,556   Non-citizen Registrations

7,474   Votes Cast by Non-Citizens

In Virginia, like most states, there is no formal program for identifying non-citizen registrants. The Commonwealth formerly arranged to use the Federal Systematic Alien Verification for Entitlements (SAVE) database to detect aliens, but **vigorous use seems to have ended during the administration of Governor Terry McAuliffe.**

State election officials concede that most discoveries of non-citizens on the registration rolls are accidental or by chance. According to communications received from Edgardo Cortes, the Commissioner of the Virginia Department of Elections, the 5,556 non-citizens removed from the voter rolls in recent years were discovered only because they **"self-reported"** their status as a non-citizen to Commonwealth officials.[6]

In essence, the number of registered non-citizens in Virginia thus far identified by this investigation is just the "tip of the iceberg." According to 2016 United State Census estimates, there are approximately 474,000 voting age noncitizens in the Commonwealth.[7] Each of these individuals can make their way onto the voting rolls by simply checking the wrong box during a visit to the DMV. **The true extent of the problem likely runs in the tens of thousands, if not more.**

Ultimately, the number of illegal votes does not matter when the integrity of the process is at stake. No one should tolerate voter fraud, whether it comes in pockets as we describe here; happens occasionally; or decides the outcome of an election.

Lawlessness in elections is a precursor for the same across our government and culture. The response of law enforcement officials to both single instances of voter fraud and the hundreds of examples documented in this report should be the same: swift, sure and unwavering.



No one should tolerate voter fraud, whether it comes in pockets as we describe here; happens occasionally; or decides the outcome of an election.

There is plenty of blame to go around. One culprit, however, is glaringly obvious—federal and state voter registration forms, which ask registrants to affirm their citizenship with nothing more than the check of a box. **No documentary proof of citizenship must be shown.** This is nothing more than an honor system, one that is unquestionably failing to keep non-citizens from voting. Once the voter is registered, no additional checks are made about the citizenship status of the registrant. Easily obtained public information—such as jury recusal information showing persons who escape jury duty because they are not a citizen—is ignored.

This report demonstrates the serious problem that Governor McAuliffe and the Commonwealth's unelected officials have refused to address and even tried to hide. It is our hope that this report will result in swift changes that restore confidence in our elections.

# Felonies upon Felonies

When non-citizens register or actually vote, they violate both state and federal statutes because citizenship is a requirement to vote in both state and federal elections.

The offenses a fraudulent voter might commit when he registers and votes are numerous:

### Virginia Code § 24.2-1004

Criminalizes casting an illegal ballot.

### Title 18, United States Code  § 611

Criminalizes voting by illegal aliens in federal elections.

### Title 18, United States Code  § 911

Criminalizes representing oneself to be a United States citizen.

### Title 18, United States Code  § 1015

Criminalizes false statements in order to register or vote in any Federal, State, or local election.

### Title 52, United States Code  § 20511

Criminalizes the fraudulent submission of voter registration applications and the fraudulent casting of ballots.

The United States Attorney General and the law enforcement officers in the Commonwealth of Virginia are, respectively, authorized to prosecute violations of all of these statutes. Given that the integrity of an election is where the consent of the governed is obtained, you would think that federal and state election officials would treat these crimes with appropriate seriousness. As will be discussed later in this report, that is not the case.

# Terry McAuliffe Is Working Against Election Integrity

If anything, Virginia Governor Terry McAuliffe is consistent. With respect to voter integrity, McAuliffe has repeatedly vetoed legislation designed to protect the right to vote in the Commonwealth. **Since 2015, McAuliffe, the former head of the Democratic National Committee, has vetoed a staggering eight bills passed by the Virginia legislature that would have strengthened election integrity.**

At least two of these bills were designed to remedy the issue of non-citizen registration and voting identified in this report.

In April 2015, McAuliffe vetoed House Bill 1315,[8] which would have required jury commissioners to retain information from individuals not qualified to serve as jurors for reasons that would also disqualify them from voting, including status as a non-citizen or a felon. The bill required that this information be transmitted to election officials upon request.

The purpose of this bill was simple: provide reliable information to local election officials to allow them to detect non-citizens on the rolls. McAuliffe vetoed the bill, citing nothing more than his belief that "additional study" was needed.[9]

Governor McAuliffe also vetoed Senate Bill 1105.[10] It would have required local election officials to perform audits or investigations **whenever voter rolls contain more registered voters than the number of individuals eligible to vote** or when the number of votes exceeds the number of registered voters.[11]

In other words, the bill would have required an investigation when the voter rolls contain an _impossible_ number of registrants or when an _impossible_ number of votes were cast.



Since 2015, Governor McAuliffe has vetoed a staggering eight bills passed by the Virginia legislature that would have strengthened election integrity.

Corrupted voter rolls are not an imaginary problem. In 2015, PILF identified 141 counties across the nation that had more registered voters than living residents eligible to vote.[12] In 2016, we identified 37 more counties whose voter rolls contain either more registered voters than citizens eligible to vote, or a number of registrants that is nearing 100 percent of its citizen voting-age population.[13] Five of those counties are in Virginia.



Photo credit: Wikipedia Commons

2017 has been a banner year so far for Governor McAuliffe. In just 4 months, he has sent six election integrity bills to the scrap heap. Each of these bills was meant to remedy a specific vulnerability in Virginia's voting apparatus.


VIRGINIA  2017
House Bill 2343
DENIED

Provides resources to local election officials to identify voters registered in other states.[14 15]


VIRGINIA  2017
HB 1428/SB 872
DENIED

Requires voter ID for voters using absentee ballots.[16 17 18 19]


VIRGINIA  2017
Senate Bill 1255
DENIED

Requires electronic pollbooks to include photo of voter.[20 21]


VIRGINIA  2017
Senate Bill 1455
DENIED

Criminalizes paying people to register to vote.[22 23]


VIRGINIA  2017
Senate Bill 1581
DENIED

Requires election officials to verify voter registration data using federal and state databases.[24 25]

# Sharing the Blame: Defects in the National Voter Registration Act

The problems with the voter rolls in Virginia and other states can be traced back to 1993. Within months of assuming the Presidency, Bill Clinton signed into law the National Voter Registration Act ("NVRA"),[26] a sweeping piece of legislation that proponents claimed would increase the number of registered voters and participation in our elections. One thing is for sure—defects in the legislation also increased the number of ineligible voters on state voter rolls.

