IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| League of United Latin American Citizens-Richmond Region Council 4614, Eliud Bonnila, Luciania Freeman, Abby Jo Gearhart, and Jeanne Rosen,<br><br>  Plaintiffs,<br><br>  v.<br><br>Public Interest Legal Foundation and J. Christian Adams,<br><br>  Defendants. | Case No. 1:18cv423 (LO/IDD) |

**BRIEF OF *AMICUS CURIAE* LANDMARK LEGAL FOUNDATION IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

i

**Corporate Disclosure Statement**

Pursuant to E.D.V.A. Local Rule 7.1, Landmark certifies that it has no parent, subsidiary, or affiliate entity (corporate or otherwise) that has issued stock to the public, and that no publicly held corporation owns 10% more of its stock.

**Table of Contents**

Interest of *Amicus Curiae*………………………………………………………….. 1

Background and Facts……………………………………………………………… 1

Argument…………………………………………………………………………… 3

    I.       Permitting Plaintiffs' suit will chill public watchdog groups and Whistleblowers who dedicate their efforts to serving the public Good………………………………………………………………….. 3

    II.      The First Amendment protects Defendant's actions………………. 4

Conclusion………………………………………………………………………… 6

## Table of Authorities

**Cases**

*Cox Broadcasting Corp. v. Cohn*,
    420 U.S. 469 (1975)………………………………………………………… 5

*Eu v. San Francisco County Democratic Central Comm.*,
    489 U.S. 214 (1989)………………………………………………………… 3

*Fl. Star v. B. J. F.*,
    491 U.S. 524 (1989)………………………………………………………… 5

*Oklahoma Publishing Corp. v. Oklahoma County District Court*,
    430 U.S. 208 (1977)………………………………………………………… 5

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006)…………………………………………………………… 3

*Reynolds v. Simms*,
    377 U.S. 533 (1964)………………………………………………………… 2

**Statutes**

Civil Rights Act of 1871, 42 U.S.C. § 1985(3)………………………………………….. 2

National Voter Registration Act, 52 U.S.C. § 20507(i)………………………………….. 3,4

Voting Rights Act, 52 U.S.C. § 10307……………………………………………………. 2

**Other Authorities**

U.S. Const. Amend. I……………………………………………………………………… 5

*Amicus Curiae*, Landmark Legal Foundation ("Landmark") respectfully submits this Brief in support of Defendant's motion to dismiss.[1]

## Interest of *Amicus Curiae*

Landmark is a national public interest law firm committed to preserving the principles of limited government, separation of powers, federalism, advancing an originalist approach to the Constitution and defending individual rights. Landmark specializes in election and voter law and is committed to voter integrity. Landmark often files briefs in federal courts in cases arising under the Constitution and voter accountability statutes. Landmark files this brief to alert the court of the chilling effects this suit will have on public interest organizations who are dedicated to protecting voter integrity. Landmark also files this brief in defense of the First Amendment rights of public interest organizations committed to holding public officials and public institutions to account.

## Background and Facts

Defendant Public Interest Legal Foundation ("PILF") is a non-profit organization dedicated to the integrity of elections and protecting the right to vote. (Def.'s Mem. in Support of Mot. to Dismiss "Def.'s Mem." at 1.) Defendant J. Christian Adams is PILF's president and served in the U.S. Department of Justice's Voting Section. (Id.) In 2016 and 2017, PILF and the Virginia Voter's Alliance ("VVA") published two reports entitled *Alien Invasion I* and *Alien Invasion II* ("the Reports") advocating for increased safeguards to protect the integrity of voter registration. (Def.'s Mem at 2.) Information and data used in the Reports came from publicly

---

[1] Counsel for Amicus Landmark informed counsel for both parties of its intent to file this brief. Counsel for Defendant and Plaintiff both consent to the filing of this brief.

1

available records obtained from Virginia election officials.  (Def.'s Mem at 1.)  Neither report identifies by name any of the individual Plaintiffs.  (Compl. Exhibits A, B.)  Nor do they discuss the race or ethnicity of individuals.  (Id.)  When Virginia's Department of Elections notified PILF that the data it had provided contained errors, PILF published a revised version of the appendix for *Alien Invasion II*.  (Compl. ¶ 43.)

Yet Plaintiffs sued, alleging defamation and violations of 24 U.S.C. § 1985(3) and 52 U.S.C. § 10307.  (Compl ¶ 53, 69.)  Plaintiffs argue that attaching public records identifying individuals who are removed from the voter rolls based on non-citizenship, amounts to defamation and voter intimidation.  (Compl. ¶ 75, 70.)  Nothing could be further from the truth.

As outlined in Defendant's Motion to Dismiss, Plaintiff LULAC lacks standing to assert the claims it alleges.  (Def.'s Mem at 7.)  Publication and dissemination of the Reports does not violate the Voting Rights Act, nor does it violate the Ku Klux Klan Act.  The Reports themselves do not name any of the Plaintiffs – let alone defame them.  (Compl. Exhibits A, B.)  In fact, Plaintiffs are identified only in public records attached to the Reports.  (Compl. ¶ 31.)  Instead of seeking redress from the Commonwealth of Virginia for inaccuracies in official records, Plaintiffs have incorrectly directed their ire at PILF.

Plaintiffs' claims lack merit and should be dismissed with prejudice.  Failure to dismiss this suit will chill public discussion of an important political issue involving the fundamental right to vote.  This lawsuit threatens not only public interest organizations, but journalists, political activists, bloggers and even concerned citizens who write letters to the editor and who rely on official government records when addressing the public. Small entities such as PILF should not be forced to expend limited resources defending specious claims of defamation or

2

voter intimidation. Good-faith efforts that credibly document failures of government and seek to protect the integrity of the voting process are to be encouraged and applauded – not attacked.

