UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| League of United Latin American Citizens - Richmond Region Council 4614, Eliud Bonilla, Luciania Freeman, Abby Jo Gearhart, and Jeanne Rosen, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 1:18cv423 (LO/IDD) ) |
| Public Interest Legal Foundation and J. Christian Adams, | ) ) ) |
| Defendants. | ) ) ) |
| _____ | ) |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS**

## TABLE OF CONTENTS

I.   INTRODUCTION .......................................................................................................... 1

II.  ARGUMENT ................................................................................................................ 1

    A.   LULAC – Richmond Cites No Authority Establishing That It Has
        Standing  to Assert the Claims Against PILF and Mr. Adams Alleged in
        the Complaint .................................................................................................. 1

        1.   LULAC – Richmond lacks organizational standing .................................. 1
        2.   LULAC – Richmond lacks representational standing. .............................. 4

    B.   Even if the Voting Rights Act Authorized Claims Against Non-
        Government Parties, Plaintiffs' Allegations Are Insufficient to Establish
        Any Violation .................................................................................................. 7

        1.   Section 11(b) of the Voting Rights Act does not reach conduct by
            private parties .......................................................................................... 7
        2.   Publication of the First and Second Reports is not actionable as
            "voter intimidation" under Section 11(b) of the Voting Rights Act .......... 9

    C.   Plaintiffs' Inflammatory Claim of a "Ku Klux Klan Act" Conspiracy Is
        Not Supported By Any Allegations of Violations of 42 U.S.C. § 1985(3) .......... 12

        1.   Plaintiffs' Opposition cites no factual allegations sufficient to
            establish their claim of an unlawful conspiracy in violation of  42
            U.S.C. § 1985(3). .................................................................................... 12
        2.   Plaintiffs' Opposition wrongly ignore the requirement for state
            action to establish an unlawful conspiracy under the "Ku Klux
            Klan Act." ............................................................................................... 13
        3.   Plaintiffs' Section 1985 conspiracy claim requires a showing of
            racial animus. ......................................................................................... 15

    D.   The Allegedly Defamatory Reports Do Not Mention the Individual
        Plaintiffs By Name and Are Otherwise Not Actionable As a Matter of
        Virginia Law ................................................................................................... 16

        1.   The Complaint does not allege that Defendants published any
            statements, defamatory or otherwise, about any of the individual
            named Plaintiffs ...................................................................................... 16
        2.   The Complaint does not allege sufficient facts to establish that
            Defendants published the Reports with the requisite intent ...................... 18
        3.   Plaintiffs' defamation claim should be dismissed pursuant to
            Virginia's anti-SLAPP statute, Virginia Code § 8.01-223.2. ................... 18

III. CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Humanist Ass'n v. Greenville Cty. Sch. Dist.*,
   652 F. App'x 224 (4th Cir. 2016) ..............................................................................2

*Ariz. Democratic Party v. Ariz. Republican Party*,
   No. CV-16-03752-PHX-JJT, 2016 WL 8669978 (D. Ariz. Nov. 4, 2016) ...........................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................10, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................3, 10

*Carwile v. Richmond Newspapers*,
   82 S.E.2d 588 (Va. 1954)..........................................................................................17

*Damon v. Hukowicz*,
   964 F. Supp. 2d 120 (D. Mass. 2013) ........................................................................11

*Deressa v. Gobena*,
   No. 1:05CV1334(JCC), 2006 WL 335629 (E.D. Va. Feb. 13, 2006)...................................14

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
   204 F.3d 149 (4th Cir. 2000) ....................................................................................2

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)................................................................................................3, 6, 7

*Gazarkiewicz v. Town of Kingsford Heights, Indiana*,
   359 F.3d 933 (7th Cir. 2004) ....................................................................................19

*Goldstein v. Costco Wholesale Corp.*,
   278 F. Supp. 2d 766 (E.D. Va. 2003) ..........................................................................4

*Hatfill v. New York Times Co.*,
   416 F.3d 320 (4th Cir. 2005) ....................................................................................17

*Hyland v. Raytheon Tech. Servs. Co.*,
   277 Va. 40, 670 S.E.2d 746 (2009)..............................................................................17

*Kush v. Rutledge*,
   460 U.S. 719 (1983)................................................................................................16

4815-1408-2410.3

*League of United Latin Am. Citizens v. City of Boerne,*
   675 F.3d 433 (5th Cir. 2012) ........................................................................4

*League of United Latin Am. Citizens v. Perry,*
   548 U.S. 399 (2006)......................................................................................4

*Maryland Highways Contractor's Ass'n, Inc. v. State of Maryland,*
   933 F.2d 1246 (4th Cir. 1991) ....................................................................4

*Moore v. PYA Monarch, LLC,*
   238 F. Supp. 2d 724 (E.D. Va. 2002) .......................................................16

*Moseke v. Miller and Smith, Inc.,*
   202 F. Supp. 2d 492 (E.D. Va. 2002) .........................................................2

*N.C. State Conference of NAACP v. N.C. State Bd. of Elections,*
   283 F. Supp. 3d 393, 401 (M.D.N.C. 2017) ..............................................5

*Parson v. Alcorn,*
   157 F. Supp. 3d 479, 498 (E.D. Va. 2016) ..............................................11

*Polidi v. Bannon,*
   226 F. Supp. 3d 615, 623 (E.D. Va. 2016) .........................................13, 16

*Qimonda AG v. LSI Corp.,*
   857 F. Supp. 2d 570 (E.D. Va. 2012) .........................................................2

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands,*
   *LLC,* 713 F.3d 175 (4th Cir. 2013) .......................................................5, 17

*Schnupp v. Smith,*
   249 Va. 353, 457 S.E.2d 42 (1995)...........................................................17

