UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS - RICHMOND REGION COUNCIL 4614, ELIUD BONILLA, LUCIANIA FREEMAN, and ABBY JO GEARHART, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 1:18cv423 (LO/IDD) ) ) |
| PUBLIC INTEREST LEGAL FOUNDATION and J. CHRISTIAN ADAMS, | ) ) ) |
| Defendants and . Third-Party Plaintiffs, | ) ) ) ) |
| v. | ) ) |
| VIRGINIA DEPARTMENT OF ELECTIONS, | ) ) ) |
| Third-Party Defendant. | ) ) |

**DEFENDANTS' ANSWER,**
**<u>AFFIRMATIVE DEFENSES, AND THIRD-PARTY COMPLAINT</u>**

Defendants, Public Interest Legal Foundation ("PILF") and J. Christian Adams ("Mr. Adams"), by counsel, respectfully state as follows for their answer and affirmative defenses to the Complaint filed by Plaintiffs League of United Latin American Citizens - Richmond Region Council 4614 ("LULAC – Richmond"), Eliud Bonilla ("Mr. Bonilla), Luciania Freeman ("Ms. Freeman"), Abby Jo Gearhart ("Ms. Gearhart"), and Jeanne Rosen ("Ms. Rosen"),[1] and for their Third-Party Complaint against the Virginia Department of Elections (the "Department").

Although the Complaint purports to be about protecting voting rights, its purpose and effect are actually to seek to deprive PILF, Mr. Adams, and others from exercising their most fundamental freedoms under the Bill of Rights: the right of free speech and the right to petition the government protected by the First Amendment.  PILF, Mr. Adams, and other concerned citizens[2] who helped PILF gather information for the reports that Plaintiffs characterize as "threatening" and "intimidating" have the right—under both the Constitution and under a federal statute, the National Voter Registration Act (the "NVRA")—to obtain the public records cited and referenced in *Alien Invasion* and *Alien Invasion II* (collectively, the "Reports").  When they drafted and published the Reports, Defendants had every right to rely upon the accuracy of these public records.  The public records that Defendants obtained pursuant to the NVRA expressly state as follows with respect to thousands of individuals who had previously cast ballots in elections across the Commonwealth of Virginia: "Cancellation - Declared Non-Citizen."[3]  Before

---

[1] On August 23, 2018, Ms. Rosen filed a Notice of Voluntary Dismissal. (Dkt. #64).  On August 24, 2018, the Court dismissed Ms. Rosen's claims without prejudice. (Dkt. #65).  Like the other named Plaintiffs, Ms. Rosen had no legitimate basis for asserting claims against PILF and Mr. Adams in the first place.  The claims of the remaining Plaintiffs (LULAC – Richmond, Mr. Bonilla, Ms. Freeman, and Ms. Gearhart) should similarly be dismissed—with prejudice—for the reasons set forth herein.

[2] Ironically, one of these concerned citizens is a partner in the lead law firm that filed suit on behalf of Plaintiffs, Skadden, Arps, Slate, Meagher & Flom LLP.

[3] *See* VERIS Cancellation Reports for Non-citizen Registrants attached as **<u>Exhibit A</u>**.

publishing the Reports, Defendants had no way of verifying the accuracy of the public records provided by registrars of cities and counties across Virginia without contacting each of the voters named—conduct that Plaintiffs and the advocacy groups that procured their involvement in this litigation no doubt would have characterized as threatening and intimidating. More importantly for purposes of Plaintiffs' Complaint and Defendants' Third-Party Complaint, PILF did in fact seek to verify the accuracy of the public records that it had obtained. In response to these efforts, the former Commissioner of the Virginia Department of Elections himself stated that the public records referenced in the Reports in fact show what they purport to show: the names of voters whose registrations were cancelled because these individuals previously reported that they were not citizens of the United States and then failed to affirm their citizenship. In an April 4, 2017, email to Noel Johnson, an attorney at PILF, Edgardo Cortés—who was at the time Commissioner of the Virginia Department of Elections—wrote:

> This report shows individuals that were cancelled due to self-reported non-citizen status and failed to complete an affirmation of citizenship in the allotted time frame and continue to be in cancelled status. If an individual was previously cancelled and then subsequently affirmed citizenship and was re-registered, they would no longer appear on this report because they would now be on active status.[4]

If the Reports upon which the Complaint is based in fact identified formerly registered voters whose registrations were not properly cancelled due to their citizenship status, the fault lies with the government officials responsible for maintaining the voter registration rolls—not with Defendants. In their zeal to sign up plaintiffs to bring this litigation, certain advocacy groups paid no attention to what the voter registration records at issue actually said. For example, PILF received the October 6, 2017 correspondence from former Plaintiff Ms. Rosen

---

[4] *See* April 4, 2017 email from Edgardo Cortés on the subject "Response to records request" attached as **Exhibit B**.

attached as **Exhibit C** that began by stating that "I received a call from the Southern Coalition for Social Justice advising me that my name was listed in the Alien Invasion Report 2 along with my personal information claiming I am most likely not an American citizen and that I voted illegally. That is an absolute lie."  What was in fact an "absolute lie" is the statement attributed to the Southern Coalition for Social Justice that PILF had published a report claiming that Ms. Rosen was "most likely not an American citizen and … voted illegally."  Ms. Rosen's name never appeared in the public records accompanying PILF's reports that identified various former voters on the list of those identified as now ineligible to vote due to "Cancellation - Declared Non-Citizen."  That fact did not stop Plaintiffs' counsel at the Southern Coalition for Social Justice from claiming otherwise in the Complaint to which—until Friday of last week—Ms. Rosen was a party.

As for the remaining individual Plaintiffs, not a single one has been "defamed" by Defendants' publications.  Nor have any members of LULAC–Richmond, which has been unable to identify a single sentence that even mentions Latinos in general or members of LULAC–Richmond in particular.  Plaintiffs simply cannot meet their burden of proving falsity.  The Reports contained truthful accounts of what Virginia public records showed and what the consequences were—or at least should be—if non-citizens sought to cancel out the votes of lawful U.S. citizens by voting illegally.  Publishing the information contained in these public records and advocating that our country's laws be enforced is not intimidating or threatening by any objective measure.  Rather, it is protected free speech activity by concerned citizens petitioning their government to enforce laws designed to keep aliens off of voter registration rolls and to prevent non-citizens from voting.  Nowhere in any of its Reports has PILF ever sought to introduce the ethnicity or country of origin of alien voters into the debate.  Just how misplaced

Plaintiffs' efforts to do so are is demonstrated by the prosecution of non-citizens for illegally

voting in North Carolina that was commenced on August 14, 2018—shortly before Ms. Rosen

was dismissed as a plaintiff. The charging documents in that prosecution, copies of which are

attached as **Exhibit D**, named nineteen defendants from every continent except Australia and

Antarctica: four from Mexico, two from Haiti, two from the Dominican Republic, and one each

from Italy, Grenada, Korea, Guyana, Germany, Poland, Japan, El Salvador, Panama, Nigeria,

and the Philippines. The incendiary efforts of Plaintiffs to introduce race and ethnicity into this

litigation are inappropriate and unfounded.

For the reasons that follow, Defendants respectfully request that Plaintiffs' Complaint be

dismissed with prejudice, that Defendants be awarded their costs and attorneys' fees for being

put to the expense of defending such baseless claims, and that the Department responsible for

maintaining the voting records at issue be required to indemnify Defendants if any statements in

the public records that Defendants published can be proven inaccurate.

**COMPLAINT:**

### INTRODUCTION

**1.     In our democracy, all eligible Americans must be able to participate
in elections, free from unlawful interference or impediments. For
generations, this country has fought to secure the right for all eligible
Americans to vote in our elections free from intimidation or threats.
Protecting these hard-won rights requires steady vigilance, as the techniques
used to intimidate or otherwise suppress the participation of voters evolves
over time. This case concerns one modern form of voter intimidation: the
groundless assertion that certain eligible voters are committing voter fraud
by participating in elections. Such accusations are almost invariably
unfounded in fact; overwhelming evidence demonstrates that actual
instances of voter fraud are vanishingly infrequent.[5]**

---

[5]   *See, e.g.,* Justin Levitt, *A Comprehensive Investigation of Voter Investigation of Voter
Impersonation Finds 31 Credible Incidents Out of One Billion Ballots Cast,* WASHINGTON POST
(Aug. 6, 2014), https://www.washingtonpost.com/news/wonk/wp/2014/08/06/a-comprehensive-

5

4820-6961-9824.4

**ANSWER:**

Defendants admit that all eligible Americans should be able to participate in elections but deny that non-citizens have the same right as U.S. citizens to register to vote and vote.  On the contrary, it is in fact a felony for non-citizens to participate in U.S. elections.  The public records that Defendants obtained pursuant to the NVRA, as verified by the Department, name thousands of voters in Virginia who were removed from the voter registration rolls because they themselves had identified themselves as non-citizens.  The fact that a partisan opinion columnist in *The Washington Post* chose not to rely upon such records to reach a different conclusion does not change what the public records at issue say.  By truthfully reporting what the public records show and the logical inferences to be drawn from such records, Defendants did not engage in any form of voter intimidation, "modern" or otherwise.  Rather, they engaged in the exercise of their First Amendment rights of free speech rights and to petition the government—rights that Plaintiffs seek to suppress by asserting baseless claims of voter intimidation in the name of "social justice."  Except as expressly admitted herein, deny the allegations of Paragraph 1 of Plaintiffs' Complaint.

**COMPLAINT:**

> **2.      Spurious accusations of voter fraud cause real harm – both to the accused individuals and to our broader democracy. Plaintiffs in this case include four Virginia voters accused by Defendants of committing state and federal felonies by participating in the electoral process. These private citizens did not seek the public limelight or political power; they merely wished to exercise their fundamental right to participate in our elections. The false accusations leveled against them –  now archived on the internet for the general public to see and further disseminate – give rise to a variety of harms to these individuals that have the effect of intimidating them from voting or registering to vote.**

---

investigation-of-voter-impersonation-finds-31-credible-incidents-out-of-one-billion-ballots-cast/?tid=a_inl&utm_term=.72b02eea461a.

**ANSWER:**

Defendants deny that they made "spurious accusations" by truthfully reporting what voter registration records show and by truthfully stating that it is a felony for non-citizens to register to vote or vote. By publishing the Reports and advocating enforcement of the laws that prohibit non-citizens from voting, Defendants merely exercised their fundamental rights under the First Amendment to engage in free speech and petition the government. The only intimidation that has been attempted in this case involves the efforts by Plaintiffs to use the expense of litigation and inflammatory references to the Ku Klux Klan to try to silence those with whom they disagree. Defendants have not done or said anything that could reasonably be construed as seeking to intimidate participation in the electoral process by those who are lawfully entitled to do so. Except as expressly admitted herein, Defendants deny the allegations of Paragraph 2 of Plaintiffs' Complaint

**COMPLAINT:**

> **3. This is the kind of insidious modern technique of voter intimidation that civil rights laws are intended to eradicate. These false accusations are also the sort of assaults on Plaintiffs' reputations that the law has long recognized as defamation. Likewise, this form of voter intimidation affects the work of the organizational Plaintiff in this case, League of United Latin American Citizens – Richmond Region Council 4614, and the voting behavior of its members and the Latino community it serves.**

**ANSWER:**

Defendants deny that they have engaged in voter intimidation and that civil rights laws are intended to eradicate First Amendment rights. Defendants deny having made any false accusations about Plaintiffs. Defendants also deny that the law of defamation prohibits the publication of and truthfully reporting about the contents of public records. The Reports at issue do not mention Latinos and actually advocate for protection of the voting rights of millions of Latinos nationwide who are U.S. citizens and therefore are eligible to vote—unlike the thousands

7

of Virginia residents who, according to public records based upon information provided by voters themselves, were not entitled to register to vote or vote without being guilty of a felony. The stated purposes of LULAC – Richmond do not include participation in the electoral process by those who are not eligible to so do because they are not U.S. citizens.  Answering further, Defendants admit only that LULAC – Richmond is a plaintiff in this case. Defendants deny, however, that LULAC – Richmond has standing to assert the claims alleged.   Except as expressly admitted herein, Defendants deny the allegations of Paragraph 3 of Plaintiffs' Complaint.

## COMPLAINT:

**4.    The Defendants are the Public Interest Legal Foundation and J. Christian Adams. Together, Defendants and others conspired to release two so-called "bombshell" exposés— which were publicized to media across the country, published on the internet, shared on social media, and subsequently submitted to the Presidential Advisory Commission on Election Integrity ("Presidential Commission")—that alleged that specific, named Virginians committed felony voter fraud and should be prosecuted.**

## ANSWER:

Defendants admit that the Public Interest Legal Foundation and J. Christian Adams are named defendants in this suit.  Defendants deny that the exercise of their First Amendment rights of free association, free speech, and petition is actionable as a "conspiracy."   To the contrary, Defendants had every right under the First Amendment to publish the Reports, publicize them to the media, post them on the Internet, share them on social media, provide them to the government, and submit them to the Presidential Commission.  Plaintiffs' efforts to intimidate Defendants and others from exercising their First Amendment rights represent an abuse of process.  Except as expressly admitted herein Defendants deny the allegations of Paragraph 4 of Plaintiffs' Complaint.

4820-6961-9824.4

**COMPLAINT:**

> **5.      Defendants gave their first supposed "exposé" the provocative and threatening title of *"Alien Invasion in Virginia ("Alien Invasion I"*). The report stated that over a thousand individuals had *"registered to vote illegally"* in Virginia. Ex. A, at 2 (italics and bold in original)6. The report then went on to list many of those purported felons' names and home addresses, and, in some cases, even their *home phone numbers,* in the report's exhibits (see Exhibits 1 and 7 to the report). This report and associated voter information is still available online.**

**ANSWER:**

Defendants admit that *Alien Invasion in Virginia* (the "First Report") is attached to the

Complaint as Exhibit A but deny that there is anything "threatening" about the title.  If anything,

the First Report relies on humor and satire to make a point.  To the extent that the title provoked

public discourse about the enforcement (or lack thereof) of voting laws, Defendants state that

being "provocative" is legitimate, healthy debate protected by the First Amendment.  Answering

further, Defendants state that the public records referenced in and hyperlinked to the Reports

contain the information required by the NRVA as enacted by Congress to be included.  The

public records that Defendants published did not contain any information in which individual

voters have a reasonable expectation of privacy according to the Fourth Circuit.  To the extent

that the Reports and the public records attached as exhibits remain available online, they should

be.  Plaintiffs' attempt to use this litigation to squelch the dissemination of facts that they would

prefer be kept hidden from the public is improper, as is their effort to silence opinions with

which they disagree.  To the extent that Paragraph 5 of Plaintiffs' Complaint attempts to

characterize the First Report, Defendants state that the written document is the best evidence of

its contents.  Expect as expressly admitted herein, Defendants deny the allegations of Paragraph

5 of Plaintiffs' Complaint.

