UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS - RICHMOND REGION COUNCIL 4614, ELIUD BONILLA, LUCIANIA FREEMAN, and ABBY JO GEARHART, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 1:18cv423 (LO/IDD) ) |
| PUBLIC INTEREST LEGAL FOUNDATION and J. CHRISTIAN ADAMS, | ) ) ) |
| Defendants and Third-Party Plaintiffs, | ) ) ) |
| v. | ) ) |
| VIRGINIA DEPARTMENT OF ELECTIONS, | ) ) |
| Third-Party Defendant. | ) ) ) |

**DEFENDANTS' AMENDED THIRD-PARTY COMPLAINT
FOR INJUNCTIVE AND DECLARATORY RELIEF AND ATTORNEYS' FEES**

Defendants, Public Interest Legal Foundation ("PILF") and J. Christian Adams ("Mr. Adams") (collectively, "Third-Party Plaintiffs"), by counsel, pursuant to Rule 14 of the Federal Rules of Civil Procedure, respectfully state as follows for their Amended Third-Party Complaint against Third-Party Defendant Virginia Department of Elections (the "Department").  For the reasons set forth herein, the Department is or may be liable to Third-Party Plaintiffs for all or part of the claims asserted in the underlying Complaint by Plaintiffs League of United Latin American Citizens - Richmond Region Council 4614 ("LULAC – Richmond"), Eliud Bonilla ("Mr. Bonilla), Luciania Freeman ("Ms. Freeman"), Abby Jo Gearhart ("Ms. Gearhart"), and Jeanne Rosen ("Ms. Rosen").[1]

## NATURE OF THE THIRD-PARTY COMPLAINT

1.     Third-Party Plaintiffs seek declaratory and injunctive relief to compel the Department's compliance with the National Voter Registration Act of 1993, 52 U.S.C. §§ 20501–20511 (the "NVRA").  Without the relief that they seek, Third-Party Plaintiffs and others will be deterred from, and possibly punished for, exercising their most fundamental freedoms under the Bill of Rights: the right of free speech and the right to petition the government protected by the First Amendment.  The need for such relief is heightened by the fact that Election Day is less than thirty (30) days away.  The pendency of Plaintiffs' claims against PILF and Mr. Adams—and the apparent failure of the Department to fulfill its responsibilities under the NVRA—are having a chilling effect on the exercise of fundamental rights under the First Amendment.

---

[1] On August 23, 2018, Ms. Rosen filed a Notice of Voluntary Dismissal.  (Dkt. #64).  On August 24, 2018, the Court dismissed Ms. Rosen's claims without prejudice.  (Dkt. #65).

4812-0255-5768.5

2.      Under both the Constitution and the NVRA, Third-Party Plaintiffs and other concerned citizens[2] who helped PILF gather information for the reports that Plaintiffs characterize as "defamatory," "threatening," and "intimidating" have the right to obtain the government-created records cited and referenced in *Alien Invasion* and *Alien Invasion II* (collectively, the "Reports").   When they drafted and published the Reports, Third-Party Plaintiffs had every right to rely upon the accuracy of these government-created records.   The government-created records that Third-Party Plaintiffs obtained pursuant to the NVRA expressly state as follows with respect to thousands of individuals who had previously cast ballots in elections across the Commonwealth of Virginia: "Cancellation - Declared Non-Citizen."[3]

3.      Before publishing the Reports, Third-Party Plaintiffs had no way of verifying the accuracy of the government-created records provided by registrars of cities and counties across Virginia without contacting each of the voters named—conduct that Plaintiffs and the advocacy groups that procured their involvement in this litigation no doubt would have characterized as threatening and intimidating.   Third-Party Plaintiffs are entitled to rely on the presumption that the Department is in fact complying with its obligation under the NVRA to maintain accurate voting records.   Nevertheless, PILF did in fact seek to verify the accuracy of the government-created records that it had obtained and published.   In response to these efforts, the former Commissioner of the Virginia Department of Elections himself stated that the government-created records referenced in the Reports in fact show what they purport to show: the names of voters whose registrations were cancelled because these individuals previously reported that they

---

[2] Ironically, one of these concerned citizens who pursued obtaining the NVRA records at issue from various jurisdictions in the Commonwealth of Virginia, notwithstanding resistance and obstruction from local registrars, is counsel in the lead law firm that filed suit on behalf of Plaintiffs, Skadden, Arps, Slate, Meagher & Flom LLP.
[3] *See* VERIS Cancellation Reports for Non-citizen Registrants attached as **Exhibit A**.

were not citizens of the United States and then failed to affirm their citizenship.  In an April 4, 2017 email to Noel Johnson, an attorney at PILF, Edgardo Cortés—who was at the time Commissioner of the Virginia Department of Elections—wrote:

> This report shows individuals that were cancelled due to self-reported non-citizen status and failed to complete an affirmation of citizenship in the allotted time frame and continue to be in cancelled status.  If an individual was previously cancelled and then subsequently affirmed citizenship and was re-registered, they would no longer appear on this report because they would now be on active status.[4]

