**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| League of United Latin American Citizens – Richmond Region Council 4164, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Public Interest Legal Foundation, an Indiana Corporation, and J. Christian Adams <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 1:18-cv-00423-LO-IDD <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANT ADAMS' COMPLIANCE WITH PLAINTIFFS' DOCUMENT REQUESTS**

Pursuant to Federal Rule of Civil Procedure 37, Plaintiffs respectfully submit this Memorandum in Support of their Motion to Compel Compliance with Plaintiffs' Discovery Requests.

**PRELIMINARY STATEMENT**

Defendant J. Christian Adams was served a request for production on December 10, 2018. Over the intervening two months, nearly 4000 documents have been produced by the other Defendant, Adams's organization, the Public Interest Legal Foundation ("PILF") in the course of six productions. As these productions came in, with one after the other omitting any documents for which Adams was listed as a custodian, Plaintiffs repeatedly inquired as to when the production of Defendants would be complete, only to be met with vague and non-committal responses from Defendants' counsel.

Finally, on February 12, more than two months after Plaintiffs' requests for production were served, Adams – the architect of the *Alien Invasion* Reports that are central to this litigation and a prolific writer and speaker on the topic of alleged voter fraud that the Reports trumpet and is the cause of Plaintiffs' injuries – contained a grand total of 62 emails from his own files. Implausibly, approximately one third of those emails involve correspondence with a PILF volunteer who has little to do with the claims in this litigation beyond the coincidence that he is employed by the same law firm that employs Plaintiffs' pro bono counsel.

As detailed further in this brief, specific documents produced from other sources overwhelmingly indicate that Adams should have many, many more responsive documents. And other circumstances surrounding the production – including Adams's decision to hunt for responsive documents himself instead of having Defendants' counsel apply search terms as they had done with respect to the documents possessed by Defendant PILF, as well as the general refusal to provide Plaintiffs meaningful information regarding the timing or substance of Adams's production prior to February 12 – lend further support to the conclusion that Adams's production is selective, incomplete, and need to be rectified immediately.

Plaintiffs have made a good faith effort to resolve this discovery issue directly with Defendants' counsel, who have refused to undertake further efforts to provide a more complete production. Accordingly, and for the reasons further detailed in this brief and the supporting declaration, the Court should compel Defendant Adams to respond to Plaintiffs' requests for production of documents.

**BACKGROUND**

Defendants are Public Interest Legal Foundation ("PILF") and J. Christian Adams. Defendants, along with a non-party, the Virginia Voters Alliance, published two reports, *Alien Invasion in Virginia ("Alien Invasion I")* and *Alien Invasion II*, that falsely asserted that

Individual Plaintiffs,[1] among other Virginians, were non-citizens who committed felonies by registering to vote and voting.  (Compl. ¶ 4, Dkt. No. 1).  This assertion, as well as various statements promoting the Alien Invasion Reports, are defamatory because Plaintiffs are citizens. (*Id.* ¶ 75).  Moreover, the Complaint alleges that each Defendant engaged in voter intimidation, in violation of two federal statutes, through the acts of defamation, publishing Plaintiffs' names and personal contact information, and seeking their prosecution for voter fraud.  (*Id.* ¶ 69).

Adams is the President and General Counsel of PILF.  He is named as a defendant as a consequence of both his leadership of PILF's alleged wrongful conduct and his individual statements and actions.  (Comp. ¶ 23).  Outside of his employment with PILF, Adams was a member of President Trump's disbanded Presidential Advisory Commission on Election Integrity ("PACEI").  (*Id.* ¶ 18).  He writes and speaks regularly on voting and elections.  He is a legal editor and columnist for PJMedia.com and a frequent guest on Fox News and radio programs. (Declaration of Sean M. Tepe, ¶ 5).  He maintains his own blog[2] and Twitter feed[3] under the name "Election Law Center."  The Complaint alleges that Adams has made defamatory and threatening statements through these media platforms.  (*Id.* ¶¶ 23, 24, 31, 45).

