**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS - RICHMOND REGION COUNCIL 4614, ELIUD BONILLA, LUCIANIA FREEMAN, and ABBY JO GEARHART,<br><br>           Plaintiffs,<br><br>v.<br><br>PUBLIC INTEREST LEGAL FOUNDATION and J. CHRISTIAN ADAMS,<br><br>           Defendants. | Civil Action No. 1:18-cv-00423 (LO/IDD) |

**DEFENDANTS' OPPOSITION TO
AND REQUEST FOR EXPEDITED HEARING ON
FORMER PLAINTIFF MS. ROSEN'S MOTION TO QUASH**

Defendants, Public Interest Legal Foundation ("PILF") and J. Christian Adams ("Mr. Adams"), by counsel, respectfully state as follows (1) in opposition to the Motion to Quash a Subpoena to Testify at a Deposition (Dkt. #112) (the "Motion to Quash") filed by Plaintiffs' counsel on behalf of Jeanne Rosen ("Former Plaintiff Ms. Rosen") and (2) in support of Defendants' request for an expedited hearing on the Motion to Quash—preferably on Monday, March 11, 2019, the date on which Ms. Rosen has been subpoenaed to testify.

The deposition of Former Plaintiff Ms. Rosen that Plaintiffs now seek to delay—if not prevent altogether—was originally scheduled to take place yesterday, Thursday, March 7, 2019.

That was the day set forth in the original deposition notice[1] and subpoena[2] with which Plaintiffs' counsel and Former Plaintiff Ms. Rosen were served on February 12, 2019[3] and February 14, 2019,[4] respectively. Earlier this week, on Tuesday, March 5, 2019, Plaintiffs' counsel announced that Former Plaintiff Ms. Rosen would not be appearing in compliance with that subpoena. The following day, Wednesday, March 6, 2018, Plaintiffs' counsel disclosed for the first time that Ms. Rosen would be undergoing shoulder replacement surgery on Friday, March 15, 2019. Plaintiffs' counsel refused, however, to provide any available dates for Former Plaintiff Ms. Rosen to be deposed before—or after—the date of her scheduled surgery. From that refusal and subsequent communications, as set forth herein, it is clear that the objective is to prevent Former Plaintiff Ms. Rosen from ever being deposed.

The memorandum and declarations filed in support of the Motion to Quash complain about the "burden" of producing fifteen categories of documents. The subpoena that Former Plaintiff Ms. Rosen seeks to quash, however, would not require the production of *any* documents. Former Plaintiff Ms. Rosen has submitted a declaration complaining that the deposition was originally

---

[1] Defendants' Notice to Take Deposition with Production of Documents of Former Plaintiff Jeanne Rosen is attached as **Exhibit A**.

[2] The subpoena accompanying Defendants' Notice to Take Deposition with Production of Documents to Former Plaintiff Jeanne Rosen is attached as **Exhibit B.**

[3] On February 12, 2019, Defendants' counsel served Plaintiffs' counsel—all of whom continue to represent Former Plaintiff Ms. Rosen—with deposition notices and subpoenas for various non-party witnesses, including Former Plaintiff Ms. Rosen, by way of the email attached as **Exhibit C.** With respect to scheduling, the February 12, 2019 email stated: "As always, we are willing to be flexible on dates subject to the time constraints in the Eastern District of Virginia." Every other deposition that Defendants have noticed has been scheduled for dates convenient for the witnesses, their counsel (if any), and counsel for the parties.

[4] The Affidavit of Service for Defendants' Notice to Take Deposition with Production of Documents to Former Plaintiff Jeanne Rosen is attached as **Exhibit D**.

4826-2040-4617.1

noticed to take place in Richmond, more than an hour's drive from her home. (Rosen Decl. ¶ 8) (Dkt. #114-1, p. 3 of 3). But the subpoena that Former Plaintiff Ms. Rosen now seeks to quash would require her to travel a distance of only 3.4 miles. In trying to minimize the burden on Former Plaintiff Ms. Rosen, Defendants' counsel has certainly *not* been "inflexible and unreasonable" as the supporting memorandum alleges. (Dkt. #113, p. 1 of 19).

The "stress of having to deal with this subpoena" of which Former Plaintiff Ms. Rosen complains[5] is not likely to be any less after she undergoes surgery. Neither Plaintiffs' counsel nor Former Plaintiff Ms. Rosen has ever stated that she is *unable* to testify before her surgery. Under the circumstances, it appears that she is simply *unwilling* to testify—or that Plaintiffs' counsel is unwilling to allow her to testify, unless the "testimony" is the equivalent of interrogatory answers scripted by Plaintiffs' counsel.

