IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS - RICHMOND REGION COUNCIL 4614, ELIUD BONILLA, LUCIANIA FREEMAN, and ABBY JO GEARHART, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:18-cv-00423 (LO/IDD) |
| v. | ) ) | |
| PUBLIC INTEREST LEGAL FOUNDATION and J. CHRISTIAN ADAMS, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS
## RELEVANT TO ANTI-SLAPP AND FIRST AMENDMENT ISSUES
## WITHHELD OR REDACTED BY PLAINTIFFS' COUNSEL

i

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................ 1

II.  PROCEDURAL STANDARDS ........................................................................ 4

    A.   Local Rule 26(C) Required SCSJ and Protect Democracy to Lodge Their Objections Within 15 Days of Service of Defendants' Document Requests.......... 4

    B.   Under Federal Rule 45(d)(2)(B), SCSJ and Protect Democracy Did Not Have Standing to Object to the Levitt and Loyola Document Subpoenas. ............ 4

    C.   Federal Rule 45(d)(2)(B) Required Objections to Be Served Within 14 Days  of Service of Defendants' Document Subpoenas on Professor Levitt and Loyola. ...................................................................................................... 6

    D.   Under Federal Rule 26(b)(3), SCSJ and Protect Democracy Have the Burden to Show That Professor Levitt's Emails With Virginia Voters Are Work Product. ...................................................................................................... 6

    E.   The Attorney-Client Privilege Applies Only to Confidential Communications  With Virginia Voters for the Purpose of Providing Them With Legal Advice........................................................................................ 7

III. ARGUMENT .................................................................................................... 7

    A.   The Documents Subpoenaed from Professor Levitt and Loyola University Should Have Been Produced By Plaintiffs in Response to Defendants' Discovery Requests............................................................................................ 7

    B.   SCJS and Protect Democracy Have No Standing Under Federal Rule 45 to Object  to the Subpoenas Served on Third-Parties Professor Levitt and Loyola University. ......................................................................................... 8

    C.   SCJS and Protect Democracy Did Not Object to the Levitt and Loyola Document Subpoenas Within the 14 Days Required by the Federal Rules of Civil Procedure. ...................................................................................... 9

    D.   Professor Levitt's Communications With SCJS and Protect Democracy Were Not  "In Anticipation of Litigation" and Are Not Otherwise Protectable Work Product. ...................................................................... 9

    E.   Even if SCJS and Protect Democracy Had Legitimate Work Product Claims, Defendants' Need for These Documents Warrants Ordering Their Production. ...................................................................................... 10

    F.   Professor Levitt's Emails and Telephone Conversations With Virginia Voters  Were Not Confidential Communications for the Provision of Legal Advice. .................................................................................................. 11

    G.   Professor Levitt's Communications with SCJS and Protect Democracy Are Discoverable Under the "Crime-Fraud" Exception to Work Product Immunity.................................................................................................. 13

4827-6838-0564.1

IV.    CONCLUSION............................................................................................................. 16

4827-6838-0564.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Allen,*
    106 F.3d 582 (4th Cir. 1997) ...................................................................9

*re. Allstate Ins. Co. v. Madden,*
    601 S.E.2d 25 (W.Va. 2004) ................................................................13

*Barber v. Sedgwick Claims Mgmt. Servs., Inc.,*
    No. 3:14-CV-27349, 2015 WL 6126841 (S.D.W. Va. Oct. 16, 2015) ..............................15, 16

*Binks Mfg. Co. v. National Presto Indus., Inc.,*
    709 F.2d 1109 (7th Cir. 1983) .................................................................9

*In re California Public Utilities Comm'n,*
    892 F.2d 778 (9th Cir. 1989) .................................................................5, 8

*California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.,*
    299 F.R.D. 638 (E.D. Cal. 2014) .............................................................5, 8

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,*
    No. CIV.A. 3:09CV58, 2010 WL 1489966 (E.D. Va. Apr. 13, 2010) ...................................14

*In re Grand Jury Subpoena: Under Seal,*
    415 F.3d 333 (4th Cir. 2005) ................................................................12

*Hall v. Sullivan,*
    231 F.R.D. 468 (D. Md. 2005) .................................................................6

*Hawkins v. Stables,*
    148 F.3d 379 (4th Cir. 1998) ...........................................................7, 12, 13

*Janicker v. George Washington Univ.,*
    94 F.R.D. 648 (D.D.C. 1982) ..................................................................9

*Jonathan Corp. v. Prime Computer, Inc.,*
    114 F.R.D. 693 (E.D. Va. 1987) ...............................................................6

*Leiser, Leiser & Hennessy, PLLC v. Leiser,*
    97 Va. Cir. 130 (2017) ......................................................................15

*Loustalet v. Refco,*
    154 F.R.D. 243 (C.D. Cal. 1993) ............................................................5, 8

