IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

LEAGUE OF UNITED LATIN AMERICAN    )
CITIZENS - RICHMOND REGION         )
COUNCIL 4614, ELIUD BONILLA,       )
LUCIANIA FREEMAN, and ABBY JO      )
GEARHART,                          )
                                   )
                   Plaintiffs,     )     Civil Action No. 1:18-cv-00423
                                   )     (LO/IDD)
          v.                       )
                                   )
PUBLIC INTEREST LEGAL FOUNDATION   )
and J. CHRISTIAN ADAMS,            )
                                   )
                   Defendants.     )
                                   )

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS
RELEVANT TO ANTI-SLAPP AND FIRST AMENDMENT ISSUES
WITHHELD OR REDACTED BY PLAINTIFFS' COUNSEL**

i

TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...................................................................... 1

II.   ARGUMENT ................................................................................................ 5

    A.    This Court is the Appropriate Forum to Decide the Merits of the Work
        Product Immunity Claims Asserted By Plaintiffs' Counsel SCSJ and
        Protect Democracy. ............................................................................ 5

    B.    Plaintiffs' Counsel SCSJ and Protect Democracy Refused to Meet and
        Confer  After Raising Work Product Objections That Were Untimely and
        Unspecified. ...................................................................................... 6

    C.    The Facts and Documents Sought By PILF and Mr. Adams Should Have
        Been Disclosed By Plaintiffs' Counsel in Initial Disclosures and
        Discovery Responses. ........................................................................ 10

        1.    Professor Levitt's communications with Virginia voters are
            undeniably relevant to the claims and defenses of the parties to this
            litigation. .............................................................................. 10

        2.    The documents at which Defendants' Motion to Compel is directed
            should  have been identified and produced as part of Plaintiffs'
            initial disclosures. ................................................................ 12

        3.    The documents at which Defendants' Motion to Compel is directed
            should  have been produced in discovery before the subpoena to
            Professor Levitt. .................................................................. 12

    D.    SCSJ and Protect Democracy Have Not Met Their Rule 26(b)(3) Burden
        of Showing That Professor Levitt's Communications With Virginia Voters
        Are Work Product. ............................................................................. 14

    E.    The Evidence Suggests That SCSJ and Protect Democracy Were Made
        Aware  of the Substance of Professor Levitt's Communications With
        Virginia Voters. ................................................................................ 17

    F.    Professor Levitt's Communications with SCJS and Protect Democracy
        Are Discoverable Under the "Crime-Fraud" Exception to Work Product
        Immunity. ........................................................................................ 19

III.  CONCLUSION ............................................................................................. 20

Defendants, Public Interest Legal Foundation ("PILF") and J. Christian Adams ("Mr. Adams"), by counsel, in further support of their Motion to Compel Production of Documents Relevant to Anti-SLAPP and First Amendment Issues Withheld or Redacted by Plaintiffs' Counsel (Dkt. #128), respectfully state as follows in reply to Plaintiffs' Opposition (Dkt. #133). [1]

## I.   PRELIMINARY STATEMENT

Unless Professor Levitt was not telling the truth when he sent more than 500 unsolicited emailed to Virginia voters, his communications were not "in anticipation of litigation." Each of his email blasts began with an introduction of himself as "a law professor in Los Angeles," stating that "some of my research concerns elections and voting, and it's in that capacity that I am reaching out."[2] Publicly, Professor Levitt told his former colleagues at DOJ, reporters, academics, and others that he was trying to find Virginia voters identified in the exhibits to PILF's reports who were in fact U.S. citizens and who were willing to talk to the news media.[3] Privately, Professor Levitt said the same thing—even to himself—keeping notes about which Virginia voters were willing to "talk to reporters" to help "debunk the report."[4] Both personally and professionally, Professor Levitt had ample motive to try to defame and discredit PILF and Mr. Adams—a subject that was covered extensively during his deposition.[5] Professor Levitt took the opportunity to do so less than 24 hours after publication of *Alien Invasion II*, when his email blast began with a

---

[1] PILF and Mr. Adams hereby incorporate by reference and use the same definitions contained in Defendants' Motion to Compel (Dkt. #128), the Memorandum in Support (Dkt. #131), and the Declaration of Michael J. Lockerby (Dkt. #130), including the exhibits to the foregoing.

[2] *See* Levitt Tr. 110:4-135:20 (Dkt. # 130-1); Exs. 32, 33.

[3] *See* Levitt Tr. (Dkt. #130-1)

[4] *See* Levitt Tr. 110:4-135:20; Ex. 32, 33 (Dkt. #130-1).

[5] *See* Levitt Tr. (Dkt. #130-1).

1

vengeance.

