IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| League of United Latin American Citizens – Richmond Region Council 4614, et al., | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No. 1:18-cv-00423-LO-IDD<br>) |
| PUBLIC INTEREST LEGAL FOUNDATION, an Indiana Corporation, and J. CHRISTIAN ADAMS, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO RE-OPEN THE DEPOSITION OF DEFENDANT J. CHRISTIAN ADAMS**

Plaintiffs submit this memorandum of law in support of their motion pursuant to Federal Rule of Civil Procedure 30(a)(2)(A)(ii) to re-open the deposition of Defendant J. Christian Adams in light of the recent disclosure of material documents and information that were previously withheld by Defendant Adams and closely related third parties.

**INTRODUCTION**

Plaintiffs allege that Defendants J. Christian Adams ("Adams") and the Public Interest Legal Foundation ("PILF") engaged in a concerted effort to defame, intimidate, and threaten them and other eligible voters in Virginia for registering to vote and voting. Specifically, Plaintiffs allege that, together with Reagan George and the Virginia Voters Alliance (VVA), Defendants drafted, published, and publicly promoted two reports (the "*Alien Invasion* reports") that accused thousands of people—by name and other personally identifying information—of being "non-citizens" who registered and/or voted "illegally" in Virginia. The Individual

Plaintiffs, however, are citizens who are eligible to vote and thus committed no such crimes. Plaintiffs allege violations of the Klu Klux Klan Act, 42 U.S.C. § 1985(3) (conspiracy to prevent voting by force, intimidation, or threats) and Section 11(b) of the Voting Rights Act, 52 U.S.C § 10307 (intimidation, threats, or coercion interfering with right to vote), as well as claims of defamation under state law.

In the past two weeks, Plaintiffs learned that third parties who are closely related to Defendants—including VVA and one of Defendant PILF's own board members—had (and have) been withholding hundreds of documents containing information that is material to this litigation. It further appears that at least some of these documents should have been produced by Defendant Adams. These disclosures came within days of the close of discovery on May 10th—indeed, one set of more than 400 documents came *on* May 10th—and weeks after Plaintiffs completed the deposition of Defendant Adams in both his individual capacity and as Defendant PILF's corporate designee pursuant to Rule 30(b)(6). Defendants had absolutely no prior notice that these third parties were in possession of these documents or that there would be such a large volume of documents that were responsive to discovery requests previously issued in this case. These belated disclosures also follow previous foot-dragging by Defendant Adams in making his own document production (necessitating an earlier motion to compel) and blatantly obstructionist conduct at his deposition. Regardless of fault, however, the fact that the recently produced documents contain material information justifies reopening Defendant Adams's deposition.

Accordingly, Plaintiffs ask the Court to order Defendant Adams to appear for another full day of deposition (in both his corporate and personal capacities) and to answer questions without further obstruction.

**ARGUMENT**

The documents and information that have come to light since Plaintiffs deposed Defendant Adams on April 18 and 22, 2019, easily justify reopening his deposition.

Federal Rule of Civil Procedure 30(a)(2)(A)(ii) authorizes parties to seek leave of court to question a deponent "who has already been deposed in the case." The Rule mandates that "the court *must* grant leave to the extent consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 30(a)(2) (emphasis added). In assessing whether a request to re-open a deposition is consistent with Rule 26(b), courts consider whether:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

*Flame Glory Wealth Shipping Pte Ltd. v. Indus. Carriers, Inc.*, 2014 WL 12547264, at *3 (E.D. Va. Apr. 30, 2014). "When considering whether to grant leave to reopen a deposition the burden is on the opposing party to demonstrate that Rule 26(b)(2) bars the deposition." *Eshelman v. Puma Biotechnology, Inc.*, 2018 WL 327559, at *4 (E.D.N.C. Jan. 8, 2018) (internal quotation marks omitted).

