IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS - RICHMOND REGION COUNCIL 4614, ELIUD BONILLA, LUCIANIA FREEMAN, and ABBY JO GEARHART, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:18-cv-00423 (LO/IDD) |
| v. | ) ) | |
| PUBLIC INTEREST LEGAL FOUNDATION and J. CHRISTIAN ADAMS, | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO RE-OPEN
THE DEPOSITION OF DEFENDANT J. CHRISTIAN ADAMS AND THE RULE
30(b)(6) DEPOSITION OF DEFENDANT PUBLIC INTEREST LEGAL FOUNDATION**

i

TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ................................................................................ 1

II.    ARGUMENT .............................................................................................................. 5

      A.    Mr. Adams Fully Complied With the Court's February 22, 2019 Order Granting Plaintiffs' Motion to Compel Production of Documents Long Before His Deposition................................................................................... 5

      B.    Plaintiffs Could and Should Have Obtained Documents From Skadden Attorney Albertson, Mr. von Spakovsky, and VVA Long Before the Close of Discovery. ................................................................................................ 6

           1.    Skadden Attorney Albertson................................................................. 7
           2.    Hans von Spakovsky............................................................................ 8
           3.    Virginia Voters Alliance ...................................................................... 9

      C.    Plaintiffs Have Not Met Their Burden of Showing Good Cause to Re-open the Deposition of J. Christian Adams After More Than 14 Hours of Questioning. ............................................................................................. 10

      D.    This Litigation and Plaintiffs' Motion Are Part of an Ongoing Campaign By Activists to Smear PILF, Messrs Adams and von Spakovsky, and Third Parties. ............................................................................................ 13

III.   CONCLUSION ........................................................................................................ 16

Defendants, Public Interest Legal Foundation ("PILF"), by counsel, respectfully state as follows in opposition to Plaintiffs' Motion to Re-Open the Deposition of Defendant J. Christian Adams (Dkt. #159).

## I. PRELIMINARY STATEMENT

The pending motion is the latest example of Plaintiffs' abuse of the litigation process to silence and smear those who dare to express the view that—as required by the Virginia Constitution—only living citizens of the United States should be permitted to vote.[1] The targets of this campaign are not limited to the individuals named in the motion itself: Defendant J. Christian Adams ("Mr. Adams") and Hans von Spakovsky ("Mr. Spakovsky"), a senior fellow at the Heritage Foundation who is an outside director of PILF. Shortly after its filing, the pending motion became the subject of a "news" article that calls out the wife of U.S. Supreme Court Clarence Thomas by name.[2] The author of this article, Tierney Sneed, is a "reporter" for a publication called *Talking Points Memo* to whom Plaintiffs' counsel Southern Coalition for Social Justice ("SCCJ") and the Protect Democracy Project ("Protect Democracy") gave their Complaint even before its service on Defendants[3] (and before issuing their own press releases quoting counsel

---

[1] The voluminous evidence of this effort involving Justin M. Levitt, Professor Levitt's former colleagues at the U.S. Department of Justice with whom Defendants have longstanding differences, various publicists hired by Plaintiffs' counsel, and reporters at NBC News, *Slate*, *Mother Jones*, and other media outlets is summarized in the Declaration of Michael J. Lockerby (Dkt. #130) filed in support of Defendants' Motion to Compel Production of Documents Relevant to Anti-SLAPP and First Amendment Issues Withheld or Redacted By Plaintiffs' Counsel (Dkt. #128) and includes the deposition transcript of Professor Levitt (Dkt. #130-1).

[2] The headline of this May 18, 2019 article about the pending motion, a copy of which is attached as **Exhibit A**, is "SCOTUS Wife Ginni Thomas Floated Anti-Fraud Campaign for 'Questionable' Precincts." Today, the same reporter published a new article, attached as **Exhibit B**, titled "Court Docs: US Elections Commission Member Helped with Sketchy Fraud Report."