The NVRA, commonly known as "Motor Voter," requires each state to offer voter registration to any individual that applies for a driver's license.[27] This provision of the law requires the applicant to swear to his or her citizenship under penalty of perjury,[28] but does not permit (nor deny) the state's ability to verify citizenship through formal documentation. Instead, the law provides that the states "may require only the minimum amount of information necessary to . . . enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process."[29]


Photo credit: Wikipedia Commons

PILF filed lawsuits in four separate states in 2016 alone to force election officials to allow inspection of their election records. **When PILF set out to investigate non-citizen voting in Virginia, local and state election officials opposed transparency.** Many Virginia county election officials denied or even ignored our requests under the NVRA forcing us to file <u>three</u> separate lawsuits in federal courts to obtain the requested records.

 Virginia requires applicants to merely check a box in order to "prove" their citizenship status.

Attempts by various states to require registrants to provide documentary proof of citizenship during registration for federal elections have been thwarted by lawsuits brought by left-leaning groups. Virginia therefore requires applicants to <u>merely check a box</u> in order to "prove" their citizenship status. This has proven to be inadequate.

Election officials must also "maintain for at least 2 years" and "make available for public inspection" "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."[30]

**Virginia Voter Registration Application**

*Starred (*) items are required.* If you do not complete all of the items that are marked w

1. ☐ YES ☐ NO
   * I am a citizen of the United States of America.
   * Full social security number ☐ No SSN was ever issued.

Are you a citizen of the United States of America? ☐ Yes ☐ No
Will you be 18 years old on or before election day? ☐ Yes ☐ No
If you checked "No" in response to either of these questions, do not complete form.
(Please see state-specific instructions for rules regarding eligibility to register prior to age 18.)

# The Cover-up of Alien Registration and Voting

## Alexandria

The effort to obscure the number of non-citizens who are registering and voting in Virginia began in the City of Alexandria.

In January 2016, the election integrity group Virginia Voter's Alliance (VVA) contacted Alexandria General Registrar Anna Leider, **and requested access to public records concerning Ms. Leider's list maintenance programs pursuant to the NVRA's public inspection provision.**

In April 2016, PILF, on behalf of VVA and David Norcross, a private Alexandria citizen, sued Ms. Leider under the NVRA's private right of action, alleging that her office violated the NVRA by refusing to allow inspection of election records.[31]

After a court hearing where Alexandria said it would make the requested records available, VVA then proceeded to visit Ms. Leider's office to inspect the city's records.

**Among the records uncovered at Ms. Leider's office was a list of registrants who had been removed from the voter rolls because they were determined to not be U.S. citizens.  The list included hundreds of non-citizen registrants,** all of whom had likely committed felonies by registering to vote.

When VVA asked to photocopy the list, Ms. Leider refused. **Her refusal was directed by state election officials.**

A week later, and over eight months after the initial request was made, Ms. Leider finally capitulated. Her attorney provided VVA with a list, identifying **70 registrants who had been removed from Alexandria's registration lists after they were determined to not be U.S. citizens. These were just the aliens who were caught.**

Did any of the non-citizens removed from Alexandria's registration lists cast votes? Ms. Leider wouldn't tell PILF. PILF was told that information is "confidential and available only for official use by the Department of Elections and general registrars." As discussed later in this report, some of these individuals have, in fact, participated in Virginia's elections.

## The Cover-up Goes Statewide

Alexandria is not the only jurisdiction that concealed the commission of felonies committed by non-citizen voters in Virginia. Upon the discovery of Alexandria's list of registrants removed for citizenship problems, **PILF utilized the NVRA's public inspection provision to request similar information from 19 Virginia counties and cities on August 8, 2016.** The request went to:

- Arlington
- Albemarle
- Bedford
- Chesterfield
- Fairfax City
- Fauquier
- Frederick
- Falls Church
- Loudon
- Hampton
- Hanover
- James City
- Lancaster
- Manassas
- Prince William
- Roanoke
- Stafford
- Rappahannock
- York

The election officials in charge of these jurisdictions were sometimes responsive, at first. **Prince William County provided a list of 433 non-citizens who had registered to vote in the county, but were then removed after they were determined to not be U.S. citizens.**[32]

The only indication that any of these potential felons were brought to attention of law enforcement is one communication provided by the county, which indicated that the United States Citizenship and Immigration Services contacted the county's general registrar requesting the voter registration application of one individual— REDACTED REDACTED .[33] The discovery of REDACTED was accomplished by chance and not a result of the county's own list maintenance efforts.

An additional communication shows that registration material for REDACTED , and one other individual, were then forwarded to the attorney for Prince William County. The communication notes that both individuals voted in the November 2012 General Election.

**The Department of Justice so far has done nothing about the felonies committed by 433 suspected aliens registered in Prince William County alone.**

**Bedford County** provided a list of 35 non-citizens that had been removed from the voter rolls. Bedford County also provided copies of notices sent to 54 individuals who indicated on their DMV applications that they were not citizens. The county sent each individual a Notice of Intent to Cancel,[34] which informed the applicant that although they indicated they were not a citizen on their DMV application, their registration would remain active if they simply signed the notice, affirming they were a citizen.

Of the 54 suspected non-citizens, only 35 were removed. The remaining 19 individuals who had previously sworn under penalty of perjury to the DMV that they were not U.S. citizens returned the notice, stating they were a U.S. citizen and therefore stayed on the registration rolls. The affirmation notice is nothing more than an honor system that easily allows non-citizens to remain registered to vote, just like the initial citizenship checkbox on the voter form.

One week after providing the list of registrants removed for citizenship problems, Barbara Gunter, the general registrar for Bedford County, contacted PILF by phone. The Virginia Department of Elections contacted Ms. Gunter and told her that she should not have provided us with the list of removed voters because doing so violates the Federal Drivers Privacy Protection Act. She asked that PILF delete the list of previously provided public information. As we shall see, a federal court found no merit in the attempt to hide election records based on a federal highway law.