## Argument

I. **Permitting Plaintiffs' suit will chill public watchdog groups and whistleblowers who dedicate their efforts to serving the public good.**

Public confidence in the electoral process is crucial to the functioning of the democracy. *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). Doubts over the voting system's integrity "breed distrust of our government" and "drives honest citizens out of the democratic process." Id. Government failures to ensure only eligible voters are included on the voter registration rolls and failures to investigate credible allegations of voter fraud undermines confidence in the electoral system. Undermining confidence in the voter system breeds fear and "[v]oters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." Id. Therefore, the right to vote can therefore be denied through "dilution" of the casting of fraudulent votes "just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).

States "indisputably have a compelling interest in preserving the integrity of [the] election process." *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 231 (1989). When the federal government or the state fails to protect the right to vote, or fails to preserve the integrity of the voting process, public interest organizations accomplish a necessary service when they undertake efforts to expose voter improprieties. Thus, raising public awareness of deficiencies in voter registration systems and official inaction serves the public. Voters have a right to know whether government bodies are taking necessary steps to preserve the integrity of the vote and states are under a federal obligation to disclose those steps. The

3

National Voter Registration Act ("NVRA"), if fact, requires states "make available for public inspection, and where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters… ."  52 U.S.C. § 20507(i).

Raising public awareness of a crucial issue – noncitizen voter registration – protects the constitutional right to vote.  And voters have a right to know whether law enforcement officials are investigating credible allegations of crime.

An individual with extensive expertise in voting law drafted the reports.  Defendant J. Christian Adams is an attorney who served in the Department of Justice's Voting Rights Section and dedicates his career to protecting the integrity of the vote.  Publication of the Reports serves the public good by credibly identifying instances when noncitizens appear to have illegally registered and cast votes – both felonies under state and federal law.  The Reports also seek to hold law enforcement officials to account by highlighting the lack of official investigation and prosecutions.  Nowhere in either Report are Plaintiffs mentioned by name.  Nowhere in the Reports is the race or ethnicity of the noncitizens discussed.  Noncitizen or "alien" are racially neutral terms that can apply to any individual who is not a citizen of the United States, regardless of his/her race or ethnicity.

Burdensome and meritless suits compromise the ability of small organizations such as PILF to serve the public.  Expending limited resources to defend allegations of defamation, conspiracy, or voter intimidation undermines the legitimate mission of nonprofit organizations dedicated to serving the public.  An allegation of conspiracy such as the type raised by Plaintiffs is no different from an allegation that LULAC engages in voter fraud because it facilitates

noncitizen voter registration. All of these allegations lack merit, compromise the legitimate public interest missions of nonprofit groups, and have no place in the courts.

## II.     The First Amendment protects Defendant's actions.

The First Amendment to the United States Constitution affords extensive free speech protections to individuals and organizations. PILF's Reports are no different than political articles, journals or pamphlets and, as such, are afforded maximum possible protection under the First Amendment.

First Amendment protections extend to news organizations who publish the names of individuals obtained through public records.[2] Names and information obtained through court records, through monitoring police band radio, or from attending public proceedings, are public information. "[W]here the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of its release." *Fl. Star v. B. J. F.*, 491 U.S. 524, 535 (1989). And organizations who publish this information are protected from liability under First Amendment jurisprudence. These protections also apply to PILF.

PILF lawfully obtained the data it used in the Reports from public sources – specifically from election officials in the Commonwealth. (Compl. Ex. C, D.) Exhibits attached to the Reports are copies of records from Virginia's Department of Elections. (Id.) State officials must disclose these records under the NVRA. 52 U.S.C. 20507(i). In fact, release of this information serves the public good in that it shows that noncitizens have registered to vote and have possibly diluted the vote by casting improper votes.

---

[2] See, for example, *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) where the Supreme Court finds unconstitutional a civil damages award against a television station for broadcasting a victim's name. *Oklahoma Publishing Co. v. Oklahoma County District Court*, 430 U.S. 208 (1977) where the Supreme Court finds unconstitutional a state court's pretrial order enjoining the media from publishing the name of a minor where reporters attended a the minor's judicial proceeding.

First Amendment protections extend to news organizations whose articles or reports specifically name individuals.  Similarly, First Amendment protections extend to public interest organizations that, in good faith, rely on the accuracy of this information to protect the fundamental right to vote.  This activity should be afforded maximum protection under the First Amendment.

PILF obtained the information and data containing Plaintiffs' names lawfully and through a request made under the NVRA.  The Reports written and released by PILF serve a necessary and important function in that they credibly document numerous instances of noncitizen voter registration and noncitizen voting.  Such illegal activity undermines the essential right to vote.

### Conclusion

For the foregoing reasons, *Amicus Curiae* respectfully requests this Court grant Defendants' motion to dismiss.

Respectfully submitted,

DATED: June 8, 2018

By _____/s/_____
M. Keith Blankenship, Esq.
Attorney for Defendant
VSB# 70027
Da Vinci's Notebook, LLC
9000 Mike Garcia Drive
No. 52
Manassas, VA 20108
703-581-9562
keith@dnotebook.com

Richard P. Hutchison
Landmark Legal Foundation
3100 Broadway
Suite 1210
Kansas City, MO 64111
816-931-5559

Michael J. O'Neill
Matthew C. Forys
Landmark Legal Foundation
19415 Deerfield Ave.
Suite 312
Leesburg, VA 20176
703-554-6100

Counsel for *Amicus Curiae* Landmark Legal Foundation

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2018 I have filed electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notice of such filing to the counsel of record who are registered with the CM/ECF system.

_____/s/_____

M. Keith Blankenship

8