*Simmons v. Poe,*
   47 F.3d 1370 (4th Cir. 1995) ...............................................................14, 15

*Smiley v. Holm,*
   285 U.S. 355 (1932)....................................................................................8

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009)....................................................................................6

*Thomas v. The Salvation Army Southern Territory,*
   841 F.3d 632 (4th Cir. 2016) ........................................................14, 15, 16

*U.S. v. Simms,*
   508 F. Supp. 1179 (W.D. La. 1979)........................................................8, 9

*United States v. Carmichael*,
  685 F.2d 903 (4th Cir. 1982) ....................................................................9

*Veasey v. Perry*,
  29 F. Supp. 3d 896, 903 (S.D. Tex. 2014) ...........................................3, 4

*Will Nesbitt Realty, LLC v. Jones*,
  CL-2016-14234, 2018 Va. Cir. LEXIS 66 (Va. Cir. Ct. Apr. 30, 2018) ................................19

**Statutes**

Civil Rights Act of 1871, 42 U.S.C. § 1985(3).................................1, 12, 13, 14, 15

Voting Rights Act, Section 11(b).........................................1, 7, 8, 9, 11, 14

Virginia Code § 8.01-223.2 ....................................................................18

Virginia Code § 9.01-223.2(A)...............................................................19

**Other Authorities**

1965 U.S.C.C.A.N. ..................................................................................8

Federal Rule of Civil Procedure 12(b)(6) ...........................1, 3, 8, 12, 19, 20

United States Constitution ......................................................................20

4815-1408-2410.3

Defendants, Public Interest Legal Foundation ("PILF") and J. Christian Adams ("Mr. Adams"), by counsel, respectfully state as follows for their reply to Plaintiffs' Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss (Dkt. # 50) and the Brief of *Amici Curiae* (Dkt. # 51-2).

## I.      INTRODUCTION

Plaintiffs' Opposition raises no arguments and cites no authorities that cure the deficiencies of their Complaint.  By way of their meritless claims of "defamation" and violation of the Voting Rights Act and "Ku Klux Klan Act," Plaintiffs seek to deprive PILF and Mr. Adams of their First Amendment right to advocate for election integrity and to deter PILF, Mr. Adams, and others from arguing that only citizens of the United States should be permitted to vote in elections.  All of Plaintiffs' claims are subject to dismissal as a matter of law.

## II.      ARGUMENT

### A.      LULAC – Richmond Cites No Authority Establishing That It Has Standing to Assert the Claims Against PILF and Mr. Adams Alleged in the Complaint.

LULAC – Richmond does not dispute that the publications at issue say nothing about the national origin, ethnicity, race, or any other characteristics of the registered voters who—according to records that are publicly available as a matter of federal law—are not citizens of the United States.  These publications do not mention Latino Americans anywhere, much less in the Commonwealth of Virginia or the Richmond metropolitan area.  The assertion that LULAC – Richmond has standing to assert any claims against Defendants has no factual or legal basis.

#### 1.      LULAC – Richmond lacks organizational standing.

LULAC – Richmond lacks standing to assert its claims against Defendants under 42 U.S.C. § 1985(3) and Section 11(b).  As an organization, LULAC – Richmond can establish standing under one of two theories: (1) an organizational theory that enables an organization to

1

bring suit on its own behalf, and (2) a representational theory that allows an organization to sue on behalf of its members.  *See Moseke v. Miller and Smith, Inc.*, 202 F. Supp. 2d 492 (E.D. Va. 2002).

Plaintiffs' Opposition cites no authority to meet its "burden to establish standing by showing that it suffered an injury that is fairly traceable to the challenged action and that can be redressed by the court's decision." *Am. Humanist Ass'n v. Greenville Cty. Sch. Dist.*, 652 F. App'x 224, 229 (4th Cir. 2016) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)); *see also Qimonda AG v. LSI Corp.*, 857 F. Supp. 2d 570, 575 (E.D. Va. 2012).   LULAC – Richmond cannot satisfy this "traceability" requirement because it cannot impute to Defendants comments made on the Internet by independent third parties.   Under the test articulated by the Fourth Circuit, the traceability requirement is established only if it is "likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000).   Indeed, if every inappropriate remark in online comments sections could serve as the basis for defamation claims against authors, the courts would be drowning in such cases.

According to Plaintiffs' Opposition, Defendants' Motion to Dismiss "ignores the allegation that 'Plaintiff LULAC has been and continues to be injured by Defendants' publication of these reports because it impedes one of LULAC – Richmond's core goals, the promotion of political participation' by creating a narrative that 'Latinos who vote are doing so illegally.'"  (Resp., ECF No. 50 at 16).  Plaintiffs also allege that the Reports "falsely accused many Latino voters as being noncitizens who were guilty of committing voter fraud."  (Compl. ¶ 64).  Yet Plaintiffs fail to identify a single sentence in the Reports that even discusses Latinos,

much less accuses Latino voters of anything.  Although Rule 12(b)(6) requires this Court to accept the truth of Plaintiffs' factual allegations, the Complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plaintiffs' conclusory and unsupported allegations regarding accusations against Latino voters fail to satisfy that pleading standard.

As Plaintiffs admit, many of the social ills allegedly afflicting the Latino population in Richmond predate, and exist independent of, the publication of the Reports:

> Voters in Latino communities are already subject to scorn and discrimination because of heated rhetoric directed against Latino and immigrant communities.  For example, in the recent 2017 Virginia gubernatorial election, the rampant propagation of derogatory information and generalizations associating Latinos with gangs such as MS-13 or painting them as criminals caused much despair and despondence amongst the Latino community in the larger Richmond area.