---

6  Names, except those of Plaintiffs, and personal information of individuals listed in the exhibits to this complaint have been redacted.

**COMPLAINT:**

6.      The next supposed "exposé" kept the threatening moniker—this time dubbed *Alien Invasion II*—and expanded Defendants' false assertions that certain Virginians were committing specific instances of felony voter fraud. *See* Ex. B (*"Alien Invasion II"*).  For example, *Alien Invasion II* accused hundreds of named residents of Prince William County of committing felony voter fraud, suggesting that the United States Department of Justice "has done nothing about the felonies *committed* by 433 suspected aliens registered in Prince William County alone." Ex. B, at 6 (italics added, bold in original). The report accuses 1,852 Virginia voters of being "illegal registrants" who cast nearly 7,500 ballots by voting "in elections dating back to 1988" and thereby committing "felonies upon felonies." Ex. B, at 1, 3 (bold in original). And, once again, Defendants published the names, home addresses, telephone numbers, and, in some cases, social security numbers of these individuals. This report and associated voter information is also still available online.

**ANSWER:**

Defendants admit that *Alien Invasion II* (the "Second Report") is attached to the Complaint as Exhibit B but deny that its title is "threatening" to anyone except those opposed to free speech and the right of citizens to petition their government to enforce laws that prevent aliens from registering to vote and voting.  To the extent that Paragraph 6 of Plaintiffs' Complaint attempts to characterize the First Report, Defendants state that the written document is the best evidence of its contents, but Paragraph 6 does accurately quote excerpts from the Second Report. Defendants hereby incorporate by reference their Answer to Paragraph 5 of Plaintiffs' Complaint.  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 6 of Plaintiffs' Complaint.

**COMPLAINT:**

7.      Defendants' "exposés" are predicated on specific, harmful falsehoods about numerous individuals made without due diligence to confirm the accuracy of the accusations. Defendants base their allegations that certain individuals committed felony voter fraud on the fact that those citizens were removed from the voting rolls for *potentially* being non-citizens.  But, as Virginia elections officials have repeatedly emphasized to the Defendants, U.S. citizens can be removed from the voting rolls for various reasons— including routine paperwork errors. Thus, Defendants' repeated allegations

10

**that certain Virginians were non-citizens and repeat felons were based on a demonstrably false proposition—of which Defendants were fully aware. Subsequent media investigations have conclusively demonstrated that Defendants falsely implied that scores of constitutionally eligible Virginians committed multiple voter fraud felonies.**

**ANSWER:**

Defendants deny that the Reports are predicated upon falsehoods.  To the contrary, the Reports truthfully report the contents of public records that—according to the Commissioner of the Virginia Department of Elections at the time—identify voters whose registrations were cancelled based on information that the individual voters themselves provided to state and local officials. The fact that certain unnamed "Virginia elections officials" later disagreed with Defendants' conclusions does not change the fact that Defendants had every right to obtain, disseminate, and comment upon the public records at issue.  Although Paragraph 7 does not identify the subsequent "media investigations" to which it is referring, Defendants deny knowledge of any such investigations that have "conclusively demonstrated" the falsity of any statements in the Reports.  Defendants were never informed that any of the government records were inaccurate. Except as expressly admitted herein, Defendants deny the allegations of Paragraph 7 of Plaintiffs' Complaint.

**COMPLAINT:**

**8.     These reckless allegations risk serious harm to the reputations of innocent Virginians. In the age of the internet, Google, and social media, where these reports remain easily accessible, even being *accused* of a felony can have life-altering economic, emotional, and social consequences.**

**ANSWER:**

Defendants deny that they have made any "reckless" allegations.  To the extent that this case involves any "reckless" allegations, it is the allegation that the publication of records that the NVRA requires be made available to the public somehow represents voter intimidation.  If the

public records contain any inaccurate information, it is incumbent upon the elections officials

who maintain such records to correct them.  If Plaintiffs were sincerely interested in preventing

"harm to the reputations of innocent Virginias," they would focus their efforts on correcting any

records that they know or believe to be inaccurate rather than using litigation to attempt to "shoot

the messenger."  Except as expressly admitted herein, Defendants deny the allegations of

Paragraph 8 of Plaintiffs' Complaint.

## COMPLAINT:

> **9.    Defendants' ongoing defamation campaign is a modern, covert, and particularly insidious method of voter intimidation.  An objectively reasonable individual named in either of the reports, or fearful of being wrongly named in future reports, would simply not register or vote again because the benefit from doing so would not outweigh the significant potential risk that the voter would be a continued target of Defendants' ongoing and intensifying defamation campaign that could have devastating effects on their careers and personal lives, or make them susceptible to harassment by "ballot security" activists7 (who now have access to their contact information by virtue of these published reports).**

## ANSWER:

Defendants deny having engaged in defamation or voter intimidation.  Defendants further deny

that an objectively reasonable individual would be deterred from registering to vote or voting

based on anything contained in the Reports.  Because the public records cited in the Reports are

based upon information that individual voters provided, an objectively reasonable individual

would seek to correct any errors in these public records so that any such individual who is a U.S.

citizen lawfully entitled to vote can in fact register to vote and vote.  Except as expressly

admitted herein, Defendants deny the allegations of Paragraph 9 of Plaintiffs' Complaint.

---

[7]  These are individuals who engage in various activities, including challenging voters at polls, that in certain instances have been alleged to suppress or interfere with voting rights. *See generally* Wendy Weiser and Vishal Agraharkar, *Ballot Security and Voter Suppression: What It Is and What the Law Says,* Brennan Center for Justice (Aug. 29, 2012), https://www.brennancenter.org/publication/ballot-security-and-voter-suppression.

**COMPLAINT:**

    **10.    Defendants' conduct violates both federal and state law. The reckless and false allegations that specific, named individuals committed felonies constitute textbook cases of per se defamation under Virginia law. Defendants' defamation campaign also violates both the Voting Rights Act, *see* 52 U.S.C. § 10307, and the Ku Klux Klan Act, *see* 42 U.S.C. § 1985(3), because it intimidates constitutionally eligible voters, like Plaintiffs, into not exercising their right to vote.**

**ANSWER:**

Paragraph 10 of Plaintiffs' Complaint is a legal conclusion to which no response is required.  To the extent that any response is deemed required, Defendants deny the allegations of Paragraph 10 of Plaintiffs' Complaint.   Answering further, Defendants specifically deny that they have violated federal and state law, deny that they have made reckless and false allegations, deny that they have engaged in defamation, deny that they have violated the Voting Rights Act and Ku Klux Klan Act, and deny that they have intimidated constitutionally eligible voters, into not exercising their right to vote.   Except as expressly admitted herein, Defendants deny the allegations of Paragraph 10 of Plaintiffs' Complaint.

**COMPLAINT:**

    **11.    Plaintiffs have not sought notoriety or attention or high office or to wield public power.  They simply want the same unfettered right to participate in our democracy free from harassment or intimidation that our country guarantees to every eligible voter. They bring this suit to redress the injuries they personally have suffered, to ask the court to stop Defendants' continuing violations of the law, and to deter Defendants and others from this insidious form of voter suppression in the future.**

**ANSWER:**

Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 11 of Plaintiffs' Complaint.   Answering further, Defendants deny that they have engaged in any voter intimidation, harassment, or suppression or that they have engaged in any violations of the law.

4820-6961-9824.4

**COMPLAINT:**

**PARTIES**

**12.     Plaintiff League of United Latin American Citizens – Richmond Region Council 4614 ("LULAC") is a membership-based organization that works to advance the economic condition, educational attainment, political influence, health, housing, and civil rights of the Latino population of the city of Richmond, Virginia, and the surrounding area, including Hannover, Henrico, and Chesterfield counties, as well as the Tri-Cities area, which is comprised of the cities of Colonial Heights, Petersburg, Chester and Hopewell.   As part of its mission, LULAC engages in a wide variety of political participation initiatives, including voter registration and voter outreach and education efforts.**

**ANSWER:**

Defendants are without sufficient information or knowledge to admit or deny the allegations of

Paragraph 12 of Plaintiffs' Complaint.

**COMPLAINT:**

**13.     Plaintiff Eliud Bonilla is a current resident of the state of Maryland who resided and voted in Herndon, Virginia, from 1999 until 2013. He is of Puerto Rican descent. Mr. Bonilla is a citizen born in Brooklyn, New York and has been a regular voter his entire adult life.**

**ANSWER:**

Defendants are without sufficient information or knowledge to admit or deny the allegations of

Paragraph 13 of Plaintiffs' Complaint.   Answering further, Defendants state that—according to

Virginia elections officials—Mr. Bonillia's voter registration was canceled based on information

that he provided indicating that he was not a U.S. citizen who is lawfully entitled to vote.

**COMPLAINT:**

**14.     Plaintiff Luciania Freeman is a resident of Woodbridge, Virginia and a registered voter in Prince William County, Virginia.   She is African American.   Ms. Freeman is a citizen born in Fayetteville, North Carolina. She first registered to vote when she was 18 years old.**

**ANSWER:**

Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 14 of Plaintiffs' Complaint.  Answering further, Defendants state that—according to Virginia elections officials—Ms. Freeman's voter registration was canceled based on information that she provided indicating that she was not a U.S. citizen who is lawfully entitled to vote.

**COMPLAINT:**

     **15.**    **Plaintiff Abby Jo Gearhart is a resident of Barhamsville, Virginia, and a registered voter of New Kent County, Virginia.  Ms. Gearhart is a citizen; she was born in Newport News, Virginia, and has lived in Virginia her entire life.  She has been a regular voter in Virginia since she registered at age 18.**

**ANSWER:**

Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 15 of Plaintiffs' Complaint.  Answering further, Defendants state that—according to Virginia elections officials—Ms. Gearhart's voter registration was canceled based on information that she provided indicating that she was not a U.S. citizen who is lawfully entitled to vote.

**COMPLAINT:**

     **16.**    **Plaintiff Jeanne Rosen is a resident of Yorktown and a registered voter in York County, Virginia.  Ms. Rosen is a citizen born in Brooklyn, New York.  She first moved to Virginia and registered to vote in 2013 and remained in Virginia until moving to Kansas in 2014.  Ms. Rosen returned to the Commonwealth in 2016, and voted in the 2016 presidential election.**

**ANSWER:**

Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 16 of Plaintiffs' Complaint.  Answering further, Defendants state that—according to

4820-6961-9824.4

Virginia elections officials—Ms. Rosen's voter registration was canceled based on information that she provided indicating that she was not a U.S. citizen who is lawfully entitled to vote.

**COMPLAINT:**

> **17.    Defendant Public Interest Legal Foundation ("PILF") is a 501(c)(3) organization incorporated in the state of Indiana and has its principal place of business in Indianapolis, Indiana.**

**ANSWER:**

Defendants admit the allegations in Paragraph 17 of Plaintiffs' Complaint.

**COMPLAINT:**

> **18.    Defendant J. Christian Adams is President and General Counsel of PILF.   Mr. Adams also participated as a member of President Trump's recently disbanded Presidential Advisory Commission on Election Integrity. That Commission has been described by noted election-law expert Professor Richard L. Hasen as a "rogue's gallery of the country's worst voter suppressors."[8]   Even after the Presidential Commission was disbanded amidst multiple federal lawsuits, Mr. Adams publicly indicated his intention to continue his work on defamatory and intimidating "exposés" such as those at issue here.[9]   Mr. Adams resides in Alexandria, Virginia.**

**ANSWER:**

Defendants admit that Mr. Adams is President and General Counsel of PILF and that he participated as a member of the Presidential Advisory Commission on Election Integrity. Defendants admit that Professor Hasen made the statements attributed to him but deny that the statements are true.   To the contrary, they are defamatory.   Defendants further deny that Mr.

---

[8]   Richard L. Hasen, *Beyond Words: J. Christian Adams Appointed to Pence-Kobach Commission*, Election Law Blog (July 10, 2017), http://electionlawblog.org/?p=93726 (explaining that "it is hard to imagine a list of people less credible on the issue of voter fraud in the United States").

[9]   Hans von Spakovsky and J. Christian Adams, *The Obstruction of a Vital Election Integrity Commission,* WASH. EXAMINER (Jan. 9, 2018), http://www.washingtonexaminer.com/the-obstruction-of-a-vital-election-integrity-commission/article/264540I (continuing to tout the findings of the defamatory *Alien Invasion* reports and vowing that "we and others dedicated to protecting our democratic system will continue our work" performed as members of the commission).

4820-6961-9824.4

Adams has worked on any defamatory or intimidating "exposés" and further deny that he expressed any intention to do so in the future.  Defendants admit that Mr. Adams resides in Alexandria, Virginia.  Except as expressly admitted herein, Defendants deny the allegations in Paragraph 18 of Plaintiffs' Complaint.

**COMPLAINT:**

### JURISDICTION AND VENUE

**19.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331. Plaintiffs' claims under 42 U.S.C. § 1985(3) and Section 11(b) of the Voting Rights Act (codified at 52 U.S.C. § 10307) arise out of federal law.**

**ANSWER:**

Paragraph 19 of Plaintiffs' Complaint is a legal conclusion to which no response is required. Defendants admit that Plaintiffs have asserted claims arising under federal law but deny that the claims are valid.  Plaintiffs' allegations are sufficient, however, to confer federal subject matter jurisdiction.  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 19 of Plaintiffs' Complaint.