4.     If the Reports upon which the Complaint is based in fact identified formerly registered voters whose registrations were not properly cancelled due to their citizenship status, the fault lies with the government officials responsible for maintaining the voter registration rolls—not with Third-Party Plaintiffs.  In their zeal to sign up plaintiffs to bring this litigation, certain advocacy groups paid no attention to what the voter registration records at issue actually said.  For example, PILF received the October 6, 2017 correspondence from former Plaintiff Ms. Rosen attached as **Exhibit C** that began by stating that "I received a call from the Southern Coalition for Social Justice advising me that my name was listed in the Alien Invasion Report 2 along with my personal information claiming I am most likely not an American citizen and that I voted illegally. That is an absolute lie."  What was in fact an "absolute lie" is the statement attributed to the Southern Coalition for Social Justice that PILF had published a report claiming that Ms. Rosen was "most likely not an American citizen and … voted illegally."  Ms. Rosen's name never appeared in the government-created records accompanying PILF's reports that identified various former voters on the list of those identified as now ineligible to vote due to "Cancellation - Declared Non-Citizen."  That fact did not stop Plaintiffs' counsel at the Southern

---

[4] *See* April 4, 2017 email from Edgardo Cortés on the subject "Response to records request" attached as part of **Exhibit B** at 1.

4812-0255-5768.5

Coalition for Social Justice from claiming otherwise in the Complaint to which Ms. Rosen was a party and to which the other individual Plaintiffs remain parties.

5. The actual Reports that Plaintiffs claim are "defamatory," "threatening," and "intimidating" do not identify a single individual Plaintiff (or anyone else) by name. Only the government-created records cited and hyperlinked as exhibits to the Reports contain the names of individuals who—according to these government-created records—had their voter registrations cancelled because they were not citizens. Again, these government-created records for which the Department is responsible under the NVRA bear the conspicuous heading "Cancellation - Declared Non-Citizen," and the Department confirmed in writing that "[t]his report shows individuals that were cancelled due to self-reported non-citizen status." If the records are in fact what they purport to be and if the Department's statements about them were true, Third-Party Plaintiffs cannot be held liable for publishing them. If, on the other hand, the records were inaccurate and the Department misrepresented their contents, the Department is responsible for their contents—with the result that Plaintiffs cannot prove essential elements of their claims against PILF and Mr. Adams. To the extent that the records are inaccurate or do not contain the information that they purport to contain, the Department's failure to maintain accurate records violates the NVRA, is having a chilling effect on the exercise of protected First Amendment rights by Third-Party Plaintiffs and others, and needs to be corrected forthwith—certainly well before the upcoming election next month.

6. Publishing the information contained in these government-created records and advocating that our country's laws be enforced is not intimidating or threatening by any objective measure. Rather, it is protected free speech activity by concerned citizens petitioning their government to enforce laws designed to keep citizens who are lawfully entitled to vote on

the voter registration rolls, to keep non-citizens off of voter registration rolls, and to prevent non-citizens from voting.  Neither PILF's Reports nor the government-created records upon which they are based say anything about the ethnicity or country of origin of aliens who are—but legally should not be—registered to vote.  It is illegal for non-citizens to vote regardless of where they come from.  In this regard, in a prosecution of non-citizens for illegally voting in North Carolina that was commenced on August 14, 2018,[5] the nineteen named defendants came from every continent except Australia and Antarctica: four from Mexico, two from Haiti, two from the Dominican Republic, and one each from Italy, Grenada, Korea, Guyana, Germany, Poland, Japan, El Salvador, Panama, Nigeria, and the Philippines.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331.  Plaintiffs' claims under 42 U.S.C. § 1985(3) and Section 11(b) of the Voting Rights Act (codified at 52 U.S.C. § 10307) arise out of federal law.  Additionally, federal law—specifically, 52 U.S.C. § 20507—is the source of the Department's obligation to ensure that eligible applicants are registered to vote in an election and the Department's duty to maintain and make available for public inspection accurate records under the NVRA.  Finally, this Court has subject matter jurisdiction under 28 U.S.C. § 1343(a)(4) because Third-Party Plaintiffs seek equitable relief pursuant to an act of Congress providing for the protection of the right to vote.

8.     This Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

9.     This Court has supplemental jurisdiction over this Third-Party Complaint pursuant to 28 U.S.C. § 1367.

---

[5] Copies of the charging documents in that prosecution are attached as **Exhibit D**,

10.     Venue is appropriate in this Court because venue is proper in the first-party action under 28 U.S.C. § 1391(b).

## THE PARTIES

11.     Third-Party Plaintiff Public Interest Legal Foundation ("PILF") is a 501(c)(3) organization incorporated in the state of Indiana and has its principal place of business in Indianapolis, Indiana.  PILF seeks to promote the integrity of elections nationwide and has dedicated significant time and resources to ensure that voter rolls in the Commonwealth of Virginia contain only eligible registrants.  PILF's efforts in this regard have two interrelated objectives.  One is to ensure that the voter registration rolls do not contain registrants who are ineligible to vote—including non-citizens, individuals who are no longer residents of the jurisdiction in which they are registered, and individuals who are registered to vote in more than one jurisdiction.  The second is to ensure that eligible voters are not removed from the registration rolls in error, as at least some Plaintiffs in this case may contend happened to them. The injunctive and declaratory relief that PILF seeks by way of its Third-Party Complaint serves both of these objectives.