Although Defendant Adams is the President of PILF, he does not work with the PILF employees in Indianapolis, Indiana.  Rather, he works in Virginia.  (Tepe Decl., ¶ 3).  And although Adams has a PILF email address, he maintains separate email addresses – a@electionlawcenter.com and adams@electionlawcenter.com – and appears to primarily use

---

[1]     The individual Plaintiffs are Eliud Bonilla, Luciania Freeman, and Abby Jo Gearhart.

[2]     www.electionlawcenter.com

[3]
        https://twitter.com/ElectionLawCtr?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ct wgr%5Eauthor

these addresses even for PILF-related activities.  (*Id.*).  And given his separate work location, he

works using a separate computer.  (*Id.*).

While it is true that Defendant Adams appears in many documents produced by

Defendant PILF, Defendant Adams communicates and comments about the issues relevant to

this case in forums outside of PILF.  As summarized below, and elaborated in the accompanying

Declaration of Sean M. Tepe, there are three troubling aspects of Defendant Adams's production.

### 1.    Indications of Missing Documents

First, there are strong indications that responsive documents have not been produced,

including the following:

- Documents produced by PILF indicate that Adams personally met with federal prosecutors in Virginia to seek the prosecution of the people listed in the Alien Invasion Reports, which by definition would include Plaintiffs.  Yet no documentation of this meeting or meetings has been produced.  (Decl. ¶ 10).

- Documents show that a person privy to communications among Virginia election officials would occasionally forward directly to Adams's @electionlawcenter.com email official communications critical of PILF and/or Adams.  Adams would then delete his source's email sender information and re-forward the election official communication to others.  Adams has not produced any of those communications from or with his source, which is consist with PILF Board member Hans von Spakovsky's admonition to a PILF employee, "[d]on't reveal how we got this."  (*Id*. ¶¶ 8,9).

- Non-party VVA has produced an email chain including Adams in which Clara Belle Wheeler, one of the witnesses listed in Defendants' initial disclosures, commented approvingly of the media coverage of Alien Invasion II.  No part of this email chain was produced by Adams, and Plaintiffs have reason to believe there are other emails with Ms. Wheeler, a member of the Virginia State Board of Elections, that have not been produced.  (*Id*. ¶ 13).

- Adams has a long history of working with Hans von Spakovsky, another of the witnesses listed in Defendants' initial disclosures, on purported voter fraud, and so it is also very surprising that there is no responsive correspondence between the two of them.  (*Id*. ¶ 14).

- Despite frequent appearances in print, radio and television regarding the Alien Invasion Reports specifically and purported voter fraud generally, the limited

Adams production is largely devoid of documents one would expect – drafts of articles, clips of TV appearances, emails setting up interviews.  Adams also failed either to produce or deny the existence of the requested publishing contracts or agreements that we suspect exist with PJ Media, and perhaps other outlets.  (*Id.* ¶ 12).

- Adams did not produce any non-privileged documents relating to this Litigation as requested by RFP #11.  He has tweeted about the Litigation, yet we are to believe that there are no other responsive communications regarding this lawsuit.  (*Id*. ¶ 11).

2.      Different Search Process for Defendant Adams

Second, Defendant Adams was subject to unique document collection protocol that enhances concerns about incomplete and selective production.  Specifically, Defendant PILF's ESI was collected, sent to defense counsel Foley & Lardner, subjected to search terms, and reviewed for responsiveness by Foley attorneys.  The ESI from Defendant Adams was not.  (Decl. ¶ 17).  According to the meet and confer conversations, Adams simply reviewed the document requests, performed a manual review of his emails and computer, and decided what to produce.  (*Id*.).   When asked what the basis was for the different treatment, Defendants' counsel responded that a manual review is an acceptable form of production.  (*Id*.).  The different treatment of the Adams ESI was confirmed on February 12, *a month after Plaintiffs first asked questions* regarding the collection, search and review of Adams's documents.  (*Id*. ¶ 18).  And confirmation came only after Defendants' counsel initially ignored detailed questions about the Adams search and review.  (*Id*.).