Although Ms. Rosen ultimately withdrew as a Plaintiff, the allegations involving her remain in the Complaint and have been the subject of discovery requests propounded by Plaintiffs themselves. Plaintiffs cite their allegations regarding Former Plaintiff Ms. Rosen as "evidence" that Defendants intended to defame them and to intimidate and harass them to prevent them from vote. Notwithstanding the withdrawal of Former Plaintiff Ms. Rosen, her name also figures prominently in Defendants' Answer and in two exhibits to Defendants' Answer, Exhibit C (Dkt. #66-1) and Exhibit D (Dkt. #66-4). These exhibits consist of correspondence regarding Former Plaintiff Ms. Rosen between PILF and the Southern Coalition for Social Justice. Defendants' Answer references this correspondence and Former Plaintiff Ms. Rosen:

> If the Reports upon which the Complaint is based in fact identified formerly registered voters whose registrations were not properly cancelled due to their citizenship status, the fault lies with the government officials responsible for maintaining the voter

---

[5] *See* Rosen Decl. ¶ 11 (Dkt. #114-1, p. 3 of 3).

4826-2040-4617.1

> registration rolls—not with Defendants. In their zeal to sign up plaintiffs to bring this litigation, certain advocacy groups paid no attention to what the voter registration records at issue actually said. For example, PILF received the October 6, 2017 correspondence from former Plaintiff Ms. Rosen attached as **Exhibit C** that began by stating that "I received a call from the Southern Coalition for Social Justice advising me that my name was listed in the Alien Invasion Report 2 along with my personal information claiming I am most likely not an American citizen and that I voted illegally. That is an absolute lie." What was in fact an "absolute lie" is the statement attributed to the Southern Coalition for Social Justice that PILF had published a report claiming that Ms. Rosen was "most likely not an American citizen and … voted illegally." Ms. Rosen's name never appeared in the public records accompanying PILF's reports that identified various former voters on the list of those identified as now ineligible to vote due to "Cancellation - Declared Non-Citizen." That fact did not stop Plaintiffs' counsel at the Southern Coalition for Social Justice from claiming otherwise in the Complaint to which—until Friday of last week—Ms. Rosen was a party.

(Dkt. #66, pp. 2-3 of 70).

The circumstances under which Former Plaintiff Ms. Rosen and other remaining Plaintiffs were recruited by the Southern Coalition for Social Justice[6] figure prominently in Defendants' Affirmative Defenses. These include the defense that Plaintiffs' allegations of defamation, violation of the Voting Rights Act, and violation of the Ku Klux Klan Act are intended to chill Defendants' exercise of their First Amendment rights of free speech, association, and petitioning the government. Defendants' Affirmative Defenses rely heavily on the argument that the efforts by special interest groups to obtain nominal plaintiffs for the filing of this litigation are part of an effort to punish and harass Defendants for advocating that only U.S. citizens be registered and permitted to vote, as required by federal law. *See generally* Dkt. #66. The integrity of voter rolls

---

[6] According to their discovery responses, other remaining Plaintiffs were recruited by an "intern" at the Southern Coalition for Social Justice and by a law professor who disagrees with Defendants' advocacy for the enforcement of election laws.

4

is important not only to the integrity of the electoral process but to the administration of justice in this Court and others since voter registration rolls provide the pool of prospective jurors.

If discovery of Former Plaintiff Ms. Rosen is irrelevant, why have Plaintiffs insisted upon—and received—production of Defendants' communications with all voters identified by Virginia registrars as non-citizens regardless of whether they joined in this litigation? Plaintiffs' counsel insisted that Defendants produce communication with *all* Virginia voters referenced in the Reports at issue—specifically including Ms. Rosen, even though technically she was not mentioned in the Reports themselves. In this regard, the search terms to which the parties agreed specifically include the name "Rosen."

In response to the February 12, 2019 subpoena for Former Plaintiff Ms. Rosen, Plaintiffs' counsel served objections on February 27, 2019.[7] Importantly, the objections did ***not*** state an objection to the deposition itself, only to the document requests. Indeed, the objections were asserted only pursuant to Federal Rules 34 and 45—not Federal Rule 30. The objections did not state that Ms. Rosen would not or could not testify. With respect to the document requests, Ms. Rosen's general objections began with the contention that they were burdensome "because they seek documents from Ms. Rosen that she does not have and/or that Defendants already possess." Leaving aside the question of whether it is "burdensome" to produce documents that a nonparty may have, that objection suggests that the deposition need not await Ms. Rosen's production of documents—if any—before she testifies. With respect to the document requests, the objections also stated that compliance "will be particularly burdensome for the 73-year-old Ms. Rosen because she is currently dealing with a physical ailment that impacts here mobility and is scheduled

---

[7] A copy of Non-Party Jeanne Rosen's Objections and Responses to Defendants' Subpoena Duces Tecum is attached as **Exhibit E**.