*Mt. Hawley Ins. Co. v. Felman Production, Inc.*,
    271 F.R.D. 125 (S.D.W.Va. 2010)........................................................................16

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*,
    967 F.2d 980 (4th Cir. 1992) ..........................................................................9, 10

*Newport News Holdings, LLC v. Great Am. Ins. Co.*,
    No. 4:17CV124, 2018 WL 4178321 (E.D. Va. May 3, 2018)................................6

*Odyssey Reinsurance Co. v. Nagby*,
    No. 16-CV-3038-BTM(WVG), 2018 WL 1963665 (S.D. Cal. Apr. 26, 2018) ............5, 6, 8, 9

*Rambus, Inc. v. Infineon Techs. AG*,
    222 F.R.D. 280 (E.D. Va. 2004) .........................................................................14

*Singletary v. Sterling Transp. Co.*,
    289 F.R.D. 237 (E.D. Va. 2012) ...........................................................................5

*Smith v. Scottsdale Ins. Co.*,
    40 F. Supp. 3d 704 (N.D.W. Va. 2014) ..............................................................10

*United States v. Aramony*,
    88 F.3d 1369 (4th Cir. 1996) .............................................................................12

*United States v. Drake*,
    310 F. Supp. 3d 607 (M.D.N.C. 2018) ...............................................................12

*United States v. Gould*,
    568 F.3d 459 (4th Cir. 2009) .............................................................................15

*United States v. Zolin*,
    491 U.S. 554 (1989)......................................................................................14, 15

*Wells v. Liddy*,
    37 F. App'x 53 (4th Cir. 2002) .............................................................................7

*Williams v. Big Picture Loans*,
    LLC, 303 F. Supp. 3d 434 (E.D. Va. 2018)........................................................6, 9

**Statutes**

Virginia Code § 18.2-451 .....................................................................................13, 15

Virginia Code § 18.2-451-52 ....................................................................................13

**Other Authorities**

Federal Rule 45 ...................................................................................................................3, 8, 13

Fed. R. Civ. P. 45(d)(2)(B) ....................................................................................................4,5,6, 8, 9

Fed. R. Evid. 401 ...................................................................................................................11

Local Civil Rule 26(b)(1)........................................................................................................6, 10

Local Civil Rule 26(b)(3)........................................................................................................5, 6, 9, 10

Local Civil Rule 26(b)(4)........................................................................................................6

Local Civil Rule 26(C)............................................................................................................4

Local Civil Rule 30(b)(6)........................................................................................................2

4827-6838-0564.1

Defendants, Public Interest Legal Foundation ("PILF") and J. Christian Adams ("Mr. Adams"), by counsel, respectfully state as follows in support of their Motion to Compel Production of Documents Relevant to Anti-SLAPP and First Amendment Issues Withheld or Redacted by Plaintiffs' Counsel.[1]  The existence of these documents came to light recently when PILF and Mr. Adams subpoenaed them from non-parties Justin M. Levitt ("Professor Levitt") and the law school where he is a professor, Loyola University.  These documents were responsive to written discovery responses served on Plaintiffs' counsel on January 18, 2019.  Plaintiffs did not produce these documents or even disclose their existence notwithstanding the fact that most if not all of them were previously in the possession, custody, or control of counsel of record for Plaintiffs in this litigation.

## I.      PRELIMINARY STATEMENT

From the outset, this litigation has had all the trappings of a "holy war."  Led by the Southern Coalition for Social Justice ("SCSJ") and the Protect Democracy Project ("Protect Democracy"), the crusading army of volunteers and conscripts continues to grow to the point where there are now 18 counsel of record for Plaintiffs in addition to countless more working behind the scenes.  The "infidels," of course, are Defendants Public Interest Legal Foundation ("PILF") and J. Christian Adams ("Mr. Adams").  PILF and Mr. Adams committed the unforgivable sins of "heresy" and "blasphemy" by publishing two reports that express a point of view that is—according to the "crusaders"—a "myth."  From the standpoint of the crusaders, PILF's blasphemy is not limited to the assertion that non-citizens have been permitted to vote and

---

[1] In support of this motion, PILF and Mr. Adams rely upon the exhibits referenced in and attached to the accompanying Affidavit of Michael J. Lockerby ("Lockerby Aff."), including the deposition transcript of Professor Levitt ("Levitt Tr.").

1

have in fact voted in Virginia elections. Rather, the authors of these reports must be silenced[2] because they have produced actual evidence—in the form of public records attached as exhibits to the reports—that show non-citizen registration and voting. Even worse from the standpoint of the crusaders, PILF has now identified other public records—to which PILF does not have access—likely to show that the problem is far worse.