If anyone was acting "in anticipation of litigation" at the time of the communications in question, it was Professor Levitt—not Allison Riggs at SCSJ and not Larry Schwartztol at Protect Democracy.  Conspicuously absent from the declarations of Professor Levitt (Dkt. #133-3), Allison Riggs (Dkt. #133-2), or Larry Schwartztol (Dkt. #133-1) is any contention that Professor Levitt's emails to Virginia voters were sent at the behest of or under parameters laid out by SCSJ or Protect Democracy.  The counsel of record for Plaintiffs at SCSJ and Protect Democracy would not have instructed Professor Levitt to misrepresent the true purpose of his communications to the scores of Virginia voters with whom he was in contact.  Professor Levitt's emails to Virginia voters began on May 30, 2017—the day after PILF's Alien Invasion II report was publicly released.[6]  In the weeks that followed, Professor Levitt told former colleagues at DOJ, professors at other law schools, reporters at various print and online publications, and others what these Virginia voters were telling him—or not telling him.[7]  Meanwhile, Professor Levitt had no such communications with Allison Riggs at SCSJ or Larry Schwartztol at Protect Democracy.  The first such communication with SCSJ and Protect Democracy did not occur until June 27, 2017—the very same day that Professor Levitt had communications with Virginia voters that he now claims were attorney-client privileged communications.[8]  Subsequent communications from Professor Levitt confirmed that it was *his idea* to file litigation against his nemeses PILF and Mr. Adams and that he ultimately convinced SCSJ and Protect Democracy to do so.  For example, the week after this litigation was filed, Professor Levitt sent an email to one of the public relations firms retained by

---

[6] *See* Levitt Tr. 110:4-135:20; Ex. 32, 33 (Dkt. #130-1).

[7] *See* Levitt Tr. 110:4-135:20; Ex. 32, 33 (Dkt. #130-1).

[8] *Cf.* Levitt Log (Dkt. #128-6) and SCSJ/Protect Democracy Log (Dkt. #128-5).

4844-3476-6997.1

SCSJ and Protect Democracy to help publicize their claims of "defamation" in which he stated that "I helped round up a few of the initial plaintiffs and hounded Larry [Schwartztol at Protect Democracy] and Allison [Riggs at SCSCJ] enough that I half think they brought the case to get rid of me."[9]

The fact that SCSJ and Protect Democracy may have posed questions from time to time about election law does not make Professor Levitt a retained expert whose communications with SCSJ and Protect Democracy were immune from discovery  as "work product."  Professor Levitt's document production was replete with examples of other "consultation" with other attorneys that were not work product.[10]  In contrast, when SCSJ and Professor Levitt wanted to retain Professor Levitt as an expert in the "unrelated litigation" referenced in the SCSJ/Protect Democracy Log, the privilege log entries show that they knew how to do so more formally—not in the informal, *ex post facto* way in which they have done so here.

The fact that the documents at issue were identified in response to a subpoena directed to Professor Levitt does not mean that PILF and Mr. Adams are required to go back to Los Angeles to obtain these documents.  Defendants' Motion to Compel seeks only documents in the possession, custody, or control of Plaintiffs' counsel SCSJ and Protect Democracy.  The litigation in which SCSJ and Protect Democracy are counsel of record is pending in the Eastern District of Virginia, not the Central District of California.  As counsel of record in this Court, SCSJ and Protect Democracy have certain discovery and other obligations that they have failed to uphold.

The suggestion that Defendants' counsel did not meet and confer with Plaintiffs' counsel before filing this motion is demonstrably inaccurate.  Defendants' counsel did not even learn that

---

[9]  Levitt Tr. 193:3-194:23 (Dkt. #133-1); Ex. 41).  *See* Lockerby Decl. ¶ 32 (Dkt. #130) (p. 26 of 28), Ex. 43.

[10] *See* Levitt Tr. (Dkt. #130-1).

SCSJ and Protect Democracy had work product objections until—fittingly—April 1, 2019, and only then through a lawyer in San Francisco. It took another two days, until April 3, 2019, before this lawyer in San Francisco provided any basis for the work product claim. Even then, the stated basis for the work product claims of SCSJ and Protect Democracy articulated on April 3, 2019 was cursory at best: "Professor Levitt collaborated with my clients on a few issues related to the pre-filing of this lawsuit.[11]

On April 1, 2019—within hours of learning that SCSJ would be asserting work product objections, but without knowing what these work product claims might be—Defendants' counsel sought to discuss whatever these work product objections might be with counsel of record for Plaintiffs in this litigation. Although SCSJ and Protect Democracy never responded, their lawyer in San Francisco quickly did—threatening Defendants' counsel with charges of professional misconduct for contacting SCSJ and Protect Democracy directly. (Dkt. #130-8). Both before and at the deposition of Professor Levitt, Defendants' counsel and the San Francisco lawyer representing SCSJ and Protect Democracy were unable to resolve the work product objections. Only after the filing of Defendants' Motion to Compel would SCSJ and Protect Democracy deign to even discuss these issues directly with Defendants' counsel. (**Exhibit 3**). Not surprisingly, however, their position was no different than that previously articulated by their lawyer in San Francisco. The volume of documents at issue is relatively small, so Defendants' counsel proposed *in camera* inspection as a compromise. This too was unacceptable to SCSJ and Protect Democracy.

"Hide the ball" and "shell games" are not consistent with the standards of federal courts in general and the Eastern District of Virginia. Discovery in this case ends a week from today. The

---

[11] *See* Lockerby Decl. Ex. 11 (Dkt. #130-11).

final pre-trial conference is a week after that.  The documents at issue are not work product.  Even if they were, PILF and Mr. Adams have a substantial need for them.  And the barratry in which Professor Levitt has been caught red-handed would warrant production of these documents under the crime-fraud exception.