"Courts have typically reopened a deposition . . . where new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition." *Flame Glory Wealth*, 2014 WL 12547264, at *3 (quoting *Briggs v. Phebus*, 2014 WL 1117888, at *3 (E.D. La. Mar. 19, 2014)); *accord, e.g.*, *Ganci v. U.S. Limousine Serv., Ltd.*, 2011 WL 4407461, at *2 (E.D.N.Y. Sept. 21, 2011) ("Courts will typically reopen a deposition where there is new information on which a witness should be questioned."). Thus, courts

routinely grant leave to reopen the deposition of a party who has improperly failed to disclose relevant documents prior to his or her deposition. *See, e.g.*, *Eshelman*, 2018 WL 327559, at *4-*5 (granting plaintiff leave to reopen depositions where defendant produced discoverable documents after initial depositions and finding that "it would be unfair to allow Defendant to untimely produce materials and then prevent Plaintiff from reopening depositions in order to question based on those materials"); *Fresenius Med. Care Holdings, Inc. v. Roxane Labs., Inc.*, 2007 WL 764302, at *2 (S.D. Ohio Mar. 9, 2007) (noting that when "new documents are produced, the witness may be re-deposed with respect to these new developments" and ordering re-deposition where "plaintiff did everything in its power to obtain" a belatedly produced document and defendant "offered no justification for failing to provide the document"); *Miller v. Fed. Express Corp.*, 186 F.R.D. 376, 389 (W.D. Tenn. 1999) ("existing case law, as well as common sense, supports allowing redeposal where a party fails to disclose relevant information . . . which it later reveals only after an intervening deposition has occurred").

However, no showing of fault is required. The Court may grant leave to reopen a deposition to question a witness about newly obtained documents even if the witness is not culpable for the delayed production, so long as the discovering party has been diligent in seeking the information and the additional questioning would not be cumulative or unduly burdensome. *See, e.g.*, *Ganci*, 2011 WL 4407461, at *2 (granting leave to re-depose witness with the benefit of documents obtained through freedom of information requests after the witness's initial deposition); *Vincent v. Mortman*, 2006 WL 726680, at *2 (D. Conn. Mar. 17, 2006) (permitting reopening of defendant's deposition in light of third party's belated production of relevant documents).

Thus, the recent disclosure of material documents and information that were previously withheld by Defendant Adams and closely related third parties—documents that Plaintiffs were diligent in seeking to discover—is sufficient to re-open Defendant Adams's deposition.

I.  **LATE PRODUCTIONS BY DEFENDANTS' CLOSE ALLIES JUSTIFY RE-OPENING THE DEPOSITION OF DEFENDANT ADAMS**

Since Defendant Adams's deposition in April, Plaintiffs have learned about hundreds of documents that third parties closely related to Defendants—including a PILF board member and the co-author if the *Aliens Invasion* reports—previously and wrongfully withheld in response to subpoenas.

<u>Documents Recently Produced by the Co-Author Virginia Voters Alliance</u>

VVA and its president, Reagan George, co-authored both *Alien Invasion* reports. Plaintiffs issued a subpoena for documents to VVA on December 6, 2018, followed by a subsequent subpoena for a deposition and documents on February 14, 2019. Exs. C-D.[1] After missing the initial deadline for production set forth in the first subpoena, VVA produced documents on February 8th, followed by subsequent additional productions on March 11th, March 29th, and April 2nd. Nadeau Decl. ¶ 5. Mr. George appeared for deposition on behalf of VVA on March 15, 2019. *Id*. There is evidence from the initial document productions that Defendant Adams actually assisted and/or coordinated with VVA in its to the subpoena prior to the deposition. Exs. E-H. Then on May 3rd—without prior notice and well after any applicable deadline—VVA surprised Plaintiffs by producing a privilege log indicating that it was withholding 439 documents as supposedly privileged. Nadeau Decl. ¶ 6. After the parties met

---

[1] All exhibits referenced herein are attached to the accompanying declaration of Genevieve Nadeau (Nadeau Decl.)

5

and conferred, VVA withdrew its claim of privilege and produced the documents on May 9th—the day before discovery closed. *Id*.