[3] *See* April 12, 2018 email attached as **Exhibit C**.

of record for Plaintiffs in this case).[4] Ms. Sneed has previously covered the June 22, 2019 hearing on Defendants' motion to dismiss, Defendants' third-party complaint against the Virginia Department of Elections,[5] and the Motion to Compel that Plaintiffs previously filed against Mr. Adams.[6]

Just as Defendants have a First Amendment right to advocate for election integrity and encourage the prosecution of non-citizens who vote in Virginia elections, Plaintiffs' counsel SCSJ and Protect Democracy and their media allies have a First Amendment right to criticize parties to this litigation (such as PILF and Mr. Adams), non-parties from whom they have subpoenaed documents (such as Mr. von Spakovsky at the Heritage Foundation), and non-parties with no apparent connection to this litigation in general or the pending motion in particular (such as the wife of Justice Thomas). But they have no right to file meritless discovery motions for the purpose of doing so.

None of Plaintiffs' pretexts for re-opening the deposition of Mr. Adams or PILF will withstand even cursory scrutiny. Mr. Adams has already been deposed for two full days, once individually, and once as PILF's Rule 30(b)(6) designee. At both depositions, Plaintiffs' counsel wasted everyone's time by doing dramatic readings of what they considered to be important documents rather than asking any proper questions. In addition, Plaintiffs' counsel asked Mr.

---

[4] These include the April 12, 2018 and August 13, 2018 press releases attached as **Exhibit D**.

[5] Ms. Sneed authored the August 30, 2018 article attached as **Exhibit E** entitled "Voter Fraud Alarmist Group Blames Election Officials for Misleading Reports."

[6] Ms. Sneed previously reported on Plaintiffs' Motion to Compel by way of the March 1, 2019 article attached as **Exhibit F** entitled "Discovery Dispute Surfaces Emails Between Ex-Trump Voter Fraud Commissioners." Ms. Sneed's March 1, 2019 article included snippets from some of the emails that Defendants had submitted to the Court showing that—contrary to Plaintiffs' accusations—Defendants had in fact already produced a substantial volume of emails exchanged with Hans von Spakovsky.

Adams questions about the various topics on which Plaintiffs claim a need to examine him for a third time. Mr. Adams spent two days in preparation for his Rule 30(b)(6) deposition and testified truthfully at both depositions. If Plaintiffs' counsel thought that Mr. Adams' answers were insufficient, they had ample opportunity to raise this issue with the Court previously since both depositions took place more than a month ago.

Faced with the reality that they have already plowed much of this ground, Plaintiffs claim an entitlement to a third deposition based on the failure of *others* to produce documents before Mr. Adams' two depositions. For his part, before he was deposed, Mr. Adams fully complied with the Court's Order of February 22, 2019, producing 675 documents based on an electronic search of Mr. Adams' laptop using search terms agreed to with Plaintiffs' counsel. Mr. Adams is not responsible for the fact that third parties apparently retained a handful of communications with him that he had long ago discarded. Neither PILF nor Mr. Adams individually is responsible for these third parties or the production of their documents that Plaintiffs claim were belatedly produced.

If Plaintiffs' counsel wanted emails from Steve Albertson at Skadden Arps ("Skadden Attorney Albertson") before deposing Mr. Adams, one of the eight counsel of record for Plaintiffs at that law firm could have walked down the hall to collect them. For Defendants, obtaining these documents was not so easy. It took multiple subpoenas to Skadden Arps beginning in February 2019, subsequent "cat and mouse" games by attorneys in the Skadden Arps Office of General Counsel ("Skadden's OGC") about whether they were representing Skadden Attorney Albertson individually (a question that Plaintiffs' counsel also ignored), and ultimately subpoenas served upon Skadden Attorney Albertson's residence before another law firm was retained to represent him in his individual capacity. The history of Defendants' efforts to obtain these documents sooner

3

is recounted herein. The delay is not the fault of Mr. Adams or his counsel, the documents at issue are of tangential relevance to the parties' claims and defenses, and any discrepancies in the witnesses' recollections can be the subject of cross-examination at trial.

The record is also clear that responsive documents produced (or not produced) by Mr. von Spakovsky reside on the server at the Heritage Foundation where he works and that emails are automatically deleted from that server after eighteen months. By Plaintiffs' own admission, they have had Mr. von Spakovsky under subpoena since January 31, 2019 and have dealt with his counsel regarding his objections to the subpoena. Plaintiffs' counsel should not have waited until after the close of discovery to raise with Mr. von Spakovsky's counsel the fact that no privilege log was ever prepared. At this juncture, Plaintiffs are simply speculating that Mr. von Spakovsky might have additional documents about which they might wish to question Mr. Adams. If Mr. von Spakovsky in fact has any such documents, they can ask Mr. Adams questions about those documents at trial.