**Roanoke County** acted similarly. **After providing a list of 22 alien registrants, General Registrar Judith Stokes emailed PILF, asking that we "destroy" the list of removed registrants she had previously provided.[35]** Like Bedford County, Ms. Stokes explained that her request to destroy public election information originated with the Virginia Department of Elections.

After the Virginia Department of Elections pushed the meritless claim that federal highway law prevented us from seeing the list of those removed from the voter rolls for citizenship problems, the production of records by local officials effectively stopped. Over the course of August and September 2016, responses from election officials rolled in, **each one explaining that state election officials had instructed them not to provide lists of non-citizens who had been removed from Virginia's voter rolls.**



Edgardo Cortes, Commissioner, Department of Elections
Photo credit: Commonwealth of Virginia

This state-engineered stonewalling occurred on the eve of a federal election where the role of foreigners in the United States was a central issue in the Presidential race. Covering up the role of foreigners registering to vote did a disservice to a full and transparent debate of the issues.

Edgardo Cortes, the Commissioner of the Virginia Department of Elections, and an appointee of Governor McAuliffe, instructed local election officials to stonewall our requests for public information about alien voting with a legally meritless excuse. Numerous county election officials confirmed to PILF that Commissioner Cortes had issued guidance to them, instructing them not to respond to our requests for records pertaining to non-citizen voters.  Some election officials kindly provided us the original communications from Cortes directing the stonewalling.

This is what a cover-up of alien voting looks like.

**State election officials prevented public access not only to records showing the number of non-citizens who have successfully registered to vote, but also records showing how many of them voted prior to being removed from the registration rolls.**



Commissioner Cortes' instructions to stonewall our requests for public election information was distributed statewide to local election officials on August 19, 2016.[36] Yet not until September 16 did Commissioner Cortes contact PILF. In his correspondence, Commissioner Cortes offered to provide a "customized report" at a cost of $240,[37] a report that he claimed would satisfy our request concerning non-citizens.  It didn't come close to responding to our requests detailing the names of aliens removed from the voter rolls for citizenship problems.

**Commission Cortes refused to provide a list of registered voters who have been removed from the registration rolls for citizenship problems in each jurisdiction.** He likewise refused to provide the voting history of registrants removed from the rolls for citizenship problems, reiterating his position that such information is not subject to release under the NVRA's public inspection provision, but is available only to "qualified entities" under limited circumstances.[38]

Cortes did not provide a list of registrants removed for citizenship problems across the Commonwealth until March 28, 2017, nearly eight months after PILF first made a broad request to counties on August 8, 2016. Cortes did this only after the United States District Court wholly rejected the flimsy excuse for failing to provide the data—that federal highway laws made it private.

## The Excuses for Hiding Information on Non-citizens

Commissioner Cortes told local election officials that a list of registrants removed from Virginia's registration lists for citizenship problems cannot be provided to the public because such information is protected from release by the federal Driver's Privacy Protection Act (DPPA). A federal court rejected this nonsensical excuse.

The DPPA makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted" by one of fourteen exceptions to the prohibition on disclosure.[39] The law has nothing to do with elections or election records. With no other recourse, PILF sued two defiant local election officials, Larry Haake, then-general registrar for Chesterfield County, and Susan Reed, general registrar for the City of Manassas.

Haake was unabashed about his non-compliance with PILF's request for registration records. During a public hearing before a joint session of the Privileges and Elections Committees of the Virginia General Assembly on October 13, 2016, at which PILF representatives were invited to speak, Haake testified that he deliberately did not provide PILF with the requested records. His defiance landed him in federal court.

Haake and Reed moved to dismiss PILF's lawsuits, arguing, at the behest of Commissioner Cortes, that the DPPA shielded their records from public disclosure. In a two-page decision, the federal court swiftly rejected this excuse, finding that "the DPPA does not apply to disclosure of the voter information requested by the Plaintiff."[40]

Haake did not take his defeat in stride. In an email written on the "official communication list for the General Registrars of the Commonwealth," Haake referred to Public Interest Legal Foundation attorneys as "lowlifes."[41] One month later, Haake announced he was retiring.[42]

With a court order in hand, PILF renewed its request to the State Department of Elections for non-citizen registration records for all 133 of Virginia's voting jurisdictions. A week later, Commissioner Cortes provided the data.

> In an email written on the "official communication list for the General Registrars of the Commonwealth," Haake referred to Public Interest Legal Foundation attorneys as "lowlifes."

Commissioner Cortes' guidance also directed local election officials to conceal records showing the voting history of any individual whose registration was cancelled for citizenship reasons. According to Commissioner Cortes, documents concerning voting activity are not covered under the NVRA's public inspection provision and can only be disclosed publicly as permitted by Commonwealth law, which permits disclosure, at a reasonable cost, only to a list of qualified entities.[43]

In the end, the state officials could not conceal the extent of alien voting because PILF and VVA worked with a third party with access to voter history to determine which of the aliens who registered to vote, actually voted.  Not surprisingly, many ballots were cast by these aliens.

# The Extent of Non-citizen Registration in Virginia

After eight months of phones calls, election office visits, and federal litigation, PILF has obtained records showing the currently-accounted-for extent of non-citizen registration and voting in Virginia. It was, not easy, despite the fact that federal law requires significant levels of transparency from election officials.

The information we have been able to gather demonstrates what many of us already knew: **non-citizens are registering and voting in our elections.** The obstructionist effort led by state election officials prevented PILF from obtaining this information prior to the 2016 election.

## Alien Registration

In total, 5,556 registrants were removed from the voter rolls for citizenship problems since 2011 in 120 voting jurisdictions. These were only the registrants with citizenship problems who were caught providing conflicting answers to state officials regarding their citizenship status. They swore they were citizens on voter registration forms, then later told the state they were not citizens, sometimes after many years of voting in elections.

Yet, in 13 jurisdictions, not a single non-citizen has been removed in over 6 years. Below are the totals for the top 20 offending jurisdictions. The data for the remaining jurisdictions is available at Exhibit 1 at the link provided on page 1 of this report.