(Compl. ¶ 64).  To meet its burden of establishing organizational standing, LULAC – Richmond must also show that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Laidlaw*, 528 U.S. at 181.  For purposes of redressability, it is enough that the relief being sought would "abat[e] current violations and prevent[ ] future ones," such as by deterring future violations.  *Id.* at 187.  These problems in the Latino community that Plaintiffs admit are independent of Defendants' actions cannot be redressed by a favorable decision in this case.

Plaintiffs claim that the fact that LULAC – Richmond has established organizational standing in other, unrelated voting rights cases means that the Court should find organizational standing here.  Defendants do not claim that LULAC – Richmond could never satisfy the requirements of organizational standing, just that it fails to do so here.  Indeed, the cases that Plaintiffs cite are all distinguishable from the present facts.  In *Veasey v. Perry*, 29 F. Supp. 3d 896, 903 (S.D. Tex. 2014), LULAC was challenging a voter identification law that would force it

3

to divert resources from its normal voter registration activities to educate already-registered members.  In *Veasey*, the connection between the passage of the voter identification law and the alleged harm to LULAC's organizational purpose was much less attenuated and more "fairly traceable" than in the present case.  Neither *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399 (2006) nor *League of United Latin Am. Citizens v. City of Boerne*, 675 F.3d 433 (5th Cir. 2012) contains any discussion whatsoever of the basis for LULAC's standing.  The mere fact that LULAC has previously established organizational standing, without any other information, tells the Court nothing about how to evaluate organizational standing in this case. The determination of organizational standing depends on the specific challenged action and alleged harm and is therefore dependent on the particular facts of a case.  *Maryland Highways Contractor's Ass'n, Inc. v. State of Maryland*, 933 F.2d 1246, 1250 (4th Cir. 1991).

Additionally, the fact that LULAC brings so many other lawsuits actually weakens Plaintiffs' diversion of resources claim, as it reinforces the reality that LULAC devotes significant time and money nationally to pursuing litigation on behalf of its members.  This Court has previously found that an organization that was "in the business of litigating alleged disability discrimination" could not say that participation in "such litigation impairs its ability to do its work." *Goldstein v. Costco Wholesale Corp.*, 278 F. Supp. 2d 766, 771 (E.D. Va. 2003). Since "[o]rdinary programming costs are insufficient to establish an injury in fact," that organization could not establish organizational standing. *Id.* (citation omitted).  Similarly, to the extent that LULAC is in the business of pursuing civil rights litigation to advance the interests of Latino voters, it cannot claim that the present litigation diverts its resources.

## 2. <u>LULAC – Richmond lacks representational standing.</u>

In their Complaint, Plaintiffs refer to LULAC – Richmond only as an organizational plaintiff.  (Compl. ¶ 3).  The Complaint does not discuss any of the requirements for establishing

4

representational standing. Plaintiffs' Opposition, however, now asserts that LULAC – Richmond has representational standing. As Plaintiffs' Opposition acknowledges, an organization can establish representational standing to sue on behalf of its individual members only when "(1) at least one of its members has standing to sue in his own right; (2) the organization seeks to protect interests germane to the organization's purpose; and (3) neither the claim asserted nor the relief sought requires participation of individual members." (Resp., ECF No. 50 at 17 (quoting *Friends of the Earth*, 204 F.3d at 155). LULAC – Richmond does not fulfill these necessary requirements to establish representational standing.

The very authorities cited in Plaintiffs' Opposition show that LULAC – Richmond fails to satisfy the first prong and therefore lacks representational standing. Plaintiffs fail to identify "one specific member . . . who was injured by challenged conduct" of Defendants. *N.C. State Conference of NAACP v. N.C. State Bd. of Elections*, 283 F. Supp. 3d 393, 401 (M.D.N.C. 2017); *see also S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("The Supreme Court has clarified that to show that its members would have standing, an organization must 'make specific allegations establishing that at least one identified member had suffered or would suffer harm.'" (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009))). Instead, Plaintiffs merely allege harm generally to "LULAC's members and the Latino community LULAC represents." (Resp., ECF No. 50 at 17). The Complaint also does not allege that any of the named Plaintiffs are members of LULAC – Richmond.

In *Summers v. Earth Island Institute*, the plaintiffs, a group of environmental organizations, were unable to establish standing on behalf of their members in the district court because they could not demonstrate any particularized harm suffered by an organization

member.  555 U.S. 488, 495 (2009).  The Supreme Court further held that, because the plaintiffs were unable to "me[et] the challenge to their standing at the time of judgment," the plaintiffs "could not remedy the defect retroactively" by supplementing the record with additional evidence.  *Id.* at 495 n.*.

The Complaint also does not allege that any particular members of LULAC – Richmond were actually deterred from exercising their voting rights as a result of the publication of either of the two Reports.  Instead, Plaintiffs rely on mere speculation that in the future, "[t]he Latino community, including members of LULAC, will be discouraged from participating in the electoral process as a direct result of Defendants' conduct."  (Compl. ¶ 51).  These non-specific, attenuated, and speculative allegations of harm cannot support standing for LULAC – Richmond's members as individuals.  If LULAC – Richmond's individual members would not have standing, then LULAC – Richmond cannot establish representational standing to sue on their behalf.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

Even if LULAC – Richmond could satisfy the first prong of the *Laidlaw* test, the factual allegations of the Complaint do not support Plaintiffs' argument that "the interests raised by LULAC's claims are plainly germane to the organization's purpose, which includes advancing the political influence and civil rights of the Latino population of the city of Richmond, Virginia and its surrounding areas."  (Resp., ECF No. 50 at 17).  Plaintiffs state that Defendants asserted in the Reports that "registering to vote and/or voting constitutes an unlawful 'alien invasion' that should be prosecuted."  (*Id.*)  But Plaintiffs have not satisfactorily alleged any facts that would support their claim that Defendants targeted Latinos.  The Reports make no mention of Latinos generally.  Nor does the Complaint identify any individual members of LULAC – Richmond

who were named in the government records attached to either published Report.  Because the Complaint does not plead claims that are "plainly germane" to the organization's purpose, LULAC cannot establish representational standing under the second prong of *Laidlaw*.