**COMPLAINT:**

**20.     This Court has supplemental jurisdiction over Plaintiffs' state law claim under 28 U.S.C. § 1367.**

**ANSWER:**

Paragraph 20 of Plaintiffs' Complaint is a legal conclusion to which no response is required. Defendants admit that Plaintiffs have asserted claims arising under state law but deny that the claims are valid.   Plaintiffs' allegations are sufficient, however, to confer supplemental jurisdiction.  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 20 of Plaintiffs' Complaint.

4820-6961-9824.4

**COMPLAINT:**

21.     This Court has personal jurisdiction over Defendant Adams as a resident of Virginia and over Defendant PILF under Virginia's long-arm statute, Va. Code § 80.1-328.1.  Venue is proper in this district pursuant to 28 U.S.C. § 1391.

**ANSWER:**

Paragraph 21 of Plaintiffs' Complaint is a legal conclusion to which no response is required.

Defendants admit that Mr. Adams is subject to personal jurisdiction in this Court and that venue

is proper in the Eastern District of Virginia.  Except as expressly admitted herein, Defendants

deny the allegations of Paragraph 21 of Plaintiffs' Complaint.

**COMPLAINT:**

**FACTUAL ALLEGATIONS**

22.     Defendants Adams and PILF conspired with each other and with non-party Virginia Voters Alliance ("VVA") to draft, publish and publicize *Alien Invasion I* and *Alien Invasion II*. As set forth below, the publication and dissemination of those reports violated the civil rights of Plaintiffs and defamed them.

**ANSWER:**

Defendants deny that they conspired with one another or with VVA to do anything unlawful and

specifically deny that publication and dissemination of the Reports violated the civil rights of

Plaintiffs and defamed them.   Defendants' further deny that their exercise of their First

Amendment rights is actionable under federal civil rights laws or as defamation.  Except as

specifically admitted herein, Defendants deny the allegations of Paragraph 22 of Plaintiffs'

Complaint.

4820-6961-9824.4

**COMPLAINT:**

**Defendants Make Their Initial False Allegations in a Report Entitled *"Alien Invasion I"***

**23.    *Alien Invasion I* was published in September 2016.[10]  Defendant PILF and non-party VVA were the named authors of the report. On information and belief, Defendant Adams participated in the drafting of the report. Defendant Adams participated in the publication and dissemination of the report through authoring articles and granting media interviews.[11]**

**ANSWER:**

Defendants admit the allegations in Paragraph 23 of Plaintiffs' Complaint.

**COMPLAINT:**

**24.    Defendants publicized *Alien Invasion I* to national media via press releases and postings on Facebook and Twitter.  Media outlets further disseminated the report's assertions to a broad audience.[12]**

**ANSWER:**

Defendants admit that they published *Alien Invasion I* to national media via press releases and postings on Facebook and Twitter.  Defendants are without sufficient information or knowledge to admit or deny the remaining allegations of Paragraph 24 of Plaintiffs' Complaint.  Except as specifically admitted herein, Defendants deny the allegations of Paragraph 24 of Plaintiffs' Complaint.

---

[10]  The report is available online at https://publicinterestlegal.org/files/Report_Alien-lnvasion-in-Virginia.pdf (last accessed April 11, 2018).

[11]  *See, e.g.,* J. Christian Adams, *Yes, Virginia, Aliens Are Registered or Voting ... and in Pennsylvania, by the Thousands*, PJ MEDIA (Oct. 3, 2016), https://pjmedia.com/jchristianadams/2016/l 0/03/yes-virginia-aliens-are-registered-and-voting-and-in-pennsylvania-by-the-thousands/.

[12]  *See, e.g.,* Neil W. McCabe, *Illegal Foreign Voting in Virginia Covered Up By Soros-Backed Democratic Officials, Says Report*, BREITBART NEWS (Oct. 2, 2016), http://www.breitbart.com/big-government/2016/10/02/virginia-illegal-voting-fraud-coverup/.

4820-6961-9824.4

**COMPLAINT:**

25. *Alien Invasion I* accuses the voters named in it of committing multiple, separate felonies, from illegally registering to vote to casting an ineligible ballot.

**ANSWER:**

Defendants deny the allegations of Paragraph 25 of Plaintiffs' Complaint.

**COMPLAINT:**

26. The report characterizes the existing voter registration system as an "ineffective honor system under which the alien need merely lie to get on the voter rolls." Ex. A, at 1. The report then asserts that Defendants and VVA had *"found 1046 aliens who registered to vote illegally."* Ex. A, at 2 (emphasis in original). The report explains that "[w]hen non-citizens register or actually vote, they violate both state and federal statutes because citizenship is a requirement to vote in both state and federal elections." Ex. A, at 3.

**ANSWER:**

Defendants admit that the First Report is attached to the Complaint as Exhibit A and further admit that Paragraph 26 of Plaintiffs' Complaint accurately gives excerpts from the First Report. Answering further, Defendants state that they accurately reported the contents of public records obtained pursuant to the NVRA and that they accurately stated the legal consequences of such public records. Indeed, the government records at issue identified individuals who had been "declared non-citizen." By publishing these government records, Defendants were engaged in the lawful exercise of their First Amendment rights. Except as expressly admitted herein, Defendants deny the allegations of Paragraph 26 of Plaintiffs' Complaint.

**COMPLAINT:**

27. *Alien Invasion I* purports to base its accusation that non-citizens have voted illegally on "list[s] of registrants who had been purged from the voter rolls because they were determined to not be U.S. citizens." Ex. A, at 6 (emphasis in original); *see also* Ex. A, at 12 ("This data is but a minor snapshot. ... It represents *non-citizen registrants. . .* and includes only those *non-citizens* that were *discovered to have been improperly registered. . .*" (emphasis added)).

4820-6961-9824.4

**ANSWER:**

Defendants admit that the First Report is attached to the Complaint as Exhibit A and further admit that Paragraph 27 of Plaintiffs' Complaint accurately quotes excerpts from the First Report.  Answering further, Defendants state that they accurately reported the contents of public records obtained pursuant to the NVRA and that they accurately stated the legal consequences of such public records.  By doing so, Defendants were engaged in the lawful exercise of their First Amendment rights.  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 27 of Plaintiffs' Complaint.

**COMPLAINT:**

28.    **The report asserts the discovery of multiple lists of non-citizen felons in the following Virginia counties:**

- **Alexandria.** *See* **Ex. A, at** 6 (**alleging that** "70 registrants ... had been removed from Alexandria's registration lists after they were determined to not be U.S. citizens" (**bold in original**)).

- **Bedford.** *See* **Ex. A, at** 8 (**stating county "provided a list of 35 non-citizens that had been removed from their voter rolls").**

- **Prince William.** *See* **Ex. A, at** 7 ("Prince William County provided a list of *433 non-citizens* who had registered to vote in the county, but were then removed after they were determined to not be U.S. citizens." (**bold and italics in original**)).

- **Roanoke.** *See* **Ex. A, at** 8 (**claiming county "provid[ed] a list of 22** alien registrants" (**bold in original**)).

**ANSWER:**

Defendants admit that the First Report is attached to the Complaint as Exhibit A and further admit that Paragraph 28 of Plaintiffs' Complaint accurately quotes excerpts from the First Report.  Answering further, Defendants state that they accurately reported the contents of public records obtained pursuant to the NVRA and that they accurately stated the legal consequences of such public records.  By doing so, Defendants were engaged in the lawful exercise of their First

21

Amendment rights.  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 28 of Plaintiffs' Complaint.

## COMPLAINT:

**29.    The report's exhibits then provide lists of the alleged felons by name. Plaintiff Luciania Freeman was listed in** *Alien Invasion I*, **along with her contact information, including address and phone number.** *See* **Ex. C (containing the page from the report's Exhibits 1 and 7 which lists Ms. Freeman).**

## ANSWER:

Defendants admit that Plaintiff Luciania Freeman is listed in public records obtained pursuant to the NVRA that comprise an exhibit to the First Report that is attached to Plaintiffs' Complaint as Exhibit C.  To the extent that Paragraph 29 of Plaintiffs' Complaint attempts to characterize the First Report or its exhibits, Defendants state that the written document is the best evidence of its contents. Except as expressly admitted herein, Defendants deny the allegations of Paragraph 29 of Plaintiffs' Complaint.

## COMPLAINT:

**30.    The clear implication of** *Alien Invasion I* **to an objectively reasonable reader is that Ms. Freeman, resident of Prince William County, and other listed individuals should not have registered or voted, and by doing so, committed felonies under state or federal law. The report states clearly:** "**The United States Attorney in Virginia has done nothing about the** *felonies committed by 433 aliens* **registering in Prince William County alone.**" **Ex. A, at 8 (italics added, bold in original));** *see also* **Ex. A, at 2 (claiming the discovery** of "*1046 aliens who registered to vote illegally*" **(bold and italics in original)).**

## ANSWER:

Defendants admit that the First Report is attached to the Complaint as Exhibit A and further admit that Paragraph 30 of Plaintiffs' Complaint accurately quotes excerpts from the First Report.  Answering further, Defendants state that they accurately reported the contents of public records obtained pursuant to the NVRA and that they accurately stated the legal consequences of

such public records.  By doing so, Defendants were engaged in the lawful exercise of their First

Amendment rights.  Except as expressly admitted herein, Defendants deny the allegations of

Paragraph 30 of Plaintiffs' Complaint.

## COMPLAINT:

> 31.     **Labeling the individuals named in the reports as non-citizens and therefore felons with reckless disregard for the truth of those accusations acts to intimidate and threaten those individuals and to deter them from voting or registering to vote. Indeed, Defendant Adams suggested to *Breitbart News* that these individuals should be prosecuted:**
>
> **"*When an alien registers to vote, it is a felony . . . .* When an alien votes, it is multiple felonies. DOJ under Obama has stopped enforcing this law. *We name the names of the registered voters removed from the rolls for citizenship problems. Will DOJ prosecute any of them?*"[13]**

## ANSWER:

Defendants admit that Mr. Adams is quoted in the online article published at the link provided in

Plaintiffs' Report.   To the extent that Paragraph 31 of Plaintiffs' Complaint attempts to

characterize the contents of the online article, Defendants state that the written document is the

best evidence of its contents.   Answering further, Defendants deny that Mr. Adams made the

statements attributed to him with reckless disregard for their truth or that he did so to intimidate

or threaten citizens who are lawfully entitled to vote from registering to vote or voting.  Except

as expressly admitted herein, Defendants deny the allegations of Paragraph 31 of Plaintiffs'

Complaint.

## COMPLAINT:

> 32.     **Defendants' felony accusations are false. The county registrar information relied on by Defendants and VVA does not establish that any particular voter is a not a citizen or that their conduct is felonious. The registrar lists simply establish that certain voters were removed from the**

---

[13]   Neil W. McCabe, *Illegal Foreign Voting in Virginia Covered Up By Soros-Backed Democratic Officials, Says Report*, BREITBART NEWS (Oct. 2, 2016) (emphasis added), http://www.breitbart.com/big-government/2016/10/02/virginia-illegal-voting-fraud-coverup/.

voting rolls, which Defendants know can occur for various reasons—including accidental failures to respond to government inquiries or routine paperwork errors. In fact, Plaintiff Freeman is a natural-born United States citizen and an eligible voter in the state of Virginia where she is registered. Hers was a case of paperwork error, in which a government official mistakenly believed that she was a non-citizen based on a Department of Motor Vehicles form. In going beyond what the registrar's information actually establishes and accusing people like Ms. Freeman of committing felonies, Defendants not only defame these individuals, but also intentionally intimidate and threaten these individuals and other potential voters to deter them from registering to vote and voting.

**ANSWER:**

Defendants deny the allegations of this Paragraph.

**COMPLAINT:**

33. On information and belief, before Defendants published *Alien Invasion I,* Virginia elections officials informed Defendants that they were drawing false conclusions from the registrar information and running the significant risk of wrongfully accusing constitutionally eligible voters of committing felony voter fraud. Despite these warnings, Defendants intentionally accused people like Ms. Freeman and others of committing felonies by registering to vote and voting.

**ANSWER:**

Defendants deny the allegations of this Paragraph.  No Virginia elections officials informed Defendants that they were drawing false conclusions from the registrar information and running the risk of wrongfully accusing constitutionally eligible voters of committing felony voter fraud.

**COMPLAINT:**

34. On information and belief, critical media reports made Defendants further aware of the methodological shortcomings in *Alien Invasion I* after its release.[14] [15] Virginia election officials also informed Defendants of the methodological deficiencies *of Alien Invasion I* before *Alien Invasion II* was published. *See* Ex. B, at 10.

---

[14]  *See* Peter Galuszka, *An Alien Invasion in the Old Dominion,* WASHINGTON POST (Oct. 10, 2016), https://www.washingtonpost.com/blogs/all-opinions-are-local/wp/2016/10/06/an-alien-invasion-in-the-old-dominion/?utm_term=.9aa4b72108fa.

[15]  The report is available online at https://publicinterestlegal.org/files/Alien-Invasion-II-FINAL.pdf (last accessed April 11, 2018).

4820-6961-9824.4

**ANSWER:**

Defendants deny the allegations of this Paragraph.  Answering further, Defendants state that the Commissioner of the Virginia Department of Elections confirmed Defendants' interpretation of the public records obtained pursuant to the NVRA before publication of the Second Report.  No Virginia election officials informed Defendants of any methodological deficiencies in the First Report before publication of the Second Report.

**COMPLAINT:**

> **Despite Notice of the Flaws in their Approach, Defendants Continued Their Defamation and Intimidation Campaign By Publishing _Alien Invasion II_**

> **35.     Less than one year after publishing _Alien Invasion I_, Defendants continued their campaign of defamation and intimidation with the publication of _Alien Invasion II_ in May of 2017.11 As the name suggests, _Alien Invasion II was_ intended to be a sequel to _Alien Invasion I._**

**ANSWER:**

Defendants admit only that they published the Second Report in May 2017 and that it was intended to be a sequel to the First Report.  Defendants deny the remaining allegations of Paragraph 35 of Plaintiffs' Complaint.