12.     Third-Party Plaintiff J. Christian Adams ("Mr. Adams") is President and General Counsel of PILF.  Mr. Adams resides in Alexandria, Virginia.

13.     Third-Party Defendant Virginia Department of Elections (the "Department") is the agency responsible for promoting and supporting accurate, fair, open, and secure elections for the citizens of the Commonwealth.  The Department is charged with implementing election laws and regulations for all elections in the Commonwealth.

14.     Third-Party Plaintiffs have been and continue to be harmed by the Department's unlawful removal of eligible citizens from the voter rolls and improper maintenance of voter

4812-0255-5768.5

registration lists, both issues of substantial public importance especially in an election year. The Department's actions have prevented Third-Party Plaintiffs from conducting accurate analyses of voter registration data and from disseminating their findings to the public. Consequently, the Department is injuring the ability of Third-Party Plaintiffs to carry out PILF's public interest mission.

15.    As an integral part of its public interest mission, PILF disseminates information about compliance with state and federal election statutes, including election integrity statutes. PILF's central activity is to promote election integrity and compliance with federal and state statutes that ensure the integrity of elections. The Department is injuring the ability of Third-Party Plaintiffs to carry out this public interest mission.

16.    The Department's violations of the NVRA also have harmed Third-Party Plaintiffs because of the chilling effect on their First-Amendment rights of free speech and petitioning the government.

## FACTUAL ALLEGATIONS

17.    On April 12, 2018, Plaintiffs filed a Complaint against Third-Party Plaintiffs alleging violations of 42 U.S.C. § 1985(3) (the "Ku Klux Klan Act") and Section 11(b) of the Voting Rights Act. The individual Plaintiffs also allege that Third-Party Plaintiffs have defamed them in violation of Virginia law.

18.    Third-Party Plaintiff PILF is a public interest law firm dedicated to the integrity of elections. Third-Party Plaintiff Mr. Christian Adams is the President of PILF. PILF seeks "to protect the right to vote and preserve the Constitutional framework of American elections." Consistent with PILF's objective of protecting the right to vote, PILF and the Virginia Voters Alliance ("VVA") undertook an investigation of public voting records in Virginia with a focus

4812-0255-5768.5

on highlighting deficiencies in the voter registration system and official inaction—or even obstruction—when confronted with those deficiencies.

19.     One way in which PILF protects the right to vote is through advocating for state compliance with the NVRA.

20.     In 1993, Congress passed the NVRA in part "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office[,]" "to protect the integrity of the electoral process[,]" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(1), (3)–(4).

21.     The NVRA sets forth mandatory procedures for state election officials that further the statute's several purposes.  Under the NVRA, the Department must "ensure that any eligible applicant is registered to vote in an election[.]"  52 U.S.C. § 20507(a)(1).  To that end, the NVRA also restricts the Department's ability to remove registrants "from the official list of eligible voters" to enumerated situations.  *Id.* § 20507(a)(3).  The Department does not have authority or discretion to remove eligible citizens from the voter rolls.  *See id.*; *see also id.* § 20501(b)(1).

22.     Section 8 of the NVRA protects registered voters against wrongful removal from the voter registration lists in at least two ways.  First, the NVRA prohibits the removal of a registered voters on the basis of change in residence unless the registrant either confirms the change of residence in writing or fails to respond to a notice, the contents and manner of mailing of which are prescribed by the NVRA, and fails to vote during the next two general election cycles after receiving the notice.  *Id.* § 20507(d)(1).  Second, the NVRA requires that list maintenance programs must be reasonable, uniform, and nondiscriminatory.  *Id.* §§ 20507(a)(4), (b)(1).

4812-0255-5768.5

23.     The NVRA requires state election officials to "maintain for at least 2 years and make available for public inspection all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."   52 U.S.C. § 20507(i).   The NVRA also requires federal, state, and local governments "to ensure that accurate and current voter registration rolls are maintained."   52 U.S.C. § 20501(b)(4).

24.     Section 11 of the NVRA provides Third-Party Plaintiffs with a private right of action to bring civil suit against the Department of "in an appropriate district court for declaratory or injunctive relief with respect to the violation."   52 U.S.C § 20510(b)(2).   The statute specifically states that an aggrieved person need not provide written notice before filing suit for violations occurring within 30 days of the date of an election for federal office.   *Id.* § 20510(b)(3).   An election for federal office will be held on November 6, 2018, less than 30 days from the filing of this Amended Third-Party Complaint.

25.     The Department's systematic violations of the NVRA are ongoing and continue as of the date of filing of this Amended Third-Party Complaint.   Accordingly, pursuant to 52 U.S.C. § 20510(b)(3), there is no notice requirement for Third-Party Plaintiffs' civil suit against the Department.

26.     Beginning in January 2016, Third-Party Defendants sought access to records related to county and city list maintenance programs under the NVRA "public inspection" requirement.

27.     Although the NVRA requires state election officials to make those records available for public inspection, PILF faced considerable lack of cooperation and obstruction

from Virginia elections officials before they finally turned over the records that are the subject of the Reports.