The fruits of this process all but confirm its insufficiency.  *Nearly a third* of the 62 emails are with a single volunteer – who is employed by the same law firm that employs Plaintiffs' pro bono attorneys.  The volunteer's relevance to this litigation is unclear and appears to be tenuous at best; from all that appears from the emails Adams has produced, he merely assisted in visiting local election registrars and collecting election records – which, at best, is only marginally

5

relevant to Plaintiffs' claims in this case.  But Defendants appear to be intent on exploiting the

fact that the volunteer works at the same firm as some of Plaintiffs' counsel as a tool of

harassment in this case, as indicated by their repeated reference to this essentially irrelevant fact

in a number of filings and their recent service of a subpoena and deposition notice on Plaintiffs'

counsel's law firm.  That so many of Adams's produced documents track Defendants' legal

arguments raise a red flag that Defendant Adams is engaging in selective production of

documents.  Moreover, the fact that Adams has retained years-old emails that certainly were

mundane at the time suggests Adams has many more emails to produce.

        3.      Delays and Lack of Transparency Regarding Defendants' Productions

Third, that such a meager production follows such a lengthy period during which

Defendants' counsel steadfastly refused to provide meaningful updates on the timing of

productions smacks of obstructive litigation conduct.  On December 10, 2018, within a week of

the authorization of discovery, Plaintiffs served a request for production on Defendants.  (Decl. ¶

24).  During a meet and confer on January 11, 2019, Plaintiffs asked Defendants for an estimate

of when document production would be completed.  (*Id*. ¶ 26).  Defendants responded that they

would know better after a forthcoming production on January 15.  (*Id*.).  However, that

production came and went with Defendants offering no indication of when production would be

completed.  (*Id*.).  By letter dated January 25, 2019, Plaintiffs asked again, and again by email on

February 5.  (*Id*. ¶ 27).  Defendants did not respond to Plaintiffs' January 25 letter until February

7, 2019, and even then failed to commit to a production end date.  (*Id*. ¶ 28).

On that same day, February 7, Plaintiffs demanded an answer on the completion of

production. (*Id*. ¶ 29).  As the emails traded that day show, Defendants continued to be evasive.

(*See id*., Ex. 14).  Yet after multiple emails, Defendants left the impression that the bulk of

production would be completed the next day, Friday, February 8.  But when this production was

reviewed over the weekend, it became clear that not a single document had been produced by

Adams as a custodian. (Decl. ¶ 30).

On Monday, February 11, Plaintiffs sent a letter demanding an explanation for the lack of

documents from Adams (as well as restating their unanswered questions regarding the nature of

the Adams collection and review) and requesting a meet and confer for the following day. (*Id*. ¶

31). Seven minutes before the scheduled start of that February 12 meet and confer over the lack

of any Adams custodial documents, Plaintiffs receive a production with the 62 emails from

Adams.[4] (*Id*. ¶ 32).

*     *     *     *

In light of the red flags suggesting an incomplete production, the production delays, and

counsel's lack of transparency and evasiveness, Plaintiffs requested that the Adams ESI be

treated like the PILF ESI – collected in full, subjected to search terms, and reviewed in an

expedited fashion by someone other than Defendant Adams. That proposal was rejected. (*Id*. ¶

35).

In accordance with Local Civil Rule 37(E), the parties have met and conferred regarding

the insufficient Adams production yet were unable to reach an agreed-upon resolution.

<strong><u>ARGUMENT</u></strong>

Rule 34 sets forth the requirements for responding to a request for production of

documents; among others that the responding party must either object (with specific reasons) or

produce all responsive documents in a timely fashion. *See generally* Fed. R. Civ. P. 34(b)(2).

Where a production is incomplete or dilatory, the requesting party may move for an order to

---

[4]     This production, Defendants' sixth, contained 1721 documents in total, nearly doubling
Defendants' overall production, which previously stood at 2372.

compel production under Rule 37. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv). For purposes of the Rule, "an evasive or incomplete . . . response must be treated as a failure" to respond. Fed. R. Civ. P. 37(a)(4).