5

to undergo shoulder replacement surgery in the coming weeks, followed by several months of rehabilitation recovery." Rather than object to the deposition notice, the February 27, 2019 email from Plaintiffs' counsel transmitting the objections simply expressed "concerns about the request for deposition testimony."[8]

The need for Ms. Rosen to testify sooner rather than later took on a new sense of urgency earlier this week. On Tuesday, March 6, 2019, at 3:42 p.m., Defendants' counsel sent Plaintiffs' counsel the email attached as **Exhibit G** stating as follows:

> Jeff, we'll need to schedule some time to discuss these objections sooner rather than later in view of the fact that Ms. Rosen was subpoenaed to testify on Thursday of this week.
>
> The objections did not state exactly when she is scheduled to undergo shoulder replacement surgery, but that fact suggests that she should be deposed as soon as possible—especially in view of the likelihood that she may not be available for trial. At age 73, she is younger than two recently announced candidates for President of the United States and not much older than the last two major party candidates for that office. Nevertheless, we are willing to try to accommodate her by—for example—having the deposition take place much closer to her residence in Yorktown (including in Yorktown itself, although it would obviously be more efficient for the parties to have her deposition take place in nearby Williamsburg earlier in the day on March 15, when we already have another deposition scheduled to begin at 4 p.m.).[9]
>
> Also, we do need to discuss her stated unwillingness to produce any documents.
>
> I am generally available tomorrow for such a discussion.

---

[8] The February 27, 2019 email from Plaintiffs' counsel is attached as **Exhibit F**.

[9] As an accommodation to Plaintiff Abby Jo Gearhart, who lives in Newport News, Defendants' counsel had previously agreed to have her deposition take place in Williamsburg rather than in Richmond—where it had originally been noticed—and to have it begin at 4 p.m. after she got off work.

Plaintiffs' counsel responded at 5:24 p.m. that same day by way of the email attached as **Exhibit H** stating that "we do not intend to produce Ms. Rosen for a deposition on March 7th," expressing the "hope … that through the meet and confer process we can come up with an agreeable way forward that provides defendants with what they need while significantly reducing the burden on Ms. Rosen," and concluding with the following statement: "If such an agreement can't be reached, we intend to petition the court for relief."

The morning of Wednesday, March 6, 2019, counsel for the parties met and conferred about the document and deposition subpoena. Suffice it to say that the parties were unable to reach agreement. That same morning, at 11:58 a.m., Defendants' counsel sent Plaintiffs' counsel the attached email[10] and amended deposition notice.[11] The March 7, 2019 transmittal email stated:

> Jeff, I am writing to follow up on our discussion this morning regarding Ms. Rosen.
>
> As I had previously stated in writing and repeated during our conversation this morning, Defendants are willing to try to minimize the burden and inconvenience of the deposition on Ms. Rosen. Defendants are not willing to agree, however, that she cannot be deposed at all.
>
> This morning, I learned for the first time that Ms. Rosen's shoulder replacement surgery is scheduled for next Friday, March 15, 2019. Under the circumstances, it would make the most sense to proceed with Ms. Rosen's deposition tomorrow in Richmond—consistent with the deposition notice and subpoena with which Plaintiffs' counsel were served on February 12, 2019 and with which she was served on February 14, 2019.
>
> Rather than insist upon strict compliance with the deposition subpoena—in response to which Ms. Rosen did not object or file a motion to quash—Defendants are willing to depose her next week in advance of her scheduled surgery. Unfortunately, Plaintiffs'

---

[10] The March 6, 2019 email from Defendants' counsel is attached as **Exhibit I.**

[11] Defendants' Amended Notice to take Deposition of Former Plaintiff Jeanne Rosen is attached as **Exhibit J.**

7

>counsel (who also represent Ms. Rosen) will not provide available dates and places either before or after March 15, when Ms. Rosen's surgery is scheduled to take place. Under the circumstances, I am enclosing an amended deposition notice for Ms. Rosen to be deposed on Monday, March 11 in Yorktown. The location of the deposition set forth in the amended deposition notice is, according to the hotel website, 3.4 miles from Ms. Rosen's residence.
>
>As you will see, the amended deposition notice does not call for the production of documents at or in advance of the deposition. In an ideal world, we would have documents responsive to the previously served document subpoena before Ms. Rosen is deposed. Unfortunately, that does not seem feasible at this juncture. The "burden" objections raised by Ms. Rosen are that she does not have documents responsive to many requests and that others are duplicative of documents that have already been produced. We can explore the basis for those objections next week on the record of her deposition and then determine whether there are additional responsive documents in her possession, custody, and control and—if so—what the burden of producing them might be. Hopefully it will not be necessary to reopen her deposition at some later date, but it is not possible at this juncture to make that determination.
>
>If there is some other time on Monday that would be more convenient, please let me know as soon as possible and I will try to accommodate Plaintiffs' counsel and Ms. Rosen.