Although he is not a party to this litigation and not counsel of record for any party to this litigation, the ringleader and mastermind of this effort to squelch free speech is a law professor at Loyola University in Los Angeles by the name of Justin Levitt. Document subpoenas served on Loyola Law School and Professor Levitt have already yielded far more documents—in terms of quality and quantity—than the meager document productions that Plaintiffs themselves continue to dribble out. The documents and testimony that PILF and Mr. Adams have already obtained from Professor Levitt help explain why Plaintiffs' defamation claims are barred by Virginia's anti-SLAPP statute. This evidence also shows that the unprecedented interpretation of the Voting Rights Act and Ku Klux Klan Act advocated by Professor Levitt, SCSJ, Protect Democracy, and others identified in Professor Levitt's document production is intended to squelch the expression of views with which they vehemently disagree.

The evidence obtained from Professor Levitt, some of which is summarized in the accompanying declaration, is likely to be the tip of the proverbial iceberg compared to what SCSJ and Protect Democracy have in their possession, custody, and control. These other documents—

---

[2] The relief sought by Plaintiffs includes an injunction. Defendants' counsel inquired about the scope of injunctive relief sought at the Rule 30(b)(6) deposition of the lead named Plaintiff, LULAC-Richmond. (As it turns out, this "organization" has only one member, who was its Rule 30(b)(6) designee.) In any event, LULAC-Richmond wants the Court to prevent publication of the reports on the Internet and dissemination of any hard copies, but concedes that burning the reports would be going too far. *See* LULAC-Richmond 30(b)(6) Tr. 121:25-122:12, attached as **Exhibit A**.

which are identified on the SCSJ/Protect Democracy Privilege Log (Exhibit D to Defendants' Motion to Compel) and the Levitt Log (Exhibit E to Defendants' Motion to Compel)—are the subject of Defendants' Motion to Compel.[3] These documents should have been produced or at least identified in response to Defendants' discovery requests, if not in Plaintiffs' initial disclosures. Plaintiffs' counsel raised their work product immunity claims too late after service of the subpoenas on Professor Levitt and Loyola Law School, and SCSJ and Protect Democracy did not have standing under Federal Rule 45 to object to these subpoenas.

Nor is there any merit to these belated objections of work product raised by SCSJ and Protect Democracy. Professor Levitt told the Virginia voters to whom he sent hundreds of emails that he was doing so in his capacity as a "law professor" doing research. Meanwhile, Professor Levitt told SCSJ, Protect Democracy, and countless others in academia, the news media, and various interest groups that he was contacting these voters to try to find some who would be willing to talk to reporters to help "debunk the report." Whichever explanation was true, Professor Levitt's communications were clearly not in "anticipation of litigation." Nor were the circumstances such that these communications could have reasonably been considered to be privileged and confidential attorney-client communications. By Professor Levitt's own admission, he had no attorney-client relationship with these Virginia voters and did not engage in the unauthorized practice of law in the Commonwealth of Virginia.

Unlike the attorney-client privilege, work product immunity is not an absolute bar to the production of the documents at issue. Their production can and should be ordered upon a showing of substantial need. PILF and Mr. Adams have such a need here, in part because of their anti-

---

[3] Defendants do not challenge the assertion of privilege with respect to the communications that Professor Levitt had with counsel beginning in March 2019 following service of the Levitt Document Subpoena, the Loyola Document Subpoena, and the Levitt Deposition Subpoena.

4827-6838-0564.1

SLAPP defense and their contention that Plaintiffs' unprecedented interpretation of the Voting Rights Act and the Ku Klux Klan Act would violate Defendants' First Amendment rights. By virtue of the barratry in which Professor Levitt, SCSJ, and Protect Democracy were engaged, production of these documents is also warranted under the crime-fraud exception. At the very least, the Court should conduct an *in camera* inspection of the documents at issue, and Defendants respectfully request that the Court do so.

## II.     <u>PROCEDURAL STANDARDS</u>

**A.     Local Rule 26(C) Required SCSJ and Protect Democracy to Lodge Their <u>Objections Within 15 Days of Service of Defendants' Document Requests</u>.**

Under Local Civil Rule 26(C), Plaintiffs and their counsel were required to serve objections to Defendants' Discovery Requests within 15 days of service. Local Civil Rule 26(C) is typically interpreted as requiring service of a privilege log simultaneously with the assertion of objections based on grounds of attorney-client privilege or work product. In this case, however, the discovery plan to which the parties stipulated permits service of a privilege log within 21 days of any production. (Dkt. #91) (p. 6 of 8). On February 4, 2019, Plaintiffs served Objections to Defendants' Discovery Requests that did assert general objections based on the attorney-client privilege and work product immunity. Thereafter, Plaintiffs served privilege logs on March 12, April 13, and April 19, 2019. The documents at which this motion to compel is directed, however, were not identified in any of the foregoing privilege logs. Rather, their existence was first disclosed in the April 5, 2019 SCSJ/Protect Democracy Log and the April 8, 2018 Levitt Log attached as exhibits to Defendants' Motion to Compel.