## II.     ARGUMENT

### A.     This Court is the Appropriate Forum to Decide the Merits of the Work Product Immunity Claims Asserted By Plaintiffs' Counsel SCSJ and Protect Democracy.

On its face, Defendants' Motion to Compel is not a Rule 45 motion to compel compliance with the Levitt and Loyola Document Subpoenas and the Levitt Deposition Subpoena.  Rather, Defendants' Motion to Compel seeks the production of documents "in the possession, custody, or control of Plaintiffs' counsel." (Dkt. #128) (p. 5 of 8).  Rule 45 is relevant to this motion in that it provides the context in which it arises.  Rule 45 is also relevant because it establishes the deadline for objecting—a deadline that SCSJ and Protect Democracy undeniably missed even if they had standing to object.  *See* Fed. R. Civ. P. 45(d)(2)(B). [12]

Even if a Rule 45 motion to compel compliance had been filed in the Central District of California, that court would have had the discretion to transfer such a motion to the Eastern District of Virginia.  *See* Fed. R. Civ. P. 45(f).  Such a transfer would have been appropriate in view of the fact that the documents subpoenaed are, by and large, in the possession, custody, and control of SCSJ and Protect Democracy—counsel of record for Plaintiffs in this case in this Court.  These documents go to the heart of the Plaintiffs' claims and defenses for the reasons set forth in great detail in the Memorandum in Support of Plaintiffs' Motion to Compel (Dkt. #131).

---

[12] In contrast, SCSJ and Protect Democracy would have had standing to move to quash the subpoenas pursuant to Fed. R. Civ. P. 45(d)(3).  They made a tactical decision not to do so, however.

5

The desire of SCSJ and Protect Democracy to send PILF and Mr. Adams on another wild goose chase to Los Angeles is certainly understandable.  Discovery ends May 10, 2019, and the final pre-trial conference is set for May 17, 2019.  The jury trial in Alexandria could be over before a federal court in Los Angeles might be able to address the merits of the work product claims asserted by SCSJ and Protect Democracy—if it were to do so rather than transfer the issue here where it belongs.

Expediency and expeditiousness, however, are not the reasons that Defendants' Motion to Compel should be decided in the Eastern District of Virginia.  Again, it belongs here because most if not all of the documents at issue are in the possession, custody, and control of Plaintiffs' counsel, SCSJ and Protect Democracy.  The documents should have been produced by Plaintiffs' counsel in discovery long ago without the need for PILF and Mr. Adams to go to Los Angeles in the first place.

**B.**     **Plaintiffs' Counsel SCSJ and Protect Democracy Refused to Meet and Confer After Raising Work Product Objections That Were Untimely and Unspecified.**

As counsel of record for Plaintiffs, SCSJ and Protect Democracy were served with the subpoenas at issue on March 12, 2019.  If SCSJ and Protect Democracy were "person[s] commanded to produce documents" within the meaning of Rule 45(d)(2)(B), their deadline for objecting would have been 14 days thereafter, *i.e.*, March 26, 2019.  SCSJ and Protect Democracy served no such objections by that deadline.

Professor Levitt and Loyola Law School were served on March 14, 2019, making their Rule 45(d)(2)(B) deadline for objections March 28, 2019.  Defendants' counsel agreed to extend that deadline until March 29, 2019.  Professor Levitt and Loyola Law School complied with that deadline, serving their objections on March 29, 2019.  SCSJ and Protect Democracy, in contrast, said nothing about any claims of work product.

On April 1, 2019, Thomas E. Gorman, Esq., at the law firm of Keker, Van Nest & Peters LLP in San Francisco, introduced himself to Defendants' counsel by way of the email and correspondence attached as Exhibit 6 to the Lockerby Declaration.  Even then, Mr. Gorman did not articulate any specific work product concerns.  The transmittal email stated that "I have recently been retained by Protect Democracy and the Southern Coalition for Social Justice and I'm writing to address some issues regarding your third-party subpoenas to Professor Justin Levitt and Loyola Law School."  (Dkt. # 130-6) (p. 2 of 4).  Without explaining why, the accompanying correspondence asserted simply that "we assert a work-product objection to these three subpoenas."  (Dkt. # 130-6) (p. 3 of 4).  Rather than address the basis for any work product objections, the April 1, 2019 correspondence from Mr. Gorman focused on what he called "serious overbreadth and undue burden concerns"  (*id.*)—concerns that had already been discussed with counsel for Professor Levitt and Loyola Law School and had never been raised by SCSJ, Protect Democracy, or any other counsel of record for Plaintiffs.  Mr. Gorman requested that Defendants "narrow your requests to avoid seeking protect work product.  If you could get back to me as soon as possible, I would appreciate it.  I would be glad to make myself available to meet-and-confer by telephone at your convenience.  If we are not able to resolve this matter informally, however, we are prepared to engage in motion practice."  (Dkt. #130-6).

Although Defendants' counsel was about to board a flight at the time, Defendants' counsel responded promptly with the April 1, 2019 3:49 p.m. email to Mr. Gorman attached as Exhibit 7 to the Lockerby Declaration, stating in pertinent part:

> As a preliminary matter, please let me know the basis on which counsel for Plaintiffs can claim "work product" with respect to communications that they had with a non-party.
>
> Under the circumstances, Defendants cannot agree that Plaintiffs' counsel (or counsel retained by Plaintiffs' counsel) can or should

review documents that Defendants have subpoenaed from third parties. Defendants must insist that Justin Levitt and Loyola University produce documents in response to the subpoenas without such interference and obstruction.