The May 9th production includes several emails with Defendant Adams or agents of Defendant PILF that Plaintiffs would have addressed in deposition with Defendant Adams had they been available at the time. For example, one such document that Defendant Adams had previously produced in highly redacted form reveals in the unredacted version produced by VVA that PILF and VVA were attempting to use the *Alien Invasion* reports to pressure DOJ officials into bringing prosecutions in Virginia. *Compare* Ex. I *with* Ex. J. As a second example, a document refers to Defendant Adams's hunt for plaintiffs to bring a lawsuit against the General Registrar of Alexandria—and would have been addressed with Defendant Adams at his deposition in light of the fact that Defendants have made it a central point of their defense to attack the mode by which Plaintiffs came to bring this lawsuit. Ex. K.

These are just two examples from the 400-plus documents that Plaintiffs are still attempting to sift through after seeing them for the first time on May 9th. Because Plaintiffs were unfairly denied an opportunity to question Defendant Adams about these documents and related topics during his deposition, they should be permitted to do so now.

<u>Documents Still Being Withheld by PILF Board Member Hans von Spakovsky</u>

Hans von Spakovsky is a PILF board member who Defendants identified in their initial disclosures as having information relevant to the *Alien Invasion* reports and who actively participated in PILF's work. Nadeau Decl. ¶ 7. Plaintiffs initially issued a subpoena for documents to Mr. von Spakovsky on January 31, 2019. Ex. L. Mr. von Spakovsky produced documents on March 1st and 22nd, and then finally appeared for deposition on May 9th after rescheduling multiple times at the last-minute requests of his counsel. Nadeau Decl. ¶ 9. During

6

that deposition, Plaintiffs learned for the first time that Mr. von Spakovsky withheld *all* communications with Defendant Adams and certain others at PILF in response to his subpoena, including communications concerning the *Alien Invasion* reports.[2] Ex. M (von Spakovsky Depo. Tr.) at 35:20-38:25. Plaintiffs have yet to receive a privilege log from Mr. von Spakovsky but expect an additional document production from him because there is no privilege that conceivably could protect all of these documents from discovery.[3]

In this respect, too, Plaintiffs were unfairly denied an opportunity to question Defendant Adams about these documents and related topics during his deposition, and they should be permitted to do so now (or as soon as documents are produced).

## II. A RECENT DOCUMENT PRODUCTION BY A PILF VOLUNTEER CALLS INTO QUESTION DEFENDANT ADAMS'S OWN PRODUCTION

Steven Albertson is a Virginia resident who volunteered to assist Defendants Adams and PILF gather registration and voting information from a handful of county registrars prior to the publication of the *Alien Invasion I* report. *See* Ex. O (Albertson Depo. Tr.) at 18:13-21:14; 26:4-26:14. He then also helped to publicize the reports. *Id.* at 21:15-22:3. Defendants issued an initial subpoena to Mr. Albertson for documents and deposition testimony on March 29, 2019. Ex. N. Mr. Albertson ultimately produced 464 documents to Plaintiffs just after 4:30 p.m. on Friday, May 10th—quite literally the last hour of discovery—and appeared for deposition on Tuesday, May 14th. Nadeau Decl. ¶ 11.

---

[2] Plaintiffs also learned that Defendant PILF never issued any sort of document preservation notice to Mr. von Spakovsky and that he apparently allowed at least some portion of relevant documents to be destroyed. Ex. M (von Spakovsky Depo. Tr.) at 39:1-41:1.

[3] These documents are also responsive to Plaintiffs' request for production to Defendants Adams and PILF. Exs. A-B.

7

The documents that Mr. Albertson produced on May 10th include a number of communications with Defendant Adams that Defendant Adams had not previously produced. For example, in an email thread in October 2016, Defendant Adams and others discussed tactics for deterring voter fraud, including what tactics may or may not violate federal voter intimidation laws (including one of the laws at issue in this litigation). Exs. P-Q. In another email thread earlier that same month, Defendant Adams and others discussed his participation in an event about the "cover up" of "Virginia Noncitizen Voters" (a term Defendant has suggested in other documents should not be used). Ex. R. However, because Defendant Adams failed to preserve and/or produce the documents, Plaintiffs were not afforded an opportunity to question him about them during his deposition in April.