As for the one-man Virginia Voters Alliance ("VVA"), Plaintiffs' counsel has had a subpoena outstanding since December 6, 2018 and threatened a motion to compel as early as February 7, 2019. During this time, Plaintiffs' counsel dealt directly with counsel for VVA and even with VVA's principal directly. Mr. Adams was not involved in VVA's collection or production of documents. Moreover, if the characterization of these documents in the pending motion is faithful to their contents, their subject matter covers ground that Plaintiffs have already plowed. For example, the Department of Elections' alleged "cover-up" of non-citizen voting is featured prominently in both *Alien Invasion* reports, as is the litigation against the City of Alexandria Registrar that VVA filed to obtain some of the public records that were being withheld. Defendants have produced voluminous documents on both subjects, while also identifying certain

privileged communications during the time that PILF was counsel of record for VVA in the Alexandria litigation.

Finally, the alleged inconsistencies between Mr. Adams' deposition testimony and the documents and deposition testimony that Plaintiffs have since received do not warrant re-opening his deposition. These alleged inconsistencies are already explained by other documents and deposition testimony, are not material, or can easily be addressed at trial for the reasons set forth herein.

## II. ARGUMENT

### A. Mr. Adams Fully Complied With the Court's February 22, 2019 Order Granting Plaintiffs' Motion to Compel Production of Documents Long Before His Deposition.

In support of their February 15, 2019 Motion to Compel, Plaintiffs complained that Mr. Adams' prior document production was "suspect" because it included so many email exchanges with Skadden Attorney Albertson. (Dkt. #99). Now they complain that Skadden Attorney Albertson produced documents that Mr. Adams no longer had and therefore could not produce. The Court's February 22, 2019 Order directed Mr. Adams to use the same search terms for his personal computer that had previously been applied to PILF's server and to produce any additional responsive documents by March 8, 2019. (Dkt. #107). Mr. Adams dutifully complied. Using the same search terms to which the parties had agreed for searching PILF's server, Defendants' outside counsel imaged and searched the contents of Mr. Adams' laptop. Many of the documents discovered were duplicative of documents that had previously been produced. Nevertheless, Defendants' counsel produced what the search terms yielded—for a total of 561 documents and more than 4,450 pages—on March 8, 2019. The Discovery Plan contemplated that privilege logs would be produced within 21 days of that production. (Dkt. #93). Defendants produced their second privilege log on March 28, 2019. Before doing so, Defendants "declassified" certain

5

previously withheld documents, producing an additional 63 documents of which Mr. Adams was the custodian on March 18, 2019 and an additional 51 documents of which Mr. Adams was the custodian on March 22, 2019.  In short, Plaintiffs had Defendants' privilege logs, objections, and all documents in Defendants' possession, custody, or control that were not withheld pursuant to claims of privilege or objections well before Mr. Adams was deposed.  Plaintiffs' counsel made a strategic decision to depose Mr. Adams before obtaining documents from third parties—and to obstruct rather than seek discovery from Skadden Attorney Albertson, no doubt because of concerns arising from the witness-advocate rule.

In the declaration that he submitted in opposition to Plaintiffs' February 15, 2019 Motion to Compel, Mr. Adams was candid that one reason that he did not retain many documents in the ordinary course of business was the fear that activists such as SCSJ, Protect Democracy, and others would use them for ideological attacks. (Dkt. #103).  The fact that documents recently produced by Skadden Attorney Albertson are now being used for this very purpose against the wife of a Supreme Court Justice shows that Mr. Adams' concerns were well-placed.  In any event, the fact that Plaintiffs' counsel deposed Mr. Adams—twice—before receiving certain documents in discovery from third parties is the result of strategic decisions made by Plaintiffs' counsel, not any actions or omissions on the part of Defendants or their counsel.