This data is but a snapshot of the problem. **Because no formal programs exist in Virginia to identify non-citizen registrants, the discovery and removal of these non-citizens is either by accident or because the registrant later indicated to election officials that he or she was not a U.S. citizen.** The total number of non-citizens that remain registered to vote therefore cannot be completely ascertained. However, it is estimated that approximately 474,000 non-citizens of voting age reside in Virginia. It is highly likely, that based on discoveries to date, thousands of non-citizens remain registered and able to vote throughout the Commonwealth.

The institutions that should be asking the questions about the full extent of the problem— election officials, law enforcement, and the media —aren't even asking. More often, they are denying the problem exists.

Recall that in 2015, Governor McAuliffe vetoed legislation[44] that would have allowed local election officials to obtain information concerning individuals who recused themselves from jury duty due to their status as non-citizens. Such individuals are ineligible to vote and their registrations should be cancelled. Governor McAuliffe's veto prevented that from happening.

## Top 20 Jurisdictions for Non-citizen Registrants



In one astonishing example of bureaucratic indifference—deliberate or otherwise—election officials registered an individual to vote who told election officials she resided at a foreign address.

According to records provided by state officials, REDACTED , whose Prince William County registration was cancelled in 2012 for citizenship problems, provided a Guatemalan address on her voter registration application.[45]  REDACTED   voted in 14 different elections—most recently in 2008—before her registration was canceled.

REDACTED          .

REDACTED


Linda Lindberg, General Registrar, Arlington
Photo credit: County of Arlington

Finally, communications by election officials demonstrated zeal to conceal defects in Virginia's list maintenance systems to an astonishing degree. Despite PILF never once mentioning the role of "illegal aliens" in list maintenance problems, Arlington County general registrar Linda Lindberg heard otherwise. In a January 31, 2017 email we obtained, Lindberg fretted about the ramifications of PILF's courtroom success in obtaining the data contained in this report:

"This group [PILF] has and will interpret the fact that there may be voting credit on the cancelled record as "illegal aliens" registering and voting, despite the voter having subsequently affirmed his citizenship. (Although how they know these non-citizens are illegals is another story.)"[46]

Another story indeed—for PILF has never drawn any distinction between aliens and illegal aliens. Neither is entitled to vote. Lindberg's email is important for a second reason. Lindberg writes off this whole mess as a scrivener's error, where registrants are removed from the rolls for not being citizens, but later put back on the rolls once they affirm their citizenship by merely signing a form. Neither circumstance is very attractive.

Lindberg's alternative explanation is itself a serious problem with list maintenance in the Commonwealth. Legitimate voters should not be removed from the rolls for not being citizens. If this is how Lindberg explains the 5,500-plus instances of removal for citizenship defects, then that circumstance is also appalling. Lindberg went further in her email, threatening to alter election records prior to providing them to PILF. Regarding some registrants removed from the rolls for citizenship problems, Lindberg suggested she might make those records vanish in the email:

"I am going to delete or otherwise notate these names from my report, either by deleting the rows from the Excel version or marking them on the report."[47]

In other words, for removed registrants that Lindberg thought might actually be citizens, she might "delete" them from the removal report. Even accepting Lindberg's premise that the removed registrants were really citizens, this would mean the public information provided by Lindberg would gloss over their potentially invalid removal from the rolls.

Lindberg's premise also has another problem. It simply might not be accurate. According to the Commissioner of the State Department of Elections, Edgardo Cortes, if a registration is cancelled for citizenship reasons, but the registrant subsequently affirms his citizenship, they will not appear on the cancellation reports. In an email to PILF attorneys, Cortes explains,

"If an individual was previously cancelled and then subsequently affirmed citizenship and was re-registered, they would no longer appear on this report because they would now be on active status."[48]

If that is true, Lindberg's alteration of election records would be even more troubling.

PILF's priority is that every eligible citizen remain on the rolls and every ineligible alien be removed from the rolls. Potentially deleting and altering public election records would conceal from view examples to the contrary. Election officials should be transparent, and in Virginia, transparency has been in short supply.

# AlienVoting

In 102 jurisdictions, we discovered that 1,852 non-citizens had cast a total of 7,474 votes between 1988 and 2016. The most alien votes, 1,065, were cast in 2008, the year President Obama was elected to his first term.[49]

Before Commissioner Cortes was picked by Governor McAuliffe, he worked at the Advancement Project, an organization strongly opposed to using citizenship verification tools such as the federal SAVE database.

PILF's request to local election officials asked for all communications with federal and state law enforcement officials pertaining to non-citizens who had either registered to vote or voted. However, to date, we have received no records showing that election officials had referred any non-citizen voters for investigation or prosecution. In fact, some jurisdictions indicated that they do not even review voter history to identify fraudulent votes. Like our other requests, this absence of records is due in part to the obstructionist efforts of Commissioner Cortes, whose guidance to local election officials informed them that communications with law enforcement officials were not records covered by NVRA and therefore did not need to be provided to PILF.

These circumstances raise serious questions as to whether the efforts to obscure the extent of alien participation in our elections are deliberate. Do various interests want the rolls to be polluted?

Virginia's use of absentee voting by mail only aggravates preexisting problems with the rolls. The people receiving mail ballots undergo essentially no scrutiny before their ballots are counted. As more and more states push for vote-by-mail options, lawmakers must also expand their efforts to keep the rolls free from ineligible registrants.



## Top 20 Counties for Non-citizen Votes



# Can Non-citizens Affect Election Outcomes? Yes.

Non-citizen registration and voting matters. Each time an alien registers a crime is committed. **When an alien votes, not only is another crime committed, the vote of a U.S. citizen is effectively cancelled.** That alone should motivate elected officials to seek solutions to these problems.

The commission of felonies and disenfranchisement are not the only concerns. The number of non-citizens found on the voters rolls—a number that reflects only those non-citizens caught by chance—demonstrates that non-citizens can affect actual election outcomes, stripping Americans of their fundamental right to choose their own leaders.

Republican Mark Obenshain's razor-thin loss to Democrat Mark Herring in Virginia's 2013 Attorney General race is well known. At the time the election was certified, Herring defeated Obenshain by a mere 165 votes.[50] After a recount was conducted, Herring's margin of victory increased to 907 out of over 2.2 million votes cast.[51] With thousands of non-citizens registering to vote in Virginia, it is not unreasonable to consider that Herring's victory could very well have been aided by the votes of non-citizens.