**B.      Even if the Voting Rights Act Authorized Claims Against Non-Government Parties, Plaintiffs' Allegations Are Insufficient to Establish Any Violation.**

**1.      Section 11(b) of the Voting Rights Act does not reach conduct by private parties who merely advocate for maintaining voter integrity.**

While claiming that their position is supported by "[t]he plain language" of Section 11(b) of the Voting Rights Act, Plaintiffs' Opposition does not identify even a single successful 11(b) voter intimidation claim against a non-government actor.[1]  That is because courts have never upheld congressional authority to ban the voter intimidation alleged in this case based on the Elections Clause of the Constitution.

Plaintiffs also lean heavily on the legislative history for Section 11(b) for the proposition that Section 11(b) can reach intimidation by private individuals in purely local elections "from article I, section 4, and the implied power of Congress to protect federal elections against corrupt influences.  (Resp., ECF No. 50 at 24 (quoting 1965 U.S.C.C.A.N. 2437, 2462).)  But the legislative history is not as clear as Plaintiffs suggest.  The legislative history shows that a group of Republican Congressmen in the House Judiciary Committee disputed the constitutional basis for extending Section 11(b) to private citizens not acting under color of law: "[Section 11(b)] attempts to reach the question of coercion of any voter by any private citizen not acting under color of law in, apparently, any election.  We believe that such a proposition by the Congress,

---

[1] Plaintiffs attempt to claim that Mr. Adams "knows that Section 11(b) applies to private actors," because, in his capacity as a Department of Justice attorney, he previously helped bring a voter intimidation suit on behalf of the United States against the New Black Panther Party (based on allegations of actual threatened violence: party members brandished weapons at voters and poll watchers at the entrance to a polling place in Philadelphia). (Resp., ECF No. 50 at 17).  This is ridiculous.  Plaintiffs cannot in good faith argue that work on a government lawsuit by a government attorney permanently imputes the government's position to that individual.  If this were true, attorneys who left the government for private practice would be constrained from advocating legal positions contrary to those of the government.

having no basis in either the 14th or 15th amendments, is without constitutional authority." 1965 U.S.C.C.A.N. at 2479 (citing *James v. Bowman*, 190 U.S. 127 (1903); *United States v. Reese*, 92 U.S. 214 (1875)).

Nor do the cases cited in Plaintiffs' Opposition support their argument for an unprecedented application of Section 11(b) to private conduct. Plaintiffs cite *U.S. v. Simms* for the proposition that Section 11(b) "constitutes 'necessary and proper legislation to . . . [the] power to regulate federal elections under Article I, Section 4 of the Constitution." (Resp., ECF No. 50 at 24–25 (quoting *U.S. v. Simms*, 508 F. Supp. 1179, 1186–87 (W.D. La. 1979)). *Simms* is easily distinguishable, however, and does not apply to the issues raised by Defendants' Rule 12(b)(6) Motion to Dismiss. *Simms* does not deal with voter intimidation at all. Instead, it addresses making payments for voter registration in an attempt to influence a federal election through "vote-buying." The claims in *Simms* were based on what is now § 10307(c)), not § 10307(b) as in the present case. *Simms* has also never been cited in support of a successful voter intimidation case.

Equally misplaced is Plaintiffs' attempt to rely on *Smiley v. Holm*, 285 U.S. 355, 366 (1932), which they cite for the proposition that the Elections Clause permits Congress to "provide a complete code for congressional elections." (Resp., ECF No. 50 at 25). In fact, the Supreme Court merely listed voting-related subjects that it believed Congress could regulate under Article I, § 4. *See* 285 U.S. at 366 (listing "notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns"). But because *Smiley*'s holding was limited to the topic of congressional redistricting, this statement regarding

Congress's ability to regulate elections in other ways is mere *dicta*. It certainly does not establish that Congress did so under Section 11(b).

Finally, Plaintiffs cite *United States v. Carmichael*, 685 F.2d 903, 908–09 (4th Cir. 1982) for the proposition that "Congress may regulate any activity that even potentially affects a federal election." (Resp., ECF No. 50 at 25). *Carmichael* says no such thing. Like *Simms*, *Carmichael* was a vote-buying case. It involved a state senator who paid campaign employees for absentee ballots and encouraged payments to voters in connection with a mixed state/federal election. The case focused on what is now § 10307(c) and did not involve any claims of voter intimidation under § 10307(b). The portion of the opinion cited in Plaintiffs' Opposition merely says that "[r]ather, a violation of § 1973i(c) [now § 10307(c)] is established when the evidence shows that a defendant bought or offered to buy a vote and that such activity 'exposes the federal aspects of the election to the possibility of corruption, whether or not the actual corruption takes place and whether or not the persons participating in such activity had a specific intent to expose the federal election to such corruption or possibility of corruption.'" The Fourth Circuit's decision in *Carmichael* does not address violation of § 10307(b)—the only issue relevant to Defendants' pending motion. The conduct actionable under § 10307(c) is simply not the same that is actionable under § 10307(b), a/k/a Section 11(b). Plaintiffs' Opposition therefore cites no precedent for the application of Section 11(b) to conduct by purely private actors.