**COMPLAINT:**

> **36.     Again, Defendants worked to publicize _Alien Invasion II_ to national media via press releases and postings on Facebook and Twitter. Media outlets again further disseminated the report's assertions to a broad audience.[16]**

**ANSWER:**

Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 36 of Plaintiffs' Complaint.

---

[16]   _See, e.g._, Brandon Darby, _Watchdog Claims 5K Noncitizens Registered to Vote in Virginia_, BREITBARTNEWS (May 30, 2017), http://www.breitbart.com/texas/2017/05/30/5k-noncitizens-registered-vote-virginia-report-finds/.

**COMPLAINT:**

37.     PILF and VVA were the named authors of *Alien Invasion II.*
Defendants conspired and worked in concert with each other and with VVA
to develop and publish this second defamatory report. On information and
belief, Defendant Adams participated in the drafting of the report. Defendant
Adams again participated in the publication and dissemination of the report.

**ANSWER:**

Defendants admit that PILF and VVA were the named authors of the Second Report and

that Adams participated in the drafting and publication of the report.  Defendants deny having

participated in an unlawful "conspiracy" and also deny that the Second Report was defamatory.

Except as expressly admitted herein,  Defendants deny the allegations of Paragraph 37 of

Plaintiffs' Complaint.

**COMPLAINT:**

38.     *Alien Invasion II* affirmatively reiterates the accusation in *Alien
Invasion I* that certain voters in a number of Virginia jurisdictions, including
the Richmond area (where Plaintiff LULAC operates), were guilty of
committing one felony by registering to vote and likely guilty of committing
another felony by actually voting:

Ex. B, at 6 ("**Among the records uncovered at Ms. Leider's office was a list of
registrants who had been removed from the voter rolls because they were
determined to not be U.S. citizens.**" (bold in original)); Ex. B, at 6 ("**Prince
William County provided a list of 433 noncitizens who had registered to vote in
the county, but were then removed after they were determined to not be U.S.
citizens. . . . The Department of Justice so far has done nothing about the
*felonies committed* by 433 suspected aliens registered in Prince William County
alone.**" (italics added, bold in original)); Ex. B, at 7 ("**Bedford County provided
a list of 35 non-citizens that had been removed from the voter rolls.**"); Ex. B, at 7
(noting the discovery of "**list of 22 alien registrants**" in Roanoke (bold in
original)); *see also* Ex. B, at 1 ("*[Alien Invasion I]* **revealed that in these eight
Virginia localities more than 1,000 non-citizens had recently been removed from
the voter rolls. In this small sample, nearly 200 verified ballots were cast prior to
official removal. *Each one of them is likely a felony*.**" (emphasis added)).

4820-6961-9824.4

**ANSWER:**

Defendants admit that the Second Report is attached to the Complaint as Exhibit B and that the

Complaint accurately quotes excerpts from the Second Report.  To the extent that Paragraph 38

of Plaintiffs' Complaint attempts to characterize the Second Report, Defendants state that the

written document is the best evidence of its contents.  Except as expressly admitted herein,

Defendants deny the allegations of Paragraph 38 of Plaintiffs' Complaint.

**COMPLAINT:**

> **39.   *Alien Invasion* II was released in the wake of President Trump's unsupported allegations of massive voter fraud in the 2016 elections and the May 11, 2017, establishment of the Presidential Advisory Commission on Election Integrity—developments that Defendants might have expected to amplify the impact of their defamatory publication.**

**ANSWER:**

Defendants deny that they published anything defamatory.  Defendants are without sufficient

information or knowledge to admit or deny the allegations of Paragraph 39 of Plaintiffs'

Complaint.  Except as specifically admitted herein, Defendants deny the allegations of Paragraph

39 of Plaintiffs' Complaint.

**COMPLAINT:**

> **40.   *Alien Invasion II* alleges that 5,500 illegal registrations in Virginia resulted in 7,474 "Votes Cast By Non-Citizens" in recent Virginia elections. *See* Ex. B, at 2. The report imputes to each of those allegedly illegally registered individuals the commission of multiple felonies. Ex. B, at 3 ("When non-citizens register or actually vote, they violate both state and federal statutes because citizenship is a requirement to vote in both state and federal elections."); Ex. B, at 12 ("Each time an alien registers a crime is committed."); Ex. B, at 15 ("Over 1,100 non-citizens were discovered on the voter rolls in Fairfax County. These individuals cast over 1,000 ballots before they could be removed from the rolls.... It makes no difference whether alien votes were cast as a result of confusion or on purpose. *Each is a felony . . .*" (italics added, bold in original)).**

**ANSWER:**

Defendants admit that the Second Report is attached to the Complaint as Exhibit B and that the

Complaint accurately quotes excerpts from the Second Report.  To the extent that Paragraph 40

of Plaintiffs' Complaint attempts to characterize the Second Report, Defendants state that the

written document is the best evidence of its contents.  Except as expressly admitted herein,

Defendants deny the allegations of Paragraph 40 of Plaintiffs' Complaint.

**COMPLAINT:**

> **41.**  *Alien* **Invasion** *II* **was published along with a roughly eight-hundred-page appendix containing voter registration forms, which included the names, home addresses, and telephone numbers of the alleged felons. The published appendix originally included several voter registration forms with social security numbers before Defendants redacted that information.**

**ANSWER:**

Defendants admit that the Second Report is attached to the Complaint as Exhibit B.  Answering

further, Defendants admit that the appendix to the Second Report consisted of public records

provided pursuant to the NVRA.  Except as expressly admitted herein, Defendants deny the

allegations of Paragraph 41 of Plaintiffs' Complaint.

**COMPLAINT:**

> **42.**  **Plaintiffs' names, home addresses, and telephone numbers were included in the exhibits to** *Alien Invasion II. See* **Ex. D (containing the pages from the report's Exhibit 1, which lists Luciania Freeman (at page 258) and Eliud Bonilla (at page 100), and from the report's Exhibit 12, which lists Jeanne Rosen (at page 48), Abby Jo Gearhart (at page 96- 9717), Eliud Bonilla (at page 217), and Luciania Freeman (at page 831)).**

**ANSWER:**

Defendants admit that portions of the Second Report's Exhibit 1 are attached to the Complaint as

Exhibit D.  To the extent that Paragraph 42 of Plaintiffs' Complaint attempts to characterize the

---

[17]  Ms. Gearhart's registration uses her maiden name (Sharpe) and a name from a previous
marriage (Focht).

Second Report, Defendants state that the written document is the best evidence of its contents.

As expressly admitted herein, Defendants any the allegations in Paragraph 42 of Plaintiffs'

Complaint.

**COMPLAINT:**

> **43.     Subsequently, Defendants published a revised version of the appendix to** *Alien Invasion II*, **with a self-serving and dubious explanatory footnote stating that "Exhibit 12 was updated after the discovery that some records were erroneously disclosed by the Commonwealth of Virginia which reflected individuals incorrectly categorized in the official voter registration archive as being 'declared non-citizens'. Those Records were removed." As a consequence, Plaintiffs Abby Jo Gearhart and Jeanne Rosen no longer appear as part of** *Alien Invasion II* **in the version of the report presently available on Defendant PILF's website. However, Eliud Bonilla and Luciana Freeman continue to appear on pages 164 and 748 of the revised Exhibit 12, respectively, and continue to be defamed as non-citizens engaged in voter fraud.**

**ANSWER:**

Defendants admit that, upon discovering that the Commonwealth of Virginia had erroneously

disclosed records of certain individuals that the Commonwealth had incorrectly categorized in

the official voter registration archive as being "declared non-citizens," Defendants immediately

removed those records and published a revised version of the appendix to the Second Report.  To

the extent that Paragraph 43 of Plaintiffs' Complaint attempts to characterize the Second Report,

Defendants state that the written document is the best evidence of its contents. Except as

expressly admitted herein, Defendants deny the allegations of Paragraph 43 of Plaintiffs'

Complaint.

**COMPLAINT:**

> **44.     *Alien Invasion II* unequivocally accuses Plaintiffs of having committed a felony under federal and state law by improperly registering to vote and the clear implication of the report to an objectively reasonable reader is that Plaintiffs are also guilty of a second felony by actually voting. In making such false accusations, Defendants have acted to intimidate or threaten Plaintiffs for registering to vote and voting.**

**ANSWER:**

Defendants deny the allegations of Paragraph 44.

**COMPLAINT:**

45.     By labeling the individuals named in the report as non-citizens and felons with reckless disregard for the truth of those accusations, Defendants act to intimidate and threaten those individuals and to deter them from voting or registering to vote. In a contemporaneous article, Defendant Adams advocates prosecuting the individuals named in the report for voter fraud:

[The Public Interest Legal Foundation] obtained 700 pages of similar examples. .. All can be accessed by law enforcement personnel at this link. . . The [] report documents election *felonies piled on top of felonies.*

Federal law 52 U.S.C. Section 20511 makes it a felony to submit a false voter registration form. Federal law 18 U.S.C. Section 1015 makes it a crime to make a false statement to register to vote. Federal law 18 U.S.C. Section 611 makes it illegal for foreigners to cast a ballot. Virginia law also criminalizes the casting of an illegal ballot.

So you may think there should have been hundreds, or even thousands, of voter fraud prosecutions in Virginia in the last few years. Again, you'd be wrong.

And it's not for a lack of information. . .

…

In another American age, when government records revealed that crimes were committed by the hundreds or thousands . . .everyone would have cared. . .

Let's see what happens . . .

Maybe, just maybe, those tasked with enforcing the law at the United States Department of Justice and county prosecutors will ignore the nonsense and click the links—where hundreds of pages of real evidence can be found.[18]

Plaintiffs' names and contact information were listed on those so-called "pages of real evidence."

---

[18]   J. Christian Adams, *Alien Invasion: Thousands of Foreigners Registered to Vote (and Voting) in Virginia*, PJ MEDIA (May 30, 2017) (emphasis added), https://pjmedia.com/jchristianadams/2017/05/30/alien-invasion-thousands-of-foreigners-registered-to-vote-and-voting-in-virginia/.

4820-6961-9824.4

**ANSWER:**

Defendants deny that they made any accusations with reckless disregard for their truth and deny

that they acted to intimidate or threaten individuals who were lawfully entitled to vote, to prevent

them from registering to vote, or voting.  Defendants admit that Defendant Adams authored the

online article published at the link provided in Plaintiffs' Report.  To the extent that Paragraph

45 of Plaintiffs' Complaint attempts to characterize the contents of the online article, Defendants

state that the written document is the best evidence of its contents.  Except as expressly admitted

herein, Defendants deny the allegations of Paragraph 45 of Plaintiffs' Complaint.

**COMPLAINT:**

### Defendants' Felony Accusations Are False

**46.    Defendants' felony accusations are false. The lists provided by the county registrars do not establish that any particular voter is actually a non-citizen (and by implication guilty of committing a felony). The lists simply establish that certain voters were removed from the voting rolls, which Defendants know can occur for various reasons—including accidental failures to respond to government inquiries or routine paperwork errors. Subsequent media reports also noted that Virginia's election commissioner (as well as certain voters who themselves had been accused of felonies) vigorously disputed the accusations. In response to a state legislator's inquiry about *Alien Invasion II*, Virginia Commissioner of Elections Edgardo Cortes stated that "[n]othing in this process necessarily confirms non-citizenship – only that inconsistent information has been provided," and that Adams and the Public Interest Legal Foundation "were uninterested in the context [and] had their own narrative they wanted to tell."19**

**ANSWER:**

Defendants deny having made false accusations.  Rather, Defendants truthfully reported the

contents of public records obtained pursuant to the NRVA consistent with the explanation

provided by the Commissioner of the Virginia Department of Elections that he provided to PILF

---

19   *See* Jane C. Timm, *Vote Fraud Crusader J. Christian Adams Sparks Outrage,* NBC
NEWS   (Aug.   27,   2017),   https://www.nbcnews.com/politics/donald-trump/vote-fraud-
crusader-j-christian-adams-sparks-outrage-n796026.

(regardless of what he may have said later according to NBC News).  No Virginia elections officials made any such statements to Defendants.  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 46 of Plaintiffs' Complaint.

**COMPLAINT:**

47. **In fact, Plaintiffs are United States citizens. They are therefore factually innocent of the false charges of felony voter fraud leveled by Defendants in the *Alien Invasion* reports.**

**ANSWER:**

Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 47 of Plaintiffs' Complaint.  If the public records cited in the Reports contain any inaccuracies, such inaccuracies are the result of information provided by the voters themselves according to the former Commissioner of the Virginia Department of Elections.  Regardless of the sources of the errors, only the public officials responsible for such records can correct the errors.  Except as specifically admitted herein, Defendants deny the allegations of Paragraph 47 of Plaintiffs' Complaint.

**COMPLAINT:**

**Defendants' False Accusations Have Imposed Substantial Harms on Plaintiffs and Interfered with Plaintiffs' Civil Rights**

48. **Plaintiffs have suffered and continue to suffer various and extensive injuries because of Defendants' actions. Each Plaintiff has been falsely accused of having committed one or more felonies by registering to vote and actually voting as alleged non-citizens. Each Plaintiff has been subjected to adverse publicity on a national level; various media reported on the "*Alien Invasion*" reports and provided internet links to PILF's website and/or to the reports and their appendices, which contained sensitive contact information for Plaintiffs and are still largely accessible online. This embarrassment and harm to their reputation—having been wrongly accused of committing felonies—was compounded when Defendant Adams ensured that the report and its appendices (including Plaintiffs' names) were made a part of the record of the Presidential Commission, which received extensive national press coverage.**

32

4820-6961-9824.4

**ANSWER:**

Defendants deny the allegations of this Paragraph.