28.    In January 2016, VVA contacted Alexandria General Registrar Anna Leider, notifying her that based on implausible registration data, her office appeared to be in violation of the NVRA's mandate that she use reasonable efforts to remove ineligible registrants. VVA requested access to ten categories of records concerning Ms. Leider's list maintenance programs pursuant to the NVRA's public inspection provision.   Ms. Leider refused to produce the requested records, in violation of the NVRA.

29.    After litigation in the United States District Court for the Eastern District of Virginia,[6] more than eight months after the initial request was made, the City of Alexandria General Registrar finally agreed to provide a list "identifying 70 registrants who had been removed from Alexandria's registration lists after they were determined to not be U.S. citizens." (Compl. Ex. A, at 6).  The City of Alexandria did not provide PILF with information regarding how the Registrar determined that the registrants were not United States citizens.

30.    On August 8, 2016, PILF subsequently exercised its public inspection rights under the NVRA to request similar information from 19 Virginia counties and cities—specifically, Arlington, Albemarle, Bedford, Chesterfield, Fauquier, Frederick, Loudoun, Hampton, Hanover, James City, Lancaster, Prince William, Roanoke, Stafford, Rappahannock, and York Counties, and the cities of Fairfax City, Falls Church, and Manassas.

31.    PILF made these requests with the support and assistance of concerned citizens across Virginia.  One of these concerned citizens is an attorney in the lead law firm that filed suit on behalf of Plaintiffs, Skadden, Arps, Slate, Meagher & Flom LLP.  By way of an email sent

---

[6] Compl., *Virginia Voters Alliance, et al. v. Leider*, No. 16-cv-394 (E.D. Va., April 7, 2016).

September 14, 2016, this Skadden attorney offered unsolicited assistance to Mr. Adams and PILF, stating that he was "in a position to help this effort."   Then and in a subsequent email dated September 29, 2016, the Skadden attorney advised Mr. Adams that making inspection requests at "the local level is a safer bet," strategized about which counties to investigate, and planned a "launch strategy" for reports based on the records obtained under the NVRA.

32.     The Skadden attorney proved instrumental in coordinating the efforts of volunteers who requested records from registrars in support of PILF's efforts.  PILF lacked the manpower to personally visit registrars spread across Virginia and further investigate inspection requests.  Accordingly, the Skadden attorney recruited volunteers to request inspection of records from the registrars in Arlington, Albemarle, Chesterfield, Fauquier, Frederick, Hampton, James City, Lancaster, Rappahannock, and York Counties, and the Cities of Falls Church, Manassas, and Winchester.  He also offered to provide draft affidavits for the volunteers seeking the records.  This support from Skadden allowed PILF to make NVRA inspection requests of jurisdictions across Virginia and not merely concentrated within a single geographic region.

33.     Relatively few jurisdictions were responsive to PILF's requests.  Prince William County, however, "provided a list of 433 non-citizens who had registered to vote in the county, but were then removed after they were determined to not be U.S. citizens."  The report that Prince William County created and provided to PILF was headed with the caption "Cancellation - Declared Non-Citizen."  Each listed voter had a cancel date and cancel type; every voter was designated "Declared Non-Citizen."  (Compl. Ex. C, at 1; Compl. Ex. D, at 1).

34.     Bedford County and Roanoke County also both provided government-created records, including lists of "non-citizens that had been removed from their voter rolls" and copies

of notices sent to "individuals who indicated on their DMV applications that they were not citizens." (Compl. Ex. A, at 8).

35.    Third-Party Plaintiffs faced extreme difficulty in obtaining access to voter list information and "filed four separate lawsuits in 2016 alone to force election officials to allow inspection of their election records."[7] (Compl. Ex. A, at 5). Some of this difficulty resulted from the fact that Edgardo Cortés, who was Commissioner of the Department at the time, had issued guidance to the local registrars instructing them not to "provide the information regarding reasons for cancellation for non-citizen status." (Compl. Ex. A, at 9). This guidance was distributed statewide on August 19, 2016, just 11 days after PILF submitted its public inspection requests to 19 Virginia counties and cities. Mr. Cortés subsequently contacted PILF on September 16, 2016, when he offered to provide a "customized report" at a cost of $240. Such a demand is impermissible because the NVRA permits election officials to charge only "reasonable costs" for "photocopying," not for the time spent producing records. 52 U.S.C. § 20507(i)(1).

36.    Ultimately, PILF did obtain government-created voter records that included, by the Department's own classification and selection, the names of individuals that the Department had "declared" to be non-U.S. citizens and had removed from the voter rolls.

37.    Based on the contents of the government-created voter records that Third-Party Plaintiffs *were* able to obtain, Third-Party Plaintiffs and VVA published a report entitled *Alien Invasion* (the "First Report") in September 2016. The First Report cited and hyperlinked linked exhibits that reproduced the government records as Third-Party Plaintiffs had received them.

---

[7] Three of these four lawsuits were filed in Virginia.

The First Report advocated for more careful government recordkeeping since "[c]itizenship is the most fundamental element of eligibility to vote in American elections."  (Compl. Ex. A, at 1).