Pursuant to these provisions, courts in this district have repeatedly compelled further production, notwithstanding a responding party's assertion that all responsive documents have been produced, where circumstantial evidence demonstrates that the responding party's assertion is untenable. In *Flame S.A. v. Industrial Carriers*, 39 F. Supp. 3d 752 (E.D. Va. 2014), for example, the court overruled objections to a magistrate judge's finding that a responding party had failed to produce responsive documents where circumstances made it clear that the single document produced in response to a request for papers relating to a loan agreement could not be the only responsive document. *Id.* at 762-63 (also affirming magistrate judge's ruling that a production is incomplete when only responsive emails, and not the accompanying responsive attachments, were produced); *accord, e.g.*, *Bethel v. City of Norfolk*, No. 2:15cv501, 2017 WL 2871686, at *4 (E.D. Va. Jan. 13, 2017) (issuing an order granting movant's motion to compel after the nonmovant indicated that the response to a request for production was located in a subfolder but the subfolder was empty); *Kolon Indus., Inc. v. E.I. Du Pont De Nemours & Co.*, No. 3:11CV622, 2012 WL 13036259, at *1 (E.D. Va. Feb. 22, 2012) (granting in part plaintiff's motion to compel production of additional sales contracts within a certain time frame following defendant's failure to produce all responsive contracts); *SunTrust Bank v. NIK*, No. 1:11cv343, 2012 WL 1344390, at *1-*3 (E.D. Va. Mar. 22, 2012) (granting plaintiff's two motions to compel and a Rule 37(b) sanctions motion after defendants initially did not produce any responsive documents and subsequently selectively responded to some of the discovery requests).

These decisions are in harmony with those of other jurisdictions, which have held that a motion to compel should be granted where the requesting party "identifie[s] specific evidence that calls into question [the responding party's] contention that no further documents exist," and the responding party fails "to show specifically where they have searched and why those documents are not, in fact, within their custody, possession, or control." *Mason Tenders Dist. Council of Greater N.Y. v. Phase Const. Servs., Inc.*, 318 F.R.D. 28, 42-43 (S.D.N.Y. 2016) (granting motion to compel because existence of tax returns "challenge[d] [d]efendants' claims that no records exist[ed]").

That is the case here.  Both publicly available information and productions by PILF and nonparties make abundantly clear that Adams has responsive documents that he has failed to produce.  For example, Adams has a long history of working with Hans van Spakovsky, a member of PILF's Board of Directors.  While many email chains that include both Adams and Mr. van Spakovsky have been produced by others, Adams himself has not produced any responsive correspondences between them.  The same pattern repeats itself with regard to internal email communications between Adams and PILF employees.  Many of the same documents indicate that Adams communicated regularly with outside groups – including prosecutors, election officials and media outlets – through electronic means that other PILF custodians would not have access to.  Publicly available information, including the fact that Adams frequently appears on television and writes op-eds in his personal capacity confirm as much.  Yet Adams has produced practically none of these documents, and Plaintiffs have nowhere else to turn to get them.[5]  Finally, Adams' production is all the more suspect because

---

[5]     It is not even remotely plausible that Adams destroyed all the relevant communications before this litigation began in the course of regular maintenance of his files and email inbox.

*(cont'd)*

he, rather than his lawyers, went through his ESI and determined what information is responsive and what should be produced, and did not use the same agreed-upon search terms and parameters as co-Defendant PILF.[6]

In light of the foregoing, there is ample evidence in support of the conclusion that Adams has not fully complied with Plaintiffs' document production requests. The Court should compel him to do so.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion to Compel Compliance with Plaintiff's Discovery Requests.