Later that day, at 2:33 p.m., Defendants' counsel served Plaintiffs' counsel by email with a copy of the subpoena to Ms. Rosen.[12] That evening, the amended subpoena was served upon Ms. Rosen at her residence in Yorktown.[13]

On Thursday, March 7, 2019, at 12:22 a.m., Plaintiffs' counsel sent Defendants' counsel the lengthy email attached as **Exhibit M**. Substantively, the email began with the statement that the March 6, 2019, 11:58 a.m. email "does not accurately reflect the spirit or substance of our meet

---

[12] The March 6, 2019, 2:33 p.m. email and accompanying subpoena are attached as **Exhibit K**.

[13] A March 7, 2019 email from the process server is attached as **Exhibit L**.

4826-2040-4617.1

and confer this morning," proposed that Plaintiffs instead depose Ms. Rosen by written questions, and ended with the following statement: "We will not, however, be producing Ms. Rosen for a deposition before March 15 given her circumstances and we will be forced to seek relief from the Court if Defendants are not willing to revisit their position." Shortly thereafter, at 12:30 a.m., Defendants' counsel responded with the email attached as **Exhibit N**, stating: "I have not heard any explanation as to why Ms. Rosen cannot or should not be deposed before March 15 and why Defendants should be required to examine her through written questions rather than at a deposition. Accordingly, we cannot agree to waive compliance with the amended deposition notice and subpoena."

In an effort to accommodate Ms. Rosen, Defendants have literally gone the extra mile—actually, many miles. Although her deposition was originally to take place in Richmond, which is 71.5 miles from her residence in Yorktown, the deposition has since been moved to a location that is only 3.4 miles from her home. The deposition has also been set for Monday, March 11, 2019, the first available date on the discovery calendar. Although Defendants' counsel needed to set this date unilaterally, Plaintiffs' counsel was offered the opportunity to suggest alternatives. In this regard, Defendants' counsel has rescheduled every other previously noticed deposition to accommodate the schedules of Plaintiffs and their counsel. In this case, however, Plaintiffs' counsel simply does not want Ms. Rosen deposed. Instead, Plaintiffs' counsel has expressed concern about what areas Defendants' counsel might seek to explore with Ms. Rosen and instead insisting upon "scripting" her answers by having Defendants' submit depositions upon written examination.

Under the Federal and Local Rules alike, Defendants are entitled to depose Ms. Rosen as one of its five allotted nonparty witnesses—just as it could, and possibly will, depose others whose

9

names appear in the Reports or records attached to the Report.  Plaintiffs have served numerous non-party document subpoenas and FOIA requests and are also proceeding to depose various non-parties. Defendants have spent an inordinate of time and money responding to Plaintiffs' document requests.  Discovery is supposed to be a two-way street.

Accordingly, Defendants respectfully request that Former Plaintiff Ms. Rosen's Motion to Quash be heard—and denied—before March 15, 2019, and that she be ordered to sit for a deposition before then.

DATED this 8th day of March, 2019.     Respectfully submitted,

PUBLIC INTEREST LEGAL FOUNDATION
and J. CHRISTIAN ADAMS

By */s/ Michael J. Lockerby*
      Counsel

Michael J. Lockerby (VSB No. 24003)
Eli L. Evans (VSB No. 90700)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone: 202-945-6079
Facsimile: 202-672-5399
Email: mlockerby@foley.com
Email: eevans@foley.com

William E. Davis (admitted *pro hac vice*)
Ana Romes (admitted *pro hac vice*)
FOLEY & LARDNER LLP
One Biscayne Tower
2 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Telephone: 305-482-8404
Facsimile: 305-482-8600
Email: wdavis@foley.com
Email: aromes@foley.com

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that, on March 8, 2019, I filed the foregoing DEFENDANTS' OPPOSITION TO AND REQUEST FOR EXPEDITED HEARING ON FORMER PLAINTIFF MS. ROSEN'S MOTION TO QUASH with the Court using the CM/ECF system, which will send a Notice of Electronic Filing (NEF) to all counsel of record.

        /s/ *Michael J. Lockerby*
Michael J. Lockerby (VSB No. 24003)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone: 202-945-6079
Facsimile: 202-672-5399
Email: mlockerby@foley.com

Counsel for Defendants