**B.     Under Federal Rule 45(d)(2)(B), SCSJ and Protect Democracy Did Not <u>Have Standing to Object to the Levitt and Loyola Document Subpoenas</u>.**

The Federal Rules of Civil Procedure permit objections to a document subpoena by "[a] person commanded to produce documents or tangible things or to permit inspection may serve on

the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested." Fed. R. Civ. P. 45(d)(2)(B). With respect to the Levitt and Loyola Document Subpoenas, neither SCSJ nor Protect Democracy is "[a] person commanded to produce documents or tangible things" within the meaning of Federal Rule 45(d)(2)(B). The plain language of Federal Rule 45(d)(2)(B) is consistent with its interpretation in the Eastern District of Virginia. *See Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 239 (E.D. Va. 2012) ("Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena."). Federal courts in California similarly permit Rule 45(d)(2)(B) objections only by the "person commanded to produce documents or tangible things" pursuant to the subpoena. *Odyssey Reinsurance Co. v. Nagby*, No. 16-CV-3038-BTM(WVG), 2018 WL 1963665, at *3 (S.D. Cal. Apr. 26, 2018).

The foregoing interpretation of Federal Rule 45(d)(2)(B) is also consistent with the scope of work product immunity under Rule 26(b)(3), which "limits . . . protection to one who is a party (or a party's representative) to the litigation in which discovery is sought." *In re California Public Utilities Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989); *see also Loustalet v. Refco*, 154 F.R.D. 243, 247 (C.D. Cal. 1993) (work product doctrine does not protect from discovery documents prepared for one who is not a party to the present suit, even if the person may be a party closely related to the lawsuit in which he will be disadvantaged if he must disclose in present suit); *California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 643 (E.D. Cal. 2014) (plaintiff did not have standing to raise work product objections to documents not prepared for the plaintiff or by plaintiff's counsel).

4827-6838-0564.1

C.    **Federal Rule 45(d)(2)(B) Required Objections to Be Served Within 14 Days
of Service of Defendants' Document Subpoenas on Professor Levitt and Loyola.**

To be timely under Federal Rule 45(d)(2)(B), "[t]he objection must be served before the *earlier* of the time specified for compliance or *14 days after the subpoena is served*." Fed. R. Civ. P. 45(d)(2)(B) (emphasis added). This Court's precedents are clear that "[n]ormally, failure to object timely waives any objection, including privilege." *Williams v. Big Picture Loans*, LLC, 303 F. Supp. 3d 434, 441 (E.D. Va. 2018).[4] The federal courts in California have adopted a similar interpretation of Federal Rule 45(d)(2)(B). *See, e.g., Nagby*, 2018 WL 1963665, at *3.

D.    **Under Federal Rule 26(b)(3), SCSJ and Protect Democracy Have the Burden to
Show That Professor Levitt's Emails With Virginia Voters Are Work Product.**

"Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). "[S]ubject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.*

"On a motion to compel, the burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted." *Newport News Holdings, LLC v. Great Am. Ins. Co.,* No. 4:17CV124, 2018 WL 4178321, at *2 (E.D. Va. May 3, 2018) (internal citation and quotations omitted); *see also Jonathan Corp. v. Prime Computer, Inc.*, 114 F.R.D. 693, 695–96 (E.D. Va. 1987) ("proponent must establish not only that an attorney-client

---

[4] *See also Hall v. Sullivan*, 231 F.R.D. 468, 474 (D. Md. 2005) (party's failure to serve timely objections to document requests constitutes a waiver of any objections).

4827-6838-0564.1

relationship existed, but also that the particular communications at issue are privileged and that the privilege has not been waived."); *Wells v. Liddy*, 37 F. App'x 53, 65 (4th Cir. 2002) ("The proponent of the attorney-client and work-product privileges has the burden of establishing that he has not waived them").

### E. The Attorney-Client Privilege Applies Only to Confidential Communications With Virginia Voters for the Purpose of Providing Them With Legal Advice.

Fourth Circuit precedent is clear that the attorney-client privilege applies only if the following prerequisites are satisfied:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (quoting *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982)). "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability." *Id.* In this case, SCSJ and Protect Democracy cannot meet their burden of showing that any claim of privilege or immunity applies to the documents at which this motion is directed, as set forth in the section that follows.

## III. ARGUMENT

### A. The Documents Subpoenaed from Professor Levitt and Loyola University Should Have Been Produced By Plaintiffs in Response to Defendants' Discovery Requests.