(Dkt. #130-7) (p. 2 of 2).

While in flight, Defendants' counsel sent the April 1, 2019 6:05 p.m. email to Plaintiffs' counsel of record attached as **Exhibit 1** regarding their request for a "meet and confer" on another subject, stating as follows with respect to the unanticipated missive from Mr. Gorman:

> When we discuss Defendants' privilege logs, I would like to also discuss the claims of attorney-client privilege and work product raised by Plaintiffs with respect to various emails and communications by which the Southern Coalition for Social Justice sought to solicit potential plaintiffs to join in this litigation. In addition, I received correspondence today from a lawyer in California who identified himself as representing two of the law firms that have entered appearances in this litigation. The stated purpose of the correspondence was to raise objections on the basis of "work product" to documents that Defendants have subpoenaed from Justin Levitt and Loyola University. There are three fundamental problems with this correspondence. First, Plaintiffs' counsel cannot assert "work product" with respect to communications between Plaintiffs' counsel and non-parties. Defendants' counsel similarly could not have asserted and did not assert "work product" with respect to communications with the various non-parties from whom and from which Plaintiffs have subpoenaed documents. Second, Defendants' counsel cannot interfere with and obstruct compliance with these non-party subpoenas. Third, any such objections need to be raised by counsel of record. Although I have lost track of the number of attorneys who have entered appearances on behalf of Plaintiffs, by my count it is up to at least 15 "net" counsel of record (after accounting for both appearances and withdrawals). That is unwieldly enough without counsel purporting to represent counsel of record.

> I look forward to discussing these issues with you soon.

Plaintiff's counsel of record never responded to this request to meet and confer regarding the work product claims asserted by SCSJ and Protect Democracy. Instead, they apparently forwarded it to

Mr. Gorman, who responded as follows with respect to the requested "meet and confer" regarding work product:

> Finally, I understand that you attempted to communicate directly with my clients regarding our work-product claims, which is the exact subject matter upon which I have been retained. I'll assume that you did not appreciate that you were not permitted to do so without my consent under Rule 4.2(a) of the California Rules of Professional Conduct (or the corollary Model Rule applicable in Virginia). Please conduct all further discussions regarding this narrow issue through me.

(Lockerby Decl. Ex. 8) (Dkt. # 130-8) (p. 2 of 5).

It took a series of emails over the next two days (Dkt. ## 130-9, 130-10) before Mr. Gorman finally articulated the following basis for the work product claims asserted by SCSJ and Professor Levitt: "Professor Levitt collaborated with my clients on a few issues related to the pre-filing of this lawsuit." (Dkt. # 130-11) (p. 2 of 7).

Both before and after their telephone conversation on April 5, 2019, Mr. Gorman and Defendants' counsel exchanged emails regarding the merits of the work product objections raised by SCSJ—ultimately agreeing only to an extension of the deadline for SCSJ and Protect Democracy to file a motion to quash (Dkt. ## 130-12, 130-13, 130-14, 130-15, 130-16, 130-17, 130-18, 130-19).

In one of those emails, Mr. Gorman wrote: "Unfortunately, it is clear that we are nowhere close to resolving this issue." (Dkt. #130-15) (p. 2 of 11). This proved to be an understatement. At the subsequent deposition of Professor Levitt on April 17, 2019, Mr. Gorman asserted work product objections to additional documents that were not on the SCSJ/Protect Democracy Log, resulting in additional instructions not to answer. (Levitt Tr.) (Dkt. #130-1). On the record, counsel for PILF and Mr. Adams stated that these work product objections would have to be resolved by the Court. (Levitt Tr.) (Dkt. #130-1). Thereafter, Defendants' counsel ordered an

9

expedited transcript of the deposition, which was received on April 19, 2019.  The following week,

shortly before filing Defendants' Motion to Compel, Defendants' counsel notified Mr. Gorman

and counsel for Professor Levitt and Loyola Law School that the motion was being filed.

Even before the deposition of Professor Levitt, Defendants' counsel tried to raise with

Plaintiffs' counsel the prior failure to disclose Mr. Levitt's involvement.  The April 11, 2019 8:53

a.m. email to Plaintiffs' counsel attached as **Exhibit 2** stated in part:

> On a related subject, when will Plaintiffs be amending their initial
> disclosures to address the knowledge held by Justin Levitt?  His
> involvement in the efforts to squelch Defendants' First Amendment
> rights came to our attention only recently but has been known to
> Plaintiffs' counsel since long before this litigation was commenced.

Plaintiffs' counsel never responded this this request either.