Moreover, Mr. Albertson also gave deposition testimony about documents he had produced that contradicted some of Defendant Adams's earlier deposition testimony. For example, Mr. Albertson produced a document that discussed the possibility that the individuals named in *Alien Invasion I* may be "accidentals (i.e., those who are citizens but who had trouble with the forms)," and further noted that "[i]t's looking like that's 10-15% of what we have." Ex. S. Then, Mr. Albertson indicated in his deposition testimony that he believed Defendant Adams was the source of the information, Ex. O (Albertson Depo. Tr.) at 124:13-127:18, which contradicts Defendant Adams's testimony that he believed certain documents to be "inherently reliable," Ex. U (Adams 30(b)(6) Depo. Tr.) at 77:20-21, 145:10; Ex. V (Adams Indiv. Depo. Tr.) at 128:16.

Plaintiffs should be permitted to question Defendant Adams about all of these documents and related topics as well.

### III. THESE LATE DISCLOSURES ONLY COMPOUND PREVIOUS ATTEMPTS BY DEFENDANT ADAMS TO OBSTRUCT DISCOVERY

A further deposition is all the more warranted because of the strong circumstantial evidence that Defendant Adams has defaulted on his discovery obligations. Significant portions of the late-produced documents are email chains that include Defendant Adams. Although Defendant Adams has previously professed a habit of deleting emails, *see* Dkt. No. 103, it strains belief that he just happened delete hundreds of emails directly relevant to this litigation, especially in light of his pattern of obstructive conduct toward discovery during the litigation.

Specifically, Plaintiffs initially propounded requests for production pursuant to Rule 34 on December 10, 2018. Ex. A-B. After repeated efforts by Plaintiffs, Defendant Adams finally produced a total of only 62 documents on February 12th, forcing Plaintiffs to file a motion to compel on February 15th. *See* Dkt Nos. 98-100. In response to the motion, Defendant Adams emphasized his understanding of his ethical obligations with respect to discovery and claimed that he "played an active role in ensuring that PILF and [he] produced responsive documents." Dkt. No. 103 (Adams Decl.), ¶ 3. He suggested that he either deleted, produced, or logged all responsive documents, including communications with Mr. Albertson. *Id.* ¶ 12. However, he also made clear that he performed his own document search without the assistance of counsel. *Id.* ¶ 4.

The Court granted Plaintiffs' motion and ordered Defendant Adams to produce responsive documents no later than March 8th. Dkt. No. 107. Defendant Adams complied with that Order—or so Plaintiffs thought—by producing 561 additional documents (Defendants later collectively produced many more documents). Nadeau Decl. ¶ 3. Of course, that fact in itself indicates that Defendant Adams wrongly withheld **more than 500 documents** in his initial

9

production.  And as set forth above, it appears that Defendant Adams's production is still woefully incomplete.

The prior depositions of Defendant Adams on April 18th and 22nd continued the pattern. Defendant Adams went out of his way at both depositions to avoid answering even the most straightforward questions, including, among other things, by challenging whether questions were within the scope of his deposition notice, criticizing Plaintiffs' counsel's questions, falsely insisting that he had already answered questions and that counsel should read "the transcript," and insisting that he could not answer questions without being shown "a document." *See generally* Exs. U-V.  For example, during the first day of his deposition, Defendant Adams essentially refused to say why he joined PILF on the ground that ***he did not remember***, asserting, "This is outside the scope of the 30(b)(6) . . . and I didn't prepare for it.  So I don't remember." Ex. U (Adams 30(B)(6) Depo. Tr.) at 21:7-19.  As another example, Defendant Adams refused to answer a simple question as to whether anyone at PILF contacted Plaintiff Freeman to clarify her citizenship status.  *Id*. at 145:22-149:20.  Defendant also refused to give straight answers to questions ranging from his communications with the Department of Justice, to whether or not PILF has a Facebook page.  Ex. V (Adams Indiv. Depo. Tr.) at 10:2-14:20, 24:17-25:11.  With respect to the latter, Defendant Adams absurdly claimed that although he is the president of PILF, "***it's not my organization***" and "***I don't own it***."  *Id*. at 24:17-25:11.  These are just a few examples of his conduct throughout his deposition.