**B.     Plaintiffs Could and Should Have Obtained Documents From Skadden Attorney Albertson, Mr. von Spakovsky, and VVA Long Before the Close of Discovery.**

In *Fresenius Med. Care Holdings, Inc. v. Roxane Labs., Inc.*, 2007 WL 764302 (S.D. Ohio Mar. 9, 2007), the movant "did everything in its power" to get the document before the deposition and the opposing party offered no explanation for the delay in producing the document. *Id.* at *2. Here, the delay was that of third parties—not of Mr. Adams.  Moreover, "the Court may deny leave to conduct a second deposition of the witness even if relevant documents are produced

6

subsequent to the deposition of the party taking the deposition . . . chose to conduct the deposition prior to the completion of document discovery." *Id.* Plaintiffs cite *Vincent v. Mortman*, 2006 WL 726680, at *2 (D. Conn. Mar. 17, 2006), with the following parenthetical: "permitting reopening of defendant's deposition in light of third party's belated production of relevant documents." In fact, the belated production at issue in that case was ***not*** the production of a third party. Here, the delays in production were on the part of non-parties Skadden Attorney Albertson, Mr. von Spakovsky, and VVA, as set forth herein.

### 1. Skadden Attorney Albertson

Of the eighteen counsel of record for Plaintiffs, eight are at the law firm of Skadden Arps. If Plaintiffs' counsel at Skadden Arps were previously unaware of the central role that their colleague Steve Albertson played in the gathering of information for the *Alien Invasion* reports and their post-publication dissemination to the news media, they learned of Mr. Albertson's involvement by way of Defendants' January 16, 2019 initial disclosures. With respect to Skadden Attorney Albertson, Defendants' initial disclosures stated as follows: "Non-parties who assisted PILF in gathering data for use in the Reports, including **Steve Albertson,** at Skadden, Arps, Slate, Meagher & Flom LLP, 1440 New York Ave, N.W., Washington, D.C. 20005, Tel: 202-371-7112, Email: steven.albertson@skadden.com. Mr. Albertson need not be contacted through counsel for Defendants." Shortly thereafter, Plaintiffs' counsel of record at Skadden Arps served FOIA requests upon two local registrars seeking Skadden Attorney Albertson's communications with each of them.[7]

On February 8, 2019, Defendants served the deposition notice and subpoena on Skadden

---

[7] An example of one such FOIA request, directed to the Fauquier County Registrar, was marked as an exhibit to the deposition of Skadden Attorney Albertson and is attached as **Exhibit G**.

7

Arps attached as **Exhibit H** to which emails from Skadden Attorney Albertson were responsive. After initially representing that no such emails existed, Skadden's OGC finally produced a limited quantity of such emails on March 15, 2019. Thereafter, Defendants' counsel sent Skadden's OGC a series of emails attempting to determine whether Skadden's OGC would be representing Steve Albertson individually. These include the March 16, 2019 email attached as **Exhibit I**, the March 18, 2019 email attached as **Exhibit J**, and the March 18, 2019 email to Plaintiffs' counsel attached as **Exhibit K** enclosing the "documents produced by Skadden Arps in response to Defendants' subpoena" and stating: "I have yet to hear whether Mr. Albertson personally is represented by counsel in this matter." Finally, on March 29, 2019, Defendants' counsel—having heard nothing from Skadden's OGC or any of the eight Skadden Arps attorneys representing Plaintiffs in this case—served Mr. Albertson with the deposition subpoena attached as **Exhibit L**. Thereafter, having noticed that at least one document produced in discovery showed a gmail.com address for Mr. Albertson, Defendants served Mr. Albertson with the document subpoena attached as **Exhibit M** on April 12, 2019. Mr. Albertson's deposition was originally scheduled to take place on April 24, 2019. At the request of his counsel that had recently been retained, the deposition was postponed several times from April 24, 2019 to May 9, 2019. Ultimately, it did not take place until Tuesday, May 14, 2019—with leave of Court (Dkt. #143)—to accommodate a personal issue with Mr. Albertson. The evening of Friday, May 10, 1019, Mr. Albertson produced 464 documents. The delay in this production and its volume are not attributable to Mr. Adams or his lawyers, who worked diligently to secure discovery from Mr. Albertson.