Statewide races are not the only elections that matter. The lives of Virginians are greatly affected by the outcomes of a host of regional and local elections, ranging from House and Senate contests to elections for mayor, Commonwealth attorneys, and school board members.

A review of election results shows that a number of recent elections could have been swayed by non-citizen voters based on a comparison of the margin of victory to the number of non-citizens discovered on the rolls by chance.

## Senate District 6 (2014)

2014's Special Election for the Senate seat in District 6 was decided by just 9 votes out of over 20,000 votes cast.[52] Senate District 6 includes two jurisdictions with some of the largest instances of removals for citizenship problems in the Commonwealth. (Table, Top 20 Counties for Non-citizen Registrants, above). When the votes were tallied, Democrat Lynwood Wayne Lewis, Jr. defeated Republican Burwell Wayne Coleman.

## House District 87 (2011)

2011's House of Delegates election in District 87 was decided by 51 votes.[53] District 87 includes portions of Fairfax County, Loudoun County and Prince William County, jurisdictions that rank in the top 5 for number of non-citizens removed from the voter rolls since 2011.

## Other Close Races

Tight races are commonplace in the Commonwealth. The following are examples of recent elections where the margin of victory was small enough for non-citizen voters to potentially affect the outcome:

### 2011

School Board (Augusta - Beverly Manor) – 1 vote[54]
School Board (Rockingham - District 2) – 3 votes[55]
School Board (Spotsylvania - Livingston) – 21 votes[56]
School Board (Loudoun - Leesburg) – 85 votes[57]
Commonwealth Attorney (Richmond) – 53 votes[58]
Senate District 17 – 286 votes[59]

### 2012

Mayor – Herndon (Fairfax County) – 38 votes[60]

### 2013

House District 86 – 54 votes[61]
House District 87 – 187 votes[62]
House District 2 – 223 votes[63]
House District 31 – 228 votes[64]
House District 34 – 422 votes[65]

### 2015

Clerk of Court (Roanoke) – 37 votes[66]
House District 2 – 125 votes House[67]
District 87 – 320 votes[68]

# Who Is to Blame for Non-citizen Registration and Voting?

The evidence plainly demonstrates that Virginia's voter registration system is broken. But who is to blame? Well, there is plenty of blame to go around. The federal government, state election officials, and local general registrars all contribute to the problem and it is clear that real reform is needed at all levels to ensure voting in the Commonwealth is secure.

## ⇒ System Failure: The Tradition of Ignoring Alien Voter Fraud in Virginia

In addition to asking local registrars to turn over data on non-citizen registration, we asked some officials whether they had referred any non-citizen registrants to law enforcement for investigation or prosecution. **We did not receive any documents indicating that even a single referral had been made.**

The absence of data on criminal referrals in other voting jurisdictions is due to the obstructionist efforts of Commissioner Cortes, whose guidance to local election officials informed them that communications with law enforcement officials were not records covered by NVRA and therefore did not need to be provided to PILF.

The lack of action by the Obama Department of Justice and law enforcement officials in Virginia is nothing new. In 2011, members of the Fairfax County Electoral Board alerted the Office of the U.S. Attorney for the Eastern District of Virginia in Alexandria, as well as the Public Integrity Section of the Criminal Division of the Justice Department (which coordinates election crime prosecutions) in Washington, of possible voter fraud by non-citizens.



We did not receive any documents indicating that even a single referral to law enforcement had been made.

The Fairfax County board had discovered 278 registered voters who had represented to the DMV that they were not U.S. citizens. **Almost half of them—117—had not only registered to vote, they had in fact voted in state and federal elections.** The Department of Justice never followed up, leaving nearly 300 gift-wrapped cases of voter fraud untouched.

## ⇒ System Failure: Voter registration forms easily permit non-citizens to register and participate in our elections.

The lack of prosecution of election crimes provides a key deterrent to voter fraud, if it is used. But the existing registration process provides non-citizens with an easy path to the ballot box. As previously explained, the Federal Voter Registration Form and the registration forms used by the Commonwealth of Virginia rely on nothing more than an honor system to limit voter registration to citizens of this country.

In all cases, these forms include a checkbox at the top of the form, which asks registrants to answer "yes" or "no" to the question "Are you a citizen of the United States?" The registrant must additionally sign the form, under penalty of perjury, attesting to the fact that his or her answer to that question is true and correct. There are no other "safeguards" in place to protect the integrity of the registration process.

Our previous investigation demonstrated the undeniable failures of the current voter registration system. **In the three jurisdictions PILF was able to survey, it was revealed that election officials were registering non-citizens who left the check box blank or, even worse, answered "no" to the citizenship question.**

By way of repeated requests for documents, PILF obtained voter registration forms for 13 additional voting jurisdictions in Virginia. The results reveal that the check-box honor system is a failure across the board.

In the 16 jurisdictions surveyed, PILF reviewed 764 voter registration applications submitted by applicants who were later removed for lacking U.S. citizenship. **In this small sample, 43 non-citizens answered "no" to the citizenship question yet were registered to vote.** An additional 18 non-citizens left the citizenship question blank yet were registered to vote. One individual checked both boxes and was still registered to vote.

That means over 8 percent of the non-citizen registrations surveyed could have been caught at the time of registration if election officials simply paid closer attention.

For the remaining 702 non-citizen registrants, getting on the voter rolls was as easy as checking "yes" to the citizenship question.[69]

**"No"**

| 1 | *Are you a citizen of the United States of America? ☐YES ☒NO | *Will you be at least 18 years of age on or before the next General Election day? ☐YES ☒NO | If you checked "NO" in response to either of these questions, do not complete this form. |

| 2 | | ☒Male ☐Female | REDACTED |
| | Social Security Number REDACTED | *Gender REDACTED | *Date of Birth REDACTED | Daytime Telephone Number |
| | | | ☐None | ☐None |

| 3 | *Last Name | *First Name | REDACTED | *Full Middle or Maiden Name | *Suffix (Jr., Sr., III, Etc.) |
| | *Residence (Permanent) Home Address | Apt/Unit/Lot/Rm/Ste City/Town | | Zip Code |