2.      **Publication of the First and Second Reports is not actionable as "voter intimidation" under Section 11(b) of the Voting Rights Act.**

According to Plaintiffs' Opposition, the Complaint sufficiently alleges actions of the Defendants that rise to the level of intimidation, threats, and coercion contemplated by Section 11(b). (Resp., ECF No. 50 at 26–29). But the only conduct described in the Complaint is "labeling the individuals named in the reports as non-citizens and therefore felons with reckless

9

disregard for the truth of those allegations."[2] (Compl. ¶¶ 31, 45).  *See also id.* ¶¶ 44, 49.  In essence, Plaintiffs claim that the publication of the Reports—which linked to public records containing thousands of names—caused the litany of fears described in the Complaint, and that determining whether this action constitutes intimidation is a "fact-intensive question."  (Resp., ECF No. 50 at 27).

Before putting Defendants to the expense of resolving this "fact-intensive question," however, Plaintiffs must first allege facts that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

*Twombly* requires dismissal of Plaintiffs' claims unless they nudge their "claims across the line from conceivable to plausible."  550 U.S. at 570.  Here, Plaintiffs have failed to do so for two reasons.  First, the fears alleged in the Complaint, even if true, are greatly out of proportion with and cannot have resulted plausibly from the publication of the Reports.  Second, Plaintiffs do not and cannot attribute to Defendants the allegations of "threatening statements" made in the comments sections of "media outlets" that published articles regarding the Reports.  In other words, the allegations do not contain "factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged."  *See Iqbal*, 556 U.S. at 678.

Unable to find any applicable authority for their position, Plaintiffs' Opposition instead cites examples of intimidation based on direct mailings to voters.  (Resp., ECF No. 50 at 27).  In *United States v. Tan Duc Nguyen*, a Republican candidate sent letters to "individuals identified

---

[2] Of course, Defendants contest that they actually "label[ed]" any individual in the Reports.  *See infra* pages 17-18.

as targets" because of Latino surnames and Democratic or no-party affiliations on their voter registrations.  673 F.3d 1259, 1265 (9th Cir. 2012).  Notably, the court in *Nguyen* did not hold that the letter constituted intimidation in violation of the state voter intimidation statute.  Instead, the court held that "there was a fair probability that the mailing constituted a violation."  *Id.* at 1264.  In *United States v. North Carolina Republican Party*, the complaint alleged that the defendants mailed postcards to households specifically targeted because at least one registered Democrat lived in the home and because 94 percent of the voters in the specifically targeted precincts were black voters.  (Case No. 91-161-CIV-5-F (E.D.N.C.), ECF No. 50-2 at 7–8).  In the consent decree by which that case was resolved, the defendants specifically denied that their actions constituted intimidation.

Here, the individual Plaintiffs' names appeared in a government document attached as an exhibit to a Report—they were neither targeted nor specifically mentioned.  Plaintiffs do not and cannot allege that Defendants mailed a copy of the Report directly to the individual Plaintiffs. The facts alleged therefore are distinguishable from those at issue in the cases cited by Plaintiffs and simply do not rise to the level of intimidation, threats, or coercion within the meaning of Section 11(b).

To the extent that prior decisions of the Eastern District of Virginia address the scope of Section 11(b), they are not helpful to Plaintiffs' cause.  To state a claim under Section 11(b), "a plaintiff must show both an act of intimidation or attempt to intimidate, and that the act was done with the specific intent to intimidate or attempt to intimidate."  *Parson v. Alcorn*, 157 F. Supp. 3d 479, 498 (E.D. Va. 2016).  Although Section 11(b) does not contain an express intent requirement, the words "intimidate, threaten, or coerce" inherently contain a component of intent.  *Damon v. Hukowicz*, 964 F. Supp. 2d 120, 149 (D. Mass. 2013) ("A 'threat' means 'the

11

intentional exertion of pressure to make another fearful or apprehensive of injury or harm'. . . . 'Intimidation' means putting a person in fear for the purpose of compelling or deterring his or her conduct'. . . . 'Coercion' means application of physical or moral force to another to constrain him to do against his will something he would not otherwise do.'") (internal citations omitted).

**C.      Plaintiffs' Inflammatory Claim of a "Ku Klux Klan Act" Conspiracy Is Not Supported By Any Allegations of Violations of 42 U.S.C. § 1985(3).**

**1.      Plaintiffs' Opposition cites no factual allegations sufficient to establish their claim of an unlawful conspiracy in violation of  42 U.S.C. § 1985(3).**

As Plaintiffs' Opposition concedes, their claim of a conspiracy in violation of the "support or advocacy clause" of 42 U.S.C. § 1985(3) requires allegations that Defendants conspired either to (1) "prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy" in a federal election, or to (2) "injure any citizen in person or property on account of such support or advocacy."  (Resp., ECF No. 50 at 18.)   Plaintiffs must also plead an act in furtherance of the conspiracy by one or more conspirators whereby Plaintiffs were injured in their person or property.  (*Id.*).

Here, the Complaint does not properly allege these essential elements.  According to Plaintiffs' Opposition, the Complaint alleges that "Defendant Adams and PILF conspired with each other and with VVA (a conspiracy of two or more persons)" to release and publicize the Reports.  (*Id.*).  These allegations are insufficient to establish a conspiracy to prevent voting involving threats, force, or intimidation.  Plaintiffs' Opposition asserts that the sole basis for Defendants' Rule 12(b)(6) challenge to their § 1985 conspiracy claim is the Complaint's failure to "include the times and places when conspiratorial meetings took place."  (*Id.*)  This is incorrect.  As the Motion to Dismiss explains, "a complaint must plead the circumstances of a § 1985(3) conspiracy with particularity."  (Mot. at 20).  These circumstances can "include the

12

times and places when conspiratorial meetings took place," as well as "discussion of meetings, conversations or correspondence" indicating agreement based on racial animus.  (Mot. at 20) (citing *Snow v. Cty. of Henrico*, No. 3:90CV00509, 1990 WL 270198, at *2–3 (E.D. Va. Dec. 17, 1990), *aff'd*, 927 F.2d 596 (4th Cir. 1991)).  Plaintiffs' problem is that they failed to plead any details related to meetings or agreements that would establish the alleged conspiracy.