**COMPLAINT:**

49.    Plaintiffs have been and continue to be intimidated and threatened by Defendants' campaign of defamation. In addition to the embarrassment and reputational harm that they have already suffered, Plaintiffs fear that the defamatory material will lead to a variety of adverse effects. For example, Plaintiff Bonilla, who considered running for public office one day, fears and expects that the fact that his name is a part of a public record wrongly accusing him of being a non-citizen and having committed felonies, will subject him to "birther" conspiracies like the ones that plagued President Barack Obama. He also worries about the potential impact the publication of this erroneous information could have on his family. These accusations may deter him from exercising his right to run for public office.  As a further example, Plaintiff Freeman fears for her physical safety because she has been accused of illegal voting and her name and contact information are publicly available. She also fears that her current or future employer could take adverse action against her because she has been falsely accused of a crime. She fears that, if someone could erroneously include her name and personal information in a report accusing her of committing crimes, then authorities relying on the same publication could arrest or prosecute her based on mistaken beliefs about her citizenship. Plaintiff Rosen feared that her right to vote would be disputed when she reported to vote in the 2017 general election as a result of being listed in Defendants' report and continues to fear that inclusion in the report will permanently affect her ability to vote and have her votes counted in the future. Likewise, Plaintiff Gearhart has been intimidated by the false accusations in the report. Specifically, Plaintiff Gearhart fears her ability to vote may be challenged in the future and fears that she will be the target of harassment or violence. Given the inclusion of her personal information in the report, Gearhart has chosen not to remove a home security system and has decreased her involvement in political activities.

**ANSWER:**

Defendants deny having engaged in defamation and further deny that anything contained in the Reports was objectively threatening or intimidating.  Defendants otherwise are without sufficient information or knowledge to admit or deny the allegations of Paragraph 49 of Plaintiffs' Complaint.  Except as specifically admitted herein, Defendants deny the allegations of Paragraph 49 of Plaintiffs' Complaint.

4820-6961-9824.4

**COMPLAINT**:

50.    Plaintiffs have a legitimate concern regarding harassment and physical safety. The reports were picked up by a number of media outlets which wrote articles that linked to the reports or to the P1LF website. The comment sections to those articles contained numerous threatening statements concerning those who were alleged to have fraudulently registered to vote or voted, with commenters, for example, calling for people to be "shot," "executed," "deported," or "imprisoned." 20





---

20   Neil W. McCabe, *Illegal Foreign Voting in Virginia Covered Up By Soros-Backed Democratic Officials, Says Report,* Breitbart News (Oct. 2, 2016), http://www.breitbart.com/big-government/2016/10/02/virginia-illegal-voting-fraud-coverup/.

4820-6961-9824.4



**ANSWER:**

Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 50 of Plaintiffs' Complaint.  Answering further, Defendants state that—to the extent that Plaintiffs have a legitimate concern regarding harassment or physical safety—that concern is not the result of any wrongful conduct by Defendants.  Except as specifically admitted herein, Defendants deny the allegations of Paragraph 50 of Plaintiffs' Complaint.

**COMPLAINT:**

> **51.     The *Alien Invasion* reports further incite the already-heated rhetoric and discrimination against Latino and immigrant communities. Indeed, the comments to media articles on the *Alien Invasion* mix anti-immigration sentiments with views on the reports. Plaintiff LULAC has devoted and will continue to devote critical and limited organizational resources to ensuring that Latino voters are not deterred from participating in the electoral process.**

**ANSWER:**

Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 51 of Plaintiffs' Complaint.  Answering further, Defendants deny that they have said or done anything to incite rhetoric or discrimination directed at immigrant or Latino communities.   Many immigrants, including Latinos, become U.S. citizens and are therefore eligible to vote.  Defendants advocate protecting their right to vote rather than allowing the votes of all U.S. citizens—including immigrants and Latinos—to be diluted by unlawfully cast ballots. Except as specifically admitted herein, Defendants deny the allegations of Paragraph 51 of Plaintiffs' Complaint.

35

# COUNT 1

## 42 U.S.C. § 1985(3)

**COMPLAINT:**

**52.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.**

**ANSWER:**

Defendants hereby incorporate by reference their Answers to the foregoing paragraphs as if fully

set forth herein at length.

**COMPLAINT:**

**53.    Plaintiffs bring a claim under the second clause of 42 U.S.C. § 1985(3), which provides that:**

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; *if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy,* in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, *the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.* (emphases added)

4820-6961-9824.4

**ANSWER:**

Paragraph 53 of Plaintiffs' Complaint is a legal conclusion to which no response is required; to

the extent any response is deemed required, Defendants are without sufficient information or

knowledge to admit or deny the allegations of Paragraph 53 of Plaintiffs' Complaint.

**COMPLAINT:**

**54.     Defendants conspired with each other and with VVA to knowingly accuse constitutionally eligible voters, including Plaintiffs, of having committed felony voter fraud with the purpose of intimidating those and other voters in an effort to prevent them from voting or registering to vote.**

**ANSWER:**

Defendants deny the allegations of this Paragraph.

**COMPLAINT:**

**55.     Defendants' publication of the *Alien Invasion* reports constituted substantial steps in furtherance of that conspiracy.**

**ANSWER:**

Defendants deny the allegations of this Paragraph.

**COMPLAINT:**

**56.     Defendants either knew or should have known at the time they published and publicized the reports that they were accusing multiple United States citizens who were constitutionally eligible voters, including Plaintiffs, of committing felony voter fraud.**

**ANSWER:**

Defendants deny the allegations of this Paragraph.

**COMPLAINT:**

**57.     By advocating for the prosecution of the ostensibly "non-citizen" voters published in the *Alien Invasion* reports and suggesting they could risk severe penalties, including significant jail time, if they voted, Defendants hoped to deter these constitutionally eligible voters from voting in upcoming elections.**

4820-6961-9824.4

**ANSWER:**

Defendants deny the allegations of this Paragraph.  Plaintiffs merely sought to have the laws preventing non-citizens from voting enforced.

**COMPLAINT:**

> **58.     Additionally, by publishing the names and contact information of these constitutionally eligible voters in the Alien *Invasion* reports—thereby making them available to "ballot security" activists to "monitor" their voting—and by heavily publicizing the report on TV, radio, and online media using incendiary rhetoric (including lamenting the failure of law enforcement official to prosecute any of the published "non-citizen" voters), Defendants aimed to foment public outrage in an effort to intimidate these voters.**

**ANSWER:**

Defendants deny the allegations of this Paragraph.

**COMPLAINT:**

> **59.     Defendants' multiyear, ongoing defamation campaign did intimidate Plaintiffs and would intimidate an objectively reasonable individual named in either of the *Alien Invasion* reports, and thereby discourage or prevent the named individual from either registering or attempting to vote, for fear of the repercussions of being publicly accused of a felony.**

**ANSWER:**

Defendants deny the allegations of Paragraph 59 of Plaintiffs' Complaint.

**COMPLAINT:**

> **60.     Defendants maliciously persist in their efforts to continue publicizing the names and contact information of Plaintiffs and other voters, even after knowing that they have accused innocent voters of having committed voter fraud.**

**ANSWER:**

Defendants deny the allegations of this Paragraph.

**COMPLAINT:**

> **61.     Plaintiffs Eliud Bonilla, Luciania Freeman, Abby Jo Gearhart, and Jeanne Rosen, each of whom was constitutionally eligible to vote in Virginia,**

**were injured and continue to be injured by being wrongly accused as having committed multiple felonies and having their contact information (including home addresses, email addresses, and phone numbers) published.**

**ANSWER:**

Defendants deny the allegations of this Paragraph.

**COMPLAINT:**

**62.    Defendants' campaign of defamation is calculated to cause and has caused Plaintiffs to fear that the publication of false accusations and personally identifying information will subject them to harassment, malicious prosecution, physical harm, or other repercussions from people believing they have committed voter fraud. For some, their names continue to be associated with those accusations, so the harms persist. Defendants' conduct is aimed at deterring Plaintiffs from exercising their voting rights.**

**ANSWER:**

Defendants deny the allegations of this Paragraph.

**COMPLAINT:**

**63.    Plaintiff LULAC has been and continues to be injured by Defendants' publication of these reports. LULAC's members and the Latino community LULAC represents have been and continue to be intimidated and threatened by Defendants asserting that registering to vote and/or voting constitutes an unlawful "alien invasion" that should be prosecuted. The Latino community, including members of LULAC, will be discouraged from participating in the electoral process as a direct result of Defendants' conduct.**

**ANSWER:**

Defendants deny the allegations of this Paragraph.

**COMPLAINT:**

**64.    Plaintiff LULAC has been and continues to be injured by Defendants' publication of these reports because it impedes one of LULAC's core goals, the promotion of political participation. Instead of engaging in its ordinary course initiatives, LULAC must devote time and resources to combat the false narrative that Latinos who vote are doing so illegally. Voters in Latino communities are already subject to scorn and discrimination because of heated rhetoric directed against Latino and immigrant communities. For example, in the recent 2017 Virginia gubernatorial election, the rampant propagation of derogatory information and generalizations associating**

> **Latinos with gangs such as MS-13 or painting them as criminals caused much despair and despondence amongst the Latino community in the larger Richmond area. Similarly, the *Alien Invasion* reports, which falsely accused many Latino voters as being noncitizens who were guilty of committing voter fraud, created an environment that deters constitutionally eligible Latino voters from exercising their fundamental right to vote.**

**ANSWER:**

Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 64 of Plaintiffs' Complaint.  Answering further, Defendants deny that they have done anything to impede political participation by anyone—including Latinos—who is a U.S. citizen and therefore lawfully entitled to vote.  The claims of LULAC-Richmond are particularly off-base because the Reports say nothing about Latinos whatsoever.  Except as specifically admitted herein, Defendants deny the allegations of Paragraph 64 of Plaintiffs' Complaint.

**COMPLAINT:**

> **65.     LULAC expended substantial time and effort combating this heated rhetoric, and was required to divert significant resources to combatting and remedying those harms. For example, LULAC was the recipient of a two-year grant to improve Latino graduation rates in the Richmond community. They had planned to begin implementing this program in local middle schools and high schools with high Latino populations at the beginning of the 2017 school year. However, because LULAC had to redirect its resources to combat the heated rhetoric against Latinos as non-citizens or worse and amplify their Latino voter mobilization efforts, LULAC had to delay the start of this program until after 2017 elections. As a result of this delay, LULAC is further behind in achieving their intended goals for the education initiative and is still continuing to play catch-up.**

**ANSWER:**

Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 65 of Plaintiffs' Complaint.  Answering further, Defendants deny that they have done anything to impede political participation by anyone—including Latinos—who is a U.S. citizen and therefore lawfully entitled to vote.  The claims of LULAC-Richmond are particularly off-

base because the Reports say nothing about Latinos whatsoever.  Except as specifically admitted herein, Defendants deny the allegations of Paragraph 65 of Plaintiffs' Complaint.

**COMPLAINT:**

**66.    Unless enjoined by the Court, Defendants, and those acting in concert with them, will continue to violate Section 1985(3) by continuing to conspire to publish and publicize their *Alien Invasion* reports that intimidate and attempt to intimidate constitutionally eligible voters by subjecting them to false felony accusations on the internet and in national media, and/or risk harm and harassment by voter protection vigilantes.**

**ANSWER:**

Defendants deny the allegations of this Paragraph.

## COUNT 2

### Section 11(b) of the Voting Rights Act

**COMPLAINT:**

**67.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.**

**ANSWER:**

Defendants hereby incorporate by reference each of the preceding paragraphs of their Answer as if fully set forth herein.

**COMPLAINT:**

**68.    Section 11(b) of the Voting Rights Act provides that:**

**No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote, or intimidate, threaten, or coerce any person for exercising any powers or duties under section 10302(a), 10305, 10306, or 10308(e) of this title or section 1973d or 1973 g of Title 42.**

**52 U.S.C. § 10307.**

4820-6961-9824.4

**ANSWER:**

Paragraph 68 of Plaintiffs' Complaint is a legal conclusion to which no response is required. To the extent that any response is required, Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 68 of Plaintiffs' Complaint. Except as expressly admitted herein, Defendants deny the allegations of Paragraph 68 of Plaintiffs' Complaint.

**COMPLAINT:**

> **69.    Defendants violated Section 11(b) of the Voting Rights Act by intentionally publishing and publicizing *Alien Invasion* and *Alien Invasion II* as part of a reckless, ongoing defamation campaign.**

**ANSWER:**

Defendants deny that they were reckless or that they defamed anyone, including Plaintiffs. By publishing the Reports, Defendants truthfully reported the contents of public records obtained pursuant to the NRVA and truthfully stated the legal consequences of non-citizens voting. By publishing these reports, Defendants also exercised their First Amendment right to advocate for enforcement of laws intended to protect the integrity of U.S. elections and protect the right to vote of all American citizens regardless of race, ethnicity, or national origin, among other characteristics. Except as expressly admitted herein, Defendants deny the allegations of Paragraph 69 of Plaintiffs' Complaint.

**COMPLAINT:**

> **70.    The defamation campaign intimidated, threatened, or coerced, and/or attempted to intimidate, threaten, or coerce the constitutionally eligible voters recklessly and falsely accused of committing felony voter fraud in the *Alien Invasion I* and *Alien Invasion II* into refraining from engaging in future voting-related activities. Defendants' accusations would intimidate an objectively reasonable individual named in either *Alien Invasion I* or *Alien Invasion II* and thereby discourage or prevent the named individual from either registering or attempting to vote regardless of whether that individual was constitutionally eligible to vote in Virginia.**

**ANSWER:**

Defendants deny that their publication of public records and that their exercise of their First Amendment rights had the purpose or reasonably anticipated effect of intimidating, threatening, or coercing or attempting to intimidate, threaten, or coerce constitutionally eligible voters to refrain from engaging in future voting related activities.   Defendants further deny that publication of the Reports would discourage an objectively reasonable individual who was constitutionally eligible to vote from registering to vote or attempting to vote in Virginia. Answering further, Defendants state that residents of Virginia who are not in fact U.S. citizens or who have represented to voter registrars that they are not U.S. citizens are not eligible to vote in Virginia elections and are not protected by the Voting Rights Act.   Except as expressly admitted herein, Defendants deny the allegations of Paragraph 70 of Plaintiffs' Complaint.