38.     The First Report listed state and federal voting statutory violations that Third-Party Plaintiffs reasonably believed "a fraudulent voter might commit when he registers and votes."  (Compl. Ex. A, at 3 (citing Virginia Code § 24.2-1004; 18 U.S.C. § 611; 18 U.S.C. § 911; 18 U.S.C. § 1015; 52 U.S.C. § 20511)).  Third-Party Plaintiffs argued that "[w]hen non-citizens register or actually vote, they violate both state and federal statutes because citizenship is a requirement to vote in both state and federal elections" and that "[e]ach time such a crime is perpetrated, whether by accident or willfully, a citizen is effectively disenfranchised."  (Compl. Ex. A, at 3).  Based on the plain text of state and federal voting laws, together with the Department's declaration of non-citizenship of the individuals named on the government-created lists and the removal of those individuals from the voting rolls, Third-Party Plaintiffs concluded that votes cast by this group were "likely a felony."  (Compl. Ex. A, at 3).

39.     Third-Party Plaintiffs' conclusion applied only to non-citizens and not to lawfully registered citizens.  The First Report did not allege that any particular individual had committed a crime.  None of the Plaintiffs was mentioned in the body of the Report, although the attached reproduction of the government-created documents from Prince William County listed Plaintiff Luciania Freeman as having her registration cancelled as a "Declared Non-Citizen."  (Compl. Ex. A, at C).

40.     In May 2017, Third-Party Plaintiffs and VVA published an updated version of their report entitled *Alien Invasion II* (the "Second Report"). The Second Report reiterated the generalized argument that registration and voting by non-citizens was a violation of various state and federal election statutes.  (Compl. Ex. B, at 3).  The Second Report expanded the analysis of

14

the First Report with the inclusion of newly-obtained government records listing persons whose voter eligibility was cancelled for being identified as a non-citizen.  These government records were reproduced exactly as they were received and included names, home addresses, and telephone numbers for each person.  These new records, as produced by government officials in response to PILF's request for non-citizen cancellation reports, identified Plaintiffs Luciania Freeman, Eliud Bonilla, and Abby Jo Gearhart as having their registrations cancelled.  The records specifically categorized Plaintiffs Luciania Freeman and Eliud Bonilla as being "declared non-citizens."  None of the three individual Plaintiffs was named in the body of the Second Report.

41.     After the publication of the First Report, but before publication of the Second Report, Third-Party Plaintiffs communicated with Virginia officials regarding the methodology behind the voter cancellation reports.  The then-Commissioner of the Department, Mr. Cortés, communicated directly with Noel Johnson, a PILF attorney, regarding PILF's data requests.  In the correspondence transmitting the non-citizen cancellation report, Mr. Cortés stated that the reports were reliable:  "The report also provide[s] a much more robust data set in an effort to meet your research needs and was created in an excel format to facilitate data analysis."  *See* **Exhibit B** at 2.

42.     In later correspondence, Mr. Cortés explained that the records the Commonwealth sent to PILF "show[] individuals that were cancelled due to self-reported non-citizen status and failed to complete an affirmation of citizenship in the allotted time frame and continue to be in cancelled status."  *See* **Exhibit B** at 1.  Mr. Cortés further explained that citizens who had affirmed citizenship after previous cancellation "would no longer appear on this report because they would now be on active status."

43.     Based on these affirmations by the then-Commissioner of the Virginia Department of Elections, PILF understood that it could publish the records it received with confidence that only citizens whose voter registration was currently cancelled for non-citizenship would be included.  Third-Party Plaintiffs reasonably believed that state and local officials had determined the citizenship of individuals properly before declaring them non-citizens and removing them from voter rolls.

44.     No other government officials ever contacted PILF or Mr. Adams regarding the methodology in either Report before publication or the filing of Plaintiffs' lawsuit.  Third-Party Plaintiffs neither knew nor had reason to believe that there was any issue with their methodology or the accuracy of the underlying government-created records.

45.     After the publication of the Second Report, on October 11, 2017, Third-Party Plaintiffs received a letter from former Plaintiff Jean Rosen explaining that she was a citizen and incorrectly included in the Second Report.  Ms. Rosen stated that she "received a call from the Southern Coalition for Social Justice advising me that my name was listed in the Alien Invasion Report 2 along with my personal information claiming I am most likely not an American citizen and that I voted illegally."  *See* **Exhibit C**.

46.     Upon receiving Ms. Rosen's letter, PILF investigated documents it had received from York County and discovered "that some records were erroneously disclosed by the Commonwealth of Virginia which reflected individuals incorrectly categorized in the official voter registration archive as being 'declared non-citizens.'"  (Compl. ¶ 43).  But Third-Party Plaintiffs had specifically requested "non-citizen cancellation reports," and the Virginia Department of Elections had specifically compiled records of individuals whose voter registration was cancelled and declared those individuals "non-citizens."  Even so, the York

County registrar erroneously sent PILF certain voter records, including those of Plaintiff Ms. Gearhart and former Plaintiff Ms. Rosen, alongside those of individuals whose records were responsive to PILF's inspection request.  Third-Party Plaintiffs had attached copies of these records as exhibits to the Second Report, alongside more than 500 pages of other government-created cancellation reports for non-citizen registrants.