Dated: February 15, 2019                         Respectfully submitted,


                                          _____/s/_____
                                          NICOLE M. CLEMINSHAW (VSB No. 92161)
                                          ANISA A. SOMANI (VSB No. 86103)
                                          GEOFFREY M. WYATT (*Pro hac vice*)
                                          SEAN M. TEPE (*Pro hac vice*)
                                          ANDREW HANSON (*Pro hac vice*)
                                          ZACHARY W. MARTIN (*Pro hac vice*)
                                          1440 New York Ave. NW
                                          Washington, DC 20005
                                          Telephone:    (202) 371-7000
                                          Facsimile:    (202) 661-8209
                                          Nicole.Cleminshaw@probonolaw.com
                                          Anisa.Somani@probonolaw.com

_____

*(cont'd from previous page)*
After all, Adams has produced emails from as far back as 2016 when they proved useful to support his theory of the case.

[6]     While Adams's self-evidently insufficient production speaks for itself, his counsel's unwillingness to offer Plaintiffs any assurances as to the completeness of his production and Adams's failure to date to certify that his production is complete provides an additional reason to grant the motion to compel. *Cf. Flames S.A.*, 39 F. Supp. 3d at 767 (imposing sanctions due to party's lack of certification in support of its argument that there were no documents responsive to the Court's order).

Geoffrey.Wyatt@probonolaw.com
Sean.Tepe@probonolaw.com
Andrew.Hanson@probonolaw.com
Zachary.Martin@probonolaw.com


ALLISON RIGGS (*Pro hac vice*)
JACLYN MAFFETORE (*Pro hac vice*)
JEFFREY LOPERFIDO (*Pro hac vice*)
**SOUTHERN COALITION FOR SOCIAL JUSTICE**
1415 West Highway 54, Suite 101
Durham, NC 27707
Telephone:    (919) 323-3380
Facsimile:    (919) 323-3942
AllisonRiggs@southerncoalition.org
JaclynMaffetore@southerncoalition.org
JeffLoperfido@scsj.org


CAMERON KISTLER (*Pro hac vice*)
**PROTECT DEMOCRACY PROJECT**
2020 Pennsylvania Ave., NW # 163
Washington, DC 20006
Telephone:    (202) 599-0466
Facsimile:    (929) 777-9428
cameron.kistler@protectdemocracy.org


LARRY SCHWARTZTOL (*Pro hac vice*)
**PROTECT DEMOCRACY PROJECT**
10 Ware St.
Cambridge, MA 02138
Telephone: (202)-599-0466
Facsimile: (929)-777-9428
larry.schwartztol@protectdemocracy.org


ANDREW G. CELLI, JR. (*Pro hac vice*)
ALANNA KAUFMAN (*Pro hac vice*)
**EMERY CELLI BRINCKERHOFF & ABADY LLP**
600 Fifth Avenue at Rockefeller Center
10th Floor
New York, New York 10020
Telephone:    (212) 763-5000
Facsimile:    (212) 763-5001
acelli@ecbalaw.com
akaufman@ecbalaw.com

11

12

*Attorneys for Plaintiffs League of United Latin American Citizens – Richmond Region Council 4614, Eliud Bonilla, Luciania Freeman, Abby Jo Gearhart*

## <u>CERTIFICATE OF SERVICE</u>

I, Nicole M. Cleminshaw, hereby certify that on the 15th day of February, 2019, I have electronically filed the foregoing Brief in Support of Plaintiffs' Motion to Compel Compliance with Plaintiffs' Discovery Requests, together with the accompanying exhibits, with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record, including:

Michael J. Lockerby, Esq.
Foley & Lardner LLP
3000 K Street, N.W. | Suite 600
Washington, DC 20007
MLockerby@foley.com


*Counsel for Defendants*

 

 

        /s/ _____
NICOLE M. CLEMINSHAW (VSB No. 92161)
1440 New York Ave. NW
Washington, DC 20005
Telephone:    (202) 371-7509
Facsimile:    (202) 661-8209
Nicole.Cleminshaw@probonolaw.com

*Counsel for Plaintiffs League of United Latin American Citizens – Richmond Region Council 4614, Eliud Bonilla, Luciania Freeman, Abby Jo Gearhart*