The communications over which Plaintiffs' counsel now asserts work product immunity were responsive to a number of discovery requests served by PILF and Mr. Adams, including

Request for Production Nos. 1, 2, and 3.[5]  The documents at issue have, by and large, been in the possession, custody, and control of SCSJ and Protect Democracy since the inception of this litigation.  All of them have been in the possession, custody, and control of SCSJ during the time when responses to Defendants' discovery requests were due.  Yet the existence of these documents was never even disclosed.  They were identified for the first time—following service on March 12 and March 14, 2019 of the Levitt and Loyola Document Subpoenas—in the April 5, 2019 SCSJ/Protect Democracy Log.   The work product objections lodged by SCSJ and Protect Democracy are both untimely and without merit for the reasons set forth in the sections that follow.

**B.** **SCJS and Protect Democracy Have No Standing Under Federal Rule 45 to Object to the Subpoenas Served on Third-Parties Professor Levitt and Loyola University.**

SCJS and Protect Democracy are simply not "person(s) commanded to produce documents within the meaning of Federal Rule 45(d)(2)(B)."  They therefore had no standing to object under the precedents previously cited, including *Nagby*, *In re California Public Utilities Comm'n*, *Loustalet,* and *California Sportfishing Prot. All.*  Nor would the purportedly privileged nature of the withheld and redacted documents accord SCSJ or Protect Democracy standing to object.  Entries 1 through 57 on the SCSJ/Protect Democracy Log range from June 27, 2017 to August 28, 2017.  All of the Plaintiffs began seeking legal advice and representation after October 30, 2017:

- Ms. Freeman began seeking legal representation on October 30, 2017.  (Freeman Tr, 88:14-19, attached as **Exhibit B**; Freeman Ex. 14, attached as **Exhibit C**).

- Mr. Bonilla began seeking legal representation sometime after November 3, 2017.

---

[5] RFP No. 1 calls for "All Documents and Communications related to Mr. Adams, PILF, the Reports, or non-citizen registration or voting in Virginia."  RFP No. 2 calls for "All Communications to or from individuals, whether directly or indirectly through agents or counsel, who are or were named in the exhibits to the Reports."  RFP No. 3 calls for "All Documents and Communications discussing, mentioning, or describing potential litigation related to the publishing of the Reports, including this Litigation."

(Bonilla Tr. 96:5-21; 98:20-99:8; 100:4-24; 117:22-118:8, attached as **Exhibit D**).

- Ms. Gearhart began seeking legal representation on November 6, 2017. (Gearhart Tr. 77:14-78:25, attached as **Exhibit E**).

- LULAC-Richmond began seeking legal representation after February 19, 2018. (Ex. A, at 44:24-46:2).

Nor did SCSJ, Protect Democracy, or Professor Levitt ever have an attorney-client relationship with any of the other Virginia voters with whom Professor Levitt was in contact beginning May 30, 2017, as discussed further herein.

**C.     SCJS and Protect Democracy Did Not Object to the Levitt and Loyola Document Subpoenas Within the 14 Days Required by the Federal Rules of Civil Procedure.**

Even if SCSJ and Protect Democracy had standing to object to the subpoenas, their failure to do so within fourteen days waived their objections under Fed. R. Civ. P. 45(d)(2)(B), *Williams*, and *Nagby*.

**D.     Professor Levitt's Communications With SCJS and Protect Democracy Were Not "In Anticipation of Litigation" and Are Not Otherwise Protectable Work Product.**

To constitute work product under Rule 26(b)(3), Professor Levitt's communications with Virginia voters must be (1) "documents and tangible things" (2) "prepared in anticipation of litigation or for trial" (3) "by or for another party or by or for that other party's representative." *See also In re Allen*, 106 F.3d 582, 607 (4th Cir. 1997). "The document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992); *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983) ("The mere fact that litigation does eventually ensue does not, by itself, cloak materials" with work product immunity); *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982) ("The fact that a

9

defendant anticipates the contingency of litigation resulting from an accident or an event does not automatically qualify an 'in house' report as work product."). Entries 1 through 57 on the SCSJ/Protect Democracy Log and most entries on the Levitt Log range in date from June 27, 2017 to August 28, 2017. At that time, no individual plaintiffs and no Virginia voters had yet to accept the solicitations of SCSJ and Protect Democracy. As a result, it cannot be said that these communications were "prepared in anticipation of litigation…by or for another party or by or for that other party's representative."

E.    **Even if SCJS and Protect Democracy Had Legitimate Work Product Claims, Defendants' Need for These Documents Warrants Ordering Their Production.**

Unlike the attorney-client privilege, "work product protection is not absolute…[and] may be discoverable in some circumstances." *Smith v. Scottsdale Ins. Co.,* 40 F. Supp. 3d 704, 721 (N.D.W. Va. 2014). Such documents may be ordered produced upon an adverse party's demonstration of "substantial need [for] the materials" and "undue hardship [in obtaining] the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 967 F.2d at 984-85 ("Even when documents and tangible things are prepared in anticipation of litigation or for trial, to the extent they do not involve the mental impressions, conclusions, opinions, or legal theories concerning the litigation, they may be discoverable on a showing of 'substantial need.'") Here, Defendants can establish substantial need because the communications at issue are necessary to help their anti-SLAPP and because Plaintiffs are advocating an interpretation of the Voting Rights Act that is intended to and in fact would chill First Amendment rights.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense… . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R.