**C.      The Facts and Documents Sought By PILF and Mr. Adams Should Have Been
        Disclosed By Plaintiffs' Counsel in Initial Disclosures and Discovery Responses.**

**1.      Professor Levitt's communications with Virginia voters are undeniably
        relevant to the claims and defenses of the parties to this litigation.**

By his own admission, Professor Levitt sent more than 500 emails to Virginia voters trying

to find someone whom the Virginia Department of Elections or local registrars had mistakenly

identified as a non-citizen in the public records attached as exhibits to the *Alien Invasion I* and

*Alien Invasion II* reports at issue in this litigation.  When Virginia voters ignored Professor Levitt's

unsolicited emails, he persisted—sending email after email until he finally found *one*—Luciania

Freeman—who was willing to talk to him and ultimately become a named Plaintiff.  Along the

way, Professor Levitt found many Virginia voters who—at the time they registered or voted—

were not U.S. citizens.  As Professor Levitt told his former boss at DOJ, Vanita Gupta, in July

2017:

> They weren't all eligible.  I know some of them weren't eligible.
> Indeed, some said they weren't eligible; and I don't actually know
> how many of them were eligible.  I just know some of them weren't

10

eligible because I talked to a few who were eligible.[13]

By no stretch of the imagination can Professor Levitt's communications with Ms. Gupta and the dozens of others in academia, the news media, and elsewhere with whom Professor Levitt shared what Virginia voters were telling him (Lockerby Decl., Dkt.130, ¶¶ 16-19) be characterized as "work product in anticipation of litigation."

As it turns out, what PILF had to say about the one Virginia voter who succumbed to Professor Levitt's tactics was true.  The name of Luciania Freeman appeared in the Virginia Department of Elections VERIS Report attached as Exhibit 1 to the *Alien Invasion II* report. (Dkt. #66-1) (p. 259 of 574).  This report is available for public inspection under the National Voter Registration Act.  PILF published this public record exactly as it had been obtained from the Virginia Department of Elections, citing it as the basis for claim in the *Alien Invasion II* report that "5,556 non-citizens have been removed from the rolls for citizenship problems in 120 of Virginia's 133 voting jurisdictions since 2011."  (Dkt. #1-2) (p. 6 of 25).  According to the Virginia Commissioner of Elections at the time, Edgardo Cortés:

> This report shows individuals that were cancelled due to self-reported non-citizen status and failed to complete an affirmation of citizenship in the allotted time frame and continue to be in cancelled status.  If an individual was previously cancelled and then subsequently affirmed citizenship and was re-registered, they would no longer appear on this report because they would now be on active status.

(Dkt. # 66-2).[14]  If Professor Levitt did not know that what PILF said about Luciania Freeman was in fact true, SCSJ soon found out for itself that the foregoing statements were true.  Once

---

[13] Levitt Tr. 22:20-24:1, 179:10-191:3; Ex. 34, 39, 40.

[14] The foregoing statements by Commissioner Cortes, which took the form of an April 4, 2017 email, were quoted in the *Alien Invasion II* report attached as Exhibit B to Plaintiffs' Complaint.  The email was produced in its entirety as Exhibit 2 to the *Alien Invasion II* report. (Dkt. #1-2).

4844-3476-6997.1

Professor Levitt had gotten Ms. Freeman worked up enough to talk to Allison Riggs at SCSJ, Ms. Riggs helped Ms. Freeman get reinstated as a registered voter in Prince William County because Ms. Freeman had in fact previously self-reported as a non-citizen—in error—and then failed to affirm her citizenship within the time required by the Prince William County registrar.

**2.      The documents at which Defendants' Motion to Compel is directed should have been identified and produced as part of Plaintiffs' initial disclosures.**

At the very least, Professor Levitt's name, address, and telephone number should have been included in Plaintiffs' initial disclosures as an "individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(1). Plaintiffs' counsel also had a Rule 26(a)(1)(A)(2) "duty to disclose" the documents produced and identified in response to the Levitt and Loyola Document Subpoenas. By arguing that Defendants should have raised this argument earlier, Plaintiffs' counsel are attempting to "blame the victim" for their own failure to make such disclosures as they were obligated to do so. Defendants and their counsel had no way of knowing the facts known to Professor Levitt and the documents reflecting those facts. In contrast, this information has been known to Plaintiffs' counsel for nearly two years.

**3.      The documents at which Defendants' Motion to Compel is directed should have been produced in discovery before the subpoena to Professor Levitt.**

Regardless of whether Professor Levitt should have been identified in Plaintiffs' initial disclosures, the documents at which Defendants' Motion to Compel is directed should have been produced long ago in response to the discovery requests that were served on Plaintiffs' counsel on January 18, 2019. Except for the person or entity to whom or to which they were directed, the document requests directed to Professor Levitt are virtually identical to those previously served upon Plaintiffs' counsel.

Request No. 1 in the Levitt and Loyola Document Subpoenas is a narrower version of

12

Request for Production No. 1 that was served on January 18, 2019 on the three individual Plaintiffs,

Mr. Bonilla, Ms. Freeman, and Ms. Gearhart, as the following redline shows:

> 1.      All non-privileged Documents and Communications related to Mr. Adams, PILF, the Reports, **or** non-citizen registration or voting **in Virginia**, ~~election law, election monitoring, or voter fraud.~~[15]

Request No. 2 in the Levitt and Loyola Document Subpoenas is ***identical*** to Request for

Production No. 3 that was served on January 18, 2019 on Plaintiffs Bonilla, Freeman, and

Gearhart:

> 3.      All Communications to or from individuals, whether directly or indirectly through agents or counsel, who are or were named in the exhibits to the Reports.