In addition, there are discrepancies between Defendant Adams's deposition testimony and subsequently obtained evidence.  For example, during his deposition Defendant Adams denied that PILF had raised substantial funds based on its claims of voting by noncitizens in Virginia and/or this lawsuit, testifying that his "understanding of it is it's less than a hundred

dollars." *Id*. at 152:23-153:6. But documents received through subpoenas to third-party fundraising organizations used by PILF and identified by Defendant Adams in his deposition reveal that PILF raised tens of thousands of dollars off of direct-mail solicitations that expressly reference PILF's claims about noncitizen voting in Virginia and the instant lawsuit.[4] Nadeau Decl. ¶ 13. In light of the vast disparity between Defendant Adams's deposition testimony and the subsequently discovered documentary evidence, Plaintiffs should be entitled to pursue further lines of questioning on this issue as well.[5]

Accordingly, while proof of misconduct is not required to justify re-opening a deposition, here the prior misconduct is clear and further supports Plaintiffs' requests because that misconduct directly interfered with Plaintiffs' efforts to take a full and fair deposition of Defendant Adams on a complete record. Furthermore, in addition to an order allowing Plaintiffs

---

[4] The issue is further compounded by PILF's unwillingness to provide further information in written discovery. Specifically, after Defendant Adams's deposition, Plaintiffs followed up on previous requests for documentary evidence from PILF regarding its fundraising efforts, only to be told in response that PILF does not have any such information. Nadeau Decl. ¶ 13. When Plaintiffs sought clarification attempting to reconcile documentary evidence with PILF's assertion that it does not have any information concerning funds raised in reference to the *Alien Invasion* reports or this lawsuit, Defendants simply insisted that no such data are in its possession, ultimately furnishing a bare-bones declaration to that effect from PILF employee Shawna Powell. *Id*. But questions remain in light of the production by PILF's fundraisers, ForthRight Strategies and A.C. Fitzgerald, which demonstrate that PILF is both active and organized in its fundraising efforts.

[5] Similarly, Mr. Albertson testified that Defendant Adams's deposition testimony (which Mr. Albertson was shown and read) materially misrepresented the nature of their relationship and the work that Mr. Albertson performed for Defendants in connection with the *Alien Invasion* reports. Ex. O (Albertson Depo. Tr.) at 100:10-110:6. Specifically, Mr. Albertson testified that Defendant Adams's testimony that Mr. Albertson helped PILF as a representative of Mr. Albertson's law firm (as opposed to in his personal capacity), that other attorneys at Mr. Albertson's law firm were involved, and that Mr. Albertson participated in the collection of information from Prince William County, were false. *Id*.; *see also* Ex. U (Adams 30(b)(6) Depo. Tr.) at 78:14-91:25. Indeed, Mr. Albertson commented, "Wow. Wow," upon reading Defendant Adams's testimony, *see* Ex. O (Albertson Depo. Tr.) at 103:4, and noted that Adams's testimony was "a *lie*," *id*. at 106:24 (emphasis added).

11

to re-open the deposition, the Court should further order Defendant Adams to answer questions without engaging in further obstructionist tactics.

## CONCLUSION

For the foregoing reasons, Plaintiffs ask the Court to order Defendant Adams to appear for another full day of deposition (both in his corporate and personal capacities) and to answer questions without obstruction. Plaintiffs further request that the Court grant any additional relief it deems appropriate.