    2.    <u>**Hans von Spakovsky**</u>

On January 31, 2019, Plaintiffs' counsel Nicole Cleminshaw and Defendants' counsel Michael J. Lockerby exchanged the emails attached as **Exhibit N** regarding, *inter alia*, a subpoena being served on Mr. von Spakovsky. At 6:25 p.m., Plaintiffs' counsel wrote: "Please note that

8

while we are serving Mr. von Spakovsky individually with a subpoena, we maintain our position that as a board member of PILF involved in the creation and promotion of the *Alien Invasion* Reports, any materials in his possession that are responsive to Plaintiffs' First Set of Requests for Productions and Interrogatories to PILF should be produced as part of PILF's Response." Eight minutes later, at 6:33 p.m., Defendants' counsel responded in pertinent part: "Is that your firm's position with respect to its corporate clients, that outside board members are considered parties for purposes of discovery?" Not surprisingly, Plaintiffs' counsel never responded. Instead, Plaintiffs' counsel proceeded to deal directly with Mr. von Spakovsky and his counsel regarding the production of documents responsive to Plaintiffs' subpoena.

On March 1, 2019, Mr. von Spakovsky's counsel served objections to the subpoena by way of correspondence attached as **Exhibit O**. Thereafter, there were apparently a series of communications between Plaintiffs' counsel and Mr. von Spakovsky's counsel regarding the production of documents and the deposition of Mr. von Spakovsky. Defendants' counsel was not a party to all of these communications but was copied on certain communications setting Mr. von Spakovsky's deposition for various dates, including April 18, 2019, April 23, 2019, and May 9, 2019. The deposition ultimately took place on May 9, 2019. Defendants' counsel met Mr. von Spakovsky's counsel for the very first time at the deposition. At the deposition, Mr. von Spakovsky testified that all of his emails were on the Heritage Foundation server and that emails were automatically deleted after eighteen months. (von Spakovsky Tr. 34:24–36:23).

### 3. **Virginia Voters Alliance**

In the case of VVA, Plaintiffs' counsel similarly dealt with VVA's principal, Reagan George, and two different law firms responsible for the production of its documents at different times. At one point, when VVA was not represented by counsel, Defendants and their counsel received copies of emails exchanged with Plaintiffs' counsel. These emails, dated February 7,

9

2019, are already on file with the Court. (Dkt. # 104-1). At some point thereafter, VVA apparently retained the same attorney who is representing Mr. von Spakovsky in this matter. Both before and after that engagement, Defendants and their counsel had no involvement in VVA's document production.

C. **Plaintiffs Have Not Met Their Burden of Showing Good Cause to Re-open the Deposition of J. Christian Adams and PILF After 14 Hours of Questioning.**

Each of the two depositions at which Mr. Adams testified—the April 18, 2019 Rule 30(b)(6) deposition of PILF and the April 22, 2019 individual deposition of Mr. Adams—took at least the full seven hours permitted by the Federal Rules of Civil Procedure. The transcripts show that Plaintiffs' counsel wasted much of the time by reading lengthy portions of documents followed by the question "Do you see that?" *See*, *e.g.*, Adams Tr. 18:19 – 19:9, 20:4–7, 22:8–14, 23:11–20, 27:24 – 28:1, 31:12–17, 31:23 – 32:2 (Dkt. #160-22), PILF 30(b)(6) Tr. 17:8–16, 21:20–22:2, 31:12–22, 40:7 – 41:4 (Dkt. # 160-21). There was no "obstruction." To the contrary, Defendants' counsel primarily objected on the basis of form without elaboration—providing a more specific statement of the basis for the objection only when specifically requested to do so by Plaintiffs' counsel. *See, e.g.,* Adams Tr. 7:12–20, 10:10–11:1, 15:3–10, 16:4–21, 17:3–7, 20:17–21, 25:19–25 (Dkt. # 160-22). Plaintiffs' counsel did have to be reminded, however, that it was not appropriate to be making faces and gestures from off-camera while Mr. Adams was being videotaped[8]—a breach of decorum that Defendants would attribute to inexperience rather than obstructionism.[9]

Under the authorities cited in support of the pending motion, Plaintiffs have the burden of

---

[8] *See, e.g.,* Adams Tr. 43:3–17.

[9] Only two attorneys admitted to the Virginia State Bar have been present for the depositions taken by Plaintiffs' counsel. Both were admitted only recently.

10

showing good cause (*i.e.*, diligence) to reopen Mr. Adams' deposition. *Flame Glory Wealth Shipping Pte Ltd. v. Indus. Carriers, Inc.*, 2014 WL 12547264, at *3 (E.D. Va. Apr. 30, 2014).[10] Only then do Defendants need to show the factors enumerated in Flame Glory Wealth. Here, third party discovery has not revealed any "new" information that would warrant re-opening Mr. Adams' deposition even for the limited purpose permitted in *Flame Glory Wealth*.