**Blank**

| 1 | *Are you a citizen of the United States of America? ☐YES ☐NO | *Will you be at least 18 years of age on or before the next General Election day? ☐YES ☐NO | If you checked "NO" in response to either of these questions, do not complete this form. |

| 2 | | ☐Male ☐Female | REDACTED | REDACTED |
| | Social Security Number | Gender | *Date of Birth REDACTED | Daytime Telephone Number |
| | | | ☐None | ☐None |

| 3 | *Last Name | *First Name | REDACTED | *Full Middle or Maiden Name | *Suffix (Jr., Sr., III, Etc.) |
| | *Residence (Permanent) Home Address | Apt/Unit/Lot/Rm/Ste City/Town | | Zip Code REDACTED |
| | If Rural Address or Homeless, please describe where you reside | | E-mail address |

**Both**

| 1 | *Are you a citizen of the United States of America? ☒YES ☐NO | *Will you be at least 18 years of age on or before the next General Election day? ☒YES ☐NO | If you checked "NO" in response to either of these questions, do not complete this form. |

| 2 | | ☒Male ☐Female | REDACTED | REDACTED |
| | Social Security Number REDACTED | *Gender | *Date of Birth REDACTED | Daytime Telephone Number REDACTED |
| | | | ☐None | ☒None |

| 3 | *Last Name REDACTED | *First Name REDACTED | *Full Middle or Maiden Name | *Suffix (Jr., Sr., III, Etc.) |
| | *Residence (Permanent) Home Address | Apt/Unit/Lot/Rm/Ste City/Town | REDACTED | Zip Code |

## ⇒ System Failure: Inviting Aliens to Stay on the Voter Rolls

In one astonishing example, a non-citizen was invited to remain on the voter rolls even after he had informed election officials he was an alien. When REDACTED registered to vote in 2007, he checked "yes" in response to the application's citizenship question. In 2010, REDACTED renewed his driver's license and on his application, he checked "no" to the citizenship question.

The inconsistencies in REDACTED 's answers alerted election officials that he might not be eligible to vote. His registration, however, was not cancelled. Instead, REDACTED was mailed an "Affirmation of Citizenship," which asked REDACTED to affirm, subject to penalty of law, that he was a U.S. citizen. REDACTED signed the form and returned it. In May 2015, REDACTED 's voter registration was cancelled after election officials determined that he was, in fact, not a U.S. citizen.[70]

REDACTED 's situation is not unique. In fact, under Virginia law, any registered voter whose citizenship status is in question must receive a Notice of Intent to Cancel. The notice informs the registrant that his registration will be canceled unless he signs a form attesting that he is a U.S. citizen. In other words, even after election officials receive information indicating that a registrant is not a U.S. citizen, they must give the registrant another chance to mislead them. Even after red flags are raised, no proof of citizenship is required to finally clear the air. Like the registration form, the affirmation form is nothing more than an honor system that allows aliens to remain on the rolls.





# Virginia's Future: Why Action Is Needed Right Now

The accidental discovery of over 5,500 non-citizens suggests thousands more could remain registered and able to vote. With no real safeguards in place, it is a certainty that new alien voters are being added to the rolls month after month. With major elections looming in 2017, swift and sweeping changes must be made to ensure that only Americans are choosing American leaders.

## Virginia's Next Governor

Governor Terry McAuliffe has been one of the biggest obstacles to election integrity in Virginia. Fortunately, he is barred by law from seeking re-election. In November, Virginians will decide who will replace him. Election integrity is not a partisan issue. No matter what party an official is from, they take an oath to uphold the laws and defend the Constitution.

Virginia's next Governor should reverse the hostility toward clean elections of Governor McAuliffe. On the heels of our previous investigation, the Virginia House of Delegates passed legislation that would require new registrants to provide proof of U.S. citizenship in order to register to vote. A bill with similar requirements could land on the desk of Virginia's next governor.

Despite clear evidence that non-citizens are registering and voting in Virginia's elections, some are choosing to remain willfully ignorant. Delegate Mark. D. Sickles, a member of the House of Delegates who represents portions of Fairfax County told the media, "I think committing a felony to vote in an election is something that no non-citizen in their right mind would do."[71] **Over 1,100 non-citizens were discovered on the voter rolls in Fairfax County. These individuals cast over 1,000 ballots before they could be removed from the rolls.** Delegate Sickles won his most recent election in 2015 with 63 percent of the vote.[72]

It makes no difference whether alien votes were cast as a result of confusion or on purpose. Each is a felony and results in the disenfranchisement of a U.S. citizen.

For those who have truly cast votes because of the mistaken belief that they are eligible to vote, we must ask: why are we content with putting non-citizens in a position to accidentally commit felonies that could result in deportation? Better safeguards during the registration process — as opposed to a checkbox—would actually protect non-citizens. Like eligible U.S. citizens, non-citizens who register to vote are mailed confirmation cards that tell them where to vote.

The legislation requiring proof of citizenship would prevent non-citizens from joining the registry in the first instance, removing the possibility that non-citizens would be provided with a ballot sometime in the future.



## House of Delegates

Republicans currently control 66 of Virginia's 100 seats in the House of Delegates.[73] While all 100 seats are up for grabs in 2017, only 55 are contested.[74] Republicans currently hold a super-majority. As of April, Democrats are running 77 candidates in 49 House districts currently occupied by Republicans, including all 17 Republican-held districts that voted for Hillary Clinton in 2016.[75]

As detailed above, lawmakers have done their part to legislatively address vulnerabilities in Virginia's registration and voting system. Whether these efforts will continue in 2017 and beyond could depend on the outcome of Virginia's House of Delegates' contests.

## United States Senate

In November 2018, Virginians will elect one of their two representatives in the United States Senate. Incumbent Senator Tim Kaine, former candidate for Vice President, is running for re-election.[76]

The federal voter registration form is in need of change. Like Virginia, the federal form uses an honor system to verify U.S. citizenship. That system has failed. An act of Congress could and should require documentary proof of citizenship that would ensure only U.S. citizens are added to the voter rolls.

## Local Elections

In 2017 and beyond, Virginians will choose mayors, school board members, and city councilors. Virginians have a right to demand that their local election officials serve their public records with vigilance to ensure that representatives of the people are duly selected.