Plaintiffs also claim that "all that must be alleged is 'an agreement or meeting of the mind by defendants'" and that the agreement between Defendants to co-publish the Reports satisfies this condition.  (Resp., ECF No. 50 at 19) (citing *Polidi v. Bannon*, 226 F. Supp. 3d 615, 623 (E.D. Va. 2016))).  What *Polidi* actually says, however, is that "a plaintiff asserting a § 1985 conspiracy must allege 'an agreement or a meeting of the mind by defendants to violate the claimant's constitutional rights.'"  *Polidi*, 226 F. Supp. 3d at 623 (internal citation and quotation marks omitted).  This omission is critical.  Defendants' mere agreement to publish the Reports simply does not satisfy the requirement.  Plaintiffs must instead allege an agreement between Defendants for the purpose of violating Plaintiffs' constitutional rights.  This intent requirement is key.  The alleged conspiracy cannot be merely to publish a report.  Instead, it must be to "(1) "prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy" in a federal election, or to (2) "injure any citizen in person or property on account of such support or advocacy.""  (Resp., ECF No. 50 at 18).  Plaintiffs have failed to allege any facts in support of such a conspiracy.

## 2. Plaintiffs' Opposition wrongly ignore the requirement for state action to establish an unlawful conspiracy under the "Ku Klux Klan Act."

Plaintiffs attempt to circumvent the requirements for both state action and class-based animus by relying on the statutory language of § 1985(3).  Plaintiffs claim that these "requirements do not exist in the statute for claims of a conspiracy in violation of the 'support or

advocacy clause.'" (Resp., ECF No. 50 at 19).  Indeed, these requirements are not found in the

"support or advocacy clause" or any other clause in § 1985(3).  It is incorrect, however, that

Defendants are attempting to add "extra-textual elements." (*Id.*).  It is case law from the Fourth

Circuit that imposes these requirements. *Thomas v. The Salvation Army Southern Territory*, 841

F.3d 632, 637 (4th Cir. 2016); *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995).

Tellingly, Plaintiffs' Opposition cites no controlling authority in support of their claim

that the "support or advocacy clause" of § 1985(3) should apply to wholly private conspiracies.

(Resp., ECF No. 50 at 20–21).  The best support that Plaintiffs can provide for this assertion is an

unpublished district court decision from outside this circuit that has never been cited by any

other court. *Ariz. Democratic Party v. Ariz. Republican Party*, No. CV-16-03752-PHX-JJT,

2016 WL 8669978 (D. Ariz. Nov. 4, 2016).  *Arizona Democratic Party* is a voter intimidation

case involving § 1985(3) claims as well as Section 11(b) Voting Rights Act claims.  While that

district court found that the plain language of the statutes did not exclude actions against non-

state actors, it ultimately denied the plaintiff's request for preliminary injunction.  *Id.* at 5

n*4,*13.

The Eastern District of Virginia has adopted a framework for determining when certain

private conspiracies are actionable under Section 1985(3), based on Supreme Court precedent:

> In order to state a claim for a private conspiracy in violation of the first
> clause of 42 U.S.C. § 1985(3), a plaintiff must allege, inter alia, "(1) that
> some racial, or perhaps otherwise class-based, invidiously discriminatory
> animus [lay] behind the conspirators' action, and (2) that the conspiracy
> aimed at interfering with rights that are protected against private, as well
> as official, encroachment."

*Deressa v. Gobena*, No. 1:05CV1334(JCC), 2006 WL 335629, at *5 (E.D. Va. Feb. 13, 2006)

(quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993)).  This

authority clarifies that only certain specified private conspiracies—not including "support or

advocacy clause" claims—are actionable under § 1985(3).  Plaintiffs identified no controlling case law that would allow them to pursue their § 1985(3) claim against Defendants.

     **3.**      **Plaintiffs' Section 1985 conspiracy claim requires a showing of racial animus.**

The Fourth Circuit has recently explained that to bring a claim under § 1985, a plaintiff must show "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Thomas*, 841 F.3d at 637; *Simmons*, 47 F.3d at 1376.  Plaintiffs do not even attempt to distinguish the broad language of *Thomas* applying a class-based animus requirement to § 1985 generally.  Instead, Plaintiffs claim that the "support or advocacy clause" was passed exclusively under Congress's authority under Article I, Section IV of the Constitution to argue that there are no federalism concerns and the class-based animus requirement is not necessary.  (Resp., ECF No. 50 at 2).  Notably, however, Plaintiffs cite no Fourth Circuit authority in support of this argument.

Despite Plaintiffs' protestations to the contrary, the language of Fourth Circuit decisions does not support Plaintiffs' claim that the "support or advocacy clause" does not require a showing of racial or class-based animus.  Instead, the Fourth Circuit has applied the class-based animus requirement to § 1985 without making any distinction for the "support or advocacy clause."  It is true that these Fourth Circuit cases did not decide "support or advocacy clause" claims.  Most of the Fourth Circuit cases are based on the first two clauses of § 1985(3).  However, the Fourth Circuit has not yet issued any decision narrowing the scope of its requirement that § 1985 conspiracies include a class-based animus element.