**COMPLAINT:**

> **71.   Through the continued publication of the defamatory reports, Defendants intimidate or attempt to intimidate Plaintiffs and others similarly situated from exercising their constitutional right to register to vote and vote. Defendants' conduct has instilled fear in Plaintiffs that they will not be able to successfully exercise their right to vote in the future, and/or that engaging in such voting activity will subject them to further false accusations, false prosecution, harassment, threats to safety, or economic hardship.**

**ANSWER:**

Defendants deny that the Reports were defamatory and also deny that they intimidated or attempted to intimidate Plaintiffs or anyone who is in fact constitutionally eligible to vote from registering to vote or voting.   Defendants deny that the publication of public records, their truthful statements about the contents of such public records and about the consequences of non-citizens voting, and their exercise of their First Amendment right to advocate for law enforcement would instill any objective fear that anyone constitutionally eligible to vote would not be able to do so in the future or would be subject to false accusations, false prosecution,

4820-6961-9824.4

harassment, threats to safety, or economic hardship. Except as expressly admitted herein, Defendants deny the allegations of Paragraph 71 of Plaintiffs' Complaint.

## COMPLAINT:

> **72.    As detailed above, Plaintiff LULAC has been and continues to be injured, both as an organization and as a representative of its membership and the Latino community in the Richmond area.**

## ANSWER:

Defendants deny that the *Alien Invasion* and *Alien Invasion II* reports even mention Latinos, much less threaten Latinos in the Richmond area or elsewhere with any injury. To the contrary, the issues raised by the *Alien Invasion* and *Alien Invasion II* reports ought to be of concern to anyone of any national origin—including Latinos—because voting by non-citizens effectively deprives all U.S. citizens of their right to vote. Depriving Defendants of their First Amendment right to speak out on this issue does nothing to benefit the Latino community that Plaintiff LULAC – Richmond purports to represent. Except as expressly admitted herein, Defendants deny the allegations of Paragraph 68 of Plaintiffs' Complaint.

## COMPLAINT:

> **73.    Unless enjoined by the Court, Defendants will continue to violate Section 11(b) of the Voting Rights Act by continuing to publicize their *Alien Invasion* reports that intimidate or attempt to intimidate Plaintiffs and potential voters by implying that as a consequence of lawfully registering and/or voting, they will repeatedly face false felony accusations on the internet and the national news.**

## ANSWER:

Defendants deny that they have violated Section 11(b) of the Voting Rights Act, deny that they have intimidated or attempted to intimidate anyone who is lawfully entitled to register to vote and vote from doing so, and further deny that they have made false accusations by truthfully representing the consequences—including felony prosecutions—if non-citizens register to vote

4820-6961-9824.4

or vote. Defendants admit, however, that they will continue to publicize their Reports, as is their right under the First Amendment. Except as expressly admitted herein, Defendants deny the allegations of Paragraph 73 of Plaintiffs' Complaint.

## COUNT 3

### Defamation

[Plaintiffs Bonilla, Freeman, Gearhart, and Rosen, only]

**COMPLAINT:**

**74.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.**

**ANSWER:**

Defendants hereby incorporate by reference each of the preceding paragraphs of their Answer as

if fully set forth herein.

**COMPLAINT:**

**75.    Defendants published the *Alien Invasion I* and *Alien Invasion II* reports. Those reports defame Plaintiffs by falsely asserting that Plaintiffs Eliud Bonilla, Luciania Freeman, Abby Jo Gearhart, and Jeanne Rosen were non-citizens who committed felony voter fraud by registering to vote and/or voting. *See, e.g.,* Ex. B, at 13 & n.69 ("For the remaining 702 non-citizen registrants, getting on the voter rolls was as easy as checking "yes" to the citizenship question .... The voter registration applications are produced at Exhibit 12"); Ex. D (containing the registration forms from *Alien Invasion II*'s Exhibit 12, which lists Jeanne Rosen (at page 48 of Exhibit 12), Abby Jo Gearhart (at pages 96-97), Eliud Bonilla (at page 217), and Luciania Freeman (at page 831); Ex. B, at 12 ("Non-citizen registration and voting matters. Each time an alien registers a crime is committed.** When an alien votes . . . another crime **[is]** committed." **(bold in original))**; Ex. B, at 2 **("Simply put, it is a felony for a non-citizen to register and to cast a ballot. Each time such a crime is perpetrated . ..")**; Ex. B, at 3 **("When non-citizens register or actually vote, they violate both state and federal statutes . . .")**; Ex. B, at 5 & n.5** ("The numbers are alarming: 5,556 non-citizens have been removed from the voter rolls for citizenship problems **.... The cancellation reports for all 120 counties are available at Exhibit 1 at the link provided on page 1 of this report." (bold in original))**; Ex. D (containing the pages from the report's Exhibit 1, which lists Luciania Freeman (at page 258) and Eliud Bonilla (at**

45

page 100)); **Ex. B, at 1 ("It is not unreasonable to conclude that the full, and unknown, extent of non-citizens registered to vote far exceeds the 5,500-plus who were removed.");** Ex. B, at 1 ("Despite obstruction from local and state officials, the Public Interest Legal Foundation (PILF) expanded the non-citizen investigation to the entire Commonwealth. As a result, the number of registrants removed from voter rolls for citizenship problems during the last few election cycles grew to over 5,500. Of these *illegal registrants,* 1,852 cast nearly 7,500 ballots in elections dating back to 1988." **(italics added, bold in original)); Ex. B, at 15 ("The accidental discovery of over 5,500 non-citizens . . "); Ex. B, at 6 & n.32** ("Prince William County provided a list of 433 noncitizens who had registered to vote in the county, but were then removed after they were determined to not be U.S. citizens .... **An updated cancellation report subsequently received from the Department of Elections lists the "Declared Non-Citizen Total" as 443. See Exhibit 1 (bold in original)); Ex. B, at 6** ("The Department of Justice so far has done nothing about the felonies committed by 433 suspected aliens registered in Prince William County alone." **(bold in original)); Ex. B, at 13 ("The Fairfax County board had discovered 278 registered voters who had represented to the DMV that they were not U.S. citizens.** Almost half of them—117—had not only registered to vote, they had in fact voted in state and federal elections. **The Department of Justice never followed up, leaving nearly 300 gift-wrapped cases of voter fraud untouched." (bold in original)); Ex. B, at 15** ("Over 1,100 non-citizens were discovered on the voter rolls in Fairfax County. These individuals cast over 1,000 ballots before they could be removed from the rolls." **(bold in original)); Ex. B, at 1 & n.l ("In October 2016, looking at data from only eight Virginia counties, we uncovered proof that large numbers of ineligible aliens are registering to vote and casting ballots. Our investigation revealed that in these eight Virginia localities more than 1,000 non-citizens had recently been removed from the voter rolls. In this small sample, nearly 200 verified ballots were cast prior to official removal. Each one of them is likely a felony. . . . https://publicinterestlegal.org/blog/reportineligible-aliens-registering-vote-casting-ballots/.") Ex. A, at 2** (*"[W]e found 1046 aliens who registered to vote illegally.*" **(emphasis in original)); Ex. A, at 8** ("The United States Attorney in Virginia has done nothing about the felonies committed by 433 aliens registering in Prince William County alone." **(bold in original)); Ex. C (containing the pages from the report's Exhibits 1 and 7 which lists Ms. Freeman).**

## ANSWER:

Defendants admit that they published the Reports that are attached to the Complaint as Exhibits A and B. Defendants further admit that Paragraph 75 of Plaintiffs' Complaint accurately quotes certain excerpts from the Reports. Defendants deny, however, that the Reports contain any false statements or otherwise defame Plaintiffs or anyone else. To the contrary, the Reports accurately

report the contents of public records and characterize them in a way that is consistent with statements by the Commissioner of the Virginia Department of Elections at the time.  Answering further, Defendants state that the Reports truthfully and accurately state the potential legal consequences of non-citizens registering to vote or voting.  Defendants also state that their right to advocate for enforcement of laws that prohibit non-citizens from voting is a valid exercise of their First Amendment rights.   Except as expressly admitted herein, Defendants deny the allegations of Paragraph 75 of Plaintiffs' Complaint.

**COMPLAINT:**

> **76.     Those reports are false statements of fact and are defamatory per se because they falsely impute to Plaintiffs the commission of crimes of moral turpitude. Plaintiffs Eliud Bonilla, Luciania Freeman, Abby Jo Gearhart, and Jeanne Rosen are United States citizens that are, or were, constitutionally eligible to vote in Virginia when they voted in Virginia.**

**ANSWER:**

Paragraph 76 of Plaintiffs' Complaint is a legal conclusion to which no response is required.  To the extent that any response is required, Defendants deny that the Reports defame Plaintiffs or anyone else.  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 76 of Plaintiffs' Complaint.

**COMPLAINT:**

> **77.     Plaintiffs Eliud Bonilla, Luciania Freeman, Abby Jo Gearhart, and Jeanne Rosen are private citizens and are not public figures or limited public figures.**

**ANSWER:**

Paragraph 77 of Plaintiffs' Complaint is a legal conclusion to which no response is required. To the extent that any response is deemed required, Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 77 of Plaintiffs' Complaint.

4820-6961-9824.4

**COMPLAINT:**

> **78.     Defendants' libelous statements were false when made, were made without regard to their truth or falsity, and were made for the purpose of and with the intent of damaging the reputation of Plaintiffs or with reckless disregard of their effect on the reputation of Plaintiffs. Specifically, Defendants recklessly and maliciously failed to exercise due care and diligence before publishing the defamatory statements. A failure to respond to a government notice from the registrar of voters and/or removal from the voting rolls establishes neither that someone is a non-citizen nor that they [sic] committed voter fraud.**

**ANSWER:**

Defendants deny that—by truthfully reporting the contents of public records and the legal consequences of such  records—they made any statements that were "libelous."  Defendants further deny that they made any statements without regard to their truth or falsity or with the intent of damaging Plaintiffs or with reckless disregard of their effect on Plaintiffs' reputation. Defendants also deny that they recklessly and maliciously failed to exercise due care and diligence before publishing the Reports.  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 78 of Plaintiffs' Complaint.

**COMPLAINT:**

> **79.     Defendants published the defamatory statements with actual malice because they acted with reckless disregard for the truth of whether plaintiffs had illegally registered to vote and/or illegally voted.**

**ANSWER:**

Defendants hereby incorporate by reference their Answer to Paragraph 78 of Plaintiffs' Complaint is deny that they acted with reckless disregard for the truth of whether Plaintiffs had illegally registered to vote and/or illegally voted and deny that they acted with actual malice Except as expressly admitted herein, Defendants deny the allegations of Paragraph 79 of Plaintiffs' Complaint.

48

**COMPLAINT:**

**80.    Defendants' false statements have impeached, injured, and damaged Plaintiffs.**

**ANSWER:**

Defendants deny that they have made any false statements about Plaintiffs and also deny that

they have impeached, injured, or damaged Plaintiffs.

**COMPLAINT:**

**81.    As an actual and proximate cause of Defendants' conduct in making such false statements, Plaintiffs have sustained harm, including damages in an amount to be determined at trial.**

**ANSWER:**

Defendants deny that they have made any false statements and further deny that Plaintiffs have

suffered any cognizable injury, including damages.

**COMPLAINT:**

**82.    Unless enjoined by the Court, Defendants, and those acting in concert with them, will continue to publish the defamatory statements.**

**ANSWER:**

Defendants deny that they have made any defamatory statements.  Defendants admit only that

they will continue to publicize their Reports, as is their right under the First Amendment.  Except

as expressly admitted herein, Defendants deny the allegations of Paragraph 82 of Plaintiffs'

Complaint.

## PRAYER FOR RELIEF

1.  **Plaintiffs pray for relief as follows:**

2.  **That the Court determine that it has jurisdiction over this action.**

3.  **That the Court declare that Defendants have violated 42 U.S.C. §1985(3).**

49

4. **That the Court declare that the Defendants have violated Section 11 (b) of the Voting Rights Act.**

5. **That the Court declare that the Defendants have defamed the Plaintiffs in violation of Virginia law.**

6. **That the Court award compensatory and consequential damages in an amount to be determined at trial to compensate the Plaintiffs for the injuries that they have suffered as a result of Defendants' unlawful conduct.**

7. **That the Court award punitive damages as provided by law and as proved at trial to punish Defendants for the publication of defamatory statements with actual malice.**

8. **That the Court award attorneys' fees and litigation costs to Plaintiffs' attorneys.**

9. **That the Court enjoin Defendants and anyone acting in privity with the Defendants from further violations of the law.**

10. **That the Court grant all other and further relief as it may deem necessary and appropriate.**

## ANSWER:

Defendants admit that Plaintiffs purport to seek the relief stated in paragraphs (1) through (10), but deny that Plaintiffs are entitled to any such relief or any other relief, and demand strict proof thereof.

## JURY DEMAND

**Plaintiffs demand a jury trial of all issues so triable. *See* Fed. R. Civ. P. 38.**

## ANSWER:

Defendants admit that Plaintiffs demand a trial by jury on all issues so triable.

## GENERAL DENIAL

Defendants deny each and every allegation of the Complaint not specifically admitted herein.

4820-6961-9824.4

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Lack of Standing—Counts I and II—as to Plaintiff LULAC – Richmond)

LULAC – Richmond does not have organizational standing to pursue its claims against Defendants.[21]   LULAC – Richmond alleges that its "members and the Latino community [it] represents have been and continue to be intimidated and threatened . . . [and] will be discouraged from participating in the electoral process[.]"   (Compl. ¶ 63.)   LULAC – Richmond further alleges that the "publication of these reports . . . impedes one of [its] core goals[.]" (*Id.* ¶ 64.) However, LULAC – Richmond does not and cannot allege that it, as an organization, was either "lawfully entitled to vote" under 45 U.S.C. § 1985(3) or was "voting or attempting to vote" under 52 U.S.C. § 10307.  As a result, LULAC – Richmond simply is not in the same position as the remaining individual Plaintiffs.  *Cf. PSINet, Inc. v. Chapman*, 108 F. Supp. 2d 611, 620 (W.D. Va. 2000) ("Once it is determined that a plaintiff has standing, and the position of the other plaintiffs is virtually the same as the one with standing, the court may proceed to the merits of the case." (citing *Bowsher v. Synar, et al.,* 478 U.S. 714, 721 (1986))).