47.     Third-Party Plaintiffs subsequently contacted York County to attempt to obtain the correct records.  The York County Registrar provided updated information and admitted that the previous production "included correspondence for people who had apparently initially indicated to the DMV that they were not a citizen, but then upon our inquiry with them, confirmed that they are, in fact, citizens of the United States."  *See* **Exhibit E**.  This erroneous production by the York County Registrar was the true cause of Ms. Rosen's frustration.  Counsel for Plaintiffs, the Southern Coalition for Social Justice ("SCSJ"), acknowledged "the wrongs committed against these voters by the Commonwealth" in a letter to PILF discussing Ms. Rosen's concerns.  *See* **Exhibit F**.

48.     Third-Party Plaintiffs updated the body of the Second Report and removed the incorrect portion of the government's records from their supporting documentation.  (Compl. ¶ 43).  This correction of the government's error resulted in Plaintiff Ms. Gearhart and former Plaintiff Ms. Rosen no longer appearing in the published version of the Second Report. Plaintiffs characterize such efforts to ensure accuracy as "self-serving and dubious" (Compl. ¶ 43), but one of PILF's core goals is to improve accuracy in government recordkeeping of voter lists: "PILF's priority is that every eligible citizen remain on the rolls and every ineligible alien be removed from the rolls."  (Compl. Ex. B, at 10).

49.     PILF continues to request government records related to non-citizen voter registration.  Beginning on or about July 31, 2018, more than a year after the publication of the Second Report and more than three months after Plaintiffs filed suit, government registrars began including qualifiers in their responses to PILF's requests:

> Please note that although the report heading and cancellation type are "Declared Non-Citizen," that brief description does not accurately reflect what the report contains.  Our office has no definite information as to the citizenship status of any individuals on the list.  Nearly all individuals appearing in the report were removed in accordance with Va. Code Ann. § 24.2 427(B1).  Under that statute, a notice must be issued any time a report from the Department of Motor Vehicles or the systematic Alien Verification Entitlements Program indicates that the voter is not a United States citizen.  A voter's registration must be cancelled if the voter then fails to timely respond to the notice.

*See* **Exhibit G**.

50.     This new warning appeared only after Plaintiffs filed suit against PILF and Mr. Adams.  No earlier government responses to PILF's requests included such qualifications.  Third-Party Plaintiffs had no reason to believe that the Commonwealth's earlier responses to PILF's requests for voter lists did not contain the requested information.  In fact, earlier communications from the then-Commissioner of the Virginia Department of Elections had assured PILF that the records were accurate and only "show[ed] individuals that were cancelled due to self-reported non-citizen status and failed to complete an affirmation of citizenship in the allotted time frame and continue to be in cancelled status."  *See* **Exhibit B** at 1.

## SUMMARY OF PLAINTIFFS' ALLEGATIONS
### *(Against Third-Party Plaintiffs)*

51.     Plaintiffs have filed a Complaint against Third-Party Plaintiffs alleging violations of 42 U.S.C. § 1985(3) (the "Ku Klux Klan Act") and Section 11(b) of the Voting Rights Act.  Plaintiffs Bonilla, Freeman, and Gearhart also allege that Third-Party Plaintiffs have defamed

them in violation of Virginia law.  As a result, Plaintiffs are seeing to recover against Third-Party Plaintiffs.

52.    However, the actions, decisions, and publications of the Department gave rise to the Plaintiffs' allegations.

53.    In Count I of the Plaintiffs' Complaint, Plaintiffs have alleged that Third-Party Plaintiffs' publication of the Reports constituted a conspiracy to intimidate constitutionally eligible voters from voting or register to vote in violation of 42 U.S.C. § 1985(3), also known as the "Ku Klux Klan Act."  Plaintiffs allege that Third-Party Plaintiffs knew or should have known that the Reports were accusing multiple United States citizens who were constitutionally eligible voters of committing felony voter fraud.  If Plaintiffs are successful against Third-Party Plaintiffs, it will be because Third-Party Plaintiffs relied upon the representations of the Department, which unlawfully removed citizens from the voter rolls and failed to accurately maintain and produce records in violation of the NVRA.

54.    In Count II, Plaintiffs have alleged that Third-Party Plaintiffs' publication of the Reports intimidated or attempted to intimidate Plaintiffs from exercising their voting rights in violation of Section 11(b) of the Voting Rights Act.  Plaintiffs claim that these publications are part of a "reckless, ongoing defamation campaign" targeting "the constitutionally eligible voters recklessly and falsely accused of committing felony voter fraud" in the Reports.  If Plaintiffs are successful against Third-Party Plaintiffs, it will be because Third-Party Plaintiffs relied upon the representations of the Department, which unlawfully removed citizens from the voter rolls and failed to accurately maintain and produce records in violation of the NVRA.