Civ. P. 26(b)(1). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

In this case, Defendants have asserted an affirmative defense under Virginia's anti-strategic lawsuit against public participation (anti-SLAPP) statute. (Dkt. #66) (pp. 54–55 of Defendants' Answer, Affirmative Defenses, and Third-Party Complaint). Discovery already has revealed documents indicating that SCSJ and Protect Democracy decided to target Mr. Adams and PILF by filing this lawsuit against them. In fact, SCSJ and Protect Democracy crafted a prayer for relief in this action seeking to enjoin Mr. Adams and PILF from publishing and publicizing the reports. In other words, SCSJ and Protect Democracy, through the use of Plaintiffs in this action, seek to chill Defendants' First Amendment right to speak, write, and publish on issues related to election integrity. (Dkt. #1) (pp. 29–30 of Complaint).

Professor Levitt, at the instruction of SCSJ and Protect Democracy, has withheld as work product documents that appear reasonably calculated to produce information essential to developing Defendants' anti-SLAPP defenses. Professor Levitt acted in concert with SCSJ and Protect Democracy long before any specific Plaintiff sought legal advice or representation regarding this case, and certainly before any Plaintiff even knew of the reports—further evidencing the fact that this litigation is intended to accomplish some purpose other than providing a direct remedy to Plaintiffs. Moreover, communications related to Professor Levitt's initial contact with Virginia voters is essential to evaluating Plaintiffs' defamation claim, particularly regarding the public profile of the reports.

**F.     Professor Levitt's Emails and Telephone Conversations With Virginia Voters Were Not Confidential Communications for the Provision of Legal Advice.**

Professor Levitt's communications with Virginia voters did not occur within the

11

parameters of an attorney-client relationship and were not with individuals who were affirmatively

seeking legal advice. (Levitt Tr. 40:7-13; 139:20–24; 141:16-19; 141:24-142:3). By sharing those

communications with third parties, Professor Levitt waived any privilege that may have otherwise

attached. (Levitt Tr. 130:4-131:6, 137:19–138:14). Professor Levitt's communications with

Virginia voters are not protected by the attorney-client privilege under controlling Fourth Circuit

precedent:

> The privilege applies only if (1) the asserted holder of the privilege
> is or sought to become a client; (2) the person to whom the
> communication was made (a) is a member of the bar of a court, or
> his subordinate and (b) in connection with this communication is
> acting as a lawyer; (3) the communication relates to a fact of which
> the attorney was informed (a) by his client (b) without the presence
> of strangers (c) for the purpose of securing primarily either (i) an
> opinion on law or (ii) legal services or (iii) assistance in some legal
> proceeding, and not (d) for the purpose of committing a crime or
> tort; and (4) the privilege has been (a) claimed and (b) not waived
> by the client.

*Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (quoting *United States v. Jones,* 696 F.2d

1069, 1072 (4th Cir.1982)). "The burden is on the proponent of the attorney-client privilege to

demonstrate its applicability." *Id.*

Any Virginia voter seeking to claim an attorney-client privilege with Professor Levitt

would have to "prove that he is a client or that he affirmatively sought to become a client." *In re

Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 339 (4th Cir. 2005); *see also United States v.

Aramony*, 88 F.3d 1369, 1390–92 (4th Cir. 1996). "The professional relationship . . . hinges upon

the client's belief that he is consulting a lawyer in that capacity and his manifested intention to

seek professional legal advice." *United States v. Drake*, 310 F. Supp. 3d 607, 618 (M.D.N.C.

2018) (quoting *United States v. Evans,* 113 F.3d 1457, 1465 (7th Cir. 1997)).

Here, Professor Levitt testified under oath that he could not state with certainty when an

attorney-client relationship had formed between himself and the individuals with whom he corresponded and admitted that "I don't know whether one was ever established." (Levitt Tr. 40:7-13; 139:20–24; 141:16–19). Professor Levitt is the one who initiated contact with these Virginia voters, who were not seeking legal advice. (Levitt Tr. 141:24-142:3).

Even if the threshold requirement for the attorney-client privilege were present, the other key elements are not. These communications were not made "in connection with . . . acting as a lawyer." *See Hawkins*, 148 F.3d at 383. Rather, Professor Levitt repeatedly identified himself as a professor conducting "research." Nor were the withheld communications for the purpose of securing "(i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *Id.* To the contrary, Professor Levitt's emails to Virginia voters were—by his own admission—"unsolicited," at least by the voters. Moreover, these communications were "for the purpose of committing a crime or tort" (*id.*)—in this case, barratry in violation of Virginia Code § 18.2-451.