Request No. 3 in the Levitt and Loyola Document Subpoenas called for:

> 3.      All Documents and Communications discussing, mentioning, or describing potential litigation related to the publishing of the Reports, including this Litigation.

Documents responsive to the foregoing request are also responsive to Request No. 8 in the Levitt

and Loyola Document Subpoenas:

> 8.      All Documents and Communications relating to this Litigation.

Substantively, Request No. 8 in the Levitt and Loyola Document Subpoenas calls for production

of documents responsive to Request for Production No. 15 that was served on January 18, 2019

on Plaintiffs Bonilla, Freeman, and Gearhart:

> 15.      All non-privileged documents and relating to this Litigation.

Responses to the foregoing discovery requests directed to Plaintiffs and their counsel were

---

[15] **Text that was added to the Levitt and Loyola Document Subpoenas is shown in red bold font.** ~~Text that was deleted from the comparable document request served upon Plaintiffs is stricken through.~~

due on February 18, 2019.  At no time since February 18, 2019 have Plaintiffs or Plaintiffs' counsel produced or identified on a privilege log any of the documents at which Defendants' Motion to Compel is directed.

Plaintiffs' Opposition chides Defendants' counsel for not challenging the sufficiency of Plaintiffs' discovery responses.  Before April 1, 2019, Defendants' counsel had no knowledge—and no way of knowing—that there were documents responsive to Defendants' discovery requests that had not been produced or identified on a privilege log.  By email dated April 1, 2019, Defendants' counsel tried to initiate a discussion with Plaintiffs' counsel about their work product objections.  (**Exhibit 1**)  Plaintiffs' counsel never responded to this request—instead directing their lawyer in San Francisco to threaten Defendants' counsel with charges of professional misconduct in California and Virginia for attempting to "meet and confer" directly with SCSJ and Protect Democracy.  (Dkt. # 130-8).  Notwithstanding these threats, as the deposition of Professor Levitt approached, on April 11, 2019, Defendants' counsel tried to engage Plaintiffs' counsel in a discussion of Plaintiffs' failure to identify Professor Levitt in Plaintiffs' initial disclosures. (**Exhibit 2**).  Plaintiffs' counsel simply ignored this request.

## D. SCSJ and Protect Democracy Have Not Met Their Rule 26(b)(3) Burden of Showing That Professor Levitt's Communications With Virginia Voters Are Work Product.

After the filing of Defendants' Motion to Compel, Plaintiffs' counsel finally "declassified" a previously redacted email from an intern at SCSJ in which she was seeking to arrange a lunch date between Eliud Bonilla, who later became a plaintiff in this case, and Allison Riggs at SCSJ. The email followed a "cold call" to Mr. Bonilla from the SCSJ intern and had been redacted to delete the following statement: "We're particularly interested in talking with you because you

seem to understand the racial implications of this report."[16]  Although this particular email was not the subject of the pending motion, it is indicative of the view of "work product" adopted by SCSJ and Protect Democracy.  Although SCSJ and Protect Democracy are entitled to their opinion, it is not consistent with Rule 26(b)(3).

To be "in anticipation of litigation" within the meaning of Rule 26(b)(3), "[t]he document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation."  *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992).[17]

More importantly, the ***facts*** known to Professor Levitt, Plaintiffs, and their counsel are not "opinion" work product within the meaning of Fed. R. Civ. P. 26(b)(3).  If Professor Levitt's communications with SCSJ and Protect Democracy about his communications were protectable at all, they would be "fact" product.  *In re Grand Jury Proceedings #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005).  "To serve the policy of discovery of facts, a court will more likely favor the production of fact work product[.]"  *In re Grand Jury Subpoena*, 870 F.3d 312, 320–21 (4th Cir. 2017).  Fact work product can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship."  *In re Grand Jury Proceedings, Thurs. Special Grand Jury Session Sept. Term, 1991,* 33 F.3d 342, 348 (4th Cir.1994).

---

[16] A copy of this November 3, 2017 11:01 a.m. email is attached as **Exhibit 4**.

[17] *See also Binks Mfg. Co. v. National Presto Indus., Inc.,* 709 F.2d 1109, 1118 (7th Cir. 1983) ("The mere fact that litigation does eventually ensue does not, by itself, cloak materials" with work product immunity); *Janicker v. George Washington Univ.,*94 F.R.D. 648, 650 (D.D.C. 1982) ("The fact that a defendant anticipates the contingency of litigation resulting from an accident or an event does not automatically qualify an 'in house' report as work product.").

The work product doctrine "does not protect facts concerning the creation of work product or facts contained within the work product" unless revealing such facts would inherently reveal the attorney's mental impressions.   *Garcia v. City of El Centro,* 214 F.R.D. 587, 591 (S.D.Cal.2003); *see also Resolution Trust Corp. v. Dabney,* 73 F.3d 262, 266 (10th Cir.1995); *Prowess, Inc. v. RaySearch Labs. AB*, No. CIV. WDQ-11-1357, 2013 WL 1856348, at *6 (D. Md. Apr. 30, 2013) ("In the absence of evidence that Dr. Yu's investigative process would reveal counsel's mental impressions or advice of counsel, Prowess's assertions lack merit.").  According to Plaintiffs' Opposition, Professor Levitt's communications with SCSJ and Protect Democracy are work product simply because they say so.  Nowhere does the SVSJ/Protect Democracy Log identify the actual subject matter of Professor Levitt's communications with SCSJ and Protect Democracy.   Instead, the SCSJ/Protect Democracy Log states legal conclusions such as "Communication between counsel regarding information gathered in investigation into anticipated claim."