Dated: May 17, 2019                    Respectfully submitted,


        /s/ Christopher S. Herlihy
        _____
        CHRISTOPHER S. HERLIHY (VSB No. 93558)
        ANISA A. SOMANI (VSB No. 86103)
        NICOLE M. CLEMINSHAW (VSB No. 92161)
        GEOFFREY M. WYATT (*Pro hac vice*)
        SEAN M. TEPE (*Pro hac vice*)
        ANDREW HANSON (*Pro hac vice*)
        ZACHARY W. MARTIN (*Pro hac vice*)
        JOHN R. THORNBURGH II (*Pro hac vice*)
        1440 New York Ave. NW
        Washington, DC 20005
        Telephone:   (202) 371-7293
        Facsimile:    (202) 661-8293
        Christopher.Herlihy@probonolaw.com
        Anisa.Somani@probonolaw.com
        Nicole.Cleminshaw@probonolaw.com
        Geoffrey.Wyatt@probonolaw.com
        Sean.Tepe@probonolaw.com
        Andrew.Hanson@probonolaw.com
        Zachary.Martin@probonolaw.com
        John.Thornburgh@probonolaw.com

        ALLISON RIGGS (*Pro hac vice*)
        JACLYN MAFFETORE (*Pro hac vice*)
        JEFFREY LOPERFIDO (*Pro hac vice*)

**SOUTHERN COALITION FOR SOCIAL JUSTICE**
1415 West Highway 54, Suite 101
Durham, NC 27707
Telephone: (919) 323-3380
Facsimile: (919) 323-3942
AllisonRiggs@southerncoalition.org
JaclynMaffetore@southerncoalition.org
JeffLoperfido@scsj.org

CAMERON KISTLER (*Pro hac vice*)
GENEVIEVE NADEAU (*Pro hac vice*)
JAMILA BENKATO (*Pro hac vice*)
**PROTECT DEMOCRACY PROJECT**
2020 Pennsylvania Ave., NW # 163
Washington, DC 20006
Telephone: (202) 599-0466
Facsimile: (929) 777-9428
cameron.kistler@protectdemocracy.org
genevieve.nadeau@protectdemocracy.org
jamila.benkato@ protectdemocracy.org

LARRY SCHWARTZTOL (*Pro hac vice*)
**PROTECT DEMOCRACY PROJECT**
125 Walnut St., Suite 202
Watertown, MA 02472
Telephone: (202)-599-0466
Facsimile: (929)-777-9428
larry.schwartztol@protectdemocracy.org

ANDREW G. CELLI, JR. (*Pro hac vice*)
ALANNA KAUFMAN (*Pro hac vice*)
DAVID LEBOWITZ (*Pro hac vice*)
**EMERY CELLI BRINCKERHOFF & ABADY LLP**
600 Fifth Avenue at Rockefeller Center
10th Floor
New York, New York 10020
Telephone: (212) 763-5000
Facsimile: (212) 763-5001
acelli@ecbalaw.com
akaufman@ecbalaw.com
dlebowitz@ecbalaw.com

*Attorneys for Plaintiffs League of United Latin American Citizens – Richmond Region Council 4614, Eliud Bonilla, Luciania Freeman, and Abby Jo Gearhart*

**CERTIFICATE OF SERVICE**

I, Christopher S. Herlihy, hereby certify that on May 17, 2019, I electronically filed the foregoing Plaintiffs' Memorandum Of Law In Support of Their Motion to Re-Open the Deposition of Defendant J. Christian Adams using the CM/ECF system, which shall send notification of such filing (NEF) to the following counsel of record:

Michael J. Lockerby, Esq.
Foley & Lardner LLP
3000 K Street, N.W. | Suite 600
Washington, DC 20007
mlockerby@foley.com

*Counsel for Defendants*

Matthew E. Kelley, Esq.
Ballard Spahr LLP
1909 K Street, NW | 12th Floor
Washington, DC 20006
kelleym@ballardspahr.com

*Counsel for Defendant J. Christian Adams*

          /s/
CHRISTOPHER S. HERLIHY (VSB No. 93558)
1440 New York Ave. NW
Washington, DC 20005
Telephone:    (202) 371-7293
Facsimile:     (202) 661-8293
Christopher.Herlihy@probonolaw.com

*Counsel for Plaintiffs League of United Latin American Citizens – Richmond Region Council 4614, Eliud Bonilla, Luciana Freeman, Abby Jo Gearhart*