Moreover, the facts here are notably different from those at issue in *Flame Glory Wealth*. In that case, the plaintiff company seeking a second deposition was not part of the case when the president of the defendant had previously been deposed. After that first deposition, the two cases were consolidated: "Perhaps most notably, Glory Wealth [the plaintiff and movant] has not had the opportunity to depose Viktor Baransky. . . . Accordingly, Glory Wealth has not had ample opportunity to obtain this type of information through other discovery. . . . Because Glory Wealth has not had the opportunity to previously depose Mr. Baransky, the Court is not 're-opening' Mr. Baransky's previous deposition." *Id.* at *3.

Here, there is no such new party or "new" information. In opposition to Plaintiffs' Motion to Compel[11] and at his deposition,[12] Mr. Adams testified that his efforts to procure prosecution of non-citizens who voted were focused on U.S. Attorneys whereas Skadden Attorney Albertson focused on Commonwealth's Attorneys. The documents that Skadden Attorney Albertson produced on this issue focused on his own efforts to contact Commonwealth's Attorneys. These documents are not inconsistent with how Mr. Adams characterized the division of labor, and Plaintiffs' counsel of record at Skadden Arps could have obtained them long ago simply by

---

[10] *See also Eshelman v. Puma Biotechnology, Inc.*, 2018 WL 327559, at *4 (E.D.N.C. Jan. 8, 2018); *Briggs v. Phebus*, 2014 WL 1117888, at *3–*4 (E.D. La. Mar. 19, 2014).

[11] *See* Dkt. #102–103.

[12] PILF 30(b)(6) Tr. 308:2–17 (Dkt # 160-21)..

11

walking down the hall. At his deposition, Skadden Attorney Albertson was adamant that Mr. Adams was not interested in finding a receptive Commonwealth's Attorney. Albertson Tr. 51:9–16, 52:18–53:5, 144:14–145:7. Notwithstanding Mr. Adams' lack of interest, documents produced by Skadden Attorney Albertson show that Mr. Albertson persisted in his efforts to interest Commonwealth's Attorneys in prosecuting non-citizen voters long after Mr. Adams made it clear that he had no interest in doing so. (Albertson Tr. 70:4–73:11; Albertson Dep. Exs. 23, 25)..

The other areas that Plaintiffs cite as a pretext for re-opening Mr. Adams' deposition similarly will not withstand even cursory scrutiny. Much of Skadden Attorney Albertson's information about non-citizen voting in Virginia came from the Registrar and Clerk of Court in Stafford County, where Skadden Attorney Albertson previously served on the Board of Elections. (Albertson Tr. 26:18–32:3). If anyone told Mr. Albertson about an alleged error rate in lists of non-citizens, it was certainly not Mr. Adams. As a result of the subpoenas and FOIA requests to the Department of Elections and local registrars alike, the record is uncontroverted that neither the Commissioner of Elections nor any local registrar told Mr. Adams anything of the kind. To the contrary, when he was deposed on April 10, 2019, Commissioner Cortes stood behind the accuracy of the "cancellation-declared non-citizen" report attached as Exhibit 1 to *Alien Invasion II*. (Cortes Tr. 169:3-170:17.) (Lockerby Decl. ¶ 17, Ex. 25) (Dkt. #130-25).

When Skadden Attorney Albertson was deposed, the Protect Democracy attorney taking the deposition suggested that PILF and Mr. Adams were claiming some kind of attorney-client relationship with the Skadden Arps law firm simply because their communications were sent to and from a Skadden.com email address. Defendants have made no such claim and have raised no such conflict. Nor have Defendants raised the issue of the witness-advocate rule at this time. Having gotten Skadden Attorney Albertson riled up with innuendo, the examining attorney showed

12

the witness deposition testimony in which Mr. Adams testified—perhaps incorrectly—that Skadden Attorney Albertson had succeeded in obtaining information from the registrar in Prince Williams. The documents produced by Mr. Albertson suggest that Mr. Adams may have confused some other jurisdiction with Prince William County. In any event, such a discrepancy is more properly the subject of cross-examination at the trial at which both witnesses—Mr. Adams and Skadden Attorney Albertson—are expected to testify. The very authority cited by Plaintiffs supports this proposition. *Ganci v. U.S. Limousine Serv., Ltd.*, 2011 WL 4407461, at *2 (E.D.N.Y. Sept. 21, 2011).