# Recommendations and Solutions

There are several changes that states and the federal government should make to prevent non-citizens from registering and voting illegally:

- The Virginia legislature could once again pass laws that protect elections from alien registration and voting. First, pass legislation that allows election officials to use all of the data available to county governments to detect aliens on the voter rolls, especially jury excusal forms, on which the registrants say under oath they are not citizens. Second, pass legislation requiring election officials to monitor and audit voter rolls that have reached implausible rates of registration that surpass the total eligible citizen population. Third, enact some form of citizenship verification.  Fourth, insist in the funding process that Commonwealth Attorneys take voter fraud seriously and prosecute election criminals. Fifth, insist that the next governor appoint a director of elections that also takes voter fraud, alien voting, and transparency obligations seriously.

- The registration process must be changed. The check-box honor system is a failure and is facilitating voter fraud. All states should require voter applicants to provide documentary proof of U.S. citizenship. In the alternative, states should fully utilize the federal SAVE database which contains the names of aliens who have had contact with the immigration system.

- Election officials should ask federal and state courts to notify local election officials when individuals summoned for jury duty from voter registration rolls are excused because they are not United States citizens.

- State legislatures or elections officials should create and enforce requirements to conduct systematic reviews of the voter histories for all registrants who were purged from the rolls due to not meeting the requirements of U.S. citizenship.

- The database, known as E-Verify, that is being used by U.S. employers to check the citizenship status of prospective employees should be made available to election officials and administrators of statewide registration databases to better identify registered voters who are not U.S. citizens.

- The U.S. Department of Homeland Security should open new information-sharing channels between agencies to include Customs and Border Protection (CBP), Immigration and Customs Enforcement (ICE), Citizenship and Immigration Services (USCIS) and Homeland Security Investigations (HSI) with state and local election officials to more easily identify non-citizens coming into contact with the federal immigration system.

- Law enforcement at both the federal and state level should exercise their authority to prosecute cases of voter fraud. Voter registration and voting history records such as those contained in this report make prosecution an easy task. Armed with that information, prosecutors would simply have to verify whether or not the individual was a citizen at the time of registration or voting.

# Conclusion

Our current election systems were largely conceived in a time when the concept of non-citizens being granted voter roll entry by official actors was unheard-of. Times change, but the commitment to election integrity must remain the same.

The problem is real and the solutions are simple. What is happening in Virginia is happening in every other state. Your vote is at risk and elected officials must act. You can make a difference. Your voting rights are not limited to Election Day. You have the right to question the quality of service that election officials are providing. Please contact your local officers to ask what they are doing to ensure voter lists are accurate and free of dead, duplicate, felon, fictitious, relocated, and non-citizen voters. Simply asking a question can inspire real reform.

# Endnotes

1 | https://publicinterestlegal.org/blog/report-ineligible-aliens-registering-vote-casting-ballots/.

2 | See U.S. Dept. of Just., Federal Prosecution of Election Offenses 66 (7th ed. 2007), available at https://www.justice.gov/sites/default/files/criminal/legacy/2013/09/30/electbook-rvs0807.pdf.

3 | Va. Const., Art. II, Sec. 1.

4 |18 U.S.C. § 1015(f). It is also a felony for an individual to simply "falsely and willfully represent[] himself to be a citizen of the United States." 18 U.S.C § 911.

5 | The cancellation reports for all 120 counties are available at Exhibit 1 at the link provided on page 1 of this report. The cancellation reports cover two separate time periods and were received in two separate responses from state election officials. They have been combined into one exhibit for purposes of this report.

6 | This email is reproduced in its entirety at Exhibit 2.

7 | This estimate was based on the Census Bureau's 2016 Current Population Survey (CPS). The data can be queried using the CPS Table Creator available at https://www.census.gov/cps/data/cpstablecreator.html.

8 | http://leg1.state.va.us/cgi-bin/legp504.exe?151+ful+HB1315ER+pdf.

9 | http://leg1.state.va.us/cgi-bin/legp504.exe?151+amd+HB1315AG.

10 | https://lis.virginia.gov/cgi-bin/legp604.exe?171+amd+SB1105AG.

11| https://lis.virginia.gov/cgi-bin/legp604.exe?171+sum+SB1105.

12 | https://publicinterestlegal.org/blog/scores-of-counties-put-on-notice-about-corrupted-voter-rolls/.

13 | https://publicinterestlegal.org/blog/counties-on-notice/.

14 | https://lis.virginia.gov/cgi-bin/legp604.exe?171+sum+HB2343.

15 | https://lis.virginia.gov/cgi-bin/legp604.exe?171+amd+HB2343AG.

16 | https://lis.virginia.gov/cgi-bin/legp604.exe?171+sum+HB1428.

17 | https://lis.virginia.gov/cgi-bin/legp604.exe?171+sum+SB872.

18 | https://lis.virginia.gov/cgi-bin/legp604.exe?171+amd+HB1428AG.

19 | https://lis.virginia.gov/cgi-bin/legp604.exe?171+amd+SB872AG.

20 | https://lis.virginia.gov/cgi-bin/legp604.exe?171+sum+SB1253.

21 | https://lis.virginia.gov/cgi-bin/legp604.exe?171+amd+SB1253AG.

22 | https://lis.virginia.gov/cgi-bin/legp604.exe?171+sum+SB1455.

23 | https://lis.virginia.gov/cgi-bin/legp604.exe?171+amd+SB1455AG.

24 | https://lis.virginia.gov/cgi-bin/legp604.exe?171+sum+SB1581.

25 | https://lis.virginia.gov/cgi-bin/legp604.exe?171+amd+SB1581AG.

26 | 52 U.S.C. § 20501 et seq.

27 | See 52 U.S.C. § 20504(a)(1) and (c)(1).

28 | 52 U.S.C. § 20504(c)(2)(C).

29 | 52 U.S.C. § 20504(c)(2)(B)(ii).

30 | 52 U.S.C. § 20507(i).

31 | Complaint, Virginia Voter's Alliance, et al. v. Leider, No. 16-cv-394 (E.D. Va., April 7, 2016).

32 | An updated cancellation report subsequently received from the Department of Elections lists the "Declared Non-Citizen Total" as 443. See Exhibit 1.

33 | See Exhibit 3.

34 | An example of this notice is provided at Exhibit 4.