Plaintiffs allege that "Defendants' approach contradicts precedent rejecting extra-textual, one-size-fits-all approaches to Section 1985," citing *Kush v. Rutledge*, 460 U.S. 719, 724 (1983). (Resp., ECF No. 50 at 20).  But *Kush* does not support Plaintiffs' proposition.  The cited text merely explains that § 1985 "outlaw[s] five broad classes of conspiratorial activity," namely: "(a) the performance of official duties by federal officers; (b) the administration of justice in federal courts; (c) the administration of justice in state courts; (d) the private enjoyment of 'equal protection of the laws' and 'equal privileges and immunities under the laws"; and (e) the right to support candidates in federal elections."  *Kush*, 460 U.S. at 724.  Plaintiffs cite no controlling authority to preclude the class-based animus requirement because there is none.

Plaintiffs have not even attempted to allege that Defendants' conduct was motivated by the "specific, class-based, invidiously discriminatory animus" that the Fourth Circuit found necessary in *Thomas*, 841 F.3d at 637.  Nor is there any basis in fact or law to believe that Plaintiffs could indeed demonstrate such class-based animus.  Accordingly, their § 1985 claim should be dismissed for failure to state a claim.  *See Polidi*, 226 F. Supp. 3d at 622.

**D.**     **The Allegedly Defamatory Reports Do Not Mention the Individual Plaintiffs By Name and Are Otherwise Not Actionable As a Matter of Virginia Law**.

**1.**     **The Complaint does not allege that Defendants published any statements, defamatory or otherwise, about any of the individual named Plaintiffs**.

Plaintiffs cannot dispute that the Reports did not specifically identify any individual Plaintiff and therefore cannot be construed as being "about the plaintiff."  *See Moore v. PYA Monarch, LLC*, 238 F. Supp. 2d 724, 728 (E.D. Va. 2002).  In an effort to circumvent this fatal deficiency in their defamation claim, Plaintiffs assert that Defendants' argument "is exceedingly formalistic, defies common sense, and would create a gaping loophole for defamation . . . ." (Resp., ECF No. 50 at 33).  And yet, it is Plaintiffs' interpretation of defamation law that stretches the bounds of reason.

16

Every single defamation case cited by Plaintiffs addressed statements directed at an individual by name.  *See Schnupp v. Smith*, 249 Va. 353, 357–58, 457 S.E.2d 42, 44 (1995) (affirming jury verdict finding defamatory a statement insinuating that the plaintiff by name was somehow involved in the sale or purchase of drugs); *Carwile v. Richmond Newspapers*, 82 S.E.2d 588, 589–90 (Va. 1954) (statement naming plaintiff and then insinuating that a purported violation of attorneys' ethical code could lead to disbarment raised a "reasonable implication" that plaintiff had engaged in unethical or unprofessional conduct); *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 43-44, 670 S.E.2d 746, 749 (2009) (discussing whether statements directly naming the plaintiff were statements of fact or opinion); *Hatfill v. New York Times Co.*, 416 F.3d 320, 324–25 (4th Cir. 2005) (plaintiff adequately pleaded a defamation cause of action based on statements that specifically identified the plaintiff as a main suspect in anthrax mailings which resulted in deaths).

While the case law is clear that an imputation or inference can constitute defamation, the case law is equally clear that there must be a specific mention of or identification of the allegedly defamed individual.  Such a specific mention is entirely lacking from the Reports at issue here. And while "Defendants' spin on the Reports . . . is not a consideration at the motion to dismiss stage" (Resp., ECF No. 50 at 35), Plaintiffs' "spin on the Reports" most certainly should be considered at this stage.  Specifically, where the plain content of the Reports conflicts with or contradicts Plaintiffs' allegations, this Court is not required to accept the truth of Plaintiffs' allegations.  *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013) ("When addressing the appropriateness of dismissal . . ., we consider exhibits attached to the complaint in addition to the complaint itself.  In the event of

conflict between the bare allegations of the complaint and any exhibit attached to the complaint, the exhibit prevails.") (internal citations, quotation marks, and alterations omitted).

**2.**    **The Complaint does not allege sufficient facts to establish that Defendants published the Reports with the requisite intent**.

Plaintiffs' intent allegations remain deficient, cursory, and formulaic, and this Court is not required to accept them as true.  *See Iqbal*, 556 U.S. at 678 ("[A]llegations … [that] are conclusory [are] 'not entitled to be assumed true.'").  Plaintiffs make only one concrete factual allegation to support those cursory and formulaic assertions, and even that allegation does not support their assertion.  (Compl. ¶ 33).  To bolster their intent allegations, Plaintiffs assert that the "Complaint likewise alleges that media reports highlighted the falsity of Defendants [sic] accusations."  (Resp., ECF No. 50 at 37).  In support of this assertion, Plaintiffs cite the following allegations of the Complaint: "On information and belief, critical media reports made Defendants further aware of the methodological shortcomings in [the First Report] after its release.  Virginia election officials also informed Defendants of the methodological deficiencies of [the First Report] before [the Second Report] was published."  (Compl. ¶ 34).  But certainly a wide gap exists between alleged falsity of information and alleged methodological deficiencies of an investigation.  The Complaint does not allege what Plaintiffs now assert that it alleges.