## SECOND AFFIRMATIVE DEFENSE

### (Reasonable Reliance—Counts I, II, and III)

Defendants relied upon and were entitled to rely upon the official records received from the Virginia Department of Elections.  Specifically, Defendants requested records pursuant to the National Voter Registration Act, codified at 52 U.S.C. §§ 20501–20511 (the "NVRA"), and received lists generated by the Virginia Department of Elections VERIS system for individuals tagged as "declared non-citizen."  The NVRA requires federal, state, and local governments "to

---

[21]  This Court already ruled that LULAC – Richmond does not have standing under a representational theory of standing. (Order, ECF No. 63 at 4 n.1.)

4820-6961-9824.4

ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(4). Specifically, the NVRA imposes a statutory obligation on the Virginia Department of Elections to implement voter list maintenance programs that "provide that the name of a registrant may not be removed from the official list of eligible voters except . . . as provided by State law" or other enumerated exceptions not relevant here. 52 U.S.C. § 20507(a)(3)(B). In turn, Article II, section 1 of the Constitution of Virginia provides that to vote in elections, "[e]ach voter shall be a citizen of the United States[.]" Logically, given the accuracy requirements of the NVRA and the eligibility requirements of Virginia state law, Defendants reasonably believed that the official records listing individuals as "declared non-citizens" contained true and accurate information.

## THIRD AFFIRMATIVE DEFENSE

### (Failure to Mitigate—Counts I, II, and III)

Plaintiffs are not entitled to any damages or any other relief in this action because Plaintiffs either caused or failed to mitigate such alleged damages. Defendants specifically requested records of individuals tagged as "declared non-citizen" by the Virginia Department of Elections. The individual Plaintiffs were given an opportunity to correct any errors in the information possessed by the Virginia Department of Elections but failed to do so. For example, individual Plaintiff Luciana Freeman, when submitting an address change request to the Virginia Department of Motor Vehicles, clearly responded "NO" to the question: "Are you a citizen of the United States of America?" What is more, under penalty of perjury Ms. Freeman stated that "all information presented in this form is true and correct." The Virginia Department of Elections subsequently sent Ms. Freeman a Notice of Intent to Cancel letter warning her of an impending voter registration cancellation and providing her fourteen days to respond and correct any potential error. Ms. Freeman never responded.

4820-6961-9824.4

## FOURTH AFFIRMATIVE DEFENSE

### (Corporate Veil—Counts I, II, and III)

Plaintiffs have the burden to establish a basis for disregarding the corporate form. Plaintiffs cannot meet this burden. *See C.F. Tr., Inc. v. First Flight Ltd. P'ship*, 111 F. Supp. 2d 734, 740 (E.D. Va. 2000) ("[S]ettled precedent cautions courts that piercing of the corporate veil should be permitted only when necessary to promote justice and only under exceptional circumstances.") (internal quotation marks and citation omitted).   Plaintiffs have made no allegations and cannot show that any cause exists to pierce the corporate veil.   Thus, Plaintiffs' claims against J. Christian Adams are barred.

## FIFTH AFFIRMATIVE DEFENSE

### (Failure to State a Cause of Action—No Intimidation, Coercion, Threats, or Force— Counts I and II)

To prevail on a claim under 45 U.S.C. § 1985(3), Plaintiffs must show that they were "prevent[ed] by force, intimidation, or threat" from participating in federal elections.   To prevail on a claim under 52 U.S.C. § 10307, Plaintiffs must show that Defendants "intimidate[d], threaten[ed], or coerce[d], or attempt[ed] to intimidate, threaten or coerce" Plaintiffs from "voting or attempting to vote[.]"   Plaintiffs, however, cannot state a claim under either § 1985(3) or § 10307 because they cannot show that Defendants engaged in any conduct that reasonably could rise to the level of intimidation, threats, force, or coercion required by § 1985(3) and § 10307.

## SIXTH AFFIRMATIVE DEFENSE

### (Failure to State a Cause of Action—No Conspiracy—Count I)

Plaintiffs have failed to state a cause of action under 45 U.S.C. § 1985(3) because they cannot show that Defendants conspired to violate the third clause of § 1985(3).   Plaintiffs must

4820-6961-9824.4

show that Defendants have "an agreement or a meeting of the minds . . . to violate the claimant's constitutional rights." *Poldi v. Bannon*, 226 F. Supp. 3d 615, 623 (E.D. Va 2016) (internal quotation marks and citation omitted).  Instead, Defendants published the Reports to advocate for changes in policies related to voter registration procedures, specifically with respect to procedures for citizenship verification and stronger safeguards to protect the integrity of voter registration.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Failure to State a Cause of Action—No Actionable Statement—Count III)**

To state a claim for defamation under Virginia law, Plaintiffs must allege "(1) publication about the plaintiff, (2) an actionable statement, and (3) the requisite intent." *Moore v. PYA Monarch, LLC*, 238 F. Supp. 2d 724, 728 (E.D. Va. 2002).  Here, the Reports contain rhetorical hyperbole, which is not an actionable statement.  *See Yeagle v. Collegiate Times*, 497 S.E.2d 136, 137 (1998) ("In considering the type of speech that falls beyond that which can support a defamation action, the United States Supreme Court has recognized that speakers may use language that is insulting, offensive, or otherwise inappropriate, but constitutes no more than 'rhetorical hyperbole.'").

**EIGHTH AFFIRMATIVE DEFENSE**

**(Failure to State a Cause of Action—No Actionable Statement—Count III)**

Plaintiffs cannot state a cause of action for defamation because the Reports contain statements of opinion, which as not actionable as defamation.

**NINTH AFFIRMATIVE DEFENSE**

**(Anti-SLAPP Immunity—Count III—as to individual Plaintiffs)**

Defendants enjoy qualified immunity from suit under Virginia's anti-strategic lawsuit against public participation (anti-SLAPP) statute.  *See* Va. Code § 8.01-223.2.  The Reports

focus on the integrity of elections in the United States, which constitutes a "matter[] of public concern that would be protected under the First Amendment to the United States Constitution[.]" *Id.*  At no time before publishing the Reports did Defendants have actual or constructive knowledge of the "falsity" of the information in the exhibits attached to the Reports.  To the contrary and before publishing the Second Report, Defendants received assurance from the then-Commissioner of the Virginia Department of Elections that the information contained in the records received from that Department "show[ed] individuals that were cancelled due to self-reported non-citizen status and failed to complete an affirmation of citizenship in the allotted time frame and continue to be in cancelled status." *See* **Exhibit B**.  Furthermore, upon learning after publication that the Commonwealth of Virginia erroneously released records that were not responsive to Defendants' requests—in other words, records that did not reflect that an individual had been declared anon-citizen by the Department of Elections—Defendants updated the on-line exhibit to remove the erroneously included records.  Thus, the individual Plaintiffs' claims are barred as a matter of law by section 8.01-223.2 of the Code of Virginia.

## TENTH AFFIRMATIVE DEFENSE

### (Freedom of Speech Immunity—Count III)

Plaintiffs' claim for defamation constitutes an unconstitutional attempt to abridge Defendants' freedom of speech under the First Amendment of the United States Constitution and under Article I, section 12 of the Constitution of Virginia.  The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech[.]"Article I, section 12 of the Constitution of Virginia notes:

> That the freedoms of speech and of the press are among the great bulwarks of liberty, and can never be restrained except by despotic governments; that any citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right; that the General Assembly shall not pass any law abridging the freedom of speech or of the press, nor the right of the

people peaceably to assemble, and to petition the government for the redress of grievances.

Plaintiffs' defamation claim serves only to chill Defendants constitutional right to "speak, write, and publish" on issues of election integrity.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Fair Report Privilege—Count III)

Plaintiffs' claim for defamation is barred by the fair report privilege. *See Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1097 (4th Cir. 1993) ("Most jurisdictions, even at common law, had adopted some variant of the "fair report" privilege, which protected press reports of official actions or proceedings, so long as the report was accurate and either complete or fairly abridged."); *Alexandria Gazette Corp. v. West*, 93 S.E.2d 274, 279 (1956) ("The publication of public records to which everyone has a right of access is privileged, if the publication is a fair and substantially correct statement of the transcript of the record."). The Reports deal with matters of public concern and accurately reported the information and documents received from an official source, the Virginia Department of Elections.

## TWELFTH AFFIRMATIVE DEFENSE

### (Fair Comment Privilege—Count III)

Plaintiffs' claim for defamation is barred by the fair comment privilege. *See Beauharnais v. People of State of Ill.*, 343 U.S. 250, 263 (1952) ("[T]he whole doctrine of fair comment [is] indispensable to the democratic political process . . . ."). The Reports contained statements that were fair and accurate reports of the information and documents received from the Virginia Department of Elections.

4820-6961-9824.4

## THIRD-PARTY COMPLAINT

## NATURE OF THE THIRD-PARTY COMPLAINT

1.      Defendants Public Interest Legal Foundation ("PILF") and J. Christian Adams ("Mr. Adams"), by counsel, pursuant to Rule 14 of the Federal Rules of Civil Procedure, respectfully state as follows for their Third-Party Complaint against Third-Party Defendant Virginia Department of Elections (the "Department"), which is or may be liable to Defendants for all or part of the claims asserted by the Plaintiffs in this action.  Defendants seek judgment against the Department for all sums that may be adjudged against Defendants in Plaintiffs' favor and all costs and expenses, including attorneys' fees, incurred as a result of Plaintiffs' suit irrespective of whether any judgment is entered against Defendants.

## THE PARTIES

2.      Third-Party Plaintiff Public Interest Legal Foundation ("PILF") is a 501(c)(3) organization incorporated in the state of Indiana and has its principal place of business in Indianapolis, Indiana.

3.      Third-Party Plaintiff J. Christian Adams ("Mr. Adams") is President and General Counsel of PILF.  Mr. Adams resides in Alexandria, Virginia.

4.      Third-Party Defendant Virginia Department of Elections (the "Department") is the agency responsible for promoting and supporting accurate, fair, open, and secure elections for the citizens of the Commonwealth.  The Department is charged with implementing election laws and regulations for all elections in the Commonwealth.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331.  Plaintiffs' claims under 42 U.S.C. § 1985(3) and Section 11(b) of the Voting Rights Act (codified at 52 U.S.C. § 10307) arise out of federal law.  Additionally, the Department's duty to maintain and

make available for public inspection accurate records under the National Voter Registration

Action ("NVRA")  arises out of federal law. 52 U.S.C. § 20507(i).

6.      This Court has supplemental jurisdiction over this Third-Party Complaint

pursuant to 28 U.S.C. § 1367.

7.      Venue is appropriate in this Court because venue is proper in the first-party action

under 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

8.      On April 12, 2018, Plaintiffs filed a Complaint against Third-Party Plaintiffs

alleging violations of the 42 U.S.C. § 1985(3) (the "Ku Klux Klan Act"), Section 11(b) of the

Voting Rights Act.  The individual Plaintiffs also allege that Defendants have defamed them in

violation of Virginia law.

9.      Defendant PILF is a public interest law firm dedicated to the integrity of

elections.  Defendant Mr. Christian Adams is the President of PILF.  PILF seeks "to protect the

right to vote and preserve the Constitutional framework of American elections."  Consistent with

PILF's objective of protecting the right to vote, PILF and the Virginia Voters Alliance ("VVA")

undertook an investigation of public voting records in Virginia with a focus on highlighting

deficiencies in the voter registration system and official inaction—or even obstruction—when

confronted with those deficiencies.

10.      According to the National Voter Registration Act ("NVRA"), state election

officials must "maintain for at least 2 years and make available for public inspection all records

concerning the implementation of programs and activities conducted for the purpose of ensuring

the accuracy and currency of official lists of eligible voters."  52 U.S.C. § 20507(i).  The NVRA

also requires federal, state, and local governments "to ensure that accurate and current voter

registration rolls are maintained." 52 U.S.C. § 20501(b)(4).   Beginning in January 2016, Defendants sought access to records related to county and city list maintenance programs under the NVRA "public inspection" requirement.

11.     Although the NVRA requires state election officials to make those records available for public inspection, PILF faced considerable lack of cooperation and obstruction from Virginia elections officials before they finally turned over the records that are the subject of the Reports.

12.     In January 2016, VVA contacted Alexandria General Registrar Anna Leider, notifying her that based on implausible registration data, her office appeared to be in violation of the NVRA's mandate that she use reasonable efforts to remove ineligible registrants. VVA requested access to ten categories of records concerning Ms. Leider's list maintenance programs pursuant to the NVRA's public inspection provision.   Ms. Leider refused to produce the requested records, in violation of the NVRA.

13.     Only after litigation in the United States District Court for the Eastern District of Virginia, more than eight months after the initial request was made, the City of Alexandria General Registrar finally agree to provide a list "identifying 70 registrants who had been removed from Alexandria's registration lists after they were determined to not be U.S. citizens." (Compl. Ex. A, at 6).  The City of Alexandria did not provide PILF with information regarding how the Registrar determined that the registrants were not United States citizens.

14.     On August 8, 2016, PILF subsequently exercised its public inspection rights under the NVRA to request similar information from 19 Virginia counties and cities, specifically, Arlington County, Albemarle County, Bedford County, Chesterfield County, Fairfax City, Fauquier County, Frederick County, Falls Church, Loudoun County, Hampton

4820-6961-9824.4

County, Hanover County, James City County, Lancaster County, Manassas, Prince William County, Roanoke County, Stafford County, Rappahannock County, and York County.

15.     Few jurisdictions were responsive to PILF's request, although "Prince William County provided a list of 433 non-citizens who had registered to vote in the county but were then removed after they were determined to not be U.S. citizens."  The report that Prince William County created and provided to PILF was headed with the caption "Cancellation - Declared Non-Citizen."  Each listed voter had a cancel date and cancel type; every voter was designated "Declared Non-Citizen." (Compl. Ex. C, at 1; Compl. Ex. D, at 1).

16.     Bedford County and Roanoke County also both provided government-created records, including lists of "non-citizens that had been removed from their voter rolls" and copies of notices sent to "individuals who indicated on their DMV applications that they were not citizens." (Compl. Ex. A, at 8).