55.    In Count III, Plaintiffs Bonilla, Freeman, and Gearhart allege that Third-Party Plaintiffs' publication of the Reports defamed them by falsely asserting that they were non-

citizens who committed felony voter fraud by registering to vote and/or voting. To the extent that the Reports contained incorrect information, it was due to the Department's improper removal of citizens from the voter rolls and inaccurate record-keeping and document production, in violation of the NVRA. If Plaintiffs are successful against Third-Party Plaintiffs, it will be because Third-Party Plaintiffs relied upon the Department's representations.

56.     Notably, Plaintiffs admitted that they could have brought their claims directly against the Department. Counsel for Plaintiffs, SCSJ, recognized as much by stating that "SCSJ takes issue with the improper identification and removal of legitimate registrants by the Commonwealth of Virginia, and this is an issue we intend to investigate and address in the course of our work as lawyers." *See* **Exhibit F**. According to SCSJ, the Commonwealth of Virginia committed "wrongs . . . against these voters[.]" *See id.*

57.      Instead, Plaintiffs brought their claims only against Third-Party Plaintiffs, in an effort to chill Third-Party Plaintiffs' exercise of their First Amendment rights of free speech and petitioning the government to comply with its statutory obligations.

58.     Furthermore, in each Count of their Complaint, Plaintiffs seek to enjoin Third-Party Plaintiffs from publishing the Reports and from publishing the government-created voter records. (Compl. ¶¶ 66, 73, 82; *see also id.* ¶ 30). To the extent that any action should or could be enjoined, the Department should be enjoined from violating the NVRA by unlawfully removing eligible citizens from the voter rolls and from inaccurately maintaining and producing records of eligible voters.

59.     As a result of the Department's unlawful removal of citizens from the voter rolls and the Department's failure to accurately maintain and produce voter records, Third-Party

Plaintiffs have already been damaged and will suffer additional damages, along with costs, interest, and attorneys' fees, in defense of Plaintiffs' action against them.

## COUNT I—UNLAWFUL REMOVAL OF VOTERS IN VIOLATION OF THE NATIONAL VOTER REGISTRATION ACT OF 1993
*(Against Third-Party Defendant)*

60.     The allegations contained in Third-Party Plaintiffs' Answer to Plaintiffs' Complaint and the allegations contained in paragraphs 1–59 of Third-Party Plaintiffs' Amended Third-Party Complaint are incorporated by reference as if fully set forth herein.

61.     If Plaintiffs' allegations prove to be true, the Department has removed eligible citizens from the voter rolls in violation of Section 8 of the NVRA.  52 U.S.C. §§ 20507(a)(1), (3)–(4).

62.     The Department's unlawful removal of eligible citizens from the voter registration rolls also violates the express purpose of the NVRA.  52 U.S.C. § 20501(b).

63.     The Department's violations of the NVRA have harmed Third-Party Plaintiffs and will continue to harm Third-Party Plaintiffs by impairing their essential and core mission of fostering compliance with federal election laws, promoting election integrity, and ensuring that only eligible citizens are registered on the voter rolls.

64.     Furthermore, the Department's violations of the NVRA have harmed Third-Party Plaintiffs and will continue to harm Third-Party Plaintiffs by chilling their free-speech rights under the First Amendment.  Specifically, Third-Party Plaintiffs have been unable to advocate for election integrity and the rights of eligible citizens to be included on the voter rolls because the Department's improper removal of citizens from the voter rolls created the confusion that led to the individual Plaintiffs' alleged grievances.

65.     Third-Party Plaintiffs have no adequate remedy at law.

66.     A declaratory judgment and injunctive relief are required to remedy past and continuing violations of the NVRA and to ensure the Department's future compliance with the NVRA.

67.     Third-Party Plaintiffs also seek reasonable attorneys' fees, including litigation expenses, associated with their civil claim, as allowed under the NVRA private right of action. 52 U.S.C § 20510(c).

## COUNT II—IMPROPER MAINTENANCE OF VOTER REGISTRATION ROLLS IN VIOLATION OF THE NATIONAL VOTER REGISTRATION ACT OF 1993
### *(Against Third-Party Defendant)*

68.     The allegations contained in Third-Party Plaintiffs' Answer to Plaintiffs' Complaint and the allegations contained in paragraphs 1–59 of Third-Party Plaintiffs' Amended Third-Party Complaint are incorporated by reference as if fully set forth herein.

69.     If Plaintiffs' allegations prove to be true, the Department's voter list maintenance program failed to ensure the maintenance of an accurate and current voter registration roll in violation of Section 8 of the NVRA.  52 U.S.C. §§ 20507(a)(1), (3)–(4).

70.     The Department's improper voter list also violates the express purpose of the NVRA.  52 U.S.C. § 20501(b).

71.     The Department's violations of the NVRA have harmed Third-Party Plaintiffs and will continue to harm Third-Party Plaintiffs by impairing their essential and core mission of fostering compliance with federal election laws, promoting election integrity, and ensuring that only eligible citizens are registered on the voter rolls.

72.     Furthermore, the Department's violations of the NVRA have harmed Third-Party Plaintiffs and will continue to harm Third-Party Plaintiffs by chilling their free-speech rights under the First Amendment.  Specifically, Third-Party Plaintiffs have been unable to advocate

for election integrity and the rights of eligible citizens to be included on the voter rolls because the Department's improper removal of citizens from the voter rolls created the confusion that led to the individual Plaintiffs' alleged grievances.