## G.      Professor Levitt's Communications with SCJS and Protect Democracy Are Discoverable Under the "Crime-Fraud" Exception to Work Product Immunity.

The documents and testimony obtained from Professor Levitt, as summarized in the accompanying declaration, establish that the solicitation of Virginia voters for participation as plaintiffs in this lawsuit violated Virginia's barratry statute. See Virginia Code § 18.2-451-52. As a result, the crime-fraud exception to [Rule 45] applies.

"The crime-fraud exception operates to remove the privilege attaching to communications between a client and his or her counsel that were made in furtherance of a fraudulent or criminal scheme." *State ex re. Allstate Ins. Co. v. Madden*, 601 S.E.2d 25, 36 (W.Va. 2004) (citing *United States v. Zolin*, 491 U.S. 554 (1989)). In addition, the crime-fraud exception may "nullify the protections afforded by the work product doctrine." *State ex re. Allstate Ins. Co. v. Madden*, 601 S.E.2d 25, 36 (W. Va. 2004) (citing *State ex rel. Medical Assurance of West Virginia, Inc. v. Recht*,

13

583 S.E.2d 80, 95 (2003)).  The crime-fraud exception "delineates the outer contours of the attorney-client and work product privileges, recognizing the commonsense notion that these privileges cannot avail to protect the client in concerting with the attorney a crime or other evil enterprise."  *Rambus, Inc. v. Infineon Techs. AG*, 222 F.R.D. 280, 288 (E.D. Va. 2004) (internal quotations omitted).  The moving party must make a "showing of a factual basis adequate to support a good faith belief by a reasonable person" that the exception will apply.  *Zolin*, 491 U.S. at 572.

The Eastern District of Virginia has even applied the crime-fraud exception to "situations falling well outside the definitions of crime or fraud."  *Rambus, Inc. v. Infineon Techs. AG*, 222 F.R.D. 280, 288 (E.D. Va. 2004) (ordering *in camera* review, determining that the crime-fraud exception applied to communications related to spoliation of evidence, and requiring disclosure of previously withheld documents); *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, No. CIV.A. 3:09CV58, 2010 WL 1489966, at *5-8 (E.D. Va. Apr. 13, 2010) (ordering *in camera* review to communications with the government "undertaken to incite" a sting operation against defendants).  Courts have applied the exception to work product created as a result of a lawyer's "unprofessional conduct" and communications made in furtherance of "bad faith litigation conduct," among others.  *Rambus*, 222 F.R.D. at 288. (citing cases).  The Fourth Circuit has held that "the attorney-client and work product privileges are to be strictly confined within the narrowest possible limits consistent with the logic of [their] principle[s]."  *Id*. (citing *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir.1984)).  Consequently, it is fully consistent with the precedent of this Court to apply the crime-fraud exception to those communications and materials that neither "work for the advancement of justice nor further the rightful interests of an attorney's client."  *Id*. (citing *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)).

4827-6838-0564.1

Barratry is defined as the "stirring up of litigation" by "instigating or attempting to instigate a person or persons to institute a suit at law or equity." Va. Code § 18.2-451. The statutory scheme authorizes criminal penalties for engaging in barratry. Va. Code § 18.2-452. Virginia courts continue to recognize this statutory prohibition against barratry. *See Leiser, Leiser & Hennessy, PLLC v. Leiser*, 97 Va. Cir. 130 (2017). Professor Levitt testified that he was unaware of Virginia's statutory prohibition against barratry (Levitt Tr. 43:4-20). This testimony does not change the fact that "ignorance of the law does not provide a defense." *United States v. Gould*, 568 F.3d 459, 468 (4th Cir. 2009) (citing *Cheek v. United States*, 498 U.S. 192, 199 (1991)).

Because PILF and Mr. Adams have made the requisite factual showing of the crime-fraud exception, the Court should conduct an *in camera* review of the allegedly privileged and protected documents to determine if the exception indeed applies. *Barber v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 3:14-CV-27349, 2015 WL 6126841, at *2 (S.D.W. Va. Oct. 16, 2015). The decision to perform such a review rests within the sound discretion of the Court. However, "the court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." *United States v. Zolin*, 491 U.S. 554, 572 (1989).

Professor Levitt's email communications with Plaintiff Ms. Freeman alone establish a factual basis for the contention that Professor Levitt was engaged in barratry.

> Q And Mr. Levitt did put you in touch with lawyers about potential litigation; isn't that right?
>
> A Yes.

15

Q And before you were contacted by Mr. Levitt you were not aware of the reports that are attached as Exhibits A and B to your complaint; isn't that right?

A That's right.