The effort by SCSJ and Protect Democracy to convert the work product of Professor Levitt into their own work product after the fact is contrary to the work product doctrine as it has been applied in the Eastern District of Virginia for more than forty years:

> An attorney cannot, however, by retroactive adoption, convert the independent work of another already performed, into his own "work product."  For example, the "work product" privilege does not apply when an attorney, engaged by a party or a party's insurer to prepare for litigation, simply directs or supervises preparatory work done by employees of the party or its insurer, since those employees owe primary allegiance to their employers.  On the other hand, when an attorney thus engaged actually hires and arranges to pay his own selected agent to do the desired preparatory work, the product of that work becomes a part of the hiring attorney's "work product," just as if the work had been done by the attorney in person or by an employee of his office.  35 ALR 3d 412 § 3.
>
> Knowledge gained by an attorney through the efforts of an expert

16

> whom he has employed to investigate matters of a technical or scientific nature, is part of his "work product." On the other hand, that experts may provide evidence for a party does not, *ipso facto*, make them technical advisors to a lawyer and their advice and reports a part of his "work product." 35 ALR 3d 412 § 4.

*Virginia Elec. & Power Co. v. Sun Shipbuilding & Dry Dock Co.*, 68 F.R.D. 397, 402 (E.D. Va. 1975).

In opposition to Defendants' Motion to Compel, Allison Riggs at SCSJ and Larry Schwartztol at Protect Democracy have submitted carefully worded declarations asserting that Professor Levitt did not forward them his actual communications with Virginia voters that he now asserts were attorney-client privileged. What counsel at SCSJ and Protect Democracy do not say, presumably because it would be untrue, is that Professor Levitt did not share with them the substance of those allegedly privileged communications. As discussed under Heading F, the juxtaposition of the two privilege logs suggests that he did just that. Ultimately, this issue cannot be resolved simply by less argumentative phrasing of the privilege logs. The issue is whether the prerequisites for work product immunity qualify for work product protection—an issue that is best resolved by *in camera* review.

**E.     The Evidence Suggests That SCSJ and Protect Democracy Were Made Aware of the Substance of Professor Levitt's Communications With Virginia Voters.**

Tellingly, the communications with Virginia voters that Professor Levitt now claims were "attorney-client privileged" align with Professor Levitt's communications with SCSJ and Protect Democracy that are now alleged to be work product. For example:

- Professor Levitt's June 27, 2017 communications with Virginia voters for which he claims attorney-client privilege were followed by an email that same day for which SCSJ and Protect Democracy claim work product immunity (Entry No. 1).

- Professor Levitt's July 18, 2017 communications with Virginia voters for which he claims attorney-client privilege were followed by emails the following day

(July 19, 2017) for which SCSJ and Protect Democracy claim work product immunity (Entry Nos. 10, 11, and 12).

- Professor Levitt's July 25, 2017 communications with Virginia voters for which he claims attorney-client privilege were followed by emails on August 3, 2017 for which SCSJ and Protect Democracy claim work product immunity (Entry Nos. 14, 15, 16, and 17).

- Professor Levitt's August 4, 2017 communications with Virginia voters for which he claims attorney-client privilege were followed by emails that same day for which SCSJ and Protect Democracy claim work product immunity (Entry Nos. 18, 19, and 20).

- Professor Levitt's August 5, 2017 communications with Virginia voters for which he claims attorney-client privilege were followed by an email that same day for which SCSJ and Protect Democracy claim work product immunity (Entry No. 21).

- Professor Levitt's August 7, 2017 communications with Virginia voters for which he claims attorney-client privilege were followed by emails that same day for which SCSJ and Protect Democracy claim work product immunity (Entry Nos. 22 and 23).

- Professor Levitt's August 10, August 11, and August 15, 2017 communications with Virginia voters for which he claims attorney-client privilege were followed by emails on August 15, 2017 for which SCSJ and Protect Democracy claim work product immunity (Entry Nos. 2, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, and 35).

- Professor Levitt's August 16, 2017 communications with Virginia voters for which he claims attorney-client privilege were followed by emails that same day for which SCSJ and Protect Democracy claim work product immunity (Entry Nos. 36, 37, 38, and 39).

- Professor Levitt's August 18, 2017 communications with Virginia voters for which he claims attorney-client privilege were followed by emails on August 22, August 23, and August 25, 2017 for which SCSJ and Protect Democracy claim work product immunity (Entry Nos. 51, 52, 53, 54, 55, 56, and 57).

When Professor Levitt was deposed on April 17, 2017, questions about whether Professor Levitt told SCSJ and Protect Democracy what Virginia voters were telling him were the subject of "work product" objections and instructions not to answer. And when a previously produced document seemed to confirm that Professor Levitt had in fact disclosed these allegedly privileged

18

communications to SCSJ and Protect Democracy, counsel for SCSJ and Protect Democracy asserted work product immunity with respect to this document for the very first time.  (Levitt Tr.) (Dkt. #130-1).