Finally, the documents subpoenaed from AC Fitzgerald and ForthRight corroborate rather than undercut Mr. Adams' deposition testimony that PILF had not been successful in raising money based on direct appeals referencing this litigation. PILF directly addressed this issue by way of the affidavit attached as **Exhibit P** after Plaintiffs' counsel raised the issue. Again, any such discrepancy could be addressed at trial *if* relevant—although such fundraising is not relevant to the issue of liability and certainly cannot provide the basis for a damage claim on behalf of Plaintiffs, who have admittedly suffered no damages.

D.  **This Litigation and Plaintiffs' Motion Are Part of an Ongoing Campaign to Use Litigation to Harass PILF, Messrs Adams and von Spakovsky, and Third Parties.**

From the outset, the targets of Plaintiffs' smear campaign have included the nemeses of Justin Levitt, the law professor in Los Angeles who first proposed this litigation to Plaintiffs' counsel, SCSJ and Protect Democracy. Messrs. Adams and von Spakovsky, an officer at the Heritage Foundation who is one of PILF's outside directors, wrote a series of articles critical of Professor Levitt's conduct (and that of his cronies) at the U.S. Department of Justice. (Lockerby Decl. Exs. 20, 21, 22, 23, and 24) (Dkt. ##130-20–130-24). While he was at the Justice Department, Professor Levitt collected these articles along with briefs and publications by Messrs.

13

Adams and von Spakovsky that advocated for election integrity and cited data for the proposition that voting by non-citizens is more prevalent than Professor Levitt has publicly claimed—although his own files suggest otherwise. (Lockerby Decl. ¶¶ 9, 10, 27, and 28) (Dkt. #130). Professor Levitt was still at U.S. Department of Justice when the first *Alien Invasion* report was published. That was no longer the case as of Inauguration Day 2017.

On May 30, 2019, the day after publication of *Alien Invasion II*, Professor Levitt began an email blast to many of the more than 5,500 voters identified by the Virginia Department of Elections as having had their voter registrations cancelled due to non-citizen status. (Lockerby Decl. ¶¶ 11, 12, 13, 14, and 15) (Dkt. #130). Today, nearly three years later, only three of these 5,500+ voters placed on this list by the Virginia Department of Elections have been shown to be citizens of the United States.

One is Plaintiff Luciania Freeman, the only Virginia voter who ultimately succumbed to a barrage of seven emails from Professor Levitt that misrepresented how she came to be on this list. (Dkt. #130-2). Discovery has since confirmed that—consistent with the April 4, 2017 email from Edgardo Cortes, Commissioner of the Department of Elections at the time—"[t]his report shows individuals that were cancelled due to self-reported non-citizen status and failed to complete an affirmation of citizenship in the allotted time frame and continue to be in cancelled status." (Dkt. #66-2). After publication of *Alien Invasion II*, Ms. Freeman (who was in fact born in North Carolina) did what the Prince William County Registrar had invited her to do on July 22, 2015: affirm her citizenship and re-register to vote.

The second U.S. citizen whom the Virginia Department of Elections had incorrectly identified as a non-citizen was Plaintiff Eliud Bonilla. Like Ms. Freeman, Mr. Bonilla had—in the words of former Commissioner Cortes—"self-reported non-citizen status and failed to

14

complete an affirmation of citizenship in the allotted time frame." (Dkt. #66-2). Unlike Ms. Freeman, Mr. Bonilla had—before the publication of *Alien Invasion II*—affirmed his citizenship and re-registered. He has since moved to Maryland, where he registered to vote and voted. As a result, Mr. Bonilla is not among the "Virginia voters" referenced in the Complaint. With respect to Mr. Bonilla, Commissioner Cortes was incorrect when he wrote—in the April 4, 2017 email that is "front and center" in the May 2017 *Alien Invasion II* report—that "[i]f an individual was previously cancelled and then subsequently affirmed citizenship and was re-registered, they would no longer appear on this report because they would now be on active status. (Dkt. #66-2). Notwithstanding this discrepancy, former Commissioner Cortes stood by his April 4, 2017 email when he was deposed last month. (Cortes Tr. 169:3-170:17.) (Lockerby Decl. Ex. 25) (Dkt. #130-25).