35 | The email is reproduced in its entirety at Exhibit 5.

36 | The email is reproduced in its entirety at Exhibit 6.

# Endnotes

37 | This cost was later waived after we informed Commissioner Cortes that the NVRA permits election officials to charge "reasonable costs" for "photocopying" only. 52 U.S.C. § 20507(i)(1). It does not permit election officials to impose costs for time spent producing records.

38 | See Exhibit 6.

39 | 18 U.S.C. § 2722(a).

40 | The court order is available at Exhibit 7.

41 | The email is reproduced in its entirety at Exhibit 8.

42 | Press Release, Haake retires April 1, VILLAGE NEWS (March 1, 2017), http://villagenewsonline.com/2017/03/01/haake-retires-april-1/.

43 | Va. Code Ann. § 24.2-406.

44 | http://leg1.state.va.us/cgi-bin/legp504.exe?151+ful+HB1315ER+pdf.

45 | The record of **REDACTED**'s cancellation is produced in its entirety at Exhibit 9.

46 | The email is reproduced in its entirety at Exhibit 10.

47 | Id.

48 | See Exhibit 2.

49 | An excerpt from the voting history records we received is available at Exhibit 11.

50 | http://historical.elections.virginia.gov/elections/search/year_from:2013/year_to:2013/office_id:12/stage:General.

51 | Vozzella and Pershing, Obenshain concedes Virginia attorney general's race to Herring, WASH. POST. (Dec. 18, 2013), https://www.washingtonpost.com/local/virginia-politics/obenshain-to-concede-virginia-attorney-generals-race-on-wednesday-in-richmond/2013/12/18/fe85a31c-67e7-11e3-8b5b-a77187b716a3_story.html?utm_term=.7eefdedfa511.

52 | http://historical.elections.virginia.gov/elections/search/year_from:2014/year_to:2014/office_id:9/district_id:27270/stage:General.

53 | http://historical.elections.virginia.gov/elections/search/year_from:2011/year_to:2011/office_id:8/district_id:27389/stage:General

54 | http://historical.elections.virginia.gov/elections/search/year_from:2011/year_to:2011/office_id:549/district_id:31510/stage:General.

55 | http://historical.elections.virginia.gov/elections/search/year_from:2011/year_to:2011/office_id:549/district_id:32289/stage:General.

56 | http://historical.elections.virginia.gov/elections/search/year_from:2011/year_to:2011/office_id:549/district_id:32310/stage:General.

57 | http://historical.elections.virginia.gov/elections/search/year_from:2011/year_to:2011/office_id:549/district_id:30310/stage:General.

58 | http://historical.elections.virginia.gov/elections/search/year_from:2011/year_to:2011/office_id:530/district_id:30255/stage:General.

59 | http://historical.elections.virginia.gov/elections/search/year_from:2011/year_to:2011/office_id:9/district_id:27280/stage:General.

60 | http://historical.elections.virginia.gov/elections/search/year_from:2012/year_to:2012/office_id:73/district_id:31552/stage:General.

61 | http://historical.elections.virginia.gov/elections/search/year_from:2013/year_to:2013/office_id:8/district_id:27388/stage:General.

62 | http://historical.elections.virginia.gov/elections/search/year_from:2013/year_to:2013/office_id:8/district_id:27389/stage:General.

63 | http://historical.elections.virginia.gov/elections/search/year_from:2013/year_to:2013/office_id:8/district_id:27305/stage:General.

64 | http://historical.elections.virginia.gov/elections/search/year_from:2013/year_to:2013/office_id:8/district_id:27334/stage:General.

65 | http://historical.elections.virginia.gov/elections/search/year_from:2013/year_to:2013/office_id:8/district_id:27337/stage:General.

66 | http://historical.elections.virginia.gov/elections/search/year_from:2015/year_to:2015/office_id:545/district_id:30256/stage:General.

# Endnotes

67 | http://historical.elections.virginia.gov/elections/search/year_from:2015/year_to:2015/office_id:8/district_id:27305/stage:General.

68 | http://historical.elections.virginia.gov/elections/search/year_from:2015/year_to:2015/office_id:8/district_id:27389/stage:General.

69 | The voter registration applications are produced at Exhibit 12.

70 | Documentation of   REDACTED   's registration is available at Exhibit 13.

71 | Graham Moomaw, Virginia House passes bill to require proof of citizenship to vote in state, local elections, ROANOKE TIMES (Feb. 1, 2017), http://www.roanoke.com/news/politics/general_assembly/virginia-house-passes-bill-to-require-proof-of-citizenship-to/article_8e4177a2-cc6c-5538-948a-f99d195815f4.html.

72 | http://historical.elections.virginia.gov/elections/search/year_from:2015/year_to:2015/office_id:8/district_id:27346/stage:General.

73 | http://virginiageneralassembly.gov/house/members/members.php.

74 | David McGee, Field set for June primaries, November House lineup, BRISTOL HERALD COURIER (April 1, 2017), http://www.heraldcourier.com/news/field-set-for-june-primaries-november-house-lineup/article_469d0622-7d6d-5337-8ece-36b7f108ffbd.html.

75 | Ken Plum, Del. Ken Plum: A Sense of Impending Changes in the Legislature, RESTON NOW (April 13, 2017), https://www.restonnow.com/2017/04/13/del-ken-plum-a-sense-of-impending-changes-in-the-legislature/.

76 | Jenna Portnoy, Kaine has big lead in 2018 Senate race, early polling shows, WASH. POST. (Feb. 17, 2017), https://www.washingtonpost.com/local/virginia-politics/kaine-has-big-lead-in-2018-senate-race-early-polling-shows/2017/02/17/0ab08564-f537-11e6-a9b0-ecee7ce475fc_story.html?utm_term=.f21368b35e32.



"Growth Through Immigration and Diversity Builds a Strong Community"
Banner hanging outside elections office at County of Arlington

# PUBLIC INTEREST

## LEGAL FOUNDATION



For all media inquiries, please
contact us at (317) 203-5599 or
media@publicinterestlegal.org

www.publicinterestlegal.org

PUBLIC INTEREST
LEGAL FOUNDATION

32 E. Washington St.
Suite 1675
Indianapolis, IN 46204
(317) 203-5599