**3.**    **Plaintiffs' defamation claim should be dismissed pursuant to Virginia's anti-SLAPP statute, Virginia Code § 8.01-223.2.**

Defendants are fully entitled to immunity under Virginia's anti-SLAPP statute.  In fact, the Reports constitute precisely the kind of speech the statute was intended to insulate.  Plaintiffs rely on faulty logic in a circuit court opinion letter to assert that the protections of the anti-SLAPP statute were not available to Defendants at the time the Reports were published.  (Resp., ECF No. 50 at 37) (citing *Will Nesbitt Realty, LLC v. Jones*, CL-2016-14234, 2018 Va. Cir. LEXIS 66, at *41–44 (Va. Cir. Ct. Apr. 30, 2018).)  That opinion letter is neither precedential

nor persuasive.  There, the Circuit Court of the Nineteenth Judicial Circuit of Virginia found that the version of the anti-SLAPP statute in effect on the date the allegedly defamatory statement was published—in other words, on the date the defamation cause of action accrued—was the applicable version.   The *Nesbitt* court reasoned that an affirmative defense "accrues" simultaneously with the cause of action.  This reasoning completely ignores the fact that an affirmative defense applies only to the lawsuit in which a cause of action is asserted.  For example, by its very nature, a statute of limitations affirmative defense does not exist at the time a cause of action accrues.  Instead, it is the filing of a lawsuit after the statute of limitations has elapsed that gives rise to the affirmative defense.  The anti-SLAPP statute is triggered only by the filing of the defamation lawsuit.  In this case, that occurred on April 12, 2018, long after the Virginia anti-SLAPP statute was expanded to cover defamation lawsuits.

The anti-SLAPP statute directly applies to this case because the Reports at issue concern quintessentially protected speech.  *See Gazarkiewicz v. Town of Kingsford Heights, Indiana*, 359 F.3d 933, 941 (7th Cir. 2004) ("[M]ost people would likely have an interest in the possible incompetence of public officials.   Speech that seeks to expose improper operations of the government or questions the integrity of governmental officials clearly concerns vital public interests. . . .  Furthermore, the flyer relates those inefficiencies to a matter at the core of our constitutional system: democratic elections.") (internal citations and quotation marks omitted).  Although Plaintiffs attempt to draw attention away from what the Reports actually highlight— the integrity of elections—their attempt fails because Plaintiffs attach the Reports to the Complaint, and the plain text of the Reports controls this Court's analysis.

The very purpose of the anti-SLAPP statute upon which Defendants have based their Rule 12(b)(6) Motion to Dismiss is the First Amendment.  *See* Va. Code § 9.01-223.2(A)

(protecting a person from civil liability for a defamation claim based on statements "regarding matters of public concern that would be protected under the First Amendment to the United States Constitution").  In support of their Rule 12(b)(6) Motion to Dismiss, Defendants argued that they "have a First Amendment right to engage in speech" related to the integrity of elections in the United States, as "an issue of great public concern."  (Mot. at 26).  Indeed, "[o]ne of the fundamental rights secured by the First Amendment is that of free uncensored expression," particularly in the context of political speech like the Reports.  (*Id.* at 27).  In its *amicus* brief in support of Defendants, the Landmark Legal Foundation emphasized these First Amendment Concerns.  According to Plaintiffs' Opposition, however, "Landmark argues that Defendants actions were protected by the First Amendment, an argument not made by Defendants."  (Resp., ECF No. 50 at 13 n.1).  This is demonstrably incorrect.

### III.   CONCLUSION

Plaintiffs' Opposition cites no specific factual allegations and cites no authority that would allow their Complaint to survive Defendants' motion to dismiss for lack of standing and for failure to state any claim upon which relief could be granted.  Plaintiffs' Complaint therefore should be dismissed in its entirety.

Dated: June 18, 2018                    Respectfully submitted,


                                        PUBLIC INTEREST LEGAL FOUNDATION
                                        and J. CHRISTIAN ADAMS

                                        By */s/ Michael J. Lockerby*
                                              Counsel

                                        Michael J. Lockerby (VA Bar No. 24003)
                                        Eli L. Evans (*pro hac vice* motion forthcoming)
                                        FOLEY & LARDNER LLP
                                        Washington Harbour
                                        3000 K Street, N.W., Suite 600
                                        Washington, D.C. 20007-5109
                                        Telephone:  202-945-6079
                                        Facsimile:  202-672-5399
                                        Email: mlockerby@foley.com
                                        Email: eevans@foley.com


                                        William E. Davis (admitted *pro hac vice*)
                                        Ana Romes (admitted *pro hac vice*)
                                        FOLEY & LARDNER LLP
                                        One Biscayne Tower
                                        2 South Biscayne Boulevard, Suite 1900
                                        Miami, Florida 33131
                                        Telephone:  305-482-8404
                                        Facsimile:  305-482-8600
                                        Email: wdavis@foley.com
                                        Email: aromes@foley.com

                                        Counsel for Defendants

4815-1408-2410.3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 18th day of June, 2018, I electronically filed the foregoing

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) MOTION**

**TO DISMISS** with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to all counsel of record, including:

Anisa A. Somani, Esq.
Nicole M. Cleminshaw, Esq.
Geoffrey M. Wyatt, Esq.
Sean M. Tepe, Esq., Esq.
Lauren A. Eisenberg, Esq.
Samuel Levo, Esq.
Andrew Hanson, Esq.
SKADDEN ARPS SLATE MEAGHER & FLOM
1440 New York Avenue, N.W.
Washington, D.C. 20005

Allison Riggs, Esq.
Jacklyn Maffetore, Esq.
SOUTHERN COALITION FOR SOCIAL JUSTICE
1415 West Highway 54, Suite 101
Durham, North Carolina 27707

Cameron Kistler, Esq.
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Avenue, N.W. # 163
Washington, D.C. 20006

Larry Schwartztol, Esq.
PROTECT DEMOCRACY PROJECT
10 Ware Street
Cambridge, Massachusetts 02138

Andrew G. Celli, Jr., Esq.
Alanna Kaufman, Esq.
EMERY CELLI BRINCKERHOFF & ABADY LLP
600 Fifth Avenue at Rockefeller Center
10th Floor
New York, New York 10020

1

*/s/ Michael J. Lockerby*
Michael J. Lockerby (VA Bar No. 24003)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone:  202-945-6079
Facsimile:  202-672-5399
Email: mlockerby@foley.com

Counsel for Defendants

2