17.     Defendants faced extreme difficulty in obtaining access to voter list information and "filed four separate lawsuits in 2016 alone to force election officials to allow inspection of their election records." (Compl. Ex. A, at 5).  Some of this difficulty resulted from the fact that Edgardo Cortés, who was Commissioner of the Virginia Department of Elections at the time, had issued guidance to the local registrars instructing them not to "provide the information regarding reasons for cancellation for non-citizen status." (Compl. Ex. A, at 9). This guidance was distributed statewide on August 19, 2016, just 11 days after PILF submitted its public inspection requests to 19 Virginia counties and cities.   Mr. Cortés subsequently contacted PILF on September 16, 2016, offering to provide a "customized report" at a cost of $240. Such a demand is impermissible since the NVRA only permits election officials to charge "reasonable costs" for "photocopying," not for the time spent producing records.  52 U.S.C. § 20507(i)(1).

18.     Based on the contents of the government-produced voter records that Defendants *were* able to obtain, Third-Party Plaintiffs and VVA published a report entitled *Alien Invasion* (the "First Report") in September 2016.   The First Report included linked exhibits that reproduced the government records as Defendants had received them.   The First Report advocated for more careful government recordkeeping since "[c]itizenship is the most fundamental element of eligibility to vote in American elections."  (Compl. Ex. A, at 1).

19.     The First Report listed state and federal voting statutory violations that Third-Party Plaintiffs reasonably believed "a fraudulent voter might commit when he registers and votes."  (Compl. Ex. A, at 3 (citing Virginia Code § 24.2-1004; 18 U.S.C. § 611; 18 U.S.C. § 911; 18 U.S.C. § 1015; 52 U.S.C. § 20511)).   Third-Party Plaintiffs argued that "[w]hen non-citizens register or actually vote, they violate both state and federal statutes because citizenship is a requirement to vote in both state and federal elections" and that "[e]ach time such a crime is perpetrated, whether by accident or willfully, a citizen is effectively disenfranchised."  (Compl. Ex. A, at 3).   Based on Third-Party Plaintiffs' interpretation of the voting law, and the government-provided lists of non-citizens that had been removed from the voting rolls, Third-Party Plaintiffs concluded that votes cast by this group were "likely a felony."  (Compl. Ex. A, at 3).

20.     Third-Party Plaintiffs' interpretation of the voting law applied only to non-citizens and not to lawfully registered citizens.   The First Report did not allege that any particular individual had committed a crime.   None of the Plaintiffs was mentioned in the body of the Report, although the attached reproduction of the government-provided documents from Prince William County listed Plaintiff Luciania Freeman as having her registration cancelled as a "Declared Non-Citizen."  (Compl. Ex. A, at C).

21.     On May 2017, Third-Party Plaintiffs and VVA published an updated version of their report entitled *Alien Invasion II* (the "Second Report"). The Second Report reiterated the generalized argument that registration and voting by non-citizens was a violation of various state and federal election statutes.  (Compl. Ex. B, at 3).  The Second Report expanded the analysis of the First Report with the inclusion of newly-obtained government records listing persons whose voter eligibility was cancelled for being identified as a non-citizen.  These government records were reproduced exactly as they were received and included names, home addresses, and telephone numbers for each person.  These new records, as produced by government officials, categorized Plaintiffs Luciania Freeman, Eliud Bonilla, and Abby Jo Gearhart as being "declared non-citizens."   None of the three individual Plaintiffs was named in the body of the Second Report.

22.     After the publication of the First Report, but before publication of the Second Report, Third-Party Plaintiffs communicated with Virginia officials regarding the methodology behind the voter cancellation reports.   The Commissioner of the Virginia Department of Elections, Edgardo Cortés, communicated directly with Noel Johnson, a PILF attorney, regarding PILF's data requests.  Mr. Cortés explained that the records the Commonwealth sent to PILF "show individuals that were cancelled due to self-reported non-citizen status and failed to complete an affirmation of citizenship in the allotted time frame and continue to be in cancelled status."  *See* **Exhibit B**.  Mr. Cortés further explained that citizens who had affirmed citizenship after previous cancellation "would no longer appear on this report because they would now be on active status."   Based on these affirmations by the Commissioner of the Virginia Department of Elections, PILF understood that it could publish the records it received with confidence that only citizens whose voter registration was currently cancelled for non-citizenship would be included.

62

Third-Party Plaintiffs reasonably believed that state and local officials had determined the citizenship of individuals properly before declaring them non-citizens and removing them from voter rolls.

23.     No other government officials ever contacted PILF or Mr. Adams regarding the methodology in either Report before publication or the filing of Plaintiffs' lawsuit.  Third-Party Plaintiffs neither knew nor had reason to believe that there was any issue with their methodology or the accuracy of the underlying government records.

24.     After the publication of the Second Report, on October 11, 2017, Third-Party Plaintiffs received a letter from former Plaintiff Jean Rosen explaining that she was a citizen and incorrectly included in the Second Report.  Ms. Rosen stated that she "received a call from the Southern Coalition for Social Justice advising me that my name was listed in the Alien Invasion Report 2 along with my personal information claiming I am most likely not an American citizen and that I voted illegally." *See* **Exhibit C**.

25.     Upon receiving Ms. Rosen's letter, PILF investigated documents it had received from York County and discovered "that some records were erroneously disclosed by the Commonwealth of Virginia which reflected individuals incorrectly categorized in the official voter registration archive as being 'declared non-citizens.'"  (Compl. ¶ 43).  Although Third-Party Plaintiffs had specifically requested records for individuals whose voter registration was cancelled by designated reason of "declared non-citizen," the York County registrar erroneously sent PILF certain voter records, including those of Plaintiff Gearhart and Ms. Rosen, alongside those of individuals whose records were responsive to PILF's inspection request.  Third-Party Plaintiffs had attached copies of these records as exhibits to the Second Report, alongside more than 500 pages of other cancellation reports for non-citizen registrants.

4820-6961-9824.4

26.     Third-Party Plaintiffs subsequently contacted York County to attempt to obtain the correct records.  The York County Registrar provided updated information and admitted that the previous production "included correspondence for people who had apparently initially indicated to the DMV that they were not a citizen, but then upon our inquiry with them, confirmed that they are, in fact, citizens of the United States."  *See* **Exhibit E**.   This erroneous production by the York County Registrar was the true cause of Ms. Rosen's frustration.  Counsel for Plaintiffs, the Southern Coalition for Social Justice, acknowledged "the wrongs committed against these voters by the Commonwealth" in a letter to PILF discussing Ms. Rosen's concerns. *See* **Exhibit F**.

27.     Third-Party Plaintiffs updated the body of the Second Report and removed the incorrect portion of the government's records from their supporting documentation.  (Compl. ¶ 43).  This correction of the government's error resulted in Plaintiffs Gearhart and Rosen no longer appearing in the published version of the Second Report.  Plaintiffs characterize such efforts to ensure accuracy as "self-serving and dubious" (Compl. ¶ 43), but one of PILF's core goals is to improve accuracy in government recordkeeping of voter lists: "PILF's priority is that every eligible citizen remain on the rolls and every ineligible alien be removed from the rolls." (Compl. Ex. B, at 10).

28.     PILF continues to request government records related to non-citizen voter registration. Beginning on or about July 31, 2018, more than a year after the publication of the Second Report and more than three months after Plaintiffs filed suit, government registrars began including qualifiers in their responses to PILF's requests:

> Please note that although the report heading and cancellation type are "Declared Non-Citizen," that brief description does not accurately reflect what the report contains.  Our office has no definite information as to the citizenship status of any individuals

on the list.  Nearly all individuals appearing in the report were removed in accordance with Va. Code Ann. § 24.2 427(B1). Under that statute, a notice must be issued any time a report from the Department of Motor Vehicles or the systematic Alien Verification Entitlements Program indicates that the voter is not a United States citizen.  A voter's registration must be cancelled if the voter then fails to timely respond to the notice.

*See* **Exhibit G**.

29.     This new warning only appeared after Plaintiffs filed suit against PILF and Mr. Adams.  No earlier government responses to PILF's requests included such qualifications. Third-Party Plaintiffs had no reason to believe that the Commonwealth's earlier responses to PILF's requests for voter lists did not contain the requested information.  In fact, earlier communications from the then-Commissioner of the Virginia Department of Elections had assured PILF that the records were accurate and only "show[ed] individuals that were cancelled due to self-reported non-citizen status and failed to complete an affirmation of citizenship in the allotted time frame and continue to be in cancelled status."  *See* **Exhibit B**.

## COUNTS

30.     Plaintiffs have filed a Complaint against Third-Party Plaintiffs alleging violations of the 42 U.S.C. § 1985(3) (the "Ku Klux Klan Act"), Section 11(b) of the Voting Rights Act. Plaintiffs Bonilla, Freeman, and Gearhart also allege that Third-Party Plaintiffs have defamed them in violation of Virginia law. As a result, Plaintiffs are seeing to recover against Third-Party Plaintiffs.

31.     In Count I, Plaintiffs have alleged that Third-Party Plaintiffs' publication of the Reports constituted a conspiracy to intimidate constitutionally eligible voters from voting or register to vote in violation of 42 U.S.C. § 1985(3), also known as the "Ku Klux Klan Act." Plaintiffs allege that Third-Party Plaintiffs knew or should have known that the Reports were accusing multiple United States citizens who were constitutionally eligible voters of committing

65

felony voter fraud.  If Plaintiffs are successful against Third-Party Plaintiffs, it will be because Third-Party Plaintiffs relied upon the representations of the Virginia Department of Elections, which failed to accurately maintain and produce records.

32.     In Count II, Plaintiffs have alleged that Third-Party Plaintiffs' publication of the Reports intimidated or attempted to intimidate Plaintiffs from exercising their voting rights in violation of Section 11(b) of the Voting Rights Act.  Plaintiffs claim that these publications are part of a "reckless, ongoing defamation campaign" targeting "the constitutionally eligible voters recklessly and falsely accused of committing felony voter fraud" in the Reports.  If Plaintiffs are successful against Third-Party Plaintiffs, it will be because Third-Party Plaintiffs relied upon the representations of the Virginia Department of Elections, which failed to accurately maintain and produce records.

33.     In Count III, Plaintiffs Bonilla, Freeman, and Gearhart allege that Third-Party Plaintiffs' publication of the Reports defamed them by falsely asserting that they were non-citizens who committed felony voter fraud by registering to vote and/or voting.  To the extent that the Reports contained incorrect information, it was due to inaccurate record-keeping and document production by the Department.   If Plaintiffs are successful against Third-Party Plaintiffs, it will be because Third-Party Plaintiffs relied upon the Department's representations.

34.     As a result of the Department's failure to accurately maintain and produce voter records, Third-Party Plaintiffs have already been damaged and will suffer additional damages, along with costs, interest and attorneys' fees in defense of Plaintiffs' action against them.

35.     Accordingly, pursuant to NVRA § 20507(i), if Third-Party Plaintiffs are found liable to the Plaintiffs, then Third-Party Plaintiffs are entitled to contribution from the

Department  for any damages that may be recovered against Third-Party Plaintiffs under the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Third-Party Plaintiffs pray that the Court grant relief against the Virginia Department of Elections as follows:

(a) for all sums that may be adjudged against Third-Party Plaintiffs in favor of Plaintiffs in this action;

(b) for the attorneys' fees, costs, expenses, and other sums incurred by Third-Party Plaintiffs in the defense of this action and in prosecuting this Third-Party Complaint without regard to whether any liability is adjudged against Third-Party Plaintiffs in the Plaintiffs' favor;

(c) for pre-judgment and post-judgment interest;

(d) for all of Third-Party Plaintiffs' costs of suit;

(e) for such other and further relief as the Court deems just and proper.

4820-6961-9824.4

Dated: August 27, 2018

Respectfully submitted,

PUBLIC INTEREST LEGAL FOUNDATION
and J. CHRISTIAN ADAMS

By */s/ Michael J. Lockerby*
      Counsel

Michael J. Lockerby (VA Bar No. 24003)
Eli L. Evans (*pro hac vice* motion forthcoming)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone:  202-945-6079
Facsimile:  202-672-5399
Email: mlockerby@foley.com
Email: eevans@foley.com


William E. Davis (admitted *pro hac vice*)
Ana Romes (admitted *pro hac vice*)
FOLEY & LARDNER LLP
One Biscayne Tower
2 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Telephone:  305-482-8404
Facsimile:  305-482-8600
Email: wdavis@foley.com
Email: aromes@foley.com

Counsel for Defendants

4820-6961-9824.4

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of August, 2018, I electronically filed the foregoing

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND THIRD-PARTYCOMPLAINT

with the Clerk of Court using the CM/ECF system, which will then send a notification of such

filing (NEF) to all counsel of record, including:

Anisa A. Somani, Esq.
Nicole M. Cleminshaw, Esq.
Geoffrey M. Wyatt, Esq.
Sean M. Tepe, Esq.
Lauren A. Eisenberg, Esq.
Samuel Levo, Esq.
Andrew Hanson, Esq.
SKADDEN ARPS SLATE MEAGHER & FLOM
1440 New York Avenue, N.W.
Washington, D.C. 20005

Allison Riggs, Esq.
Jacklyn Maffetore, Esq.
SOUTHERN COALITION FOR SOCIAL JUSTICE
1415 West Highway 54, Suite 101
Durham, North Carolina 27707

Cameron Kistler, Esq.
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Avenue, N.W. # 163
Washington, D.C. 20006

Larry Schwartztol, Esq.
PROTECT DEMOCRACY PROJECT
10 Ware Street
Cambridge, Massachusetts 02138

Andrew G. Celli, Jr., Esq.
Alanna Kaufman, Esq.
EMERY CELLI BRINCKERHOFF & ABADY LLP
600 Fifth Avenue at Rockefeller Center
10th Floor
New York, New York 10020

4820-6961-9824.4

*/s/ Michael J. Lockerby*
Michael J. Lockerby (VA Bar No. 24003)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone:  202-945-6079
Facsimile:  202-672-5399
Email: mlockerby@foley.com

Counsel for Defendants