73.     Third-Party Plaintiffs have no adequate remedy at law.

74.     A declaratory judgment and injunctive relief are required to remedy past and continuing violations of the NVRA and to ensure the Department's future compliance with the NVRA.

75.     Third-Party Plaintiffs also seek reasonable attorneys' fees, including litigation expenses, associated with their civil claim, as allowed under the NVRA private right of action. 52 U.S.C § 20510(c).

## **PRAYER FOR RELIEF**

WHEREFORE, Third-Party Plaintiffs pray that the Court grant relief against the Virginia Department of Elections as follows:

a)   Declare that the Department has violated Section 8 of the NVRA, 52 U.S.C. § 20507, by employing a list-maintenance process that results in the improper removal of citizens from the voter rolls;

b)   Issue a temporary restraining order requiring the Department, its agents, its employees, and all persons in active concert or participation with it, to cease and desist from describing eligible citizens as being "Declared Non-Citizen" and listing eligible citizens on registration cancellation reports entitled "Cancellation - Declared Non-Citizen" in violation of Section 8 of the NVRA, 52 U.S.C. § 20507;

c)   Issue a temporary restraining order requiring the Department, its agents, its employees, and all persons in active concert or participation with it, to cease and desist from

4812-0255-5768.5

removing eligible citizens from the voter rolls for failure to complete an affirmation of citizenship in the allotted time period, in violation of Section 8 of the NVRA, 52 U.S.C. § 20507;

d) Issue a preliminary and permanent injunction:

(1) ordering the Department, its agents, its employees, and all persons in active concert or participation with it, to cease and desist from describing eligible citizens as being "Declared Non-Citizen" and listing eligible citizens on registration cancellation reports entitled "Cancellation - Declared Non-Citizen" in violation of Section 8 of the NVRA, 52 U.S.C. § 20507; and

(2) directing the Department to restore to Virginia's voter-registration list all eligible citizens who were unlawfully purged based on failure to complete an affirmation of citizenship in the allotted time frame; and

e) Award Third-Party Plaintiffs their reasonable attorneys' fees, litigation expenses, and costs incurred in connection with this action, pursuant to 52 U.S.C. § 20510(c);

f) Retain jurisdiction over this action to ensure that Defendant complies with any order(s) issued by this Court and with his obligations under the NVRA; and

g) Grant such additional relief as to this Court seems just and proper.

4812-0255-5768.5

Dated: October 11, 2018

Respectfully submitted,

PUBLIC INTEREST LEGAL FOUNDATION
and J. CHRISTIAN ADAMS

By */s/ Michael J. Lockerby*
     Counsel

Michael J. Lockerby (VA Bar No. 24003)
Eli L. Evans (*pro hac vice* motion forthcoming)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone:  202-945-6079
Facsimile:  202-672-5399
Email: mlockerby@foley.com
Email: eevans@foley.com

William E. Davis (admitted *pro hac vice*)
Ana Romes (admitted *pro hac vice*)
FOLEY & LARDNER LLP
One Biscayne Tower
2 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Telephone:  305-482-8404
Facsimile:  305-482-8600
Email: wdavis@foley.com
Email: aromes@foley.com

Counsel for Third-Party Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of October, 2018, I electronically filed the foregoing DEFENDANTS' AMENDED THIRD-PARTY COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND ATTORNEYS' FEES with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record, including:

Anisa A. Somani, Esq.
Nicole M. Cleminshaw, Esq.
Geoffrey M. Wyatt, Esq.
Sean M. Tepe, Esq.
Lauren A. Eisenberg, Esq.
Samuel Levo, Esq.
Andrew Hanson, Esq.
SKADDEN ARPS SLATE MEAGHER & FLOM
1440 New York Avenue, N.W.
Washington, D.C. 20005

Allison Riggs, Esq.
Jacklyn Maffetore, Esq.
SOUTHERN COALITION FOR SOCIAL JUSTICE
1415 West Highway 54, Suite 101
Durham, North Carolina 27707

Cameron Kistler, Esq.
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Avenue, N.W. # 163
Washington, D.C. 20006

Larry Schwartztol, Esq.
PROTECT DEMOCRACY PROJECT
10 Ware Street
Cambridge, Massachusetts 02138

Andrew G. Celli, Jr., Esq.
Alanna Kaufman, Esq.
EMERY CELLI BRINCKERHOFF & ABADY LLP
600 Fifth Avenue at Rockefeller Center
10th Floor
New York, New York 10020

The Honorable Mark Herring
Cynthia E. Hudson, Esq.
Stephen A. Cobb, Esq.
Heather Hays Lockerman, Esq.
Joshua D. Heslinga, Esq.
OFFICE OF THE ATTORNEY GENERAL
202 North 9th Street
Richmond, Virginia 23219


*/s/ Michael J. Lockerby*
Michael J. Lockerby (VA Bar No. 24003)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone:  202-945-6079
Facsimile:  202-672-5399
Email: mlockerby@foley.com

Counsel for Third-Party Plaintiffs

4812-0255-5768.5