(Freeman Tr. 146: 12–21). *See also* F-000231-4, attached as **Exhibit F** ("Please forgive the unsolicited email – I know it comes out of the blue. . . . I'm a civil rights lawyer as well as a law professor, and I share your frustration and anger. And I can tell you that I've spoken to others who are plenty upset as well. . . . I'd still welcome the chance to talk to you about this, to find out how the organization might have made their mistake. And if you'd like to do anything about it, I can try to help with that as well."). Ms. Freeman, for example, had not previously been aware of the reports and was "not interested in a conversation." After Professor Levitt sent Ms. Freeman three successive emails and links to the *Alien Invasion II* exhibits, however, she became "interested after seeing [her] name published!" (*See* Ex. F.) After offering to "help with that," Mr. Levitt referred Ms. Freeman to Alesha Brown, an attorney at SCSJ. (*See* F-000109-14, attached as **Exhibit G**). Other Plaintiffs were similarly "invited" to join the litigation by SCSJ. (*See* Ex. D, at 49:22–51:23; 156:25–157:14.) These email exchanges provide prima facie evidence of Professor Levitt's intention to commit a crime and warrant in camera review of protected documents. *Compare Mt. Hawley Ins. Co. v. Felman Production, Inc.,* 271 F.R.D. 125 (S.D.W.Va. 2010) with *Barber v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 3:14-CV-27349, 2015 WL 6126841, at *4 (S.D.W. Va. Oct. 16, 2015).

## IV. CONCLUSION

The documents that are the subject of Defendants' Motion to Compel should have been produced or at least identified at the outset of discovery. A third-party subpoena to Professor Levitt and Loyola Law School should not have been necessary for PILF and Mr. Adams to find out about these documents for the first time as discovery is drawing to a close.

There is no merit to the belated objections of work product raised by SCSJ and Protect Democracy. Regardless of whether Professor Levitt was truly performing legal "research" or simply trying to generate negative media coverage for PILF and Mr. Adams, his communications were clearly not in "anticipation of litigation." Nor were they subject to the attorney-client privilege. Even if these communications were otherwise subject to a valid claim of work product immunity, PILF and Mr. Adams have a substantial need for them because of their anti-SLAPP defense and their contention that Plaintiffs' unprecedented interpretation of the Voting Rights Act and the Ku Klux Klan Act would violate Defendants' First Amendment rights. In addition, the crime-fraud exception applies here because of the barratry in which Professor Levitt, SCSJ, and Protect Democracy were engaged. Accordingly, PILF and Mr. Adams respectfully request that the Court order the production or *in camera* inspection of the documents at issue.

Dated:  April 26, 2019    Respectfully submitted,


        PUBLIC INTEREST LEGAL FOUNDATION
        and J. CHRISTIAN ADAMS

        By */s/ Michael J. Lockerby*
          Counsel
        Michael J. Lockerby (Virginia State Bar No. 24003)
        Eli L. Evans (Virginia State Bar No. 90700)
        FOLEY & LARDNER LLP
        Washington Harbour
        3000 K Street, N.W., Suite 600
        Washington, D.C. 20007-5109
        Telephone:  202-945-6079
        Facsimile:  202-672-5399
        Email:  mlockerby@foley.com
        Email:  eevans@foley.com


        William E. Davis (Admitted *pro hac vice*)
        Ana Romes (Admitted *pro hac vice*)
        FOLEY & LARDNER LLP
        One Biscayne Tower
        2 South Biscayne Boulevard, Suite 1900
        Miami, Florida 33131
        Telephone:  305-482-8404
        Facsimile:  305-482-8600
        Email:  wdavis@foley.com
        Email:  aromes@foley.com

        Counsel for Defendants

4827-6838-0564.1

CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of April, 2019, I electronically filed the foregoing MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELEVANT TO ANTI-SLAPP AND FIRST AMENDMENT ISSUES WITHHELD OR REDACTED BY PLAINTIFFS' COUNSEL with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing (NEF) to all counsel of record. In addition, I sent a copy of the foregoing MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELEVANT TO ANTI-SLAPP AND FIRST AMENDMENT ISSUES WITHHELD OR REDACTED BY PLAINTIFFS' COUNSEL by email and U.S. mail to the following attorneys who are not counsel of record:

Harold A. Bridges, Esq.
Bridges & Bridges
318 Avenue I, #606
Redondo Beach, California 90277
drew@bridges-law.com

*Counsel for*
*Justin M. Levitt*
*and Loyola University*

Thomas E. Gorman, Esq.
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, California 94111-1809
tgorman@keker.com

*Counsel for*
*Southern Coalition for Social Justice*
*and The Protect Democracy Project*

/s/ *Michael J. Lockerby*
Michael J. Lockerby (VSB No. 24003)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone: 202-945-6079
Facsimile: 202-672-5399
Email: mlockerby@foley.com

Counsel for Defendants

4827-6838-0564.1