Even if the actual communications between Virginia voters and Professor Levitt were not turned over to SCSJ and Protect Democracy, the substance of these communications appears to be in the possession, custody, and control of SCSJ and Protect Democracy.  And if Professor Levitt was in fact acting as the agent or representative of SCSJ and Protect Democracy at the time, these communications are in the possession, custody, and control of SCSJ and Protect Democracy after all.

**F.**     **Professor Levitt's Communications with SCJS and Protect Democracy Are Discoverable Under the "Crime-Fraud" Exception to Work Product Immunity.**

SCSJ and Protect Democracy are not above the law however noble their stated missions may—or may not—be.  They and Professor Levitt have no right to engage in barratry or any other conduct in violation of Virginia law.  For the reasons set forth in the previously filed Memorandum In Support of Defendants' Motion to Compel (Dkt. #131), the crime-fraud exception warrants voiding the claims of work product asserted by SCSJ and Protect Democracy.

"[T]he 'crime-fraud exception may be applied because illegal or fraudulent conduct by an attorney alone may suffice to overcome attorney work product protection.  We have previously recognized that in cases of attorney misconduct there is no protection for the attorney's work product.'"  *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1337-39 (11th Cir. 2018) (citing *Parrott v. Wilson,* 707 F.2d 1262, 1271 (11th Cir. 1983)).

The Eastern District of Virginia has cited *Parrott* for the preposition that an attorney's wrongful or unprofessional conduct will permit the application of the crime-fraud exception.  "The term 'crime/fraud exception,' however, is a bit of a misnomer, as many courts have applied the

exception to situations falling well outside of the definitions of crime or fraud." *Rambus, Inc. v. Infineon Techs. Ag,* 220 F.R.D. 264, 281) (E.D. Va. 2004).

### III.    <u>CONCLUSION</u>

The documents that are the subject of Defendants' Motion to Compel should have been produced or at least identified at the outset of discovery.  A third-party subpoena to Professor Levitt and Loyola Law School should not have been necessary for PILF and Mr. Adams to find out about these documents for the first time as discovery is drawing to a close.

There is no merit to the belated objections of work product raised by SCSJ and Protect Democracy.  Regardless of whether Professor Levitt was truly performing legal "research" or simply trying to generate negative media coverage for PILF and Mr. Adams, his communications were clearly not in "anticipation of litigation."  Nor were they subject to the attorney-client privilege.  Even if these communications were otherwise subject to a valid claim of work product immunity, PILF and Mr. Adams have a substantial need for them because of their anti-SLAPP defense and their contention that Plaintiffs' unprecedented interpretation of the Voting Rights Act and the Ku Klux Klan Act would violate Defendants' First Amendment rights.  In addition, the crime-fraud exception applies here because of the barratry in which Professor Levitt, SCSJ, and Protect Democracy were engaged.  Accordingly, PILF and Mr. Adams respectfully request that the Court order the production or *in camera* inspection of the documents at issue.

4844-3476-6997.1

Dated:  May 2, 2019

Respectfully submitted,


PUBLIC INTEREST LEGAL FOUNDATION
and J. CHRISTIAN ADAMS

By */s/ Michael J. Lockerby*
        Counsel
Michael J. Lockerby (Virginia State Bar No. 24003)
Eli L. Evans (Virginia State Bar No. 90700)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone:  202-945-6079
Facsimile:  202-672-5399
Email:  mlockerby@foley.com
Email:  eevans@foley.com


William E. Davis (Admitted *pro hac vice*)
Ana Romes (Admitted *pro hac vice*)
FOLEY & LARDNER LLP
One Biscayne Tower
2 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Telephone:  305-482-8404
Facsimile:  305-482-8600
Email:  wdavis@foley.com
Email:  aromes@foley.com

Counsel for Defendants

4844-3476-6997.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 2, 2019, I electronically filed the foregoing REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELEVANT TO ANTI-SLAPP AND FIRST AMENDMENT ISSUES WITHHELD OR REDACTED BY PLAINTIFFS' COUNSEL with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing (NEF) to all counsel of record. In addition, I sent a copy of the foregoing REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELEVANT TO ANTI-SLAPP AND FIRST AMENDMENT ISSUES WITHHELD OR REDACTED BY PLAINTIFFS' COUNSEL by email to the following attorneys who are not counsel of record:

<table>
<tr>
<td>
Harold A. Bridges, Esq.<br>
Bridges & Bridges<br>
318 Avenue I, #606<br>
Redondo Beach, California 90277<br>
drew@bridges-law.com<br><br>
<i>Counsel for</i><br>
<i>Justin M. Levitt</i><br>
<i>and Loyola University</i>
</td>
<td>
Thomas E. Gorman, Esq.<br>
Keker, Van Nest & Peters LLP<br>
633 Battery Street<br>
San Francisco, California 94111-1809<br>
tgorman@keker.com<br><br>
<i>Counsel for</i><br>
<i>Southern Coalition for Social Justice</i><br>
<i>and The Protect Democracy Project</i>
</td>
</tr>
</table>

/s/ *Michael J. Lockerby*

Michael J. Lockerby (VSB No. 24003)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone:  202-945-6079
Facsimile:  202-672-5399
Email:  mlockerby@foley.com

Counsel for Defendants

1