The following week, on April 19, 2019, the current Commissioner of Elections, Chris Piper was deposed. He testified that the preceding day, April 18, 2019, he had learned for the very first time about certain registrar errors that made Commissioner Cortes' April 4, 2017 statement incorrect with respect to at least two Virginia voters. One was Plaintiff Eliud Bonilla. The second was Maureen Erickson, who has registered to vote in Virginia from an address in Guatemala but is in fact a U.S. citizen despite having been on the list of voters "cancelled-declared non-citizen." Like Mr. Bonilla, Ms. Erickson had erroneously self-reported as a non-citizen but had affirmed her citizenship after her voter registration was initially cancelled. (Lockerby Decl. Ex. 25) (Dkt. #130-25). As was the case with Mr. Bonilla, registrar error accounted for the fact that her name continued to appear on the "cancellation-declared non-citizen list." (Lockerby Decl. Ex. 25) (Dkt. #130-25). Yet that did not stop Commissioner Cortes, Professor Levitt, and his friends in the news media—including those referred to him by the publicist(s) retained by Plaintiffs' counsel SCSJ

15

and Protect Democracy—from repeatedly citing the example of Ms. Erickson as "evidence" allegedly showing that PILF and Mr. Adams were "sloppy," published "fake" and "fraudulent" reports, and the like. (Lockerby Decl. ¶¶ 17, 25(i), 33, Exs. 44) (Dkt. #130, 130-44). Win, lose, or draw, the pending motion allows the activists who are the "real parties in interest" to continue to use "reporting" on the litigation to smear PILF, Mr. Adams, Mr. von Spakovsky, Ginny Thomas, and anyone else who disagrees with the position of Professor Levitt and his compatriots that non-citizen voting is a "myth."

### III. CONCLUSION

The fact that Plaintiffs have no evidence to support their claims reflects the absence of any evidence to support their claims. The burden of discovery on Defendants in this case has been substantial, especially in view of PILF's size and the contrived nature of Plaintiffs' claims. Discovery is now over. Plaintiffs have come forward with no legitimate reason for subjecting Mr. Adams to a third day of discovery and otherwise continuing to employ the army of eighteen lawyers appearing as counsel of record for Plaintiffs. If the case does not settle, it should go to trial as scheduled. At trial, Plaintiffs' counsel, armed with the substantial testimony that Mr. Adams has already provided on these topics, can continue to probe him and other witnesses about alleged discrepancies in the record. Under the circumstances, Plaintiffs have not demonstrated the good cause necessary to re-open the deposition of Mr. Adams.

Dated: May 22, 2019

Respectfully submitted,

PUBLIC INTEREST LEGAL FOUNDATION
and J. CHRISTIAN ADAMS

By */s/ Michael J. Lockerby*
      Counsel
Michael J. Lockerby (Virginia State Bar No. 24003)
Eli L. Evans (Virginia State Bar No. 90700)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone: 202-945-6079
Facsimile: 202-672-5399
Email: mlockerby@foley.com
Email: eevans@foley.com


William E. Davis (Admitted *pro hac vice*)
Ana Romes (Admitted *pro hac vice*)
FOLEY & LARDNER LLP
One Biscayne Tower
2 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Telephone: 305-482-8404
Facsimile: 305-482-8600
Email: wdavis@foley.com
Email: aromes@foley.com

Counsel for Defendants

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2019, I electronically filed the foregoing OPPOSITION TO PLAINTIFFS' MOTION TO RE-OPEN THE DEPOSITION OF DEFENDANT J. CHRISTIAN ADAMS AND DEFENDANT PUBLIC INTEREST LEGAL FOUNDATION with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing (NEF) to all counsel of record.

                                                     */s/ Michael J. Lockerby*
                                        Michael J. Lockerby (VSB No. 24003)
                                        FOLEY & LARDNER LLP
                                        Washington Harbour
                                        3000 K Street, N.W., Suite 600
                                        Washington, D.C. 20007-5109
                                        Telephone: 202-945-6079
                                        Facsimile: 202-672-5399
                                        Email: mlockerby@foley.com

                                        Counsel for Defendants

4845-9433-9991.1